IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br>HOUSTON REGIONAL SPORTS<br>NETWORK, L.P.,<br><br>      Debtor. | Chapter 11<br><br>CASE NO. 13-35998 |

**COMCAST ENTITIES EMERGENCY
MOTION TO STRIKE SECOND AMENDED PLAN OR TO RE-SET THE
SCHEDULING OF THE CONFIRMATION HEARING**

**BLR 9013-1(i) NOTICE:  EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**BLR 9013-1(b) NOTICE:  THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

    The Comcast Entities[1] hereby move to strike the Second Amended Chapter 11 Plan Filed by Houston Regional Sports Network, L.P. [Dkt. # 650] (the "Second Amended Plan").

---

[1] The four Comcast affiliates that initiated this proceeding are collectively referred to herein as "Comcast" or the "Comcast Entities."  "Comcast Lender" refers to (….continued)

At the status conference held on August 7, 2014, this Court took pains to emphasize one point regarding the First Amended Chapter 11 Plan Filed by Houston Regional Sports Network, L.P. [Dkt. 529] (the "First Amended Plan"): "I'm not proceeding without giving a fair opportunity to figure out what the fight is about and then having a fair fight on the valuation." Tr., Aug. 7, 2014 at 11.  Counsel for Comcast made it perfectly clear at that hearing that Comcast was considering exercising its rights under Section 1111(b) of the Bankruptcy Code, *id.* at 15, and this Court concluded that a secured creditor was entitled to make that election against an understanding, provided by the Disclosure Statement, of the treatment of the secured claim. *Id.*  Since that time, the parties have exchanged thousands of documents, produced expert reports, conducted more than a dozen depositions and are finalizing trial briefs, all in connection with the First Amended Plan.

Comcast was—and remains—prepared to proceed under the terms this Court directed.  The Teams, however, have apparently promised the Proposed Buyers more than they can deliver.  And so now, while the one of the last fact witness depositions in this matter was underway, they announce a fundamental change to the rules of the game by filing the Second Amended Plan.  Comcast has not had time to study the Second Amended Plan in detail.  But it appears that the Second Amended Plan radically alters the

---

(continued….)

Houston SportsNet Finance, LLC, one of the Comcast Entities.  "Astros" refers collectively to Houston Astros, LLC; Astros HRSN GP Holdings LLC; Astros HRSN LP Holdings LLC; and their affiliates.  "Rockets" refers to Rocket Ball, Ltd and Rockets Partner, L.P.  The "Teams" refers collectively to the Astros and Rockets.  "AT&T" refers to AT&T Teleholdings, Inc. and its affiliates and "DirecTV" refers to DirecTV SportsNetworks, LLC and its affiliates.  "Proposed Buyers" refers collectively to AT&T and DirecTV.  Houston Regional Sports Network, L.P. is referred to as "the Debtor" or "the Network."

structure of the proposed transaction. Rather than a reorganization of the Debtor in which the Debtor will retain the collateral securing Comcast Lender's $100 million loan, the Second Amended Plan contains a gimmick. In order to try to defeat Comcast Lender's 1111(b) election, the Second Amended Plan purports to "sell," under Section 363 of the Bankruptcy Code, certain of Comcast Lender's collateral to the Teams. The Teams, in turn, purport to "contribute" those assets—which would now be free and clear of Comcast liens—to the reorganized debtor.

That stunt fails as a matter of law. But requiring Comcast to respond to it at this late date, after fact discovery is essentially concluded and with trial briefs due imminently, is profoundly unfair and prejudicial. It should not be permitted. Either the parties should continue towards the confirmation hearing on the September 4, 2014 version of the Plan—the one that has formed the basis for all of the discovery taken to date, including the parties' expert reports—or the confirmation hearing should be taken off of the calendar and the parties directed to start over on the new plan filed earlier today. In no circumstances, however, should the Teams be permitted to disregard the Court's clear directive that Comcast was entitled to "a fair opportunity to figure out what the fight is about and then having a fair fight on the valuation."

## ARGUMENT

It is an elementary principle of bankruptcy law that the holder of an allowed secured claim, even if he is "crammed down" under Section 1129(b) of the Bankruptcy Code, is entitled to be paid in full on account of his allowed secured claim. While bankruptcy law effectively permits the debtor to refinance that debt—such that the secured creditor receives a stream of deferred payments with a present value equal to the

3

value of the collateral securing the secured creditor's claim—the Bankruptcy Code is clear that the secured creditor retains his prepetition lien on his collateral unless and until he receives payment in full.

Against this backdrop of well-established law, the Teams entered into an agreement with the Proposed Buyers. In the agreement, the Teams promised the Proposed Buyers that: (a) the Proposed Buyers could acquire the equity of the reorganized debtor, essentially for free; (b) the reorganized debtor's assets would be free and clear of all liens and claims, including the lien that Comcast Lender holds on substantially all of the Network's assets to secure Comcast Lender's $100 million prepetition loan; and (c) the Teams would themselves pay all of the valid claims running against the Network (except for those claims whose recoveries are limited to the proceeds of a litigation trust), to the extent such claims exceeded the Network's cash-on-hand as of the Effective Date of the Plan.

As the Court knows, as a result of Comcast's election under Section 1111(b) of the Bankruptcy Code, the only way that the Teams can deliver to the Proposed Buyers a Network not subject to Comcast Lender's lien is for them to pay off Comcast Lender's $100 million secured claim in full on the Effective Date. The reasoning of *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012), makes clear that Section 1129(b)(2)(A)(i) is the provision applicable to this type of cram down of a secured creditor. That provision makes plain that Comcast maintains its lien on its collateral unless and until Comcast is paid in full on account of its $100 million loan— which may be satisfied in deferred payments with a net present value equal to the value of its collateral. *See also In re River East Plaza*, LLC, 669 F.3d 826, 831, 833 (7th Cir.

2012) (Posner, J.) (decided before *RadLAX*, and approvingly quoting the bankruptcy judge in that case that "a secured creditor cannot be forced to accept substitute collateral if the creditor has chosen to convert a combination of secured and unsecured claim into a secured claim equal to the debt that is owed [by making the 1111(b) election]").

That is a problem for the Plan Proponents—though it is one of which they should certainly have been aware before proposing their Plan. Unless the buyers are willing to acquire the Network with Comcast's lien on its assets still in place—and the deposition testimony to date, as well as the filing of the Second Amended Plan, provides fairly strong evidence that they are not—the Teams are required to satisfy Comcast's secured claim in full. It now appears that the Teams are unwilling or unable to make good on their promise to deliver the reorganized Network free and clear of all liens and obligations.

In the meantime, extensive discovery has been taken based on the current structure of the Plan. Both the Plan Proponents and Comcast have submitted expert reports that value the collateral securing Comcast Lender's loan. Comcast was required to prepare its responsive expert report in ten very difficult days. That report was served yesterday. The Plan Proponents' expert is scheduled to be deposed on Thursday. Comcast's expert is scheduled to be deposed on Friday. The confirmation hearing begins on Thursday with the evidentiary portion scheduled to begin on Monday. And today, the Plan Proponents have radically altered the structure of the proposed transaction.

Rather than a simple reorganization of the debtor, the Second Amended Plan (based on Comcast's initial review) seeks to divide Comcast's collateral into three separate groups: (1) cash and accounts receivable; (2) furniture, fixtures and equipment

("FF&E"); and (3) the "Residual Collateral," which includes the Comcast Affiliation Agreement—an agreement that the parties agree is critical to the success of the reorganized debtor.

In the Second Amended Plan, the treatment of this collateral is entirely different from its treatment under the prior plan.   Specifically:

(1)   Cash and the value of the accounts receivable will be paid in full to Comcast at closing.

(2)   FF&E will be "sold" to the Teams for cash.  The cash proceeds would be paid to Comcast at closing and the FF&E "round-tripped" back to the Network.

(3)   The Residual Collateral (including our Affiliation Agreement) will remain with the reorganized debtor.  But the Plan Proponents contend (quite incorrectly) that this collateral has "inconsequential value," such that Comcast is now not entitled to make the 1111(b) election.

Moreover, having already pulled the rug out from under the parties-in-interest by altering the basic structure of the transaction, the Second Amended Plan purports to "reserve" the right, without any particular notice to Comcast, to do so yet again, stating that the Plan Proponents may, as some unspecified time in the future, convert the entire transaction to a Section 363 sale.

It is simply too late in the day to change the matter in dispute so fundamentally. All of the expert analysis has proceeded on the basis of the prior form of the plan.  This amendment requires a reconsideration of much of the expert analysis, and introduces a host of new legal issues into this case at the eleventh hour.  If Section 1111(b) does not apply, how does one credit bid when part but not all of the collateral is being sold?  What

6

is meant by "inconsequential value" as used in Section 1111(b)(1)(B)(i)?  Can the right to exercise the 1111(b) election be circumvented by this type of structuring, which is obviously a reorganization in substance, but fictitiously structured as an asset sale?  Comcast cannot reasonably be expected to analyze, let alone brief, these issues by Friday (with the hearing commencing on Thursday and expert depositions set for both Thursday and Friday).

In addition, the fundamental change in the treatment of Comcast Lender's secured claim unquestionably would entitle Comcast to reconsider its 1111(b) election.  *In re Keller*, 47 B.R. 725, 730 (Bankr. N.D. Iowa 1985) ("A material alteration of the Plan by the Debtor is tantamount to filing a different plan and if a material alteration is made it would be inequitable to not allow a creditor to fully evaluate the proposal and determine whether it wished to elect treatment under § 1111(b).")  And the obvious corollary to that point is that Comcast is entitled to a reasonable period of time to study the Second Amended Plan in order to determine whether such a change would be advisable.

The Plan Proponents advocated for and obtained the current schedule.  This Court made clear at the August 8, 2014 hearing that Comcast was entitled to understand how its secured claim was being treated by no later than August 28, 2014, so that Comcast would have a reasonable (though expedited) opportunity to proceed to a confirmation hearing in early October.  The Plan Proponents' decision to alter that treatment today is in plain disregard of the Court's direction, and inconsistent with basic principles of due process and fairness.

## CONCLUSION

The Second Amended Plan should be stricken. Alternatively, if the Court believes it appropriate to permit the Plan Proponents to proceed to confirmation of the Second Amended Plan, the confirmation hearing should be removed from the calendar, and the Court should set a scheduling hearing in order to set a revised schedule that would permit Comcast to take appropriate discovery on the Second Amended Plan, re-submit expert reports directed to the relevant valuation questions raised by the Second Amended Plan, address the legal questions raised by the Second Amended Plan, and prepare appropriately for the confirmation hearing.

Dated:  September 30, 2014

Respectfully submitted,

/s/ *Vincent P. Slusher*

| | |
|---|---|
| Howard M. Shapiro | Vincent P. Slusher |
| Craig Goldblatt | Andrew Zollinger |
| Jonathan Paikin | DLA PIPER |
| WILMER CUTLER PICKERING HALE AND DORR LLP | 1717 Main Street |
| | Suite 4600 |
| 1875 Pennsylvania Avenue, N.W. | Dallas, TX 75201-4629 |
| Washington, D.C.  20006 | (214) 743-4500 |
| (202) 663-6000 | |
| | |
| George W. Shuster, Jr. | Arthur J. Burke |
| WILMER CUTLER PICKERING HALE AND DORR LLP | Timothy Graulich |
| | Dana M. Seshens |
| 7 World Trade Center | DAVIS POLK & WARDWELL LLP |
| 250 Greenwich Street | 450 Lexington Avenue |
| New York, NY 10007 | New York, NY 10017 |
| (212) 230-8800 | (212) 450-4000 |

*Counsel for the Comcast Entities*