United States Courts
Southern District of Texas
FILED

JAN 0 7 2013

David J. Bradley, Clerk of Court

Case 12-36187

**OBJECTION OF AD HOC SECOND LIEN COMMITTEE
TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER EXTENDING ITS
EXCLUSIVE PERIODS TO FILE AND SOLICIT A PLAN OF REORGANIZATION**
[Related to Docket No. 998]

| | |
|---|---|
| In re: | Chapter 11 |
| ATP OIL & GAS CORPORATION, | Case No. 12-136187 |
| Debtor. | Hon. Marvin Isgur |

**OBJECTION OF ROMAN GELSI PRO SE SECOND LIEN Holder TO DEBTOR'S MOTION FOR
AN ORDER EXTENDING ITS EXCLUSIVE PERIODS**
[Related Docket No. 998]

I Roman Gelsi a owner of the debtors second lien bonds a party of interest urge the court to not grant the debtors exclusive periods.

I Feel more value could be held if competing plans where allowed to be filed. I also agree with the second lien holders objection (Docket 1127)

SINCERELY, ROMAN GELSI PRO SE SECOND LIEN BONDHOLDER

Here is a article that relates to this

For example, in the Chapter 11 reorganization of Public Service Co. of New Hampshire, a public electric utility, **the court and the official committees encouraged three strategic bidders to submit competing plans of reorganization to acquire the debtor.** The auction process was greatly facilitated by appointment of an examiner who questioned certain assumptions underlying the debtor's valuation and plan. **The participants in that auction process believed that the value realized for creditors and shareholders increased by more than $250 million.**

Roman Gelsi
2139 E. Chestnut Ave #2
Vineland NJ 08361

1

http://www.turnaround.org/Publications/Articles.aspx?objectID=1375

## Standing to Challenge Debtor's Plan Exclusivity

Bankruptcy Code § 1121(c) limits the parties who can file a plan to a "party in interest" such as the debtor, a trustee, official committees, a creditor or a shareholder, equity security holder or an indenture trustee. Generally, only a party with an economic interest in the outcome of the case can file a plan. Similar constraints apply to attempts to terminate plan exclusivity, and motions to terminate plan exclusivity can be made only by a party having an economic interest in the case.

Unless a buyer has acquired a claim in the Chapter 11 case, the buyer by itself does not have legal standing in the bankruptcy court to seek to terminate the debtor's plan exclusivity or to otherwise affect the reorganization process by appearing in court cases. However, it is not uncommon for a buyer to buy a claim in order to seek to acquire standing. The buyer must recognize, however, that the bankruptcy court may not welcome another layer of complexity that threatens to delay the reorganization process, particularly if the buyer is perceived as having no interest in reorganizing the debtor, or as an outsider interested only in purchasing assets. Some courts hold that a claims buyer who is really an asset purchaser does not have standing to propose a plan or object to a debtor's request to extend plan exclusivity.

The success of a buyer under these circumstances depends to a large extent on how the bankruptcy court perceives its motivations and whether creditors or shareholders support its participation in the case. Thus, if the debtor's creditors or shareholders are dissatisfied with the debtor's plan, they may wish to form an alliance with a buyer who will fund an acquisition of the debtor's assets and then jointly ask the bankruptcy court to terminate plan exclusivity, reduce the debtor's exclusive time to file a plan or permit the filing of and voting on competing plans. This is likely to be more persuasive to a judge if the proposed buyer is offering substantially more value than the debtor is proposing in its plan. Whether a court will extend or terminate the debtor's plan exclusivity depends to a large extent on the facts of an individual case.

Even if the debtor's exclusive period is not ended, a party in interest can still move to lift plan exclusivity in order to propose its own plan incorporating a competing bid. Since the debtor has a fiduciary duty to maximize the value of the estate, the failure to fairly consider a competing acquisition proposal that gives a higher recovery to creditors may indicate that the debtor is not acting in good faith or in the best interests of creditors.

As a matter of strategy, creditors and other parties in interest recognize that many courts readily extend the debtor's initial 120-day plan exclusivity. In many cases involving significant assets and large numbers of creditors, it is not realistic to formulate a plan and file a disclosure statement within four months after beginning the Chapter 11 case. In these "mega" cases, creditors that form coalitions with buyers need to develop a legal and financial strategy that pressures the debtor and its board of directors and officers to put forward the best plan, rather than a plan that benefits management or does not provide

full enterprise value to the creditor/equity constituencies.

Some courts have embraced competing plans as the best way to maximize value for all constituencies. For example, in the Chapter 11 reorganization of Public Service Co. of New Hampshire, a public electric utility, the court and the official committees encouraged three strategic bidders to submit competing plans of reorganization to acquire the debtor. The auction process was greatly facilitated by appointment of an examiner who questioned certain assumptions underlying the debtor's valuation and plan. The participants in that auction process believed that the value realized for creditors and shareholders increased by more than $250 million. In cases involving single asset real estate debtors, the U.S. Supreme Court seems to have embraced the idea that the equity interests in the reorganized company need to be exposed to some sort of market-based auction and that the existing equity owners cannot control the reorganization process to the exclusion of other parties interested in acquiring the assets. Whether this decision by the Supreme Court will lead to true bankruptcy court auctions is unclear, but the decision suggests that buyers of financially distressed real estate assets may have opportunities to substantially influence the debtor's possibilities for a successful reorganization.

Competitive bidding is not required in every Chapter 11 reorganization, although competitive bidding may be the best way to determine the true market value of the company. Courts with a bias towards letting the debtor control the plan process may resist the idea of having an auction through competing plans, but those courts must still confront the fact that the value of the reorganized entity needs to be determined at the time of the confirmation hearing.

## Appointment of a Trustee Terminates Plan Exclusivity

A failure to perform fiduciary duties may result in the appointment of a Chapter 11 trustee, which under Bankruptcy Code § 1121(c) results in automatic termination of plan exclusivity. For example, when the debtor's insiders had an economic interest in the buyer and refused to demonstrate the debtor's technology to a competing buyer, the court sua sponte appointed a trustee.

A case study involving termination of plan exclusivity, appointment of a trustee and competing offers arose in the Chapter 11 reorganization of Cajun Electric Power Co-op, Inc. A Chapter 11 trustee was appointed after members of the debtor expressed an interest in buying some of its assets by themselves or in cooperation with other buyers, and the cooperative did not collect money owed by the members to it, as well as for other reasons. After he was appointed, the Chapter 11 trustee conducted an auction that involved buyers submitting competing plans of reorganization, a process that the appeals court described as "remarkably fruitful." The case illustrates the benefits to a buyer of affiliations with committees, both official and unofficial. The official committee supported one bidder's plan and the unofficial committee of the members in the debtor electric cooperative supported another plan.