

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/20/2013

| | | |
|---|---|---|
| IN RE: | § | Case No. 12-36187 |
| ATP OIL & GAS CORPORATION, | § | Chapter 11 |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION

On June 13, 2013, the Court approved ATP Oil and Gas Corporation's proposed termination of its nongovernmental obligations related to the Gomez Properties. The Court approved the abandonment of the Gomez Properties, the rejection of related executory leases and contracts, as well as the breach of related nonexecutory contracts. This Memorandum Opinion provides the basis for the ruling.

### Background

ATP's primary business is the ownership, development and operation of oil and gas properties, most of which are in the Gulf of Mexico. ATP filed a chapter 11 bankruptcy petition on August 27, 2012.

The Gomez Properties are among the many properties ATP owns or in which it has an interest. The Gomez Properties consist of a floating offshore platform along with a network of wells and gathering facilities. Prior to filing bankruptcy, ATP entered into a series of sales or financing arrangements[1] in which ATP lost its right to the bulk of the cash proceeds from hydrocarbon production at the Gomez Properties.

It is undisputed that even at times when hydrocarbons are being produced, ATP loses millions of dollars each month from operating the Gomez Properties (as it is not entitled to retain all of the proceeds of the hydrocarbon production).

The Gomez Properties lie on a Federal offshore lease. As operator, ATP has an obligation to the United States to plug and abandon the Gomez Properties via a decommissioning process mandated by federal regulations. The process's total cost may exceed $100,000,000.00.

During this bankruptcy case, the United States issued an order requiring ATP to terminate hydrocarbon production at the Gomez Properties. ATP complied. Expenses continue to accumulate enough though hydrocarbon production has ceased. The floating platform must be manned. The wells and gathering facilities must be maintained and monitored. ATP presently receives no income from, but incurs substantial expenses on, the Gomez Properties.

---

[1] The true nature of these transactions is the subject of multiple adversary proceedings.

On May 22, 2013, ATP filed a motion seeking to abandon the Gomez Properties and to reject the related executory contracts and leases.

Multiple parties objected. With one exception, all objections were resolved by agreement.

### The Remaining Objection

Anadarko E & P Onshore LLC is a predecessor-in-interest to ATP with respect to a portion of the Gomez Properties. As a predecessor-in-interest, Anadarko has potential liability for all or a portion of the decommissioning costs. ATP's abandonment of the property prior to decommissioning may force Anadarko to absorb all or a portion of the more than $100,000,000 cost.

Anadarko's objection focuses on the Supreme Court's decision in *Midlantic Nat'l. Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494 (1986). In the course of the evidentiary hearing on its objection, Anadarko presented evidence that abandonment of the Gomez Properties will pose a serious, imminent threat both to navigation and to the environment. Anadarko argues that *Midlantic* prevents the Court from allowing ATP to abandon the Gomez Properties, an act which Anadarko believes would be in derogation of public health and safety.

In *Midlantic,* the chapter 7 trustee of the Estate of Quanta Resources Corporation sought to abandon contaminated properties located in New Jersey and in New York. The New Jersey Department of Environmental Protection and the City and State of New York challenged the proposed abandonments because state laws and regulations prohibited the abandonment of the contaminated properties before they were remediated. The Supreme Court held that the property could not be abandoned prior to its decontamination, as abandonment in a contaminated state would be in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards.[2]

Justice Powell framed the question in the opening paragraph of the opinion:

> These petitions for certiorari, arising out of the same bankruptcy proceeding, present the question of whether § 554(a) of the Bankruptcy Code, 11 U.S.C. § 544(a), authorize a trustee in bankruptcy to abandon property in contravention of state laws or regulations that are reasonably designed to protect the public's health or safety.

*Midlantic Nat'l. Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 496 (1986). Anadarko would have *Midlantic* expanded well beyond its facts and law. While the Supreme Court held that the properties in *Midlantic* could not be abandoned in derogation of

---

[2] The Supreme Court did not hold that this prohibition was absolute. A bankruptcy court has some discretion if precluding abandonment would "be so onerous as to interfere with the bankruptcy adjudication itself." *Midlantic Nat'l. Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 505 (1986).

New York or New Jersey laws reasonably designed to protect the public's health or safety, it did not hold that property posing a risk to public health and safety may never be abandoned. It certainly did not hold that such property may not be abandoned where abandonment would be consistent with (and perhaps in furtherance of) an environmental regulatory scheme.

In *Midlantic,* the bankruptcy court had erroneously allowed for an abandonment that was in derogation of state and local law "without formulating conditions that will adequately protect the public's health and safety." *Midlantic Nat'l. Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 507 (1986).

At the hearing, the Court pressed Anadarko's counsel to explain how to adequately protect the public's health and safety consistent with *Midlantic*. Anadarko argued that the Court should require ATP to retain the Gomez Properties until ATP arrived at a solution. Anadarko acknowledged that there was no available cash to pay for the decommissioning costs, but argued that creating a "stalemate" in the case would force ATP's secured lenders to fund a cleanup.

Unlike the regulators in *Midlantic*, the United States has agreed to the relief requested by ATP. The United States will come into possession of the Gomez Properties upon termination of the underlying lease. To ensure public health and safety, the United States can commence decommissioning and seek reimbursement. Under its agreement with ATP, the United States will retain an administrative claim for the decommissioning costs. As it is unlikely the estate will be capable of paying such a large administrative claim, presumably the United States will attempt to protect taxpayers by pursuing ATP's predecessors-in-interest (like Anadarko) for some or all of the decommissioning costs.

This case presents two starkly contrasting choices for dealing with the Gomez Properties, which the evidence shows pose a risk to public health and safety:

- Allow a "stalemate" to occur by requiring that ATP retain the Gomez Properties. Pending the resolution of the stalemate, public health and safety will be at risk because ATP does not have the funds to maintain its platform or to decommission its wells and gathering facilities.

- Allow abandonment of the Gomez Properties, thereby allowing the United States to undertake the decommissioning on a temporary or permanent basis, and seek reimbursement or performance from other responsible parties and from ATP.

ATP and the United States agree that the second course should be pursued. The principle underlying *Midlantic* is that a bankruptcy court should not allow abandonment where it would be in derogation of laws reasonably designed to protect the public's health and safety. The Court believes that it would potentially *violate Midlantic* by requiring ATP to retain the Gomez Properties when the United States has chosen an alternate course of action to protect the public health and safety.

The Court is not unsympathetic to Anadarko. It may be forced to bear a substantial cost as a result of ATP's financial woes. Nevertheless, like many things in a bankruptcy case, the cost that Anadarko may bear is a reflection of the credit risk it took. Anadarko sold a portion of the Gomez Properties to ATP, and required ATP to bear the financial burden of plugging and abandonment in accordance with applicable federal law. This unfortunate position is no different from that of any other creditor that relies on the promise of performance from an eventually failed entity.

Anadarko is not without some potential help from the law. The Court has previously held that a party paying decommissioning costs may be subrogated to the economic rights of the United States. *In re Tri-Union Development Corp.,* 314 B.R. 611 (Bankr. S.D. Tex. 2004). As to whether Anadarko can prevail on such a claim is well beyond the purview of the present dispute. However, if it is subrogated to the economic rights of the United States, Anadarko may be entitled to enforce an administrative claim for the costs of the cleanup.

## Conclusion

By separate order, the Court will approve ATP's motion to terminate its continued obligations to nongovernmental entities regarding the Gomez Properties. The consequences of that termination will be the subject of future hearings.

Anadarko's *Midlantic* objection is overruled.

SIGNED **June 19, 2013.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE