## TERMS AND CONDITIONS OF SALE

**1. CONTRACT ACCEPTANCE:**
Any written or oral purchase order received from Buyer by Seller shall be construed as a written acceptance of Seller's offer to sell and shall be filled in accordance with the terms and conditions of sale set forth herein. SELLER'S ACCEPTANCE OF THIS ORDER IS EXPRESSLY CONDITIONED ON BUYER'S ASSENT TO THE TERMS CONTAINED HEREIN. The terms and conditions of Seller's proposal (if any) and acknowledgement shall prevail over any conflicting or different terms in Buyer's order unless Buyer notifies Seller in writing of its objections thereto within fifteen (15) days from receipt of Seller's acknowledgement. Buyer's standard terms of purchase will not be considered a counteroffer to Seller's terms and conditions of sale. The failure of Seller to object to any provision in conflict herewith whether contained on Buyer's purchase order or otherwise shall not be construed as a waiver of the provisions hereof nor as an acceptance thereof.

**2. QUOTATIONS AND PRICES:**
Any product, service capability or manufacturing capability which may be available at the time a quotation is made is subject to prior sale. Prices quoted are subject to change without notice. The price in effect at the time of shipment including any escalation formula will apply, unless a valid quotation or written agreement to the contrary exists between Buyer and Seller. All prices shown are in U.S. dollars and are F.O.B. Seller's shipping point. Seller reserves the right to place a service charge on past due accounts at the highest rate permitted by law. Any documentation pertaining to traceability requirements for raw materials or products or documentation required for any routine or special processes must be identified by the Buyer at the time of quotation (if any) or at the time of order placement.

**3. TAXES:**
Any tax or other charge imposed by law on the sale or production of goods or the performance of services shall be paid by the Buyer, unless the law specifically provides that such payment must be made by Seller, in which case Buyer shall reimburse Seller for such payment as part of the purchase price. Custom duties, consular fees, insurance charges and other comparable charges will be borne by Buyer.

**4. SHIPPING SCHEDULE AND DELIVERY:**
Shipment schedules are given as accurately as conditions permit and every effort will be made to make shipments as scheduled. Seller will not be responsible for deviations in meeting shipping schedules nor for any losses or damages to Buyer (or any third party) occasioned by deviations in the shipping schedule, whether due to Acts of God, orders bearing priority ratings established pursuant to law, differences with workmen, local labor shortages, fire, flood, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment or any other causes beyond Seller's reasonable control, whether of similar or dissimilar nature than those enumerated. Seller shall have additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider to be equitable. Seller reserves the right to furnish commercially equivalent or better substitutes for materials or to subcontract the Buyer's order or portions thereof as Seller deems necessary. In no event shall Seller be liable for any consequential damages resulting from failure or delay in shipment. If Buyer requires drawings, procedures, standards or similar material for approval, shipping schedules will be calculated from the time such approvals are received by Seller, since shipping schedules are based on Seller having all required information and a firm order from Buyer which is enterable into production. Any hold points, witness points or the need for inspection by Buyer's representatives must be identified by Buyer at the time of quotation (if any) and/or order placement in order that the effect on the prices or shipping schedules (if any) can be taken into account. Additional inspection or testing required by Buyer which affects normal production sequence will be considered as extending the shipping dates accordingly.

**5. TERMS OF PAYMENT:**
Terms of payment are 30 days from date of invoice unless otherwise stated in the quotation or Seller's order acknowledgment.

**6. CANCELLATIONS AND RETURNS:**
Purchase orders once placed by Buyer and accepted by Seller can be canceled only with Seller's written consent and upon terms which will save Seller from loss. No products may be returned for credit or adjustment without written permission from Seller's office authorized to issue such permission.

**7. WARRANTIES:**
All products of Seller's manufacture except for its Orbit product are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires while its Orbit product is warranted for thirty six (36) months from date of shipment, when all such products are used in the service and within the pressure range for which they were

CAM/T&C/USt©

1

EXHIBIT A - Part 2

manufactured. In the case of products or parts not wholly of Seller's manufacture, Seller's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Seller. Any repair work performed by Seller is warranted for one year from completion of such repairs and applies only to work performed. If, within these specified periods, Seller receives notice from Buyer of any alleged defect in or nonconformance of any product or repair and if in the Seller's sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Buyer shall, at Seller's request, return the part or product F.O.B. to Seller's designated plant or service location. Seller has no liability for removal or reinstallation of products or equipment. Seller, at its option and expense, shall repair or replace the defective part or product, or repay to Buyer the full price paid by Buyer for such defective part, repair or product. Any repayment of purchase price shall be without interest. Seller's warranty liability, including defects caused by Seller's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs, expenses of Buyer resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind. Seller will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Seller, failures due to lack of compliance with recommended maintenance procedures or products which have been repaired or altered in such a way (in Seller's judgment) as to affect the products adversely. THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY.

**8.ENGINEERING AND SERVICE**:
Upon request, Seller will provide engineering and/or technical information regarding its products and their uses and, if feasible, will provide personnel to assist Buyer in effecting field installations and/or field service. Any such information, service or assistance so provided, whether with or without charge, shall be advisory only

**9. LABOR STANDARDS**:
Seller hereby certifies that these products were produced in accordance with all applicable requirements of Section 6, 7 and 12 of the Fair Labor Standards Act as amended and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

**10. INSPECTION**:
Unless otherwise agreed in writing, final inspection and acceptance of products must be made at Seller's plant or other shipping or receiving point designated by Seller and shall be conclusive except as regards latent defects. Buyer's representatives may inspect at the Seller's plant or shipping point during working hours prior to shipment in such manner as will not interfere with operations.

**11. DELIVERY AND ACCEPTANCE**:
Delivery shall be in accordance with the requirements in the Purchase Contract, provided, in the event Buyer is unable to accept delivery upon completion of the manufacture of the Goods in accordance with such requirements, Buyer agrees that (i) title and risk of ownership shall pass to Buyer on date of Seller's invoice, and (ii) Buyer will make payments within thirty days after date of such invoice. Seller shall retain custodial risk of loss until delivery is made in accordance with such requirements.

**12. EXPORT COMPLIANCE**:
The Buyer shall provide the Seller with relevant end-use, end-user and country of end-use information with respect to the goods, services, software or technology to be supplied hereunder (collectively, "Items"). Based on and in reliance on such information, the Seller will supply such Items in compliance with applicable trade and customs laws including that of the United States of America. The Seller cautions and the Buyer acknowledges that any change in end-use, end-user or country of end-use (including a shipment between countries other than the U.S.) may be restricted or prohibited by applicable trade and customs law, whether it be of the U.S. or other country. The Parties shall comply with all trade and customs laws (including U.S. Export Controls) except for any such laws which conflict with or are otherwise penalized under the laws of the U.S., which in the event of such conflict, Seller shall notify Buyer. The Buyer agrees in particular that it shall not use and shall not permit any third party to use such items in connection with the design, production, use, or storage of chemical, biological or nuclear weapons or missiles of any kind.

**13. TRANSPORTATION CHARGES, ALLOWANCES, CLAIMS:**
All prices are F.O.B. Seller's plant or other designated shipping point. No freight is allowed unless stated in Seller's quotation (if any) or in a written contract which may exist between Seller and Buyer at the time of shipment. If Seller's quotation or a written contract states that all or a portion of freight is allowed, all prices are F.O.B. Seller's plant or other designated shipping point, with most economical surface transportation allowed. If the quoted or contractual price includes transportation, Seller reserves the right to designate the common carrier and to ship in the manner it deems most economical. Added costs due to special routing requested by the Buyer are chargeable to the Buyer. Under no circumstances is any freight allowance which is absorbed by Seller to be deducted from the selling price. If the quoted price or contract includes transportation, no deduction will be made in lieu thereof whether Buyer accepts shipment at plant, warehouse, freight station, or otherwise supplies its own transportation. When sales are made from the Seller's warehouse, Seller reserves the right to charge either actual or pro-rated freight from Seller's principle point of manufacture to Seller's warehouse. Buyer assumes risk of loss upon delivery to the carrier, regardless of who pays shipping costs. Seller endeavors to pack or prepare all shipments so that they will not break, rust or deteriorate in transit, but does not guarantee against such damage. Unless requested in writing by the Buyer, no shipments are insured by Seller against damage or loss in transit. Seller will place insurance as nearly as possible in accordance with Buyer's written instructions but in such case Seller acts only as agent between the insurance company and the Buyer and assumes no liability whatsoever. Any claims for shipping loss, breakage or damage (obvious or concealed) are Buyer's responsibility and should be made to the carrier. All claims regarding shortages must be made within thirty (30) days from receipt of shipment and must be accompanied by the packing list(s) covering the shipment.

**14. INDEMNIFICATION AND LIMITATION OF LIABILITY:**
**A. INDEMNIFICATION:**
"Buyer Group" means: Buyer, its parent (if any), subsidiaries, affiliates, co-owners, co-venturers, partners and any entity with whom Buyer has an economic interest with respect to the Work including Buyer's customer and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Seller Group),
"Seller Group" means: Seller, its parent (if any), subsidiaries, affiliates, co-owners and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Buyer Group),
"Negligence" means: sole, joint or concurrent, active, passive or gross negligence, willful misconduct, strict liability, product liability or any other legal cause of action.
"Claims" means any and all claims, demands, losses, damages and causes of action of whatever kind or nature. Unless otherwise specified, Claims is to be read in its broadest sense to include all claims by a first party (which includes any member of either Buyer Group or Seller Group) or by a third party (which includes any person or entity not included in Buyer Group or Seller Group.
(1) Seller shall release, defend, save, indemnify (collectively "Indemnify") and hold Buyer Group harmless from and against all Claims, for loss of or damage to the property of the members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.
(2) Seller shall Indemnify and hold Buyer Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.
(3) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for loss of or damage to the property (including the Work) of the members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.
(4) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.
(5) Except as provided in Section 14A(6) below, Buyer (on its own behalf and on behalf of Buyer Group) and Seller (on its own behalf and on behalf of Seller Group) shall Indemnify and hold each other harmless from and against any and all Claims asserted against them by or on behalf of any third party for the death(s) of or personal injury (ies) to such a third party, as well as loss (es) of or damage(s) to the property of such a party. It is agreed by Buyer and Seller that their respective duty of indemnity to each other with respect to Claims asserted against them by a third party pursuant to this Article 14 (A) (5) shall be limited to their respective degree of Negligence.
(6) Notwithstanding any other provision contained in this Agreement, Buyer shall Indemnify and hold the members of Seller Group harmless from and against all Claims (including clean-up costs and loss (es) of oil, gas or

hydrocarbons) arising from (i) pollution, contamination, dumping or spilling of any substance, (ii) blowout, (iii) fire, or (iv) loss of, or damage to, wells, formations or mineral rights, even if arising out of or attributable to the Negligence of the members of the Seller Group.

(7)   Notwithstanding any other provision contained in this Agreement, Buyer shall be responsible for and shall reimburse and Indemnify Seller in respect of any loss of or damage (excluding normal wear and tear) to Seller Group property, materials or equipment (tools) or components which (i) is damaged or lost whilst in-hole below the rotary table or (ii) is leased or borrowed by Buyer.

**B. INDEMNITY FOR CONSEQUENTIAL DAMAGES:**
UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES (collectively "CONSEQUENTIAL"), AS DEFINED BY THE LAWS GOVERNING THIS PURCHASE ORDER, NOR FOR ANY LOSS OF ANTICIPATED PROFITS, LOSS OF BUSINESS OPPORTUNITY, LOSS OF USE OF EQUIPMENT OR OF ANY INSTALLATION, SYSTEM OR FACILITY INTO WHICH SELLER'S EQUIPMENT MAY BE LOCATED OR AT WHICH MEMBERS OF THE SELLER GROUP MAY BE PERFORMING WORK AND BUYER AGREES TO "INDEMNIFY" AND HOLD SELLER GROUP HARMLESS FROM AND AGAINST ANY "CLAIMS" FOR SUCH DAMAGES EVEN IF ARISING OUT OF OR ATTRIBUTABLE TO THE "NEGLIGENCE" OF THE MEMBERS OF THE SELLER GROUP.

**C. LIMITATION OF LIABILITY:**
EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND/OR LIABILITIES HEREBY ASSUMED BY THE PARTIES SHALL BE: (i) SUPPORTED BY INSURANCE; (ii) WITHOUT LIMIT; (iii) AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, BUT NOT LIMITED TO, PREEXISTING CONDITIONS (WHETHER SUCH CONDITIONS BE PATENT OR LATENT); THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS (WHETHER OR NOT PREEXISTING); THE UNAIRWORTHINESS OF ANY AIRCRAFT; BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED); BREACH OF CONTRACT; BREACH OF DUTY (STATUTORY, CONTRACTUAL, COMMON LAW OR OTHERWISE); STRICT LIABILITY; CONDITION OF RUIN OR DEFECTIVE PREMISES, EQUIPMENT, FACILITIES, OR APPURTENANCES OF ANY PARTY UNDER ANY CODE, LAW OR (WHETHER OR NOT SAID CONDITION IS PREEXISTING AND/OR LATENT, PATENT OR OTHERWISE); THE LOADING OR UNLOADING OF PERSONS OR CARGO; TORT; OR THE NEGLIGENCE OR FAULT OF ANY PARTY (AS DEFINED AT THE BEGINNING OF THIS ARTICLE 14; OR ANY OTHER THEORY OF LEGAL LIABILITY. Seller's total responsibility for any claims, damages, losses or liability arising out of or related to its performance of this contract or the products or services covered hereunder shall not exceed 20% of the purchase price under the applicable purchase order.

**D. BUYER's CUSTOMER AND SUPPLIER INDEMNITIES:**
Notwithstanding anything in these terms or the order to the contrary, in the event that Buyer is entitled to indemnity under any contract with its customers or suppliers with respect to pollution and consequential losses described in Section 14A(6) and 14B above in connection with work performed under this Agreement, Buyer will provide Seller Group with the benefit of such indemnity to the fullest extent possible under such contracts with Buyer's customers and suppliers.

**E. CARE OF RENTAL EQUIPMENT:**
(1)       The Buyer, at its sole expense, shall be responsible for ensuring that the rental equipment is maintained in good working order and operating condition at all times the Buyer maintains possession of the rental equipment. The rental equipment shall be maintained in good working order and operating condition, at Buyer's expense, and shall be returned in the same condition as when received, ordinary wear and tear alone excepted.

(2)       Seller shall conduct an inspection ("Inspection and Disposition") of the rental equipment to determine if the rental equipment is in good working order and operating condition. If Seller after the Inspection and Disposition finds that the rental equipment is not in good working order and operating condition and is in need of refurbishment, remanufacture, and/or replacement, Seller shall prepare and submit a quotation and invoice, as necessary, prior to any repair work taking place to Buyer detailing the costs and expenses Buyer is obligated to pay to maintain the rental equipment in good working order and operating condition.

(3)       The Buyer shall be liable for all costs and expenses for the refurbishment of the rental equipment to its original state and condition, save and except for ordinary wear and tear. Without prejudice to the generality of the foregoing and for the avoidance of doubt, damage and deterioration in the rental equipment requiring welding machining or coating operations are not considered as normal wear and tear. Any costs and expenses for the refurbishment of the rental equipment shall be invoiced to Buyer upon the return and Inspection and Disposition of

the rental equipment.  All costs for refurbishment and labor charges shall be specified in the pricing schedule or such other similar document agreed to by the parties.

(4)      In respect of the rental equipment which requires welding machining or coating operations or other remanufacturing related actions, Seller will repair all damaged equipment, at the cost and expense of the Buyer. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place, Seller shall prepare and submit a quotation and invoice detailing the expected costs to repair the rental equipment to its original state and condition.

(5)      In respect of rental equipment which has been lost or damaged beyond repair, the Buyer shall be liable and shall pay to Seller, Seller's most recent replacement price item, as may be prescribed by Seller from time to time, with such replacement price taking into account the age, usage and depreciated value of the lost or damaged item as determined by Seller's standard accounting procedures.   Any such replacement price prescribed by Seller shall take into account the age, usage and actual value of the lost or damaged item. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place Seller will submit a quotation for the replacement price and an invoice to Buyer.

## 15. MODIFICATION, RESCISSION & WAIVER:

The terms herein may not be modified or rescinded nor any of its provisions waived unless such modification, rescission or waiver is in writing and signed by an authorized employee of Seller at its office in Houston, Texas. Failure of Seller to insist in any one or more instances upon the performance of any of the terms and conditions of the contract or the failure of Seller to exercise any of its rights hereunder shall not be construed as a waiver or relinquishment of any such term, condition, or right hereunder and shall not affect Seller's right to insist upon strict performance and compliance with regard to any unexecuted portions of this contract or future performance of these terms and conditions.

All orders must be accepted by an authorized employee of Seller.  The rights and duties of the parties and construction and effect of all provisions hereof shall be governed by and construed according to the internal laws of the State of Texas.  Any disputes which arise under this agreement shall be venued in the District Court of Harris County, Texas or in the Southern District of Texas.

# INVOICE


**CAMERON**

| | |
|---|---|
| Invoice No | : 913322906 |
| Invoice Date | : APR 11 2013 |
| Page | : 1  of  2 |

**Remit To:**
OneSubsea LLC
P.O. Box 732162
Dallas, TX 75373-2162

**Inquiries To :**
OneSubsea LL C
4646 W Sam Houston Parkway N
Houston, Texas 77041
Phone 713-93 9-2211

**Wire Transfer To:**
JPMorgan Chase Bank
New York, NY  10004
Account #: 192987706
ABA #: 021000021
Swift #: CHASUS33
**ACH Remit To:**
JPMorgan Chase Bank
Chicago, IL
Account #: 192987706
ABA #: 071000013

| | |
|---|---|
| Payment Terms | : Cash in Advance |
| Terms & Conditions | : As Attached/Included |
| Freight Terms | : FOB Shp Pt-Frt Coll-No.Pro Frt |
| Ship From | : BAYOU VISTA LA |
| Shipped Date | : MAR 18 2013 |

| Invoice to: 21011440 | Ship To: 43217767 |
|---|---|
| BLUEWATER INDUSTRIES LP | BLUEWATER INDUSTRIES |
| ATTN:  ACCOUNTS PAYABLE | GREEN CANYON 300 OCSG 22939 |
| 5300 MEMORIAL STE 550 | 13863 INDUSTRIAL RD |
| HOUSTON TX  77007 | HOUSTON TX  77213 |

Inside Sales Contact : Gwen Luu / 985-395-1692     Sales Order : 2965444     Delivery Note : 84737744

| | |
|---|---|
| Customer Reference | : 1111-031 REV1 |
| Placed By | : JIMMY JONES |
| Functional Location | : GM2-2041-0001-0002 |
| Description | : GC 300 OCSG 22939 (21011440) |
| Project Reference | : (DOC) FSO 390147 & T/C |

PO#: 1111-031 REV1
WELL LOCATION: GC 300
OCSG#: 22939
RIG NAME: NORMAND COMMANDER
JOB REQUESTED: JIMMY JONES
SERVICE BEGIN DATE: 03/22/13
SERVICE END DATE:  04/01/13
SERVICE HAND: ALFRED CLAYTON

| Item | Material Number. Description | Qty | Unit Net Price USD | Extended Price USD |
|---|---|---|---|---|
| 10 | SUBSEAOFFSHORE OFFSITE DAY RATE SUBSEA LABOR CAMERON SERVICEMAN CALLED OUT TO LOCATION TO PERFORM WORK AS REQUESTED. | 11.0  DY | 2,581.00 | 28,391.00 |

CAM—2283-1

 **CAMERON**

**Invoice No** : 913322906
**Page**       : 2  of  2

| Item | Material Number.<br>Description | Qty | Unit Net Price<br>USD | Extended Price<br>USD |
|------|-------------------------------|-----|----------------------|----------------------|
| | NOTE: PLEASE REFER TO SERVICE TICKET ATTACHED FOR COMPLETE SERVICE<br>REPORT.<br>ALFRED CLAYTON PERFORMED THIS JOB. | | | |
| 20 | EXPENSE-RT<br>MEALS (EXPENSE COST + 20%) | 1   EA | 23.02 | 23.02 |

**Price Summary :**

**Total Price :**                          **28,414.02 USD**

**Total Invoice Value :**                  **28,414.02 USD**

Cameron is committed to complying with U.S. Export Administration Rules and Regulations. If this Order is being exported to you, or may be re-exported to an ultimate consignee or end-user abroad, the following applies: These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is prohibited.

# CAMERON

**FIELD SERVICE ORDER**
CAM-2303-E

FIELD SERVICE ORDER NO. **390147**

| LAND | OTHER | DATE PREPARED 7-31-13 | PAGE 1 | OF 1 |

| SALES ORDER NO. | PURCHASE ORDER NO./CONTRACT NO. PO-111-071 Rev | | P.O. DATE | COUNTY | STATE La |
| ORDERED BY Jimmy Jones | Albert Moso | RIG NAME Normand Commander | | FED. WAT. yes | FREIGHT | VIA C/V | LOCATION So 26 |
| WELL REFERENCE/OCS. NO. Well #2 | GC-300 | SOLD TO OSG-15521 | BILL OF LADING | CARRIER # 8342 | | 43217747 |
| BILL TO Blue Water | | | | SHIP TO Channelview TX | |
| ATTN: ACCTS PAYABLE | 5300 MEMORIAL STG-550 | | | 3 Pitzer | Shipyard |
| WELLHEAD | SIZE | MAKE Houston TX. | S/N | W.P. | PN |
| VALVE | SIZES | MODEL | TRIM | S/N | W.P. | PN |
| HANGER | SIZE | TYPE | CSG/TBG SIZE | WEIGHT | GRADE | THREAD |

**WORK PERFORMED**

Boarded the Normand Commander in Carlgoss
Transit To location installed Two Jumper PTJ-W2PT
Transit back To Carlguss

| ITEM | QTY. | DESCRIPTION | PART NO. | UNIT PRICE | DIS-COUNT | TOTAL |
|------|------|-------------|----------|------------|-----------|-------|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

F.O.B. MANUFACTURING PLANT

TOTAL PARTS AND MATERIALS

| LABOR | FROM: HR & DATE 3-22-13 | TO: HR & DATE 4-1-13 | REG. HOURS | O.T. HOURS 11 Days | RATE @ 2581 | .00 | O.T. RATE | $ 28391.00 |
| LODGING | | FREIGHT OR MISCELLANEOUS | MEALS 23.02 | MILEAGE | @ | PER MILE | 23.02 |

| PERFORMANCE REVIEW | EXCEEDED EXPECTATIONS | MET EXPECTATIONS | NEEDS IMPROVEMENT | DID NOT MEET EXPECTATIONS | EST. CHARGES |
|---|---|---|---|---|---|
| Serviceman Arrived at Location On Time | ☐ | ☐ | ☐ | ☐ | TOTAL CHARGES 28414.02 |
| Serviceman's Attitude | ☐ | ☐ | ☐ | ☐ | JOB TYPE |
| Serviceman's Competency | ☐ | ☐ | ☐ | ☐ | Drilling ☐ |
| Service Facility Office Support | ☐ | ☐ | ☐ | ☐ | Section A B C (circle one) |
| Did Serviceman Properly Review CAM issued JHA | ☐ | ☐ | ☐ | ☐ | System _____ (fill in MSS TSW SS etc.) |
| OTHER (PLEASE LIST) | ☐ | ☐ | ☐ | ☐ | Hanger IC S Man. (circle one) |

| CUSTOMER STAMP | RIG DELAY RESULTING FROM CAMERON SERVICE OR EQUIPMENT ☐ YES ☐ NO | Completion/Decompletion ☐ |
| | IF YES PLEASE GIVE YOUR COMMENTS: | Frac tree ☐ |
| | | Prod. Tree ☐ |
| | | Lubricator ☐ |
| | | Production ☐ |
| | | Greasing ☐ |
| | | Valve / Act. ☐ |
| | | SD Lubricator ☐ |
| | | OTHER |
| | CAMERON REP. "Print" Albert Clayton "Signature" | DATE 3-31-13 |
| | CUSTOMER REP. "Print" Albert Moso Jr "Signature" | DATE 4-1-13 |

| Reviewed by District Mgr. _____ | FPR Submitted ☐ YES ☐ NO |
| Signature _____ | FPR# _____ |
| Date _____ | Date _____ |



315 S. Cities Service Hwy
Sulphur, LA 70663
(337) 625-6676

53 Amanda D
-------------------------------------
Chk 1318        DICKEY        Gst  1
               Mar22'13 01:11PM
-------------------------------------
Dine In
1 BOX COMBO                    6.98
  REGULAR
  FOUNTAIN DRINK
XX XXXXXXXXXX7026
  MasterCard                   7.63

Subtotal                       6.98
TAX                            0.65
Payment                        7.63

* *  Customer's Copy  * *

---

Order

4103

**Popeyes  #  10368**
400 Sam Houston Jones Parkway
Moss Bluff, La. 70611
Phone: (337)855-0642
General Manager Charles Simpson
Date:        Apr01'13 03:45PM
Card Type:   Visa/MC/Disc
Acct #:      XXXXXXXXXXXXX7026
Card Entry: SWIPED
Trans Type: PURCHASE
Auth Code:   092385
Check:       4103
Server:      40 Cashier

Subtotal:          11.58

Signature
I agree to pay above total
according to my card issuer
agreement.

# Expense Authorization Sheet

CAMERON

| Expense amount | Date | Expense explanation & attendees |
|---|---|---|
| $ 7.63 | 3-22-13 | Self meal   Alfred Clayton |
| $ 11.56 | 4-1-13 | Self meal   Alfred Clayton |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| 19.19 | total | Expense   cost + 232.  23.02 |
| Employee Name: | | P.O  390/40 |

## TERMS AND CONDITIONS OF SALE

**1. CONTRACT ACCEPTANCE:**
Any written or oral purchase order received from Buyer by Seller shall be construed as a written acceptance of Seller's offer to sell and shall be filled in accordance with the terms and conditions of sale set forth herein. SELLER'S ACCEPTANCE OF THIS ORDER IS EXPRESSLY CONDITIONED ON BUYER'S ASSENT TO THE TERMS CONTAINED HEREIN. The terms and conditions of Seller's proposal (if any) and acknowledgement shall prevail over any conflicting or different terms in Buyer's order unless Buyer notifies Seller in writing of its objections thereto within fifteen (15) days from receipt of Seller's acknowledgement. Buyer's standard terms of purchase will not be considered a counteroffer to Seller's terms and conditions of sale. The failure of Seller to object to any provision in conflict herewith whether contained on Buyer's purchase order or otherwise shall not be construed as a waiver of the provisions hereof nor as an acceptance thereof.

**2. QUOTATIONS AND PRICES:**
Any product, service capability or manufacturing capability which may be available at the time a quotation is made is subject to prior sale. Prices quoted are subject to change without notice. The price in effect at the time of shipment including any escalation formula will apply, unless a valid quotation or written agreement to the contrary exists between Buyer and Seller. All prices shown are in U.S. dollars and are F.O.B. Seller's shipping point. Seller reserves the right to place a service charge on past due accounts at the highest rate permitted by law. Any documentation pertaining to traceability requirements for raw materials or products or documentation required for any routine or special processes must be identified by the Buyer at the time of quotation (if any) or at the time of order placement.

**3. TAXES:**
Any tax or other charge imposed by law on the sale or production of goods or the performance of services shall be paid by the Buyer, unless the law specifically provides that such payment must be made by Seller, in which case Buyer shall reimburse Seller for such payment as part of the purchase price. Custom duties, consular fees, insurance charges and other comparable charges will be borne by Buyer.

**4. SHIPPING SCHEDULE AND DELIVERY:**
Shipment schedules are given as accurately as conditions permit and every effort will be made to make shipments as scheduled. Seller will not be responsible for deviations in meeting shipping schedules nor for any losses or damages to Buyer (or any third party) occasioned by deviations in the shipping schedule, whether due to Acts of God, orders bearing priority ratings established pursuant to law, differences with workmen, local labor shortages, fire, flood, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment or any other causes beyond Seller's reasonable control, whether of similar or dissimilar nature than those enumerated. Seller shall have additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider to be equitable. Seller reserves the right to furnish commercially equivalent or better substitutes for materials or to subcontract the Buyer's order or portions thereof as Seller deems necessary. In no event shall Seller be liable for any consequential damages resulting from failure or delay in shipment. If Buyer requires drawings, procedures, standards or similar material for approval, shipping schedules will be calculated from the time such approvals are received by Seller, since shipping schedules are based on Seller having all required information and a firm order from Buyer which is enterable into production. Any hold points, witness points or the need for inspection by Buyer's representatives must be identified by Buyer at the time of quotation (if any) and/or at the time of order placement in order that the effect on the prices or shipping schedules (if any) can be taken into account. Additional inspection or testing required by Buyer which affects normal production sequence will be considered as extending the shipping dates accordingly.

**5. TERMS OF PAYMENT:**
Terms of payment are 30 days from date of invoice unless otherwise stated in the quotation or Seller's order acknowledgment.

**6. CANCELLATIONS AND RETURNS:**
Purchase orders once placed by Buyer and accepted by Seller can be canceled only with Seller's written consent and upon terms which will save Seller from loss. No products may be returned for credit or adjustment without written permission from Seller's office authorized to issue such permission.

**7. WARRANTIES:**
All products of Seller's manufacture except for its Orbit product are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires while its Orbit product is warranted for thirty six (36) months from date of shipment, when all such products are used in the service and within the pressure range for which they were

manufactured.  In the case of products or parts not wholly of Seller's manufacture, Seller's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Seller.  Any repair work performed by Seller is warranted for one year from completion of such repairs and applies only to work performed.  If, within these specified periods, Seller receives notice from Buyer of any alleged defect in or nonconformance of any product or repair and if in the Seller's sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Buyer shall, at Seller's request, return the part or product F.O.B. to Seller's designated plant or service location.  Seller has no liability for removal or reinstallation of products or equipment.  Seller, at its option and expense, shall repair or replace the defective part or product, or repay to Buyer the full price paid by Buyer for such defective part, repair or product.  Any repayment of purchase price shall be without interest.  Seller's warranty liability, including defects caused by Seller's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs, expenses of Buyer resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind.  Seller will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Seller, failures due to lack of compliance with recommended maintenance procedures or products which have been repaired or altered in such a way (in Seller's judgment) as to affect the products adversely.  THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY.

**8. ENGINEERING AND SERVICE**:
Upon request, Seller will provide engineering and/or technical information regarding its products and their uses and, if feasible, will provide personnel to assist Buyer in effecting field installations and/or field service.  Any such information, service or assistance so provided, whether with or without charge, shall be advisory only

**9. LABOR STANDARDS**:
Seller hereby certifies that these products were produced in accordance with all applicable requirements of Section 6, 7 and 12 of the Fair Labor Standards Act as amended and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

**10. INSPECTION**:
Unless otherwise agreed in writing, final inspection and acceptance of products must be made at Seller's plant or other shipping or receiving point designated by Seller and shall be conclusive except as regards latent defects.  Buyer's representatives may inspect at the Seller's plant or shipping point during working hours prior to shipment in such manner as will not interfere with operations.

**11. DELIVERY AND ACCEPTANCE**:
Delivery shall be in accordance with the requirements in the Purchase Contract, provided, in the event Buyer is unable to accept delivery upon completion of the manufacture of the Goods in accordance with such requirements, Buyer agrees that (i) title and risk of ownership shall pass to Buyer on date of Seller's invoice, and (ii) Buyer will make payments within thirty days after date of such invoice.  Seller shall retain custodial risk of loss until delivery is made in accordance with such requirements.

**12. EXPORT COMPLIANCE**:
The Buyer shall provide the Seller with relevant end-use, end-user and country of end-use information with respect to the goods, services, software or technology to be supplied hereunder (collectively, "Items").  Based on and in reliance on such information, the Seller will supply such Items in compliance with applicable trade and customs laws including that of the United States of America.  The Seller cautions and the Buyer acknowledges that any change in end-use, end-user or country of end-use (including a shipment between countries other than the U.S.) may be restricted or prohibited by applicable trade and customs law, whether it be of the U.S. or other country.  The Parties shall comply with all trade and customs laws (including U.S. Export Controls) except for any such laws which conflict with or are otherwise penalized under the laws of the U.S., which in the event of such conflict, Seller shall notify Buyer.  The Buyer agrees in particular that it shall not use and shall not permit any third party to use such items in connection with the design, production, use, or storage of chemical, biological or nuclear weapons or missiles of any kind.

CAM/T&C/US/10

2

**13. TRANSPORTATION CHARGES, ALLOWANCES, CLAIMS:**
All prices are F.O.B. Seller's plant or other designated shipping point. No freight is allowed unless stated in Seller's quotation (if any) or in a written contract which may exist between Seller and Buyer at the time of shipment. If Seller's quotation or a written contract states that all or a portion of freight is allowed, all prices are F.O.B. Seller's plant or other designated shipping point, with most economical surface transportation allowed. If the quoted or contractual price includes transportation, Seller reserves the right to designate the common carrier and to ship in the manner it deems most economical. Added costs due to special routing requested by the Buyer are chargeable to the Buyer. Under no circumstances is any freight allowance which is absorbed by Seller to be deducted from the selling price. If the quoted price or contract includes transportation, no deduction will be made in lieu thereof whether Buyer accepts shipment at plant, warehouse, freight station, or otherwise supplies its own transportation. When sales are made from the Seller's warehouse, Seller reserves the right to charge either actual or pro-rated freight from Seller's principle point of manufacture to Seller's warehouse. Buyer assumes risk of loss upon delivery to the carrier, regardless of who pays shipping costs. Seller endeavors to pack or prepare all shipments so that they will not break, rust or deteriorate in transit, but does not guarantee against such damage. Unless requested in writing by the Buyer, no shipments are insured by Seller against damage or loss in transit. Seller will place insurance as nearly as possible in accordance with Buyer's written instructions but in such case Seller acts only as agent between the insurance company and the Buyer and assumes no liability whatsoever. Any claims for shipping loss, breakage or damage (obvious or concealed) are Buyer's responsibility and should be made to the carrier. All claims regarding shortages must be made within thirty (30) days from receipt of shipment and must be accompanied by the packing list(s) covering the shipment.

**14. INDEMNIFICATION AND LIMITATION OF LIABILITY:**
**A. INDEMNIFICATION:**
"Buyer Group" means: Buyer, its parent (if any), subsidiaries, affiliates, co-owners, co-venturers, partners and any entity with whom Buyer has an economic interest with respect to the Work including Buyer's customer and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Seller Group),

"Seller Group" means: Seller, its parent (if any), subsidiaries, affiliates, co-owners and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Buyer Group),

"Negligence" means: sole, joint or concurrent, active, passive or gross negligence, willful misconduct, strict liability, product liability or any other legal cause of action.

"Claims" means any and all claims, demands, losses, damages and causes of action of whatever kind or nature. Unless otherwise specified, Claims is to be read in its broadest sense to include all claims by a first party (which includes any member of either Buyer Group or Seller Group) or by a third party (which includes any person or entity not included in Buyer Group or Seller Group.

(1)   Seller shall release, defend, save, indemnify (collectively "Indemnify") and hold Buyer Group harmless from and against all Claims, for loss of or damage to the property of the members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(2)   Seller shall Indemnify and hold Buyer Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(3)   Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for loss of or damage to the property (including the Work) of the members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(4)   Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(5)   Except as provided in Section 14A(6) below, Buyer (on its own behalf and on behalf of Buyer Group) and Seller (on its own behalf and on behalf of Seller Group) shall Indemnify and hold each other harmless from and against any and all Claims asserted against them by or on behalf of any third party for the death(s) of or personal injury (ies) to such a third party, as well as loss (es) of or damage(s) to the property of such a third party. It is agreed by Buyer and Seller that their respective duty of indemnity to each other with respect to Claims asserted against them by a third party pursuant to this Article 14 (A) (5) shall be limited to their respective degree of Negligence.

(6)   Notwithstanding any other provision contained in this Agreement, Buyer shall Indemnify and hold the members of Seller Group harmless from and against all Claims (including clean-up costs and loss (es) of oil, gas or

hydrocarbons) arising from (i) pollution, contamination, dumping or spilling of any substance, (ii) blowout, (iii) fire, or (iv) loss of, or damage to, wells, formations or mineral rights, even if arising out of or attributable to the Negligence of the members of the Seller Group.

(7) Notwithstanding any other provision contained in this Agreement, Buyer shall be responsible for and shall reimburse and Indemnify Seller in respect of any loss of or damage (excluding normal wear and tear) to Seller Group property, materials or equipment (tools) or components which (i) is damaged or lost whilst in-hole below the rotary table or (ii) is leased or borrowed by Buyer.

**B. INDEMNITY FOR CONSEQUENTIAL DAMAGES:**
UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES (collectively "CONSEQUENTIAL"), AS DEFINED BY THE LAWS GOVERNING THIS PURCHASE ORDER, NOR FOR ANY LOSS OF ANTICIPATED PROFITS, LOSS OF BUSINESS OPPORTUNITY, LOSS OF USE OF EQUIPMENT OR OF ANY INSTALLATION, SYSTEM OR FACILITY INTO WHICH SELLER'S EQUIPMENT MAY BE LOCATED OR AT WHICH MEMBERS OF THE SELLER GROUP MAY BE PERFORMING WORK AND BUYER AGREES TO "INDEMNIFY" AND HOLD SELLER GROUP HARMLESS FROM AND AGAINST ANY "CLAIMS" FOR SUCH DAMAGES EVEN IF ARISING OUT OF OR ATTRIBUTABLE TO THE "NEGLIGENCE" OF THE MEMBERS OF THE SELLER GROUP.

**C. LIMITATION OF LIABILITY:**
EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND/OR LIABILITIES HEREBY ASSUMED BY THE PARTIES SHALL BE: (i) SUPPORTED BY INSURANCE; (ii) WITHOUT LIMIT; (iii) AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, BUT NOT LIMITED TO, PREEXISTING CONDITIONS (WHETHER SUCH CONDITIONS BE PATENT OR LATENT); THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS (WHETHER OR NOT PREEXISTING); THE UNAIRWORTHINESS OF ANY AIRCRAFT; BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED); BREACH OF CONTRACT; BREACH OF DUTY (STATUTORY, CONTRACTUAL, COMMON LAW OR OTHERWISE); STRICT LIABILITY; CONDITION OF RUIN OR DEFECTIVE PREMISES, EQUIPMENT, FACILITIES, OR APPURTENANCES OF ANY PARTY UNDER ANY CODE, LAW OR (WHETHER OR NOT SAID CONDITION IS PREEXISTING AND/OR LATENT, PATENT OR OTHERWISE); THE LOADING OR UNLOADING OF PERSONS OR CARGO; TORT; OR THE NEGLIGENCE OR FAULT OF ANY PARTY (AS DEFINED AT THE BEGINNING OF THIS ARTICLE 14; OR ANY OTHER THEORY OF LEGAL LIABILITY. Seller's total responsibility for any claims, damages, losses or liability arising out of or related to its performance of this contract or the products or services covered hereunder shall not exceed 20% of the purchase price under the applicable purchase order.

**D. BUYER's CUSTOMER AND SUPPLIER INDEMNITIES:**
Notwithstanding anything in these terms or the order to the contrary, in the event that Buyer is entitled to indemnity under any contract with its customers or suppliers with respect to pollution and consequential losses described in Section 14A(6) and 14B above in connection with work performed under this Agreement, Buyer will provide Seller Group with the benefit of such indemnity to the fullest extent possible under such contracts with Buyer's customers and suppliers.

**E. CARE OF RENTAL EQUIPMENT:**
(1)      The Buyer, at its sole expense, shall be responsible for ensuring that the rental equipment is maintained in good working order and operating condition at all times the Buyer maintains possession of the rental equipment. The rental equipment shall be maintained in good working order and operating condition, at Buyer's expense, and shall be returned in the same condition as when received, ordinary wear and tear alone excepted.

(2)      Seller shall conduct an inspection ("Inspection and Disposition") of the rental equipment to determine if the rental equipment is in good working order and operating condition.  If Seller after the Inspection and Disposition finds that the rental equipment is not in good working order and operating condition and is in need of refurbishment, remanufacture, and/or replacement, Seller shall prepare and submit a quotation and invoice, as necessary, prior to any repair work taking place to Buyer detailing the costs and expenses Buyer is obligated to pay to maintain the rental equipment in good working order and operating condition.

(3)      The Buyer shall be liable for all costs and expenses for the refurbishment of the rental equipment to its original state and condition, save and except for ordinary wear and tear. Without prejudice to the generality of the foregoing and for the avoidance of doubt, damage and deterioration in the rental equipment requiring welding machining or coating operations are not considered as normal wear and tear.  Any costs and expenses for the refurbishment of the rental equipment shall be invoiced to Buyer upon the return and Inspection and Disposition of

the rental equipment.  All costs for refurbishment and labor charges shall be specified in the pricing schedule or such other similar document agreed to by the parties.

(4)      In respect of the rental equipment which requires welding machining or coating operations or other remanufacturing related actions, Seller will repair all damaged equipment, at the cost and expense of the Buyer.  Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place, Seller shall prepare and submit a quotation and invoice detailing the expected costs to repair the rental equipment to its original state and condition.

(5)      In respect of rental equipment which has been lost or damaged beyond repair, the Buyer shall be liable and shall pay to Seller, Seller's most recent replacement price item, as may be prescribed by Seller from time to time, with such replacement price taking into account the age, usage and depreciated value of the lost or damaged item as determined by Seller's standard accounting procedures.   Any such replacement price prescribed by Seller shall take into account the age, usage and actual value of the lost or damaged item. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place Seller will submit a quotation for the replacement price and an invoice to Buyer.

### 15. MODIFICATION, RESCISSION & WAIVER:

The terms herein may not be modified or rescinded nor any of its provisions waived unless such modification, rescission or waiver is in writing and signed by an authorized employee of Seller at its office in Houston, Texas.  Failure of Seller to insist in any one or more instances upon the performance of any of the terms and conditions of the contract or the failure of Seller to exercise any of its rights hereunder shall not be construed as a waiver or relinquishment of any such term, condition, or right hereunder and shall not affect Seller's right to insist upon strict performance and compliance with regard to any unexecuted portions of this contract or future performance of these terms and conditions.

All orders must be accepted by an authorized employee of Seller.  The rights and duties of the parties and construction and effect of all provisions hereof shall be governed by and construed according to the internal laws of the State of Texas.  Any disputes which arise under this agreement shall be venued in the District Court of Harris County, Texas or in the Southern District of Texas.

**INVOICE**


# CAMERON

|  |  |
|---|---|
| Invoice No | : 913326728 |
| Invoice Date | : APR 16 2013 |
| Page | : 1  of  2 |

**Remit To:**
OneSubsea LLC
P.O. Box 732162
Dallas, TX 75373-2162

**Inquiries To :**
OneSubsea LLC
4646 W Sam Houston Parkway N
Houston, Texas 77041
Phone 713-939-2211

**Wire Transfer To:**
JPMorgan Chase Bank
New York, NY  10004
Account #: 192987706
ABA #: 021000021
Swift #: CHASUS33
**ACH Remit To:**
JPMorgan Chase Bank
Chicago, IL
Account #: 192987706
ABA #: 071000013

| | |
|---|---|
| Payment Terms | : Cash in Advance |
| Terms & Conditions | : As Attached/Included |
| Freight Terms | : Ex Works        BERWICK |
| Ship From | : BAYOU VISTA LA |
| Shipped Date | : MAR 18 2013 |

Invoice to: 21011440
BLUEWATER INDUSTRIES LP
ATTN:  ACCOUNTS PAYABLE
5300 MEMORIAL STE 550
HOUSTON TX  77007

Ship To: 43219949
BLUEWATER INDUSTRIES
GREEN CANYON 299 OCSG 15571
3007 HWY 182 E
MORGAN CITY LA  70380-5843

---

Inside Sales Contact : Gwen Luu / 985-395-1692        Sales Order : 2969770        Delivery Note : 84744467

---

| | |
|---|---|
| **Customer Reference** | : 1111-031 REV1 |
| **Placed By** | : CLIFF DRONET |
| **Functional Location** | : GM2-2041-0001-0002 |
| **Description** | : GC 300 OCSG 22939 (21011440) |
| **Project Reference** | : (DOC) FSO 339490 & T/C |

**PO#: 1111-031 REV1**
**WELL LOCATION: GC 299**
**OCSG#: 15571**
**RIG NAME: ODYSSEY DIAMOND**
**JOB REQUESTED: CLIFF DRONET**
**SERVICE BEGIN DATE: 03/21/13**
**SERVICE END DATE:  04/02/13**
**SERVICE HAND: DANIEL DECLOUET**

---

| Item | Material Number. Description | Qty | Unit Net Price USD | Extended Price USD |
|---|---|---|---|---|
| 10 | SUBSEAOFFSHORE OFFSITE DAY RATE SUBSEA LABOR CAMERON SERVICEMAN CALLED OUT TO LOCATION TO PERFORM WORK AS REQUESTED. | 13.0  DY | 2,581.00 | 33,553.00 |

CAM—2283-1

 **CAMERON**

| | | Invoice No | : 913326728 |
| | | Page | : 2 of 2 |

| Item | Material Number.<br>Description | Qty | Unit Net Price<br>USD | Extended Price<br>USD |
|------|------|------|------|------|
| | NOTE: PLEASE REFER TO SERVICE TICKET ATTACHED FOR COMPLETE SERVICE REPORT.<br>DANIEL DECLOUET PERFORMED THIS JOB. | | | |
| 20 | MILEAGE<br>MILEAGE (ROUNDTRIP CAMERON BERWICK, LA TO CHANNELVIEW, TX) | 1132.00 MI | 2.00 | 2,264.00 |
| 30 | LODGING<br>LODGING (EXPENSE COST + 20%) | 1 EA | 675.83 | 675.83 |
| 40 | EXPENSE-RT<br>MEALS (EXPENSE COST + 20%) | 1 EA | 64.95 | 64.95 |
| 50 | EXPENSE-RT<br>RENTAL CAR (EXPENSE COST + 20%) | 1 EA | 241.98 | 241.98 |
| 60 | EXPENSE-RT<br>FUEL FOR RENTAL CAR (EXPENSE COST + 20%) | 1 EA | 44.06 | 44.06 |

**Price Summary :**

Total Price :  36,843.82 USD

Total Invoice Value :  36,843.82 USD

Cameron is committed to complying with U.S. Export Administration Rules and Regulations. If this Order is being exported to you, or may be re-exported to an ultimate consignee or end-user abroad, the following applies: These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is prohibited.

*I+C*

# CAMERON

**FIELD SERVICE ORDER NO.** 339490

## FIELD SERVICE ORDER

| | LAND ✓ | OTHER | DATE PREPARED | PAGE | OF |

| SALES ORDER NO. | PURCHASE ORDER NO./CONTRACT NO. 1111-031 rev 1 | P.O. DATE | COUNTY HARRIS | STATE TX |
| ORDERED BY Cliff Dronet | RIG NAME Odysseas Diamond | RIG. WGT. | FREIGHT | VIA C/V | LOCATION |
| WELL REFERENCE/LOCL NO. GC 299 / 15571 | | BILL OF LADING | CARRIER C.V 7976 |
| BILL TO Blue Water Ind | SOLD TO | SHIP TO |

| WELLHEAD | SIZE | MAKE | S/N | W.P. | PN |
| VALVE | SIZES | MODEL | TRIM | S/N | W.P. | PN |
| HANGER | SIZE | TYPE | CSG/TBG SIZE | WEIGHT | GRADE | THREAD |

**WORK PERFORMED** 3/31 Travel to texas to work for Bluewater Ind. function two CVC tool to unlock jumpers off of test stand to load on to Boat with Brad and Dickey. Ride Boat Out to location to unload jumpers. Ride Boat Back to Port Fourchon. Travel to Port Fourchon to load Rental tools onto trucks. Travel to Texas to pick up my truck in Channelview, Tx.

From Berwick, La to Channelview, Tx Back to Berwick ; La

| ITEM | QTY. | DESCRIPTION | PART NO. | UNIT PRICE | DB-COUNT | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**F.O.B. MANUFACTURING PLANT**   **TOTAL PARTS AND MATERIALS**

| LABOR | FROM: HR & DATE 3/31/2013 | TO: HR & DATE 4/2/2013 | REG HOURS/O.T. HOURS 13 | RATE 250.00 | O.T. RATE | 3355.00 |
| LODGING 563.19 | FREIGHT 2016 | MISCELLANEOUS 136.72 | MEALS 54.12 | MILEAGE 1132 @ 2.00 | PER MILE | 2264 |
| PERFORMANCE REVIEW | EXCEEDED EXPECTATIONS | MET EXPECTATIONS | NEEDS IMPROVEMENT | DID NOT MEET EXPECTATIONS | EST. CHARGES | 6021.72 |
| Serviceman Arrived at Location On Time | ☑ | ☐ | ☐ | ☐ | TOTAL CHARGES | 36,843.72 |

| | EXCEEDED | MET | NEEDS IMPR. | DID NOT MEET | JOB TYPE |
| Serviceman's Attitude | ☑ | ☐ | ☐ | ☐ | |
| Serviceman's Competency | ☑ | ☐ | ☐ | ☐ | Drilling ☐ |
| Service Facility Office Support | ☑ | ☐ | ☐ | ☐ | Section A B C (circle one) |
| Did Serviceman Properly Review CAM Issued JHA | ☑ | ☐ | ☐ | ☐ | System _____ (Min MBS TSW 5S etc) |
| OTHER (PLEASE LIST) | ☐ | ☐ | ☐ | ☐ | Hanger IC S Man. (circle one) |

**CUSTOMER STAMP**

WAS DELAY RESULTING FROM CAMERON SERVICE OR EQUIPMENT?
☐ YES   ☐ NO
IF YES PLEASE GIVE YOUR COMMENTS:

| | |
| Completion/Decompletion | ☐ |
| Frac tree | ☐ |
| Prod. Tree | ☐ |
| Lubricator | ☐ |
| Production | ☐ |
| Greasing | ☐ |
| Valve / Act. | ☐ |
| SD Lubricator | ☐ |

**OTHER**

| CAMERON REP. "Print" DANIEL DECLOUET | Signature | DATE 4/5/13 |
| CUSTOMER REP. "Print" Jimmy Jones | Signature | 4/10/13 |

| Reviewed by District Mgr. | | FPR Submitted | ☐ YES | ☐ NO |
| Signature | | FPR# |
| Date | | Date |



|  |  | 31 |  | 03-23-13 |
|---|---|---|---|---|

**Daniel Declouet**
**204 Park Street**
**Patterson LA 70392**
**US DESCRIPTION**

| Folio No. | : **73592** |
|---|---|
| A/R Number | : |
| Group Code | : |
| Company | : **Cameron Corporation** |
| Membership No. : | **PC    592394623** |
| Invoice No. | : |

| Room No. : | **105** |
|---|---|
| Arrival | : **03-21-13** |
| Departure | : **03-23-13** |
| Conf. No. | : **62172593** |
| Rate Code : | **IKPCM** |
| Page No. | : **1 of 1** |

| Date | Description | | Charges | Credits |
|---|---|---|---|---|
| 03-21-13 | *Accommodation | | 179.99 | |
| 03-21-13 | State Tax - Room | | 10.80 | |
| 03-21-13 | County Tax | | 7.20 | |
| 03-22-13 | *Accommodation | | 104.99 | |
| 03-22-13 | State Tax - Room | | 6.30 | |
| 03-22-13 | County Tax | | 4.20 | |
| 03-23-13 | MasterCard | XXXXXXXXXXXX1222 | | 313.48 |

Thank you for staying at Holiday Inn Express Hotel & Suites, in Jacinto City, Texas.
Qualifying points for this stay will automatically be credited to your account.  To make
additional reservations online, update your account information or view your statement
please visit www. priorityclub.com.  We look forward to welcoming you back soon.

| **Total** | **313.48** | **313.48** |
|---|---|---|
| **Balance** | **0.00** | |

**Guest Signature:** _____
I have received the goods and / or services in the amount shown heron. I agree that my liability for this bill is not waived and agree to be held
personally liable in the event that the indicated person, company, or associate fails to pay for any part or the full amount of these charges. If
a credit card charge, I further agree to perform the obligations set forth in the cardholder's agreement with the issuer.

Owned and Operated by Sunblik Inc

Holiday Inn Express Hotel & Suites
11460 East Freeway I-10 Houston, TX 77029-1935
Telephone: (713)330-3800 Fax: (713)330-3830



03-24-13

| | | | | |
|---|---|---|---|---|
| **Daniel DeCouet** | Folio No. | : | Room No. : | **125** |
| **204 Park Street** | A/R Number | : | Arrival : | **03-23-13** |
| **Patterson LA 70392** | Group Code | : | Departure : | **03-24-13** |
| **US DESCRIPTION** | Company | : **Cameron Corporation** | Conf. No. : | **64386206** |
| | Membership No. : | **PC    592394623** | Rate Code : | **IGN01** |
| | Invoice No. | : | Page No. : | **1 of 1** |

| Date | Description | | Charges | Credits |
|---|---|---|---|---|
| 03-23-13 | Premium Gold Rate | | 102.60 | |
| 03-23-13 | State Tax - Room | | 6.16 | |
| 03-23-13 | County Tax | | 4.10 | |
| 03-24-13 | MasterCard | | | 112.86 |

Thank you for staying at Holiday Inn Express Hotel & Suites, in Jacinto City, Texas.
Qualifying points for this stay will automatically be credited to your account.  To make
additional reservations online, update your account information or view your statement
please visit www. priorityclub.com.  We look forward to welcoming you back soon.

| | | |
|---|---|---|
| **Total** | 112.86 | 112.86 |
| **Balance** | 0.00 | |

**Guest Signature:** _____

I have received the goods and / or services in the amount shown heron. I agree that my liability for this bill is not waived and agree to be held
personally liable in the event that the indicated person, company, or associate fails to pay for any part or the full amount of these charges. If
a credit card charge, I further agree to perform the obligations set forth in the cardholder's agreement with the issuer.

Owned and Operated by Sunbilk Inc

Holiday Inn Express Hotel & Suites
11460 East Freeway I-10Houston, TX 77029-1935
Telephone: (713)330-3800 Fax: (713)330-3830



Holiday Inn

04-02-13

| | | | |
|---|---|---|---|
| **Daniel De douet** | Folio No. | : | Room No. : **326** |
| **545 Al Joseph Ln** | A/R Number | : | Arrival : **04-01-13** |
| **Thibodaux LA 70301-7495** | Group Code | : | Departure : **04-02-13** |
| **United States** | Company | : **Cameron Corporation** | Conf. No. : **61484923** |
| | Membership No. : | PC   **592394623** | Rate Code : **ILUBK** |
| | Invoice No. | : | Page No. : **1 of 1** |

| Date | Description | Charges | Credits |
|---|---|---|---|
| 04-01-13 | *Accommodation | 119.00 | |
| 04-01-13 | State Tax - Room | 7.14 | |
| 04-01-13 | City/Local Tax Room | 10.71 | |
| 04-02-13 | MasterCard | | 136.85 |

Thank you for staying at The Holiday Inn Houston East. Qualifying points for this stay will automatically be credited to your account.  To make additional reservations online, update your account information or view your statement please visit www. priorityclub.com. We look forward to welcoming you back soon.

| | | |
|---|---|---|
| **Total** | **136.85** | **136.85** |
| **Balance** | **0.00** | |

**Guest Signature:** _____

Independently owned and operated by Ashland Hospitality.
I have received the goods and / or services in the amount shown heron. I agree that my liability for this bill is not waived and agree to be held personally liable in the event that the indicated person, company, or associate fails to pay for any part or the full amount of these charges. If a credit card charge, I further agree to perform the obligations set forth in the cardholder's agreement with the issuer.

Holiday Inn Houston East
16311 East Freeway
Channelview, TX 77530
Telephone: (281) 864-7457 Fax: (281) 864-7909

```
         — COMMENTS OR CONCERNS —
       Store manger Ashley Vandekamp
    EDDIE REX SUPERVISOR — 713-269-8103
            Office 713-974-1217
             10323 EAST FWY
              HOUSTON
                  TX
               77029-1907
           ! ! ! THANK YOU ! ! !
      TEL# 713  673  7542 Store# 3843


KS# 13              Mar.22'13 (Fri) 16:56

MFY SIDE 2  KVS Order 34

QTY ITEM                         TOTAL
  1 DBL QTR CH MEAL                6.79
    1 DBL QTR CHEESE
       ADD MAC SAUCE
    1 MED DR. PEPPER

Subtotal                          6.79
  Tax                             0.56

Take-Out Total                    7.35

Cashless                          7.35
Change                            0.00

MER# 19823302
CARD ISSUER        ACCOUNT#
Master SALE    ***********1222
AUTHORIZATION CODE - 026393 SEQ# 372765



         MCDONALD'S 3843
```

THANK YOU FOR CHOOSING MCDONALD'S
355 HWY 3162
CUT OFF
LA
70345
! ! ! THANK YOU ! ! !
TEL# 985  325  3001 Store# 26656

KS# 13                  Apr.01'13 (Mon) 13:46

MFY SIDE 1   KVS Order 51

QTY ITEM                            TOTAL
  1 DBL FILET MEAL                  6.19
  1 DBL FILET-O-FISH
      NO TARTAR SAUCE
  1 MED COKE

Subtotal                           6.19
  Tax                              0.57

Take-Out Total                     6.76

Cashless                           6.76
Change                             0.00

MER# 09482702
CARD ISSUER        ACCOUNT#
Master SALE     ************1222
AUTHORIZATION CODE - 055955 SEQ# 314754


MCDONALD'S 26656

---

SHIPLEY DO-NUTS 2
13349 EAST FWY
HOUSTON, TX 77015
(713) 455-3937
WWW.SHIPLEYDONUTS.US

Sale

Merchant ID: 542929804390037
Term ID: LK870769
04/02/13                  10:69:17
Batch#: 000274     Inv #: 000118

MASTERCARD        Entry Method: S
XXXXXXXXXXXX1222
Seq.#: 0118    Appr Code: 070798

Total:$           9.93

APPROVED


Customer Copy
THANK YOU!

---

FAST BREAK TEXACO
1231 FREEPORT
STN 00304196

04/02/13          10:27:36

E/MCFLEET
XXXXXXXXXXXX1222
Invoice#        9638331
Auth#           021978

Pump#:  3
  10.202G @ $ 3.599/G
UNLE/Self       $ 36.72

Total           $ 36.72

Learn how to
EARN REWARDS
with a Chevron
or Texaco
Credit Card
See application
for details


THANK YOU
PLEASE COME AGAIN

Chili's Grill & Bar
I 10E #578
11400 East Freeway I-10
Jacinto City, TX 77029

Server: Jasmine          DOB: 03/23/2013
07:23 PM                       03/23/2013
Denim /1                        4/40021

                    SALE

MASTERCARD
Card #XXXXXXXXXXXX1222          4194330
Magnetic card present: DECLOUET DANIEL P
Card Entry Method:  S

Approval: 093917

            Amount:      $ 17.56

            + Tip: _____

            = Total: _____

    I agree to pay the above
    total amount according to the
    card issuer agreement.

X_____

            Thank You!
    We Welcome Your Comments
          (800) 983-4637
          www.chilis.com

          Guest Copy



DRIVE THRU  # 169

Tel (713) 455-1518              JIB# 638
03/28/2013                      12:39:26 PM
                           Emp    Brenda

1 Srd Jack +MD FF #3              6.68
  Med Curly Fry
  Med Rootbeer

*************************************
            FREE 2 TACOS
        with purchase on your next visit:
1) Within 3 days...
   Visit www.JackListens.com
   or call 1-825-835-5225.
2) Enter...
   11 digit code: 2125 0159 969
   Date of Service: 03/23/2013
   Time of Service: 12:39
3) Write the provided Validation code here:
   _____
   Coupon Code: 989
4) Bring this receipt to a Jack in the Box
   to receive your two free tacos with
   purchase on your next visit.
        Esta encuesta esta
        disponible en espanol.
One coupon per order. This offer is not
valid with any other offer or discount.
Jack in the Box employees and their
families are not eligible. Not
transferable. This offer is valid
for 7 days after completion of the survey.
*************************************
              SubTotal        6.68
              Tax             0.55
              Total           7.23

ON BACK!  |$1,000 GIVEAWAY ON BACK!  |$1,000 GIVEAWAY ON BACK!  |$1,BACK!  |$1,000 GIVE/

KFC/TB
919 Federal Rd
Houston, TX 77015
(713)453-2667
2013-03-24

CREDIT SALE

CHARGE DETAIL

Name: DANIEL P DECLOUET
Card Type: MasterCard
Account: ************1222 S
Auth Code: 046006
Trans #: 1884
Auth Ref: 95004098
Sequence #: 181908

AUTH AMT:      $5.28
BALANCE:       $0.00

2013-03-24    L1 12    12:28 PM

CUSTOMER COPY

www.talktokfc.com

tell us about your visit today

See back for more details

CUSTOMER COPY

EAN HOLDINGS, LLC, 1606 PROSPECT BLVD, HOUMA, LA 703633785 (985) 876-8503

**RENTAL AGREEMENT**  **REF#**
116491                          4V6S2G

**RENTER**
DECLO UET, DANIEL

**DATE & TIME OUT**
04/01/2013  05:14 PM
**DATE & TIME IN**
04/02/2013  10:39 AM

**BILLING CYCLE**
24-HOUR

**VEH # 1 2012 CHEV MALI 2AT4**
VIN# 1G1ZD5EU2CF304526
LIC# E-9275U
MILES DRIVEN 337

**SUMMARY OF CHARGES**

| Charge Description | Date | Quantity | Per | Rate | Total |
|---|---|---|---|---|---|
| TIME & DISTANCE | 04/01 - 04/02 | 1 | DAY | $35.00 | $35.00 |
| DROP FEE | 04/01 - 04/02 | 1 | RENTAL | $150.00 | $150.00 |
| REFUELING CHARGE | 04/01 - 04/02 | | | | $0.00 |
| | | | Subtotal: | | $185.00 |
| **Taxes & Surcharges** | | | | | |
| LOUISIANA STATE SALES TAX | 04/01 - 04/02 | | | 4% | $7.40 |
| SALES TAX | 04/01 - 04/02 | | | 5% | $9.25 |
| | | | Total Charges: | | $201.65 |
| **Bill-To / Deposits** | | | | | |
| DEPOSITS | | | | | ($201.65) |
| | | | | | |
| **Total Amount Due** | | | | | $0.00 |

**PAYMENT INFORMATION**

| AMOUNT PAID | TYPE | CREDIT CARD NUMBER |
|---|---|---|
| $201.65 | Mastercard | xxxxxxxxxxxx1222 |

4/2/2013

# Expense Authorization sheet

CAMERON

FSO

339490

| Expense amount | Date | Expense explanation & attendees | FSO | 339490 |
|---|---|---|---|---|
| $7.35 | 3/22/2013 | Purchase Meal while working in Texas for Bluewater Ind. | | |
| $17.56 | 2/23/2013 | Purchase Meal while working in Texas for Bluewater Ind. | | |
| $7.23 | 3/23/2013 | Purchase Meal while working in Texas for Bluewater Ind. | | |
| $5.29 | 3/24/2013 | Purchase Meal while working in Texas for Bluewater Ind. | | |
| $6.76 | 4/1/2013 | Purchase Meal while working in Texas for Bluewater Ind. | | |
| $9.93 | 4/2/2013 | Purchase Meal while working in Texas for Bluewater Ind. | | |
| $201.65 | 4/2/2013 | Rent a car to pick up truck in Channelview, Tx | | |
| $313.48 | 3/23/2013 | Hotel stay in Texas while working for Bluewater Ind. | | |
| $112.86 | 3/24/2013 | Hotel stay in Texas while working for Bluewater Ind. | | |
| $136.85 | 4/2/2013 | Hotel stay in Texas while working for Bluewater Ind. | | |
| $36.72 | 4/2/2013 | Purchase gas for the rental car to go pick up my truck | | |
| | | | | |
| 855 68 | | Expense cost 7 208 = 1026 R | | |
| Employee Signature | | Customer Signature: | | |

## TERMS AND CONDITIONS OF SALE

**1. CONTRACT ACCEPTANCE:**
Any written or oral purchase order received from Buyer by Seller shall be construed as a written acceptance of Seller's offer to sell and shall be filled in accordance with the terms and conditions of sale set forth herein. SELLER'S ACCEPTANCE OF THIS ORDER IS EXPRESSLY CONDITIONED ON BUYER'S ASSENT TO THE TERMS CONTAINED HEREIN.   The terms and conditions of Seller's proposal (if any) and acknowledgement shall prevail over any conflicting or different terms in Buyer's order unless Buyer notifies Seller in writing of its objections thereto within fifteen (15) days from receipt of Seller's acknowledgement.  Buyer's standard terms of purchase will not be considered a counteroffer to Seller's terms and conditions of sale.  The failure of Seller to object to any provision in conflict herewith whether contained on Buyer's purchase order or otherwise shall not be construed as a waiver of the provisions hereof nor as an acceptance thereof.

**2. QUOTATIONS AND PRICES:**
Any product, service capability or manufacturing capability which may be available at the time a quotation is made is subject to prior sale.  Prices quoted are subject to change without notice.  The price in effect at the time of shipment including any escalation formula will apply, unless a valid quotation or written agreement to the contrary exists between Buyer and Seller.  All prices shown are in U.S. dollars and are F.O.B. Seller's shipping point.  Seller reserves the right to place a service charge on past due accounts at the highest rate permitted by law.  Any documentation pertaining to traceability requirements for raw materials or products or documentation required for any routine or special processes must be identified by the Buyer at the time of quotation (if any) or at the time of order placement.

**3. TAXES:**
Any tax or other charge imposed by law on the sale or production of goods or the performance of services shall be paid by the Buyer, unless the law specifically provides that such payment must be made by Seller, in which case Buyer shall reimburse Seller for such payment as part of the purchase price.  Custom duties, consular fees, insurance charges and other comparable charges will be borne by Buyer.

**4. SHIPPING SCHEDULE AND DELIVERY:**
Shipment schedules are given as accurately as conditions permit and every effort will be made to make shipments as scheduled.  Seller will not be responsible for deviations in meeting shipping schedules nor for any losses or damages to Buyer (or any third party) occasioned by deviations in the shipping schedule, whether due to Acts of God, orders bearing priority ratings established pursuant to law, differences with workmen, local labor shortages, fire, flood, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment or any other causes beyond Seller's reasonable control, whether of similar or dissimilar nature than those enumerated. Seller shall have additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider to be equitable.  Seller reserves the right to furnish commercially equivalent or better substitutes for materials or to subcontract the Buyer's order or portions thereof as Seller deems necessary.  In no event shall Seller be liable for any consequential damages resulting from failure or delay in shipment.  If Buyer requires drawings, procedures, standards or similar material for approval, shipping schedules will be calculated from the time such approvals are received by Seller, since shipping schedules are based on Seller having all required information and a firm order from Buyer which is enterable into production.  Any hold points, witness points or the need for inspection by Buyer's representatives must be identified by Buyer at the time of quotation (if any) and/or order placement in order that the effect on the prices or shipping schedules (if any) can be taken into account.  Additional inspection or testing required by Buyer which affects normal production sequence will be considered as extending the shipping dates accordingly.

**5. TERMS OF PAYMENT:**
Terms of payment are 30 days from date of invoice unless otherwise stated in the quotation or Seller's order acknowledgment.

**6. CANCELLATIONS AND RETURNS:**
Purchase orders once placed by Buyer and accepted by Seller can be canceled only with Seller's written consent and upon terms which will save Seller from loss.  No products may be returned for credit or adjustment without written permission from Seller's office authorized to issue such permission.

**7. WARRANTIES:**
All products of Seller's manufacture except for its Orbit product are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires while its Orbit product is warranted for thirty six (36) months from date of shipment, when all such products are used in the service and within the pressure range for which they were

CAM/T&C/US/10

1

manufactured. In the case of products or parts not wholly of Seller's manufacture, Seller's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Seller. Any repair work performed by Seller is warranted for one year from completion of such repairs and applies only to work performed. If, within these specified periods, Seller receives notice from Buyer of any alleged defect in or nonconformance of any product or repair and if in the Seller's sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Buyer shall, at Seller's request, return the part or product F.O.B. to Seller's designated plant or service location. Seller has no liability for removal or reinstallation of products or equipment. Seller, at its option and expense, shall repair or replace the defective part or product, or repay to Buyer the full price paid by Buyer for such defective part, repair or product. Any repayment of purchase price shall be without interest. Seller's warranty liability, including defects caused by Seller's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs, expenses of Buyer resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind. Seller will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Seller, failures due to lack of compliance with recommended maintenance procedures or products which have been repaired or altered in such a way (in Seller's judgment) as to affect the products adversely. THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY.

**8.ENGINEERING AND SERVICE**:
Upon request, Seller will provide engineering and/or technical information regarding its products and their uses and, if feasible, will provide personnel to assist Buyer in effecting field installations and/or field service. Any such information, service or assistance so provided, whether with or without charge, shall be advisory only

**9. LABOR STANDARDS**:
Seller hereby certifies that these products were produced in accordance with all applicable requirements of Section 6, 7 and 12 of the Fair Labor Standards Act as amended and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

**10. INSPECTION**:
Unless otherwise agreed in writing, final inspection and acceptance of products must be made at Seller's plant or other shipping or receiving point designated by Seller and shall be conclusive except as regards latent defects. Buyer's representatives may inspect at the Seller's plant or shipping point during working hours prior to shipment in such manner as will not interfere with operations.

**11. DELIVERY AND ACCEPTANCE**:
Delivery shall be in accordance with the requirements in the Purchase Contract, provided, in the event Buyer is unable to accept delivery upon completion of the manufacture of the Goods in accordance with such requirements, Buyer agrees that (i) title and risk of ownership shall pass to Buyer on date of Seller's invoice, and (ii) Buyer will make payments within thirty days after date of such invoice. Seller shall retain custodial risk of loss until delivery is made in accordance with such requirements.

**12. EXPORT COMPLIANCE**:
The Buyer shall provide the Seller with relevant end-use, end-user and country of end-use information with respect to the goods, services, software or technology to be supplied hereunder (collectively, "Items"). Based on and in reliance on such information, the Seller will supply such Items in compliance with applicable trade and customs laws including that of the United States of America. The Seller cautions and the Buyer acknowledges that any change in end-use, end-user or country of end-use (including a shipment between countries other than the U.S.) may be restricted or prohibited by applicable trade and customs law, whether it be of the U.S. or other country. The Parties shall comply with all trade and customs laws (including U.S. Export Controls) except for any such laws which conflict with or are otherwise penalized under the laws of the U.S., which in the event of such conflict, Seller shall notify Buyer. The Buyer agrees in particular that it shall not use and shall not permit any third party to use such items in connection with the design, production, use, or storage of chemical, biological or nuclear weapons or missiles of any kind.

## 13. TRANSPORTATION CHARGES, ALLOWANCES, CLAIMS:

All prices are F.O.B. Seller's plant or other designated shipping point. No freight is allowed unless stated in Seller's quotation (if any) or in a written contract which may exist between Seller and Buyer at the time of shipment. If Seller's quotation or a written contract states that all or a portion of freight is allowed, all prices are F.O.B. Seller's plant or other designated shipping point, with most economical surface transportation allowed. If the quoted or contractual price includes transportation, Seller reserves the right to designate the common carrier and to ship in the manner it deems most economical. Added costs due to special routing requested by the Buyer are chargeable to the Buyer. Under no circumstances is any freight allowance which is absorbed by Seller to be deducted from the selling price. If the quoted price or contract includes transportation, no deduction will be made in lieu thereof whether Buyer accepts shipment at plant, warehouse, freight station, or otherwise supplies its own transportation. When sales are made from the Seller's warehouse, Seller reserves the right to charge either actual or pro-rated freight from Seller's principle point of manufacture to Seller's warehouse. Buyer assumes risk of loss upon delivery to the carrier, regardless of who pays shipping costs. Seller endeavors to pack or prepare all shipments so that they will not break, rust or deteriorate in transit, but does not guarantee against such damage. Unless requested in writing by the Buyer, no shipments are insured by Seller against damage or loss in transit. Seller will place insurance as nearly as possible in accordance with Buyer's written instructions but in such case Seller acts only as agent between the insurance company and the Buyer and assumes no liability whatsoever. Any claims for shipping loss, breakage or damage (obvious or concealed) are Buyer's responsibility and should be made to the carrier. All claims regarding shortages must be made within thirty (30) days from receipt of shipment and must be accompanied by the packing list(s) covering the shipment.

## 14. INDEMNIFICATION AND LIMITATION OF LIABILITY:

### A. INDEMNIFICATION:

"Buyer Group" means: Buyer, its parent (if any), subsidiaries, affiliates, co-owners, co-venturers, partners and any entity with whom Buyer has an economic interest with respect to the Work including Buyer's customer and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Seller Group),

"Seller Group" means: Seller, its parent (if any), subsidiaries, affiliates, co-owners and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Buyer Group),

"Negligence" means: sole, joint or concurrent, active, passive or gross negligence, willful misconduct, strict liability, product liability or any other legal cause of action.

"Claims" means any and all claims, demands, losses, damages and causes of action of whatever kind or nature. Unless otherwise specified, Claims is to be read in its broadest sense to include all claims by a first party (which includes any member of either Buyer Group or Seller Group) or by a third party (which includes any person or entity not included in Buyer Group or Seller Group.

(1) Seller shall release, defend, save, indemnify (collectively "Indemnify") and hold Buyer Group harmless from and against all Claims, for loss of or damage to the property of the members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(2) Seller shall Indemnify and hold Buyer Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(3) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for loss of or damage to the property (including the Work) of the members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(4) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(5) Except as provided in Section 14A(6) below, Buyer (on its own behalf and on behalf of Buyer Group) and Seller (on its own behalf and on behalf of Seller Group) shall Indemnify and hold each other harmless from and against any and all Claims asserted against them by or on behalf of any third party for the death(s) of or personal injury (ies) to such a third party, as well as loss (es) of or damage(s) to the property of such a third party. It is agreed by Buyer and Seller that their respective duty of indemnity to each other with respect to Claims asserted against them by a third party pursuant to this Article 14 (A) (5) shall be limited to their respective degree of Negligence.

(6) Notwithstanding any other provision contained in this Agreement, Buyer shall Indemnify and hold the members of Seller Group harmless from and against all Claims (including clean-up costs and loss (es) of oil, gas or

3

hydrocarbons) arising from (i) pollution, contamination, dumping or spilling of any substance, (ii) blowout, (iii) fire, or (iv) loss of, or damage to, wells, formations or mineral rights, even if arising out of or attributable to the Negligence of the members of the Seller Group.

(7) Notwithstanding any other provision contained in this Agreement, Buyer shall be responsible for and shall reimburse and Indemnify Seller in respect of any loss of or damage (excluding normal wear and tear) to Seller Group property, materials or equipment (tools) or components which (i) is damaged or lost whilst in-hole below the rotary table or (ii) is leased or borrowed by Buyer.

**B. INDEMNITY FOR CONSEQUENTIAL DAMAGES:**

UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES (collectively "CONSEQUENTIAL"), AS DEFINED BY THE LAWS GOVERNING THIS PURCHASE ORDER, NOR FOR ANY LOSS OF ANTICIPATED PROFITS, LOSS OF BUSINESS OPPORTUNITY, LOSS OF USE OF EQUIPMENT OR OF ANY INSTALLATION, SYSTEM OR FACILITY INTO WHICH SELLER'S EQUIPMENT MAY BE LOCATED OR AT WHICH MEMBERS OF THE SELLER GROUP MAY BE PERFORMING WORK AND BUYER AGREES TO "INDEMNIFY" AND HOLD SELLER GROUP HARMLESS FROM AND AGAINST ANY "CLAIMS" FOR SUCH DAMAGES EVEN IF ARISING OUT OF OR ATTRIBUTABLE TO THE "NEGLIGENCE" OF THE MEMBERS OF THE SELLER GROUP.

**C. LIMITATION OF LIABILITY:**

EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND/OR LIABILITIES HEREBY ASSUMED BY THE PARTIES SHALL BE: (i) SUPPORTED BY INSURANCE; (ii) WITHOUT LIMIT; (iii) AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, BUT NOT LIMITED TO, PREEXISTING CONDITIONS (WHETHER SUCH CONDITIONS BE PATENT OR LATENT); THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS (WHETHER OR NOT PREEXISTING); THE UNAIRWORTHINESS OF ANY AIRCRAFT; BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED); BREACH OF CONTRACT; BREACH OF DUTY (STATUTORY, CONTRACTUAL, COMMON LAW OR OTHERWISE); STRICT LIABILITY; CONDITION OF RUIN OR DEFECTIVE PREMISES, EQUIPMENT, FACILITIES, OR APPURTENANCES OF ANY PARTY UNDER ANY CODE, LAW OR (WHETHER OR NOT SAID CONDITION IS PREEXISTING AND/OR LATENT, PATENT OR OTHERWISE); THE LOADING OR UNLOADING OF PERSONS OR CARGO; TORT; OR THE NEGLIGENCE OR FAULT OF ANY PARTY (AS DEFINED AT THE BEGINNING OF THIS ARTICLE 14; OR ANY OTHER THEORY OF LEGAL LIABILITY. Seller's total responsibility for any claims, damages, losses or liability arising out of or related to its performance of this contract or the products or services covered hereunder shall not exceed 20% of the purchase price under the applicable purchase order.

**D. BUYER's CUSTOMER AND SUPPLIER INDEMNITIES:**

Notwithstanding anything in these terms or the order to the contrary, in the event that Buyer is entitled to indemnity under any contract with its customers or suppliers with respect to pollution and consequential losses described in Section 14A(6) and 14B above in connection with work performed under this Agreement, Buyer will provide Seller Group with the benefit of such indemnity to the fullest extent possible under such contracts with Buyer's customers and suppliers.

**E. CARE OF RENTAL EQUIPMENT:**

(1)     The Buyer, at its sole expense, shall be responsible for ensuring that the rental equipment is maintained in good working order and operating condition at all times the Buyer maintains possession of the rental equipment. The rental equipment shall be maintained in good working order and operating condition, at Buyer's expense, and shall be returned in the same condition as when received, ordinary wear and tear alone excepted.

(2)     Seller shall conduct an inspection ("Inspection and Disposition") of the rental equipment to determine if the rental equipment is in good working order and operating condition. If Seller after the Inspection and Disposition finds that the rental equipment is not in good working order and operating condition and is in need of refurbishment, remanufacture, and/or replacement, Seller shall prepare and submit a quotation and invoice, as necessary, prior to any repair work taking place to Buyer detailing the costs and expenses Buyer is obligated to pay to maintain the rental equipment in good working order and operating condition.

(3)     The Buyer shall be liable for all costs and expenses for the refurbishment of the rental equipment to its original state and condition, save and except for ordinary wear and tear. Without prejudice to the generality of the foregoing and for the avoidance of doubt, damage and deterioration in the rental equipment requiring welding machining or coating operations are not considered as normal wear and tear. Any costs and expenses for the refurbishment of the rental equipment shall be invoiced to Buyer upon the return and Inspection and Disposition of

the rental equipment.  All costs for refurbishment and labor charges shall be specified in the pricing schedule or such other similar document agreed to by the parties.

(4)      In respect of the rental equipment which requires welding machining or coating operations or other remanufacturing related actions, Seller will repair all damaged equipment, at the cost and expense of the Buyer. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place, Seller shall prepare and submit a quotation and invoice detailing the expected costs to repair the rental equipment to its original state and condition.

(5)      In respect of rental equipment which has been lost or damaged beyond repair, the Buyer shall be liable and shall pay to Seller, Seller's most recent replacement price item, as may be prescribed by Seller from time to time, with such replacement price taking into account the age, usage and depreciated value of the lost or damaged item as determined by Seller's standard accounting procedures.   Any such replacement price prescribed by Seller shall take into account the age, usage and actual value of the lost or damaged item. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place Seller will submit a quotation for the replacement price and an invoice to Buyer.

**15. MODIFICATION, RESCISSION & WAIVER**:

The terms herein may not be modified or rescinded nor any of its provisions waived unless such modification, rescission or waiver is in writing and signed by an authorized employee of Seller at its office in Houston, Texas. Failure of Seller to insist in any one or more instances upon the performance of any of the terms and conditions of the contract or the failure of Seller to exercise any of its rights hereunder shall not be construed as a waiver or relinquishment of any such term, condition, or right hereunder and shall not affect Seller's right to insist upon strict performance and compliance with regard to any unexecuted portions of this contract or future performance of these terms and conditions.

All orders must be accepted by an authorized employee of Seller.  The rights and duties of the parties and construction and effect of all provisions hereof shall be governed by and construed according to the internal laws of the State of Texas.  Any disputes which arise under this agreement shall be venued in the District Court of Harris County, Texas or in the Southern District of Texas.

CAM/T&C/US/10

# RENTAL INVOICE

 **CAMERON**

| | |
|---|---|
| **Invoice No** | : 913337428 |
| Invoice Date | : APR 26 2013 |
| Page | : 1   of   5 |

**Remit To:**
OneSubsea LLC
P.O. Box 732162
Dallas, TX 75373-2162

Inquiries To :
OneSubsea LLC
4646 W Sam Houston Parkway N
Houston, Texas 77041
Phone 713-939-2211

**Wire Transfer To:**
JPMorgan Chase Bank
New York, NY 10004
Account #: 192987706
ABA #: 021000021
Swift #: CHASUS33
**ACH Remit To:**
JPMorgan Chase Bank
Chicago, IL
Account #: 192987706
ABA #: 071000013

| | |
|---|---|
| Payment Terms | : Cash In Advance |
| Terms & Conditions | : As Attached/Included |
| Freight Terms | : FOB Shp Pt-Frt Coll-No Pro Frt |
| Ship From | : BAYOU VISTA LA |
| Shipped Date | : MAR 18 2013 |

Invoice to: 21011440
BLUEWATER INDUSTRIES LP
ATTN:  ACCOUNTS PAYABLE
5300 MEMORIAL STE 550
HOUSTON TX  77007

Ship To: 43219603
SPITZER HEAVY FABRICATION/BLUEWATER
GREEN CANYON BLK 299  OCSG 15571
13863 INDUSTRIAL RD
HOUSTON TX  77015-6822

---

Inside Sales Contact : NICOLE DINGER / 985-395-1250    Contract    : 40014711 Contract Start : 04/18/2013    Contract End

Customer Reference   : 1111-031
Placed By      : TRENT CASE

**SHIPPED 11/6/2012 REF: R125694**
**GC 299 OCSG 15571**
**OLD CONTRACT: 40012515**

---

| Item | Material Number.<br>Description | Qty | Unit Net Price<br>USD | Extended Price<br>USD |
|---|---|---|---|---|
| 10 | RENTAL<br>HPU S/N 26-M-0502<br>HPU<br>S/N 26-M-0502 | 6  EA | 960.00 | 5,760.00 |
| | . | | | |
| | SHIPPED 11/6/12 | | | |
| | . | | | |
| | RENTAL BEGAN ON 11/6/12 | | | |
| | . | | | |
| | RENTAL CHARGES $5000.00 FOR 7 DAYS<br>$960.00 PER DAYS AFTER 7 | | | |
| | . | | | |
| | FINAL BILLING PERIOD 3/28/13 - 4/2/13 | | | |

CAM—2283-1

 **CAMERON**

Invoice No  : 913337428
Page       : 2  of  5

| Item | Material Number.<br>Description | Qty | | Unit Net Price<br>USD | Extended Price<br>USD |
|------|-------------------------------|-----|----|------------------|-------------------|
| | 6 DAYS | | | | |
| 20 | RENTAL<br>R2155807-05 S/N 26-M-0160<br>CVC RUNNING TOOL<br>S/N 26-M-0160 | 6 | EA | 2,500.00 | 15,000.00 |
| | SHIPPED 11/6/12 | | | | |
| | RENTAL BEGAN ON 11/6/12 | | | | |
| | RENTAL CHARGES $15375.00FOR 14 DAYS<br>$25O0.00PER DAYS AFTER 14 | | | | |
| | FINAL BILLING PERIOD 3/28/13 - 4/2/13<br>6 DAYS | | | | |
| 30 | RENTAL<br>R2155517-05 S/N 26-M-0288 & M-0400<br>6"10K TEST SKID & FAB STAND<br>SKID S/N 26-M-0288<br>STAND S/N 26-M-0400 | 9 | EA | 3,450.00 | 31,050.00 |
| | SHIPPED ON 11/6/12 | | | | |
| | RENTAL BEGAN ON 11/6/12 | | | | |
| | RENTAL CHARGES $17250.00 FOR 14 DAYS<br>$3450.00 PER DAY AFTER 14 | | | | |
| | FINAL BILLING PERIOD 3/28/13 - 4/5/13 | | | | |
| 40 | RENTAL<br>R2155517-05 S/N 26-M-0559 & 110176607-01<br>6"10K TEST SKID & FAB STAND<br>SKID S/N 26-M-0559<br>STAND S/N 110176607-01 | 9 | EA | 3,450.00 | 31,050.00 |
| | SHIPPED ON 11/6/12 | | | | |
| | RENTAL BEGAN ON 11/6/12 | | | | |

 **CAMERON**

| Item | Material Number.<br>Description | Qty | | Unit Net Price<br>USD | Extended Price<br>USD |
|------|-------------------------------|-----|-----|----------------------|----------------------|
| | RENTAL CHARGES $17250.00 FOR 14 DAYS<br>$3450.00 PER DAY AFTER 14 | | | | |
| | FINAL BILLING PERIOD 3/28/13 - 4/5/13 | | | | |
| 50 | RENTAL<br>R2155517-05 S/N 26-M-0464 & 11007680<br>6"10K TEST SKID & FAB STAND<br>SKID S/N 26-M-0464<br>STAND S/N 11007680 | 10 | EA | 3,450.00 | 34,500.00 |
| | SHIPPED ON 11/6/12 | | | | |
| | RENTAL BEGAN ON 11/6/12 | | | | |
| | RENTAL CHARGES $17250.00 FOR 14 DAYS<br>$3450.00 PER DAY AFTER 14 | | | | |
| | FINAL BILLING PERIOD 3/28/13 - 4/6/13 | | | | |
| 60 | RENTAL<br>R2155517-05 S/N 26-M-0564 & 110176604-01<br>6"10K TEST SKID & FAB STAND<br>SKID S/N 26-M-0564<br>STAND S/N 110176604-01 | 10 | EA | 3,450.00 | 34,500.00 |
| | SHIPPED ON 11/6/12 | | | | |
| | RENTAL BEGAN ON 11/6/12 | | | | |
| | RENTAL CHARGES $17250.00 FOR 14 DAYS<br>$3450.00 PER DAY AFTER 14 | | | | |
| | FINAL BILLING PERIOD 3/28/13 - 4/6/13 | | | | |
| 70 | RENTAL<br>R2215824-01 S/N 26-M-0283<br>6"10K SHIPPING STAND<br>S/N 26-M-0283 | 6 | EA | 1,381.00 | 8,286.00 |
| | SHIPPED ON 11/6/12 | | | | |

 **CAMERON**

| Item | Material Number.<br>Description | Qty | | Unit Net Price<br>USD | Extended Price<br>USD |
|------|------|------|------|------|------|
| | . | | | | |
| | RENTAL BEGAN ON 11/6/12 | | | | |
| | . | | | | |
| | RENTAL CHARGES $6900.00 FOR 14 DAYS<br>$1381.00 PER DAY AFTER 14 | | | | |
| | . | | | | |
| | FINAL BILLING PERIOD 3/28/13 - 4/2/13 | | | | |
| 80 | RENTAL<br>R2215824-01 S/N 26-M-0558 | 6 | EA | 1,381.00 | 8,286.00 |
| 90 | RENTAL<br>R2215824-01 S/N 26-M-0627<br>6"10K SHIPPING STAND<br>S/N 26-M-0627 | 6 | EA | 1,381.00 | 8,286.00 |
| | . | | | | |
| | SHIPPED ON 11/6/12 | | | | |
| | . | | | | |
| | RENTAL BEGAN ON 11/6/12 | | | | |
| | . | | | | |
| | RENTAL CHARGES $6900.00 FOR 14 DAYS<br>$1381.00 PER DAY AFTER 14 | | | | |
| | . | | | | |
| | FINAL BILLING PERIOD 3/28/13 - 4/2/13 | | | | |
| 100 | RENTAL<br>R2215824-01 S/N 26-M-0628 | 6 | EA | 1,381.00 | 8,286.00 |
| 110 | RENTAL<br>R2247342-04 S/N 26-M-0637<br>6" HUB CLEANING TOOL<br>S/N 26-M-0637 | 8 | EA | 126.50 | 1,012.00 |
| | . | | | | |
| | SHIPPED ON 11/6/12 | | | | |
| | . | | | | |
| | RENTAL BEGAN ON 11/6/12 | | | | |
| | . | | | | |
| | RENTAL CHARGES $632.50 FOR 14 DAYS<br>$126.50 PER DAY AFTER 14 | | | | |
| | . | | | | |


CAMERON

Invoice No : 913337428
Page      : 5  of   5

| Item | Material Number.<br>Description | Qty | Unit Net Price<br>USD | Extended Price<br>USD |
|------|-------------------------------|-----|----------------------|----------------------|
|      | FINAL BILLING PERIOD 3/28/13 - 4/4/13 |     |                      |                      |
| 120  | RENTAL<br>R2035677-02 S/N 26-M-0617 | 8  EA | 1,035.00 | 8,280.00 |

**Price Summary :**

Total Price :                194,296.00 USD

Total Invoice Value :        194,296.00 USD

Cameron is committed to complying with U.S. Export Administration Rules and Regulations. If this Order is being exported to you, or may be re-exported to an ultimate consignee or end-user abroad, the following applies: These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is prohibited.

RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading.

**NUMBER**
**R 125694**

Subject to Section 7 of conditions, if applicable bill of lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:
The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

**FROM** Cameron Division, Cooper Cameron Corp.  **DATE** 11/6/12

AT

CONSIGNED TO

**DESTINATION**  **STATE**  **COUNTY**  **WELL NO.**

**CARRIER** United Vision Logistics

| COMPANY VEHICLE | WILL CALL | OTHER H/S |
| --- | --- | --- |

(Signature of consignor.)
If charges are to be prepaid, write or stamp here, "To be Prepaid."

| NO. PKG | DESCRIPTION | WEIGHT | Rate | NO. PKG. | DESCRIPTION | WEIGHT | Rate |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 SKD | FLuid | | | | PACKING DEVICES, NOI 18 $ PCF | | |
| 4 PCS | FAB Stands | | | | | | |
| 4 PC'S | Shipping Stands | | | | PRESSURE GAUGES | | |
| 1 PC | CVC Tool | | | | SCALE WEIGHT INDICATOR | | |
| 1 PC | Job Box | | | | | | |
| 1 PC | HPU | | | | | | |

Recd $ ___ to apply in prepayment of the charges on the property described hereon.
Agent or Cashier.
Per ___
(the signature here acknowledges only the amount prepaid.)
Charges advanced:

**CARRIER NOTE:** IF PREPAID, ATTACH BLUE COPY AND MAIL TO PAUL BROUSSARD & ASSOC.
501 CRAWFORD, SUITE 401, HOUSTON, TX 77002.

Cameron Division, Cooper Cameron Corp.

Permanent post office address of shipper, P.O. BOX 1212, HOUSTON, TEXAS 77251-1212, U.S.A.

"If interstate consignment, then the provisions hereof shall be subject to the laws of Texas; all provisions not expressly restricted by such laws shall be applicable to this shipment."

KEY GARCIA 031434

---



**CAMERON**

**RENTAL AGREEMENT**

| START RENTAL ON ___ | | | STOP RENTAL ON ___ |
| --- | --- | --- | --- |

MINIMUM RENTAL PERIOD OF ___ DAYS.

| DATE | CO. | WHSE. | TERRITORY | PR | FIELD ORDER NO. |
| --- | --- | --- | --- | --- | --- |
| 11/6/12 | 50 | 26 | | | R 125694 |

PAGE 1 of 2

Bluewater Contract

CUSTOMER CODE 2T011440

Spitzer Heavy Fabrication
13863 Industrial Rd.
Houston, Tx. 77015
WELL NO. GC299  OCSG-15571

| F.O.B. SHIPPING POINT | ORDERED BY | TAKEN BY | SHIPPED FROM | SHIPPED VIA | CUSTOMER'S ORDER NUMBER |
| --- | --- | --- | --- | --- | --- |
| | Trent Case | 13111 | Patterson | | PO# 1111-031 rev 1 |

| ITEM | QUAN. | PART NUMBER | UNIT PRICE | DESCRIPTION |
| --- | --- | --- | --- | --- |
| 1 | 1 | RCVC HPU-2 | $5,000 for 7 days / $960 per day after 7 days | HPU  26-m-0502 |
| 2 | 1 | R CVC BOX-3 | n/c | Job Box  26-m-0550 |
| 3 | 1 | R2155807-05 | $15,375 for 14 days / $2500 per day after 14 days | CVC Running Tool  26-m-0160 |
| 4 | 1 | Rent | $3,354.64 | 1 drum Transaqua |

EQUIPMENT LISTED HEREIN RECEIVED; I HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS ON THE REVERSE SIDE HEREOF AND REPRESENT THAT I AM AUTHORIZED TO SIGN THIS RENTAL AGREEMENT AS CUSTOMER'S AGENT.

CUSTOMER ___  DATE 11/26/12  TIME ___ A.M. P.M.

CAM-531-M

**HOUSTON SALES OFFICE**

READ TERMS ON REVERSE SIDE

# CAMERON

| DATE | | CO | WHSE | TERRITORY | | PR | FIELD ORDER NO. |
|------|---|----|------|-----------|---|----|------------------|
| 11/6/12 | | 50 | 26 | | | | R 125694 |

BILLING ADDRESS:
Bluewater
Contract'

ZIP CODE

SHIP TO:
Spitzer Heavy Fabrication   PAGE 2 of 2
13863 Industrial Road
Houston, Tx. 77015

CUST CODE
WELL No. GC 899  OCSG-15571

WE CODE: 2 1 0 1 4 4 0

| FOR SHIPPING/FREIGHT | ORDERED BY | TAKEN BY | SHIPPED FROM | SHIPPED VIA | CUSTOMER'S ORDER NO. |
|------|------------|---------|--------------|-------------|----------------------|
| COMPLIMENT, CHIPPED FROM, HOUSTON, TEXAS | Trent Case | 13111 | Patterson | | PO# 1111-031 rev 01 |

| R | ITEM | QUAN. | PART NUMBER | UNIT PRICE | DESCRIPTION | CLASS |
|---|------|-------|-------------|------------|-------------|-------|
| | 5 | 1 | R215517-05 | $17,250 for 14 days $3,450 per day after 14 days | 6"10K Test Skid + Fab. Stand Skid-26-m-0288 Stand-26-m-0400 | |
| | 6 | 1 | R215597-05 | $17,250 for 14 days $3,450 per day after 14 days | 6"10K Test Skid + Fab. Stand Skid-26-m-0559 Stand-110176607-01 14'l5 6'w 6'h | |
| | 7 | 1 | R215597-05 | $17,250 for 14 day $3450 per day after 14 days | 6"10K Test Skid + Fab. Stand Skid-26-m-0464 Stand-10007680 | |
| | 8 | 1 | R215517-05 | $17,250 for 14 days $3450 per day after 14 days | 6"10K Test Skid + Fab. Stand Skid-26-m-0564 Stand-110176604-01 | |
| | 9 | 1 | R2215824-01 | $6,900 for 14 days $1381 per day after 14 days | 6"10K Shipping Stand 26-m-0283 | |
| | 10 | 1 | R2215824-01 | $6,900 for 14 days $1381 per day after 14 days | 6"10K Shipping Stand 26-m-0558 | |
| | 11 | 1 | R2215824-01 | $6,900 for 14 days $1381 per day after 14 days | 6"10K Shipping Stand 26-m-0627 | |
| | 12 | 1 | R2215824-01 | $6,900 for 14 days $1381 per day after 14 days | 6"10K Shipping Stand 26-m-0628 | |

CAM-99-G

**HOUSTON SALES OFFICE COPY**

# INVOICE

 **CAMERON**

| | |
|---|---|
| **Invoice No** | : 913341250 |
| **Invoice Date** | : APR 30 2013 |
| **Page** | : 1   of   2 |

**Remit To:**
OneSubsea LLC
P.O. Box 732162
Dallas, TX 75373-2162

**Inquiries To :**
OneSubsea LLC
4646 W Sam Houston Parkway N
Houston, Texas 77041
Phone 713-93 9-2211

**Wire Transfer To:**
JPMorgan Chase Bank
New York, NY  10004
Account #: 192987706
ABA #: 021000021
Swift #: CHASUS33
**ACH Remit To:**
JPMorgan Chase Bank
Chicago, IL
Account #: 192987706
ABA #: 071000013

| | |
|---|---|
| Payment Terms | : Cash in Advance |
| Terms & Conditions | : As Attached/Included |
| Freight Terms | : Ex Works      BERWICK |
| Ship From | : BAYOU VISTA LA |
| Shipped Date | : MAR 18 2013 |

Invoice to: 21011440
BLUEWATER INDUSTRIES LP
ATTN:  ACCOUNTS PAYABLE
5300 MEMORIAL STE 550
HOUSTON TX  77007

Ship To: 43217767
BLUEWATER INDUSTRIES
GREEN CANYON 300 OCSG 22939
SPITZER YARD
13863 INDUSTRIAL RD
HOUSTON TX   77213

Inside Sales Contact : Gwen Luu / 985-395-1692      Sales Order : 2979805      Delivery Note : 84763494

| | |
|---|---|
| **Customer Reference** | : 1111-031-REV1 |
| **Placed By** | : ALBERT MASON |
| **Functional Location** | : GM2-2041-0001-0002 |
| **Description** | : GC 300 OCSG 22939 (21011440) |
| **Project Reference** | : (DOC) FSO 363255 |

**PO#: 1111-031 REV1**
**WELL LOCATION: GC 300 #2**
**OCSG#: 22939**
**M/V NAME: NORMAND COMMANDER**
**JOB REQUESTED: ALBERT MASON**
**SERVICE BEGIN DATE: 12/20/12**
**SERVICE END DATE:  04/01/13**
**SERVICE HAND: BRAD THERIOT**

| Item | Material Number. Description | Qty | Unit Net Price USD | Extended Price USD |
|---|---|---|---|---|
| 10 | SUBSEAOFFSHORE OFFSITE DAY RATE SUBSEA LABOR CAMERON SERVICEMAN CALLED OUT TO LOCATION TO PERFORM WORK AS REQUESTED. NOTE: PLEASE REFER TO SERVICE TICKET ATTACHED FOR COMPLETE SERVICE | 13.0  DY | 2,581.00 | 33,553.00 |

CAM—2283-1

 **CAMERON**

|  | | | |
|---|---|---|---|
| **Invoice No** | : 913341250 | | |
| Page | : 2 of 2 | | |

| Item | Material Number.<br>Description | Qty | Unit Net Price<br>USD | Extended Price<br>USD |
|---|---|---|---|---|
|  | REPORT.<br>BRAD THERIOT PERFORMED THIS JOB | | | |
| 20 | MILEAGE<br>MILEAGE (ROUNDTRIP CAMERON, BERWICK, LA TO SPITZER SHIPYARD,<br>CHANNELVIEW, TX - CHANNELVIEW, TX) | 550.00  MI | 2.00 | 1,100.00 |
| 30 | EXPENSE-RT<br>MEALS (EXPENSE COST = 20%) | 1  EA | 245.64 | 245.64 |

**Price Summary :**

| | |
|---|---|
| **Total Price :** | **34,898.64 USD** |
| **Total Invoice Value :** | **34,898.64 USD** |

Cameron is committed to complying with U.S. Export Administration Rules and Regulations. If this Order is being exported to you, or may be re-exported to an ultimate consignee or end-user abroad, the following applies: These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is prohibited.

2041-0001-0002

**CAMERON**   I/C

FIELD SERVICE ORDER NO.
**363255**

**FIELD SERVICE ORDER**
CAM-2303-E

| SALES ORDER NO. | PURCHASE ORDER NO./CONTRACT NO. | | P.O. DATE | COUNTY | | STATE |
|---|---|---|---|---|---|---|
| | PO# 1111-031-rev 1 | | | | | |

| ORDERED BY | | RIG NAME | FED. WAT. | FREIGHT | VIA | LOCATION |
|---|---|---|---|---|---|---|
| Albert Mason | | M/V Norman Commander | Yes | | | 5026 |

WELL REFERENCE/DOC. NO.   GC 800 Well #2   OCSG 15571   BILL OF LADING   CARRIER #3241

| BILL TO | SOLD TO | SHIP TO |
|---|---|---|
| Blue Water Industries | | Spitzer Shipyard 43217 Channelview, Texas |

| WELLHEAD | SIZE | MAKE | S/N | W.P. | PN |
|---|---|---|---|---|---|
| VALVE | SIZES | MODEL | TRIM | S/N | W.P. | PN |
| HANGER | SIZE | TYPE | CSG/TBG SIZE | WEIGHT | GRADE | THREAD |

**WORK PERFORMED**

Drove to Spitzer yard to perform lift tests on jumpers PLJ & W2PJ.
Drove to Carlyss, La. to board Norman Commander.
Installed both jumpers and completed 2 hour hold on back side of gaskets.
Rode vessel back to port.

mileage charges:
from Berwick La. to Channelview Texas
from Channelview, Texas to Carlyss La.
from Carlyss La. to Berwick La.

| ITEM | QTY. | DESCRIPTION | PART NO. | UNIT PRICE | DISCOUNT | TOTAL |
|---|---|---|---|---|---|---|
| | | Back charge for 1 day (Dec. 20th, not charged on previous tickets) | 1 Day @ | 2581.00 | | 2581.00 |

**F.O.B. MANUFACTURING PLANT**   TOTAL PARTS AND MATERIALS

| | FROM: HR & DATE | TO: HR & DATE | REG. HOURS | O.T. HOURS | RATE | O.T. RATE | |
|---|---|---|---|---|---|---|---|
| LABOR | 3-21-13 | 4-1-13 | Days 12 | | 2581.00 | | 30,972.00 |
| LODGING | FREIGHT OR MISCELLANEOUS | MEALS 364.10 + 2070 = 2434.10 | MILEAGE 550 | @ 2.00 PER MILE | | | 1,100.00 |

| PERFORMANCE REVIEW | EXCEEDED EXPECTATIONS | MET EXPECTATIONS | NEEDS IMPROVEMENT | DID NOT MEET EXPECTATIONS | EST. CHARGES |
|---|---|---|---|---|---|
| Serviceman Arrived at Location On Time | ☐ | ☐ | ☐ | ☐ | TOTAL CHARGES $34,898.16 |
| Serviceman's Attitude | ☐ | ☐ | ☐ | ☐ | JOB TYPE |
| Serviceman's Competency | ☐ | ☐ | ☐ | ☐ | Drilling ☐ |
| Service Facility Office Support | ☐ | ☐ | ☐ | ☐ | Section  A  B  C  (circle one) |
| Did Serviceman Properly Review CAM Issued JHA | ☐ | ☐ | ☐ | ☐ | System _____ (fill in MBS TSW SS etc.) |
| OTHER (PLEASE LIST) | ☐ | ☐ | ☐ | ☐ | Hanger  IC  S  Man. (circle one) |

| CUSTOMER STAMP | RIG DELAY RESULTING FROM CAMERON SERVICE OR EQUIPMENT? | |
|---|---|---|
| | ☐ YES    ☐ NO | Completion/Decompletion ☐ |
| | IF YES PLEASE GIVE YOUR COMMENTS: | Frac tree ☐ |
| | | Prod. Tree ☐ |
| | | Lubricator ☐ |
| | | Production ☐ |
| | | Greasing ☐ |
| | | Valve / Act. ☐ |
| | | SD Lubricator ☐ |
| | | OTHER ☐ |

CAMERON REP "Print"  Brad Theriot   "Signature"   DATE  4-1-2013
CUSTOMER REP "Print"  Albert Mason   "Signature"   DATE  4-29-13

| Reviewed by District Mgr. | FPR Submitted | ☐ YES | ☐ NO |
|---|---|---|---|
| Signature | FPR# | | |
| Date | Date | | |

Brad Theriot
FSO # 290586

Restaurant 443

1118 Lowe-Grout Road
Iowa, LA 70647
(337)582-3719

3/22/2013                    2:08:22 AM
Order 385737        Cashier:

1 1/2 SIX DOLLAR THICKBURGE    6.94
   1/2LB SIX DOLLAR BUR
   NO TOMATO
   ADD PICKLES
   MED FRIES
   BOTTLED WATER

         SubTotal      6.94
         Tax           0.64
         Total         7.58
         MasterCard    7 58
         Acct:XXXXXXXX1538

         Approval:078353

*********************************
    Your Order Number is
      Order 385737

*********************************
        Drive Thru
   Thank you for visiting!

---

Lake Charles, LA 70605
            478-7244

Server: Holly              03/23/2013
Table 224/1                 5:34 PM
Guests: 2                    20057
Area: RESTAURANT

Combo Appetizer              9.99
Sprite                      2.29
Country Fried Chicken      10.49
   Baked Potato
      Bacon Bits            0.50
Sweet Tea                   2.29
Country Fried Chicken      10.49

Complete Subtotal          36.05

Subtotal                   36.05
Tax                         3.24

Total                      39.29

**Balance Due**            39.29
                          +8.00
   Please pay your server.  47.29
   Did you try one of our
   Legendary Margaritas or Ice

---

Baytown, AUTO
   3050 East Frwy.
Baytown, TX 77521-8371

Server: Kayla
11:55 AM
Table 114/1

DOB: 03/22/
     03/22/
     3/

31-

SALE

MASTERCARD
Card: XXXXXXXXXXX1538
Magnetic card present: THERIOT BRAD
Card Entry Method: S

Approval: 036910

Amount:   $ 29.95

+ Tip: _____

= Total: _29.95_

I agree t
total according to the

Brad Theriot
FSO# 310586

```
F-01
SvrChk:
TERM 1 POSDRVR

BREAKFAST BUFFET              8.29
SOFT DRINK                   1.99

              Sub Total:    10.28
              Tax      :     0.87
03/23  9:55a TOTAL:       11.15


              AMT-TEND  CHANGE  TALLY
MASTERCARD     11.15                11.15
                              -------
                                    11.15

TOTAL SALES:   11 15

(Re                             -1538,
```

```
         Save money. Live better.
            1.985.1.396.- 2094
          MANAGER GERALD CUPP
           973 HIGHWAY 90 E
           MORGAN CITY LA 70380
ST# 0540 OP# 00000011 TE# 23 TR# 0755
5QT BUCKET   007602626067        0.97
5QT BUCKET   007602626067        0.97
5QT BUCKET   007602626067        0.97
              SUBTOTAL           2.91
CANDY        007518615797 F      1.00
CANDY        007518615797 F      1.00
CANDY        007518615797 F      1.00
              SUBTOTAL           5.91
HRSHY MILK D 001070002152 F      0.98
HRSHY MILK D 001070002152 F      0.98
HRSHY MILK D 001070002152 F      0.98
HRSHY MILK D 001070002152 F      0.98
HRSHY MILK D 001070002152 F      0.98
              SUBTOTAL          10.81
SUGAR CANDY  007920026840 F      5.48
SUGAR CANDY  007920026840 F      5.48
TWIX MINIS   004000020882 F      2.88
TWIX MINIS   004000020882 F      2.88
TWIX MINIS   004000020882 F      2.88
TWIX MINIS   004000020882 F      2.88
              SUBTOTAL          33.29
EAS CANDY    004000006160 F      2.28
EAS CANDY    004000006160 F      2.28
EAS CANDY    004000006160 F      2.28
              SUBTOTAL          40.13
MINI PASTEL  003400021371 F      2.88
MINI PASTEL  003400021371 F      2.88
MINI PASTEL  003400021371 F      2.88
MINI PASTEL  003400021371 F      2.88
              SUBTOTAL          51.65
SNICKERS     004000021178 F      2.88
SNICKERS     004000021178 F      2.88
SNICKERS     004000021178 F      2.88
SNICKERS     004000021178 F      2.88
              SUBTOTAL          63.17
M MS MINIS   004000045085 F      2.88
M MS MINIS   004000045085 F      2.88
M MS MINIS   004000045085 F      2.88
M MS MINIS   004000045085 F      2.88
              SUBTOTAL          74.69
         TAX 1   8.000 %         0.23
         TAX 2   4.000 %         2.87
              TOTAL             77.79
              MCARD TEND        77.79
ACCOUNT #:        **** **** **** 1538
APPROVAL
```

Drael Theriot
FSO# 390586

```
                        2 PM
Register:          343 Op ID: 2
     Your cashier: Cashier

Nestle Pure Life 700mL       $1.29 103
Nestle Pure Life 700mL       $1.29 103
BUFFALO STYLE RANCH DAVI
5 @ $1.99                     $9.95 103
                          -----------
         Subtotal =          $12.53
             Tax =            $0.66
                          -----------
           Total =           $13.19

        Change Due =         $0.00

Credit
                             $13.19
                          ---------
```

```
1 Spicy Ch +LG-EF  (###)          7.08
  Only Ketchup
  Lrg French Fry
  Lrg Coke
1 Grl Chx Strp 4                  4.59
**********************************

        FREE 2 TACOS
  with purchase on your next visit:
1) Within 3 days...
   visit www.JackListens.com
   or call 1-855-835-5225.
2) Enter...
   11 digit code: 7832 0159 071
   Date of Service: 4/1/2013
   Time of Service: 15:20
3) Write the provided Validation code here:

----------------------------------
              Coupon Code: 989
4) Bring this receipt to a Jack in the Box
   to receive your two free tacos with
   purchase on your next visit.

     Esta encuesta esta
     disponible en espanol.

One coupon per order. This offer is not
valid with any other offer or discount.
Jack in the Box employees and their
families are not eligible. Not
transferable. This offer is valid
for 7 days after completion of the survey.
********************************
             SubTotal         11.67
             Tax               1.08

             Total           12.75
             Master Card     12.75
Acct: xxxxxxxxxx1538
Authorization: 014002

     Thank you for your visit
              159071
                                  JAB21
```

# Expense Authorization Sheet

**CAMERON**

**390586**

| Expense amount | Date | Expense explanation & attendees |
|---|---|---|
| $7.58 | 3/22/2013 | Meal, Brad Theriot |
| $34.95 | 3/22/2013 | Meal, Brad Theriot Alfred Clayton |
| $11.15 | 3/23/2013 | Meal, Brad Theriot |
| $47.29 | 3/23/2013 | Meal, Brad Theriot Alfred Clayton |
| $77.79 | 3/23/2013 | Easter candy for company reps, Brad Theriot |
| | | |
| $12.75 | 4/1/2013 | Meal, Brad Theriot |
| $13.19 | 4/1/2013 | Meal, Brad Theriot |
| | | |
| | | |
| | | |
| | | |
| | | |
| 204.70 | total | Expense   Cost 7207 = 245 64 |
| Employee Name: | | Brad Theriot |

## TERMS AND CONDITIONS OF SALE

**1. CONTRACT ACCEPTANCE:**
Any written or oral purchase order received from Buyer by Seller shall be construed as a written acceptance of Seller's offer to sell and shall be filled in accordance with the terms and conditions of sale set forth herein. SELLER'S ACCEPTANCE OF THIS ORDER IS EXPRESSLY CONDITIONED ON BUYER'S ASSENT TO THE TERMS CONTAINED HEREIN.   The terms and conditions of Seller's proposal (if any) and acknowledgement shall prevail over any conflicting or different terms in Buyer's order unless Buyer notifies Seller in writing of its objections thereto within fifteen (15) days from receipt of Seller's acknowledgement. Buyer's standard terms of purchase will not be considered a counteroffer to Seller's terms and conditions of sale. The failure of Seller to object to any provision in conflict herewith whether contained on Buyer's purchase order or otherwise shall not be construed as a waiver of the provisions hereof nor as an acceptance thereof.

**2. QUOTATIONS AND PRICES:**
Any product, service capability or manufacturing capability which may be available at the time a quotation is made is subject to prior sale. Prices quoted are subject to change without notice. The price in effect at the time of shipment including any escalation formula will apply, unless a valid quotation or written agreement to the contrary exists between Buyer and Seller. All prices shown are in U.S. dollars and are F.O.B. Seller's shipping point. Seller reserves the right to place a service charge on past due accounts at the highest rate permitted by law. Any documentation pertaining to traceability requirements for raw materials or products or documentation required for any routine or special processes must be identified by the Buyer at the time of quotation (if any) or at the time of order placement.

**3. TAXES:**
Any tax or other charge imposed by law on the sale or production of goods or the performance of services shall be paid by the Buyer, unless the law specifically provides that such payment must be made by Seller, in which case Buyer shall reimburse Seller for such payment as part of the purchase price. Custom duties, consular fees, insurance charges and other comparable charges will be borne by Buyer.

**4. SHIPPING SCHEDULE AND DELIVERY:**
Shipment schedules are given as accurately as conditions permit and every effort will be made to make shipments as scheduled. Seller will not be responsible for deviations in meeting shipping schedules nor for any losses or damages to Buyer (or any third party) occasioned by deviations in the shipping schedule, whether due to Acts of God, orders bearing priority ratings established pursuant to law, differences with workmen, local labor shortages, fire, flood, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment or any other causes beyond Seller's reasonable control, whether of similar or dissimilar nature than those enumerated. Seller shall have additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider to be equitable. Seller reserves the right to furnish commercially equivalent or better substitutes for materials or to subcontract the Buyer's order or portions thereof as Seller deems necessary. In no event shall Seller be liable for any consequential damages resulting from failure or delay in shipment. If Buyer requires drawings, procedures, standards or similar material for approval, shipping schedules will be calculated from the time such approvals are received by Seller, since shipping schedules are based on Seller having all required information and a firm order from Buyer which is enterable into production. Any hold points, witness points or the need for inspection by Buyer's representatives must be identified by Buyer at the time of quotation (if any) and/or order placement in order that the effect on the prices or shipping schedules (if any) can be taken into account. Additional inspection or testing required by Buyer which affects normal production sequence will be considered as extending the shipping dates accordingly.

**5. TERMS OF PAYMENT:**
Terms of payment are 30 days from date of invoice unless otherwise stated in the quotation or Seller's order acknowledgment.

**6. CANCELLATIONS AND RETURNS:**
Purchase orders once placed by Buyer and accepted by Seller can be canceled only with Seller's written consent and upon terms which will save Seller from loss. No products may be returned for credit or adjustment without written permission from Seller's office authorized to issue such permission.

**7. WARRANTIES:**
All products of Seller's manufacture except for its Orbit product are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires while its Orbit product is warranted for thirty six (36) months from date of shipment, when all such products are used in the service and within the pressure range for which they were

1

manufactured. In the case of products or parts not wholly of Seller's manufacture, Seller's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Seller. Any repair work performed by Seller is warranted for one year from completion of such repairs and applies only to work performed. If, within these specified periods, Seller receives notice from Buyer of any alleged defect in or nonconformance of any product or repair and if in the Seller's sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Buyer shall, at Seller's request, return the part or product F.O.B. to Seller's designated plant or service location. Seller has no liability for removal or reinstallation of products or equipment. Seller, at its option and expense, shall repair or replace the defective part or product, or repay to Buyer the full price paid by Buyer for such defective part, repair or product. Any repayment of purchase price shall be without interest. Seller's warranty liability, including defects caused by Seller's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs, expenses of Buyer resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind. Seller will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Seller, failures due to lack of compliance with recommended maintenance procedures or products which have been repaired or altered in such a way (in Seller's judgment) as to affect the products adversely. THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY.

**8.ENGINEERING AND SERVICE:**
Upon request, Seller will provide engineering and/or technical information regarding its products and their uses and, if feasible, will provide personnel to assist Buyer in effecting field installations and/or field service. Any such information, service or assistance so provided, whether with or without charge, shall be advisory only

**9. LABOR STANDARDS:**
Seller hereby certifies that these products were produced in accordance with all applicable requirements of Section 6, 7 and 12 of the Fair Labor Standards Act as amended and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

**10. INSPECTION:**
Unless otherwise agreed in writing, final inspection and acceptance of products must be made at Seller's plant or other shipping or receiving point designated by Seller and shall be conclusive except as regards latent defects. Buyer's representatives may inspect at the Seller's plant or shipping point during working hours prior to shipment in such manner as will not interfere with operations.

**11. DELIVERY AND ACCEPTANCE:**
Delivery shall be in accordance with the requirements in the Purchase Contract, provided, in the event Buyer is unable to accept delivery upon completion of the manufacture of the Goods in accordance with such requirements, Buyer agrees that (i) title and risk of ownership shall pass to Buyer on date of Seller's invoice, and (ii) Buyer will make payments within thirty days after date of such invoice. Seller shall retain custodial risk of loss until delivery is made in accordance with such requirements.

**12. EXPORT COMPLIANCE:**
The Buyer shall provide the Seller with relevant end-use, end-user and country of end-use information with respect to the goods, services, software or technology to be supplied hereunder (collectively, "Items"). Based on and in reliance on such information, the Seller will supply such Items in compliance with applicable trade and customs laws including that of the United States of America. The Seller cautions and the Buyer acknowledges that any change in end-use, end-user or country of end-use (including a shipment between countries other than the U.S.) may be restricted or prohibited by applicable trade and customs law, whether it be of the U.S. or other country. The Parties shall comply with all trade and customs laws (including U.S. Export Controls) except for any such laws which conflict with or are otherwise penalized under the laws of the U.S., which in the event of such conflict, Seller shall notify Buyer. The Buyer agrees in particular that it shall not use and shall not permit any third party to use such items in connection with the design, production, use, or storage of chemical, biological or nuclear weapons or missiles of any kind.

CAM/T&C/US/10

**13. TRANSPORTATION CHARGES, ALLOWANCES, CLAIMS:**
All prices are F.O.B. Seller's plant or other designated shipping point. No freight is allowed unless stated in Seller's quotation (if any) or in a written contract which may exist between Seller and Buyer at the time of shipment. If Seller's quotation or a written contract states that all or a portion of freight is allowed, all prices are F.O.B. Seller's plant or other designated shipping point, with most economical surface transportation allowed. If the quoted or contractual price includes transportation, Seller reserves the right to designate the common carrier and to ship in the manner it deems most economical. Added costs due to special routing requested by the Buyer are chargeable to the Buyer. Under no circumstances is any freight allowance which is absorbed by Seller to be deducted from the selling price. If the quoted price or contract includes transportation, no deduction will be made in lieu thereof whether Buyer accepts shipment at plant, warehouse, freight station, or otherwise supplies its own transportation. When sales are made from the Seller's warehouse, Seller reserves the right to charge either actual or pro-rated freight from Seller's principle point of manufacture to Seller's warehouse. Buyer assumes risk of loss upon delivery to the carrier, regardless of who pays shipping costs. Seller endeavors to pack or prepare all shipments so that they will not break, rust or deteriorate in transit, but does not guarantee against such damage. Unless requested in writing by the Buyer, no shipments are insured by Seller against damage or loss in transit. Seller will place insurance as nearly as possible in accordance with Buyer's written instructions but in such case Seller acts only as agent between the insurance company and the Buyer and assumes no liability whatsoever. Any claims for shipping loss, breakage or damage (obvious or concealed) are Buyer's responsibility and should be made to the carrier. All claims regarding shortages must be made within thirty (30) days from receipt of shipment and must be accompanied by the packing list(s) covering the shipment.

**14. INDEMNIFICATION AND LIMITATION OF LIABILITY:**
**A. INDEMNIFICATION:**
"Buyer Group" means: Buyer, its parent (if any), subsidiaries, affiliates, co-owners, co-venturers, partners and any entity with whom Buyer has an economic interest with respect to the Work including Buyer's customer and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Seller Group),
"Seller Group" means: Seller, its parent (if any), subsidiaries, affiliates, co-owners and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Buyer Group),
"Negligence" means: sole, joint or concurrent, active, passive or gross negligence, willful misconduct, strict liability, product liability or any other legal cause of action.
"Claims" means any and all claims, demands, losses, damages and causes of action of whatever kind or nature. Unless otherwise specified, Claims is to be read in its broadest sense to include all claims by a first party (which includes any member of either Buyer Group or Seller Group) or by a third party (which includes any person or entity not included in Buyer Group or Seller Group.
(1) Seller shall release, defend, save, indemnify (collectively "Indemnify") and hold Buyer Group harmless from and against all Claims, for loss of or damage to the property of the members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.
(2) Seller shall Indemnify and hold Buyer Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.
(3) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for loss of or damage to the property (including the Work) of the members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.
(4) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.
(5) Except as provided in Section 14A(6) below, Buyer (on its own behalf and on behalf of Buyer Group) and Seller (on its own behalf and on behalf of Seller Group) shall Indemnify and hold each other harmless from and against any and all Claims asserted against them by or on behalf of any third party for the death(s) of or personal injury (ies) to such a third party, as well as loss (es) of or damage(s) to the property of such a third party. It is agreed by Buyer and Seller that their respective duty of indemnity to each other with respect to Claims asserted against them by a third party pursuant to this Article 14 (A) (5) shall be limited to their respective degree of Negligence.
(6) Notwithstanding any other provision contained in this Agreement, Buyer shall Indemnify and hold the members of Seller Group harmless from and against all Claims (including clean-up costs and loss (es) of oil, gas or

CAM/T&C/US/10

3

hydrocarbons) arising from (i) pollution, contamination, dumping or spilling of any substance, (ii) blowout, (iii) fire, or (iv) loss of, or damage to, wells, formations or mineral rights, even if arising out of or attributable to the Negligence of the members of the Seller Group.

(7) Notwithstanding any other provision contained in this Agreement, Buyer shall be responsible for and shall reimburse and Indemnify Seller in respect of any loss of or damage (excluding normal wear and tear) to Seller Group property, materials or equipment (tools) or components which (i) is damaged or lost whilst in-hole below the rotary table or (ii) is leased or borrowed by Buyer.

**B. INDEMNITY FOR CONSEQUENTIAL DAMAGES:**
UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES (collectively "CONSEQUENTIAL"), AS DEFINED BY THE LAWS GOVERNING THIS PURCHASE ORDER, NOR FOR ANY LOSS OF ANTICIPATED PROFITS, LOSS OF BUSINESS OPPORTUNITY, LOSS OF USE OF EQUIPMENT OR OF ANY INSTALLATION, SYSTEM OR FACILITY INTO WHICH SELLER'S EQUIPMENT MAY BE LOCATED OR AT WHICH MEMBERS OF THE SELLER GROUP MAY BE PERFORMING WORK AND BUYER AGREES TO "INDEMNIFY" AND HOLD SELLER GROUP HARMLESS FROM AND AGAINST ANY "CLAIMS" FOR SUCH DAMAGES EVEN IF ARISING OUT OF OR ATTRIBUTABLE TO THE "NEGLIGENCE" OF THE MEMBERS OF THE SELLER GROUP.

**C. LIMITATION OF LIABILITY:**
EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND/OR LIABILITIES HEREBY ASSUMED BY THE PARTIES SHALL BE: (i) SUPPORTED BY INSURANCE; (ii) WITHOUT LIMIT; (iii) AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, BUT NOT LIMITED TO, PREEXISTING CONDITIONS (WHETHER SUCH CONDITIONS BE PATENT OR LATENT); THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS (WHETHER OR NOT PREEXISTING); THE UNAIRWORTHINESS OF ANY AIRCRAFT; BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED); BREACH OF CONTRACT; BREACH OF DUTY (STATUTORY, CONTRACTUAL, COMMON LAW OR OTHERWISE); STRICT LIABILITY; CONDITION OF RUIN OR DEFECTIVE PREMISES, EQUIPMENT, FACILITIES, OR APPURTENANCES OF ANY PARTY UNDER ANY CODE, LAW OR (WHETHER OR NOT SAID CONDITION IS PREEXISTING AND/OR LATENT, PATENT OR OTHERWISE); THE LOADING OR UNLOADING OF PERSONS OR CARGO; TORT; OR THE NEGLIGENCE OR FAULT OF ANY PARTY (AS DEFINED AT THE BEGINNING OF THIS ARTICLE 14; OR ANY OTHER THEORY OF LEGAL LIABILITY. Seller's total responsibility for any claims, damages, losses or liability arising out of or related to its performance of this contract or the products or services covered hereunder shall not exceed 20% of the purchase price under the applicable purchase order.

**D. BUYER's CUSTOMER AND SUPPLIER INDEMNITIES:**
Notwithstanding anything in these terms or the order to the contrary, in the event that Buyer is entitled to indemnity under any contract with its customers or suppliers with respect to pollution and consequential losses described in Section 14A(6) and 14B above in connection with work performed under this Agreement, Buyer will provide Seller Group with the benefit of such indemnity to the fullest extent possible under such contracts with Buyer's customers and suppliers.

**E. CARE OF RENTAL EQUIPMENT:**
(1)      The Buyer, at its sole expense, shall be responsible for ensuring that the rental equipment is maintained in good working order and operating condition at all times the Buyer maintains possession of the rental equipment. The rental equipment shall be maintained in good working order and operating condition, at Buyer's expense, and shall be returned in the same condition as when received, ordinary wear and tear alone excepted.

(2)      Seller shall conduct an inspection ("Inspection and Disposition") of the rental equipment to determine if the rental equipment is in good working order and operating condition. If Seller after the Inspection and Disposition finds that the rental equipment is not in good working order and operating condition and is in need of refurbishment, remanufacture, and/or replacement, Seller shall prepare and submit a quotation and invoice, as necessary, prior to any repair work taking place to Buyer detailing the costs and expenses Buyer is obligated to pay to maintain the rental equipment in good working order and operating condition.

(3)      The Buyer shall be liable for all costs and expenses for the refurbishment of the rental equipment to its original state and condition, save and except for ordinary wear and tear. Without prejudice to the generality of the foregoing and for the avoidance of doubt, damage and deterioration in the rental equipment requiring welding machining or coating operations are not considered as normal wear and tear. Any costs and expenses for the refurbishment of the rental equipment shall be invoiced to Buyer upon the return and Inspection and Disposition of

the rental equipment. All costs for refurbishment and labor charges shall be specified in the pricing schedule or such other similar document agreed to by the parties.

(4)     In respect of the rental equipment which requires welding machining or coating operations or other remanufacturing related actions, Seller will repair all damaged equipment, at the cost and expense of the Buyer. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place, Seller shall prepare and submit a quotation and invoice detailing the expected costs to repair the rental equipment to its original state and condition.

(5)     In respect of rental equipment which has been lost or damaged beyond repair, the Buyer shall be liable and shall pay to Seller, Seller's most recent replacement price item, as may be prescribed by Seller from time to time, with such replacement price taking into account the age, usage and depreciated value of the lost or damaged item as determined by Seller's standard accounting procedures.  Any such replacement price prescribed by Seller shall take into account the age, usage and actual value of the lost or damaged item. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place Seller will submit a quotation for the replacement price and an invoice to Buyer.

### 15. MODIFICATION, RESCISSION & WAIVER:

The terms herein may not be modified or rescinded nor any of its provisions waived unless such modification, rescission or waiver is in writing and signed by an authorized employee of Seller at its office in Houston, Texas. Failure of Seller to insist in any one or more instances upon the performance of any of the terms and conditions of the contract or the failure of Seller to exercise any of its rights hereunder shall not be construed as a waiver or relinquishment of any such term, condition, or right hereunder and shall not affect Seller's right to insist upon strict performance and compliance with regard to any unexecuted portions of this contract or future performance of these terms and conditions.

All orders must be accepted by an authorized employee of Seller.  The rights and duties of the parties and construction and effect of all provisions hereof shall be governed by and construed according to the internal laws of the State of Texas.  Any disputes which arise under this agreement shall be venued in the District Court of Harris County, Texas or in the Southern District of Texas.

# INVOICE

 **CAMERON**

| | |
|---|---|
| Invoice No | : 913383148 |
| Invoice Date | : JUN 13 2013 |
| Page | : 1  of  2 |

**Remit To:**
OneSubsea LLC
P.O. Box 732162
Dallas, TX 75373-2162

**Inquiries To :**
OneSubsea LLC
4646 W Sam Houston Parkway N
Houston, Texas 77041
Phone 713-939-2211

**Wire Transfer To:**
JPMorgan Chase Bank
New York, NY 10004
Account #: 192987706
ABA #: 021000021
Swift #: CHASUS33
**ACH Remit To:**
JPMorgan Chase Bank
Chicago, IL
Account #: 192987706
ABA #: 071000013

| | |
|---|---|
| Payment Terms | : Cash in Advance |
| Terms & Conditions | : As Attached/Included |
| Freight Terms | : Ex Works     BERWICK |
| Ship From | : BAYOU VISTA LA |
| Shipped Date | : MAR 18 2013 |

Invoice to: 21011440
BLUEWATER INDUSTRIES LP
ATTN:  ACCOUNTS PAYABLE
5300 MEMORIAL STE 550
HOUSTON TX  77007

Ship To: 43217767
BLUEWATER INDUSTRIES
GREEN CANYON 300 OCSG 22939
13863 INDUSTRIAL RD
HOUSTON TX  77213

Inside Sales Contact : Gwen Luu / 985-395-1692     Sales Order : 3013044     Delivery Note : 84821251

| | |
|---|---|
| Customer Reference | : 1111-031 REV1 |
| Placed By | : ALBERT MASON |
| Functional Location | : GM2-2041-0001-0002 |
| Description | : GC 300 OCSG 22939 (21011440) |
| Project Reference | : (DOC) FSO 390144 |

PO#: 1111-031 REV1
WELL LOCATION: GC 300 #2
OCSG#: 15571
M/V NAME: NORMAND COMMANDER
JOB REQUESTED: ALBERT MASON
SERVICE BEGIN DATE: 02/27/13
SERVICE END DATE:  03/06/13
SERVICE HAND: ALFRED CLAYTON

| Item | Material Number. Description | Qty | Unit Net Price USD | Extended Price USD |
|---|---|---|---|---|
| 10 | SUBSEAOFFSHORE OFFSHORE DAY RATE SUBSEA LABOR CAMERON SERVICEMAN CALLED OUT TO LOCATION TO PERFORM WORK AS REQUESTED. | 7.0  DY | 2,581.00 | 18,067.00 |

CAM—2283-1

 **CAMERON**

| Item | Material Number. Description | Qty | Unit Net Price USD | Extended Price USD |
|------|------------------------------|-----|--------------------|--------------------|
|      | NOTE: PLEASE REFER TO SERVICE TICKET ATTACHED FOR COMPLETE SERVICE REPORT. ALRED CLAYTON PERFORMED THIS JOB. | | | |
| 20   | MILEAGE MILEAGE (ROUNDTRIP CAMERON, BERWICK, LA TO SPITZER YARD, CHANNELVIEW, TX) | 540.00   MI | 2.00 | 1,080.00 |

**Price Summary :**

**Total Price :**            19,147.00 USD

**Total Invoice Value :**    19,147.00 USD

Cameron is committed to complying with U.S. Export Administration Rules and Regulations. If this Order is being exported to you, or may be re-exported to an ultimate consignee or end-user abroad, the following applies: These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is prohibited.

2041-0001-0002

2101740

# CAMERON   I/C

## FIELD SERVICE ORDER
CAM-0308-E

| | | LAND | OTHER | DATE PREPARED | PAGE | OF |
|---|---|---|---|---|---|---|
| | | | ✓ | 3-6-13 | 1 | 1 |

**FIELD SERVICE ORDER NO.** 390144

| SALES ORDER NO. | PURCHASE ORDER NO./CONTRACT NO. PO-1111-071  Verl | P.O. DATE | COUNTY | STATE La. |
|---|---|---|---|---|

| ORDERED BY Jimmy Jones  Albert Mason | RIG NAME Normand Commander | FED. WGT. 75 | FREIGHT | VIA CL | LOCATION 5026 |
|---|---|---|---|---|---|

| WELL REFERENCE/OCS. NO. Well #2   GC-300  OCSG-15573C22939 | BILL OF LADING | CARRIER 8342 | | |
|---|---|---|---|---|

| BILL TO Blue Water | SOLD TO | SHIP TO Channelview TX  Spitzer Shipyard | 43217767 |
|---|---|---|---|

| WELLHEAD | SIZE | MAKE | S/N | W.P. | P/N |
|---|---|---|---|---|---|
| VALVE | SIZES | MODEL | TRIM | S/N | W.P. | P/N |
| HANGER | SIZE | TYPE | CSG/TBG SIZE | WEIGHT | GRADE | THREAD |

**WORK PERFORMED**

Travel To Spitzer Yard in Channelview TX unlatch Jumper
From Test Stand did left Test and landed Jumper on
Diamond Odyssey Travel To Cowboss and headed The Normand
Commander 3-7-13 Transit To Jobsite
Job Scope is To Pull Pressure cap from G3 Plet and G3 Plet
and install Jumper
Transit back To Cowboss on The Normand Commander

| ITEM | QTY. | DESCRIPTION | PART NO. | UNIT PRICE | DIS-COUNT | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**F.O.B. MANUFACTURING PLANT**

**TOTAL PARTS AND MATERIALS**

| LABOR | FROM: HR & DATE 2-27-13 | TO: HR & DATE 3-6-13 | REG. HOURS | O.T. HOURS 72.5 @ | RATE 00 258T | O.T. RATE | $18,067.00 |
|---|---|---|---|---|---|---|---|
| LODG | | MISCELLANEOUS | MEALS | MILEAGE 540 | | @ 200 PER MILE | $1,080.00 |

| PERFORMANCE REVIEW | EXCE. EXPECTATIONS | EXPECTATIONS | NEEDS IMPROVEMENT | DID NOT MEET EXPECTATIONS | EST. CHARGES |
|---|---|---|---|---|---|
| Serviceman Arrived at Location On Time | ☐ | ☐ | ☐ | ☐ | TOTAL CHARGES $19,147.00 |
| Serviceman's Attitude | ☐ | ☐ | ☐ | ☐ | |
| Serviceman's Competency | ☐ | ☐ | ☐ | ☐ | Drilling ☐ |
| Service Facility Office Support | ☐ | ☐ | ☐ | ☐ | Section A  B  C (circle one) |
| Did Serviceman Properly Review CAM issued JHA | ☐ | ☐ | ☒ | ☐ | System (fill in WBS TSW/SBB etc) |
| OTHER (PLEASE LIST) | ☐ | ☐ | ☐ | ☐ | Hanger: IC : S : Misc (circle one) |
| | CUSTOMER STAMP | RIG DELAY RESULTING FROM CAMERON SERVICE OR EQUIPMENT ☐ YES  ☐ NO | | | Completion/Recompletion ☐ |
| | | IF YES PLEASE GIVE YOUR COMMENTS: | | | Frac Tree ☐ |
| | | | | | Prod. Tree ☐ |
| | | | | | Lubricator ☐ |
| | | | | | Production ☐ |
| | | | | | Greasing ☐ |
| | | | | | Valve / Act. ☐ |
| | | | | | SD Lubricator ☐ |
| | | | | | OTHER |

| CAMERON REP "Print" Alfred Clayton | "Signature" | DATE 3-19-13 |
|---|---|---|
| CUSTOMER REP "Print" Jimmy Jones | "Signature" | DATE 3-29-13 |

| | FPR Submitted ☐ YES  ☐ NO |
|---|---|
| Reviewed by District Mgr. | |
| Signature | FPR Submitted |
| Date | FPR# |
| | Date |

## TERMS AND CONDITIONS OF SALE

**1. CONTRACT ACCEPTANCE:**
Any written or oral purchase order received from Buyer by Seller shall be construed as a written acceptance of Seller's offer to sell and shall be filled in accordance with the terms and conditions of sale set forth herein. SELLER'S ACCEPTANCE OF THIS ORDER IS EXPRESSLY CONDITIONED ON BUYER'S ASSENT TO THE TERMS CONTAINED HEREIN.    The terms and conditions of Seller's proposal (if any) and acknowledgement shall prevail over any conflicting or different terms in Buyer's order unless Buyer notifies Seller in writing of its objections thereto within fifteen (15) days from receipt of Seller's acknowledgement.  Buyer's standard terms of purchase will not be considered a counteroffer to Seller's terms and conditions of sale. The failure of Seller to object to any provision in conflict herewith whether contained on Buyer's purchase order or otherwise shall not be construed as a waiver of the provisions hereof nor as an acceptance thereof.

**2. QUOTATIONS AND PRICES:**
Any product, service capability or manufacturing capability which may be available at the time a quotation is made is subject to prior sale.  Prices quoted are subject to change without notice.  The price in effect at the time of shipment including any escalation formula will apply, unless a valid quotation or written agreement to the contrary exists between Buyer and Seller.  All prices shown are in U.S. dollars and are F.O.B. Seller's shipping point.  Seller reserves the right to place a service charge on past due accounts at the highest rate permitted by law.  Any documentation pertaining to traceability requirements for raw materials or products or documentation required for any routine or special processes must be identified by the Buyer at the time of quotation (if any) or at the time of order placement.

**3. TAXES:**
Any tax or other charge imposed by law on the sale or production of goods or the performance of services shall be paid by the Buyer, unless the law specifically provides that such payment must be made by Seller, in which case Buyer shall reimburse Seller for such payment as part of the purchase price.  Custom duties, consular fees, insurance charges and other comparable charges will be borne by Buyer.

**4. SHIPPING SCHEDULE AND DELIVERY:**
Shipment schedules are given as accurately as conditions permit and every effort will be made to make shipments as scheduled.  Seller will not be responsible for deviations in meeting shipping schedules nor for any losses or damages to Buyer (or any third party) occasioned by deviations in the shipping schedule, whether due to Acts of God, orders bearing priority ratings established pursuant to law, differences with workmen, local labor shortages, fire, flood, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment or any other causes beyond Seller's reasonable control, whether of similar or dissimilar nature than those enumerated. Seller shall have additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider to be equitable. Seller reserves the right to furnish commercially equivalent or better substitutes for materials or to subcontract the Buyer's order or portions thereof as Seller deems necessary.  In no event shall Seller be liable for any consequential damages resulting from failure or delay in shipment.  If Buyer requires drawings, procedures, standards or similar material for approval, shipping schedules will be calculated from the time such approvals are received by Seller, since shipping schedules are based on Seller having all required information and a firm order from Buyer which is enterable into production.  Any hold points, witness points or the need for inspection by Buyer's representatives must be identified by Buyer at the time of quotation (if any) and/or order placement in order that the effect on the prices or shipping schedules (if any) can be taken into account.  Additional inspection or testing required by Buyer which affects normal production sequence will be considered as extending the shipping dates accordingly.

**5. TERMS OF PAYMENT:**
Terms of payment are 30 days from date of invoice unless otherwise stated in the quotation or Seller's order acknowledgment.

**6. CANCELLATIONS AND RETURNS:**
Purchase orders once placed by Buyer and accepted by Seller can be canceled only with Seller's written consent and upon terms which will save Seller from loss.  No products may be returned for credit or adjustment without written permission from Seller's office authorized to issue such permission.

**7. WARRANTIES:**
All products of Seller's manufacture except for its Orbit product are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires while its Orbit product is warranted for thirty six (36) months from date of shipment, when all such products are used in the service and within the pressure range for which they were

manufactured. In the case of products or parts not wholly of Seller's manufacture, Seller's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Seller. Any repair work performed by Seller is warranted for one year from completion of such repairs and applies only to work performed. If, within these specified periods, Seller receives notice from Buyer of any alleged defect in or nonconformance of any product or repair and if in the Seller's sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Buyer shall, at Seller's request, return the part or product F.O.B. to Seller's designated plant or service location. Seller has no liability for removal or reinstallation of products or equipment. Seller, at its option and expense, shall repair or replace the defective part or product, or repay to Buyer the full price paid by Buyer for such defective part, repair or product. Any repayment of purchase price shall be without interest. Seller's warranty liability, including defects caused by Seller's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs, expenses of Buyer resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind. Seller will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Seller, failures due to lack of compliance with recommended maintenance procedures or products which have been repaired or altered in such a way (in Seller's judgment) as to affect the products adversely. THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY.

**8.ENGINEERING AND SERVICE:**
Upon request, Seller will provide engineering and/or technical information regarding its products and their uses and, if feasible, will provide personnel to assist Buyer in effecting field installations and/or field service. Any such information, service or assistance so provided, whether with or without charge, shall be advisory only

**9. LABOR STANDARDS:**
Seller hereby certifies that these products were produced in accordance with all applicable requirements of Section 6, 7 and 12 of the Fair Labor Standards Act as amended and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

**10. INSPECTION:**
Unless otherwise agreed in writing, final inspection and acceptance of products must be made at Seller's plant or other shipping or receiving point designated by Seller and shall be conclusive except as regards latent defects. Buyer's representatives may inspect at the Seller's plant or shipping point during working hours prior to shipment in such manner as will not interfere with operations.

**11. DELIVERY AND ACCEPTANCE:**
Delivery shall be in accordance with the requirements in the Purchase Contract, provided, in the event Buyer is unable to accept delivery upon completion of the manufacture of the Goods in accordance with such requirements, Buyer agrees that (i) title and risk of ownership shall pass to Buyer on date of Seller's invoice, and (ii) Buyer will make payments within thirty days after date of such invoice. Seller shall retain custodial risk of loss until delivery is made in accordance with such requirements.

**12. EXPORT COMPLIANCE:**
The Buyer shall provide the Seller with relevant end-use, end-user and country of end-use information with respect to the goods, services, software or technology to be supplied hereunder (collectively, "Items"). Based on and in reliance on such information, the Seller will supply such Items in compliance with applicable trade and customs laws including that of the United States of America. The Seller cautions and the Buyer acknowledges that any change in end-use, end-user or country of end-use (including a shipment between countries other than the U.S.) may be restricted or prohibited by applicable trade and customs law, whether it be of the U.S. or other country. The Parties shall comply with all trade and customs laws (including U.S. Export Controls) except for any such laws which conflict with or are otherwise penalized under the laws of the U.S., which in the event of such conflict, Seller shall notify Buyer. The Buyer agrees in particular that it shall not use and shall not permit any third party to use such items in connection with the design, production, use, or storage of chemical, biological or nuclear weapons or missiles of any kind.

## 13. TRANSPORTATION CHARGES, ALLOWANCES, CLAIMS:

All prices are F.O.B. Seller's plant or other designated shipping point.  No freight is allowed unless stated in Seller's quotation (if any) or in a written contract which may exist between Seller and Buyer at the time of shipment.  If Seller's quotation or a written contract states that all or a portion of freight is allowed, all prices are F.O.B. Seller's plant or other designated shipping point, with most economical surface transportation allowed.  If the quoted or contractual price includes transportation, Seller reserves the right to designate the common carrier and to ship in the manner it deems most economical.  Added costs due to special routing requested by the Buyer are chargeable to the Buyer.  Under no circumstances is any freight allowance which is absorbed by Seller to be deducted from the selling price.  If the quoted price or contract includes transportation, no deduction will be made in lieu thereof whether Buyer accepts shipment at plant, warehouse, freight station, or otherwise supplies its own transportation.  When sales are made from the Seller's warehouse, Seller reserves the right to charge either actual or pro-rated freight from Seller's principle point of manufacture to Seller's warehouse.  Buyer assumes risk of loss upon delivery to the carrier, regardless of who pays shipping costs. Seller endeavors to pack or prepare all shipments so that they will not break, rust or deteriorate in transit, but does not guarantee against such damage.  Unless requested in writing by the Buyer, no shipments are insured by Seller against damage or loss in transit.  Seller will place insurance as nearly as possible in accordance with Buyer's written instructions but in such case Seller acts only as agent between the insurance company and the Buyer and assumes no liability whatsoever.  Any claims for shipping loss, breakage or damage (obvious or concealed) are Buyer's responsibility and should be made to the carrier.  All claims regarding shortages must be made within thirty (30) days from receipt of shipment and must be accompanied by the packing list(s) covering the shipment.

## 14. INDEMNIFICATION AND LIMITATION OF LIABILITY:
### A. INDEMNIFICATION:

"Buyer Group" means: Buyer, its parent (if any), subsidiaries, affiliates, co-owners, co-venturers, partners and any entity with whom Buyer has an economic interest with respect to the Work including Buyer's customer and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Seller Group),

"Seller Group" means:  Seller, its parent (if any), subsidiaries, affiliates, co-owners and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Buyer Group),

"Negligence" means: sole, joint or concurrent, active, passive or gross negligence, willful misconduct, strict liability, product liability or any other legal cause of action.

"Claims" means any and all claims, demands, losses, damages and causes of action of whatever kind or nature.  Unless otherwise specified, Claims is to be read in its broadest sense to include all claims by a first party (which includes any member of either Buyer Group or Seller Group) or by a third party (which includes any person or entity not included in Buyer Group or Seller Group.

(1)  Seller shall release, defend, save, indemnify (collectively "Indemnify") and hold Buyer Group harmless from and against all Claims, for loss of or damage to the property of the members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(2)  Seller shall Indemnify and hold Buyer Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(3)  Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for loss of or damage to the property (including the Work) of the members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(4)  Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(5)  Except as provided in Section 14A(6) below, Buyer (on its own behalf and on behalf of Buyer Group) and Seller (on its own behalf and on behalf of Seller Group) shall Indemnify and hold each other harmless from and against any and all Claims asserted against them by or on behalf of any third party for the death(s) of or personal injury (ies) to such a third party, as well as loss (es) of or damage(s) to the property of such a third party.  It is agreed by Buyer and Seller that their respective duty of indemnity to each other with respect to Claims asserted against them by a third party pursuant to this Article 14 (A) (5) shall be limited to their respective degree of Negligence.

(6)  Notwithstanding any other provision contained in this Agreement, Buyer shall Indemnify and hold the members of Seller Group harmless from and against all Claims (including clean-up costs and loss (es) of oil, gas or

CAM/T&C/US/10

3

hydrocarbons) arising from (i) pollution, contamination, dumping or spilling of any substance, (ii) blowout, (iii) fire, or (iv) loss of, or damage to, wells, formations or mineral rights, even if arising out of or attributable to the Negligence of the members of the Seller Group.

(7)   Notwithstanding any other provision contained in this Agreement, Buyer shall be responsible for and shall reimburse and Indemnify Seller in respect of any loss of or damage (excluding normal wear and tear) to Seller Group property, materials or equipment (tools) or components which (i) is damaged or lost whilst in-hole below the rotary table or (ii) is leased or borrowed by Buyer.

**B. INDEMNITY FOR CONSEQUENTIAL DAMAGES:**

UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES (collectively "CONSEQUENTIAL"), AS DEFINED BY THE LAWS GOVERNING THIS PURCHASE ORDER, NOR FOR ANY LOSS OF ANTICIPATED PROFITS, LOSS OF BUSINESS OPPORTUNITY, LOSS OF USE OF EQUIPMENT OR OF ANY INSTALLATION, SYSTEM OR FACILITY INTO WHICH SELLER'S EQUIPMENT MAY BE LOCATED OR AT WHICH MEMBERS OF THE SELLER GROUP MAY BE PERFORMING WORK AND BUYER AGREES TO "INDEMNIFY" AND HOLD SELLER GROUP HARMLESS FROM AND AGAINST ANY "CLAIMS" FOR SUCH DAMAGES EVEN IF ARISING OUT OF OR ATTRIBUTABLE TO THE "NEGLIGENCE" OF THE MEMBERS OF THE SELLER GROUP.

**C. LIMITATION OF LIABILITY:**

EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND/OR LIABILITIES HEREBY ASSUMED BY THE PARTIES SHALL BE: (i) SUPPORTED BY INSURANCE; (ii) WITHOUT LIMIT; (iii) AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, BUT NOT LIMITED TO, PREEXISTING CONDITIONS (WHETHER SUCH CONDITIONS BE PATENT OR LATENT); THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS (WHETHER OR NOT PREEXISTING); THE UNAIRWORTHINESS OF ANY AIRCRAFT; BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED); BREACH OF CONTRACT; BREACH OF DUTY (STATUTORY, CONTRACTUAL, COMMON LAW OR OTHERWISE); STRICT LIABILITY; CONDITION OF RUIN OR DEFECTIVE PREMISES, EQUIPMENT, FACILITIES, OR APPURTENANCES OF ANY PARTY UNDER ANY CODE, LAW OR (WHETHER OR NOT SAID CONDITION IS PREEXISTING AND/OR LATENT, PATENT OR OTHERWISE); THE LOADING OR UNLOADING OF PERSONS OR CARGO; TORT; OR THE NEGLIGENCE OR FAULT OF ANY PARTY (AS DEFINED AT THE BEGINNING OF THIS ARTICLE 14; OR ANY OTHER THEORY OF LEGAL LIABILITY. Seller's total responsibility for any claims, damages, losses or liability arising out of or related to its performance of this contract or the products or services covered hereunder shall not exceed 20% of the purchase price under the applicable purchase order.

**D. BUYER's CUSTOMER AND SUPPLIER INDEMNITIES:**

Notwithstanding anything in these terms or the order to the contrary, in the event that Buyer is entitled to indemnity under any contract with its customers or suppliers with respect to pollution and consequential losses described in Section 14A(6) and 14B above in connection with work performed under this Agreement, Buyer will provide Seller Group with the benefit of such indemnity to the fullest extent possible under such contracts with Buyer's customers and suppliers.

**E. CARE OF RENTAL EQUIPMENT:**

(1)   The Buyer, at its sole expense, shall be responsible for ensuring that the rental equipment is maintained in good working order and operating condition at all times the Buyer maintains possession of the rental equipment. The rental equipment shall be maintained in good working order and operating condition, at Buyer's expense, and shall be returned in the same condition as when received, ordinary wear and tear alone excepted.

(2)   Seller shall conduct an inspection ("Inspection and Disposition") of the rental equipment to determine if the rental equipment is in good working order and operating condition. If Seller after the Inspection and Disposition finds that the rental equipment is not in good working order and operating condition and is in need of refurbishment, remanufacture, and/or replacement, Seller shall prepare and submit a quotation and invoice, as necessary, prior to any repair work taking place to Buyer detailing the costs and expenses Buyer is obligated to pay to maintain the rental equipment in good working order and operating condition.

(3)   The Buyer shall be liable for all costs and expenses for the refurbishment of the rental equipment to its original state and condition, save and except for ordinary wear and tear. Without prejudice to the generality of the foregoing and for the avoidance of doubt, damage and deterioration in the rental equipment requiring welding machining or coating operations are not considered as normal wear and tear. Any costs and expenses for the refurbishment of the rental equipment shall be invoiced to Buyer upon the return and Inspection and Disposition of

the rental equipment. All costs for refurbishment and labor charges shall be specified in the pricing schedule or such other similar document agreed to by the parties.

(4)      In respect of the rental equipment which requires welding machining or coating operations or other remanufacturing related actions, Seller will repair all damaged equipment, at the cost and expense of the Buyer. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place, Seller shall prepare and submit a quotation and invoice detailing the expected costs to repair the rental equipment to its original state and condition.

(5)      In respect of rental equipment which has been lost or damaged beyond repair, the Buyer shall be liable and shall pay to Seller, Seller's most recent replacement price item, as may be prescribed by Seller from time to time, with such replacement price taking into account the age, usage and depreciated value of the lost or damaged item as determined by Seller's standard accounting procedures. Any such replacement price prescribed by Seller shall take into account the age, usage and actual value of the lost or damaged item. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place Seller will submit a quotation for the replacement price and an invoice to Buyer.

## 15. MODIFICATION, RESCISSION & WAIVER:

The terms herein may not be modified or rescinded nor any of its provisions waived unless such modification, rescission or waiver is in writing and signed by an authorized employee of Seller at its office in Houston, Texas. Failure of Seller to insist in any one or more instances upon the performance of any of the terms and conditions of the contract or the failure of Seller to exercise any of its rights hereunder shall not be construed as a waiver or relinquishment of any such term, condition, or right hereunder and shall not affect Seller's right to insist upon strict performance and compliance with regard to any unexecuted portions of this contract or future performance of these terms and conditions.

All orders must be accepted by an authorized employee of Seller. The rights and duties of the parties and construction and effect of all provisions hereof shall be governed by and construed according to the internal laws of the State of Texas. Any disputes which arise under this agreement shall be venued in the District Court of Harris County, Texas or in the Southern District of Texas.

CAM/T&C/US/10

5

# INVOICE

 **CAMERON**

| | |
|---|---|
| **Invoice No** | : 913383149 |
| **Invoice Date** | : JUN 13 2013 |
| **Page** | : 1  of  2 |

**Remit To:**
OneSubsea LLC
P.O. Box 732162
Dallas, TX 75373-2162

**Inquiries To :**
OneSubsea LLC
4646 W Sam Houston Parkway N
Houston, Texas 77041
Phone 713-939-2211

**Wire Transfer To:**
JPMorgan Chase Bank
New York, NY 10004
Account #: 192987706
ABA #: 021000021
Swift #: CHASUS33
**ACH Remit To:**
JPMorgan Chase Bank
Chicago, IL
Account #: 192987706
ABA #: 071000013

| | |
|---|---|
| Payment Terms | : Cash in Advance |
| Terms & Conditions | : As Attached/Included |
| Freight Terms | : Ex Works     BERWICK |
| Ship From | : BAYOU VISTA LA |
| Shipped Date | : MAR 18 2013 |

Invoice to: 21011440
BLUEWATER INDUSTRIES LP
ATTN:  ACCOUNTS PAYABLE
5300 MEMORIAL STE 550
HOUSTON TX  77007

Ship To: 43217767
BLUEWATER INDUSTRIES
GREEN CANYON 300 OCSG 22939
13863 INDUSTRIAL RD
HOUSTON TX  77213

---

Inside Sales Contact : Gwen Luu / 985-395-1692     Sales Order : 3013057     Delivery Note : 84821257

---

| | |
|---|---|
| **Customer Reference** | : 1111-031 REV1 |
| **Placed By** | : ALBERT MASON |
| **Functional Location** | : GM2-2041-0001-0002 |
| **Description** | : GC 300 OCSG 22939 (21011440) |
| **Project Reference** | : (DOC) FSO 390145 |

PO#: 1111-031 REV1
WELL LOCATION: GC 300 #2
OCSG#: 15571
M/V NAME: NORMAND COMMANDER
JOB REQUESTED: ALBERT MASON
SERVICE BEGIN DATE: 03/11/13
SERVICE END DATE:  03/17/13
SERVICE HAND: ALFRED CLAYTON

---

| Item | Material Number. Description | Qty | Unit Net Price USD | Extended Price USD |
|---|---|---|---|---|
| 10 | SUBSEAOFFSHORE OFFSITE DAY RATE SUBSEA LABOR CAMERON SERVICEMAN CALLED OUT TO LOCATION TO PERFORM WORK AS REQUESTED. | 1.0  DY | 2,581.00 | 2,581.00 |

CAM—2283-1

 **CAMERON**

| | | Invoice No | : 913383149 |
| | | Page | : 2   of   2 |

| Item | Material Number.<br>Description | Qty | Unit Net Price<br>USD | Extended Price<br>USD |
|------|------|------|------|------|
| | NOTE: PLEASE REFER TO SERVICE TICKET ATTACHED FOR COMPLETE SERVICE REPORT.<br>ALRED CLAYTON PERFORMED THIS JOB. | | | |
| 20 | STANDBY<br>STANDBY DAY RATE SUBSEA LABOR<br>CAMERON SERVICEMAN CALLED OUT TO LOCATION TO PERFORM WORK AS REQUESTED.<br>NOTE: PLEASE REFER TO SERVICE TICKET ATTACHED FOR COMPLETE SERVICE REPORT.<br>ALRED CLAYTON PERFORMED THIS JOB. | 6.0  DY | 1,575.00 | 9,450.00 |
| 30 | MILEAGE<br>MILEAGE (ROUNDTRIP CAMERON, BERWICK, LA TO SPITZER YARD, CHANNELVIEW, TX) | 540.00  MI | 2.00 | 1,080.00 |

**Price Summary :**

| | |
|------|------|
| **Total Price :** | **13,111.00 USD** |
| **Total Invoice Value :** | **13,111.00 USD** |

Cameron is committed to complying with U.S. Export Administration Rules and Regulations. If this Order is being exported to you, or may be re-exported to an ultimate consignee or end-user abroad, the following applies: These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is prohibited.

2041-0001-0002

**CAMERON** T/C

210/1146

## FIELD SERVICE ORDER

FIELD SERVICE ORDER NO.
**390145**

| SALES ORDER NO. | PURCHASE ORDER NO./CONTRACT NO. PO-811-031 rev1 | | P.O. DATE | COUNTY | | STATE 6c |
| --- | --- | --- | --- | --- | --- | --- |
| | LAND | OTHER | DATE PREPARED | PAGE | OF | |

ORDERED BY: Jimmy Jones   RIG NAME: Albert Bason Normand Commander   FED. NAT. 94   FREIGHT   VIA   LOCATION 5026

WELL REFERENCE/OCS NO.   Well #2   GC-300   OC96   22939   BILL OF LADING   CARRIER # 8742

BILL TO: Blue Water   SOLD TO:   SHIP TO: Channelview, TX   Spitzer Shipyard

| WELLHEAD | SIZE | MAKE | S/N | W.P. | PN |
| --- | --- | --- | --- | --- | --- |
| VALVE | SIZES | MODEL | TRIM | S/N | W.P. | PN |
| HANGER | SIZE | TYPE | CSG/TBG SIZE | WEIGHT | GRADE | THREAD |

**WORK PERFORMED**

Travel To Spitzer yard Service Two CVC Tool 11-mar-13

Stand by 3-12-13 To 3-12-13

| ITEM | QTY. | DESCRIPTION | PART NO. | UNIT PRICE | DISCOUNT | TOTAL |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | | work @ Spitzer yard | | $ 2581.00 | | $ 2581.00 |
| 6 | | Stand by 3-12-13 To 3-17-13 | | $ 1575.00 | | $ 9450.00 |

F.O.B. MANUFACTURING PLANT   TOTAL PARTS AND MATERIALS

| LABOR | FROM HR & DATE 3-11-13 | TO HR & DATE 3-17-13 | REEL HOURS 52xy Thirty | O.T. HOURS 1 Day | DATE 1/1575 | O.T. RATE 2581.00 | 12031.00 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| LODGING | FREIGHT OR MISCELLANEOUS | MEALS | | MILEAGE 540 | @ 2.00 PER MILE | $ 1080.00 |

| PERFORMANCE REVIEW | EXCEEDED EXPECTATIONS | MET EXPECTATIONS | NEEDS IMPROVEMENT | DID NOT MEET EXPECTATIONS | EST. CHARGES |
| --- | --- | --- | --- | --- | --- |
| Serviceman Arrived at Location On Time | ☐ | ☐ | ☐ | ☐ | TOTAL CHARGES $ 13111.00 |
| Serviceman's Attitude | ☐ | ☐ | ☐ | ☐ | JOB TYPE |
| Serviceman's Competency | ☐ | ☐ | ☐ | ☐ | Drilling ☐ |
| Service Facility Office Support | ☐ | ☐ | ☐ | ☐ | Section A B C (circle one) |
| Did Serviceman Properly Review CAM issued JHA | ☐ | ☐ | ☐ | ☐ | System (fill in MBST/SW/SS etc) |
| OTHER (PLEASE LIST) | ☐ | ☐ | ☐ | ☐ | Hanger IC S Man. (circle one) |

| CUSTOMER STAMP | RIG DELAY RESULTING FROM CAMERON SERVICE OR EQUIPMENT | | |
| --- | --- | --- | --- |
| | ☐ YES   ☐ NO | | Completion/Decompletion ☐ |
| | IF YES PLEASE GIVE YOUR COMMENTS: | | Frac tree ☐ |
| | | | Prod. Tree ☐ |
| | | | Lubricator ☐ |
| | | | Production ☐ |
| | | | Greasing ☐ |
| | | | Valve / Act. ☐ |
| | | | SD Lubricator ☐ |
| | | | OTHER |

CAMERON REP. "Print"   Alfred Clayton   "Signature"   DATE 3-19-13
CUSTOMER REP. "Print"   Jimmy Jones   "Signature"   DATE 3-21-13

| Reviewed by District Mgr. | FPR Submitted | ☐ YES   ☐ NO |
| --- | --- | --- |
| Signature | FPR# | |
| Date | Date | |



## TERMS AND CONDITIONS OF SALE

**1. CONTRACT ACCEPTANCE:**
Any written or oral purchase order received from Buyer by Seller shall be construed as a written acceptance of Seller's offer to sell and shall be filled in accordance with the terms and conditions of sale set forth herein. SELLER'S ACCEPTANCE OF THIS ORDER IS EXPRESSLY CONDITIONED ON BUYER'S ASSENT TO THE TERMS CONTAINED HEREIN.   The terms and conditions of Seller's proposal (if any) and acknowledgement shall prevail over any conflicting or different terms in Buyer's order unless Buyer notifies Seller in writing of its objections thereto within fifteen (15) days from receipt of Seller's acknowledgement.  Buyer's standard terms of purchase will not be considered a counteroffer to Seller's terms and conditions of sale. The failure of Seller to object to any provision in conflict herewith whether contained on Buyer's purchase order or otherwise shall not be construed as a waiver of the provisions hereof nor as an acceptance thereof.

**2. QUOTATIONS AND PRICES:**
Any product, service capability or manufacturing capability which may be available at the time a quotation is made is subject to prior sale.  Prices quoted are subject to change without notice.  The price in effect at the time of shipment including any escalation formula will apply, unless a valid quotation or written agreement to the contrary exists between Buyer and Seller.  All prices shown are in U.S. dollars and are F.O.B. Seller's shipping point. Seller reserves the right to place a service charge on past due accounts at the highest rate permitted by law.  Any documentation pertaining to traceability requirements for raw materials or products or documentation required for any routine or special processes must be identified by the Buyer at the time of quotation (if any) or at the time of order placement.

**3. TAXES:**
Any tax or other charge imposed by law on the sale or production of goods or the performance of services shall be paid by the Buyer, unless the law specifically provides that such payment must be made by Seller, in which case Buyer shall reimburse Seller for such payment as part of the purchase price. Custom duties, consular fees, insurance charges and other comparable charges will be borne by Buyer.

**4. SHIPPING SCHEDULE AND DELIVERY:**
Shipment schedules are given as accurately as conditions permit and every effort will be made to make shipments as scheduled.  Seller will not be responsible for deviations in meeting shipping schedules nor for any losses or damages to Buyer (or any third party) occasioned by deviations in the shipping schedule, whether due to Acts of God, orders bearing priority ratings established pursuant to law, differences with workmen, local labor shortages, fire, flood, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment or any other causes beyond Seller's reasonable control, whether of similar or dissimilar nature than those enumerated. Seller shall have additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider to be equitable. Seller reserves the right to furnish commercially equivalent or better substitutes for materials or to subcontract the Buyer's order or portions thereof as Seller deems necessary.  In no event shall Seller be liable for any consequential damages resulting from failure or delay in shipment.  If Buyer requires drawings, procedures, standards or similar material for approval, shipping schedules will be calculated from the time such approvals are received by Seller, since shipping schedules are based on Seller having all required information and a firm order from Buyer which is enterable into production.  Any hold points, witness points or the need for inspection by Buyer's representatives must be identified by Buyer at the time of quotation (if any) or order placement in order that the effect on the prices or shipping schedules (if any) can be taken into account.  Additional inspection or testing required by Buyer which affects normal production sequence will be considered as extending the shipping dates accordingly.

**5. TERMS OF PAYMENT:**
Terms of payment are 30 days from date of invoice unless otherwise stated in the quotation or Seller's order acknowledgment.

**6. CANCELLATIONS AND RETURNS:**
Purchase orders once placed by Buyer and accepted by Seller can be canceled only with Seller's written consent and upon terms which will save Seller from loss.  No products may be returned for credit or adjustment without written permission from Seller's office authorized to issue such permission.

**7. WARRANTIES:**
All products of Seller's manufacture except for its Orbit product are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires while its Orbit product is warranted for thirty six (36) months from date of shipment, when all such products are used in the service and within the pressure range for which they were

CAM/T&C/US/10

1

manufactured. In the case of products or parts not wholly of Seller's manufacture, Seller's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Seller. Any repair work performed by Seller is warranted for one year from completion of such repairs and applies only to work performed. If, within these specified periods, Seller receives notice from Buyer of any alleged defect in or nonconformance of any product or repair and if in the Seller's sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Buyer shall, at Seller's request, return the part or product F.O.B. to Seller's designated plant or service location. Seller has no liability for removal or reinstallation of products or equipment. Seller, at its option and expense, shall repair or replace the defective part or product, or repay to Buyer the full price paid by Buyer for such defective part, repair or product. Any repayment of purchase price shall be without interest. Seller's warranty liability, including defects caused by Seller's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs, expenses of Buyer resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind. Seller will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Seller, failures due to lack of compliance with recommended maintenance procedures or products which have been repaired or altered in such a way (in Seller's judgment) as to affect the products adversely. THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY.

**8.ENGINEERING AND SERVICE:**
Upon request, Seller will provide engineering and/or technical information regarding its products and their uses and, if feasible, will provide personnel to assist Buyer in effecting field installations and/or field service. Any such information, service or assistance so provided, whether with or without charge, shall be advisory only

**9. LABOR STANDARDS:**
Seller hereby certifies that these products were produced in accordance with all applicable requirements of Section 6, 7 and 12 of the Fair Labor Standards Act as amended and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

**10. INSPECTION:**
Unless otherwise agreed in writing, final inspection and acceptance of products must be made at Seller's plant or other shipping or receiving point designated by Seller and shall be conclusive except as regards latent defects. Buyer's representatives may inspect at the Seller's plant or shipping point during working hours prior to shipment in such manner as will not interfere with operations.

**11. DELIVERY AND ACCEPTANCE:**
Delivery shall be in accordance with the requirements in the Purchase Contract, provided, in the event Buyer is unable to accept delivery upon completion of the manufacture of the Goods in accordance with such requirements, Buyer agrees that (i) title and risk of ownership shall pass to Buyer on date of Seller's invoice, and (ii) Buyer will make payments within thirty days after date of such invoice. Seller shall retain custodial risk of loss until delivery is made in accordance with such requirements.

**12. EXPORT COMPLIANCE:**
The Buyer shall provide the Seller with relevant end-use, end-user and country of end-use information with respect to the goods, services, software or technology to be supplied hereunder (collectively, "Items"). Based on and in reliance on such information, the Seller will supply such Items in compliance with applicable trade and customs laws including that of the United States of America. The Seller cautions and the Buyer acknowledges that any change in end-use, end-user or country of end-use (including a shipment between countries other than the U.S.) may be restricted or prohibited by applicable trade and customs law, whether it be of the U.S. or other country. The Parties shall comply with all trade and customs laws (including U.S. Export Controls) except for any such laws which conflict with or are otherwise penalized under the laws of the U.S., which in the event of such conflict, Seller shall notify Buyer. The Buyer agrees in particular that it shall not use and shall not permit any third party to use such items in connection with the design, production, use, or storage of chemical, biological or nuclear weapons or missiles of any kind.

CAM/T&C/US/10

2

### 13. TRANSPORTATION CHARGES, ALLOWANCES, CLAIMS:

All prices are F.O.B. Seller's plant or other designated shipping point. No freight is allowed unless stated in Seller's quotation (if any) or in a written contract which may exist between Seller and Buyer at the time of shipment. If Seller's quotation or a written contract states that all or a portion of freight is allowed, all prices are F.O.B. Seller's plant or other designated shipping point, with most economical surface transportation allowed. If the quoted or contractual price includes transportation, Seller reserves the right to designate the common carrier and to ship in the manner it deems most economical. Added costs due to special routing requested by the Buyer are chargeable to the Buyer. Under no circumstances is any freight allowance which is absorbed by Seller to be deducted from the selling price. If the quoted price or contract includes transportation, no deduction will be made in lieu thereof whether Buyer accepts shipment at plant, warehouse, freight station, or otherwise supplies its own transportation. When sales are made from the Seller's warehouse, Seller reserves the right to charge either actual or pro-rated freight from Seller's principle point of manufacture to Seller's warehouse. Buyer assumes risk of loss upon delivery to the carrier, regardless of who pays shipping costs. Seller endeavors to pack or prepare all shipments so that they will not break, rust or deteriorate in transit, but does not guarantee against such damage. Unless requested in writing by the Buyer, no shipments are insured by Seller against damage or loss in transit. Seller will place insurance as nearly as possible in accordance with Buyer's written instructions but in such case Seller acts only as agent between the insurance company and the Buyer and assumes no liability whatsoever. Any claims for shipping loss, breakage or damage (obvious or concealed) are Buyer's responsibility and should be made to the carrier. All claims regarding shortages must be made within thirty (30) days from receipt of shipment and must be accompanied by the packing list(s) covering the shipment.

### 14. INDEMNIFICATION AND LIMITATION OF LIABILITY:

#### A. <u>INDEMNIFICATION</u>:

"Buyer Group" means: Buyer, its parent (if any), subsidiaries, affiliates, co-owners, co-venturers, partners and any entity with whom Buyer has an economic interest with respect to the Work including Buyer's customer and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Seller Group),

"Seller Group" means: Seller, its parent (if any), subsidiaries, affiliates, co-owners and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Buyer Group),

"Negligence" means: sole, joint or concurrent, active, passive or gross negligence, willful misconduct, strict liability, product liability or any other legal cause of action.

"Claims" means any and all claims, demands, losses, damages and causes of action of whatever kind or nature. Unless otherwise specified, Claims is to be read in its broadest sense to include all claims by a first party (which includes any member of either Buyer Group or Seller Group) or by a third party (which includes any person or entity not included in Buyer Group or Seller Group.

(1)   Seller shall release, defend, save, indemnify (collectively "Indemnify") and hold Buyer Group harmless from and against all Claims, for loss of or damage to the property of the members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(2)   Seller shall Indemnify and hold Buyer Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(3)   Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for loss of or damage to the property (including the Work) of the members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(4)   Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(5)   Except as provided in Section 14A(6) below, Buyer (on its own behalf and on behalf of Buyer Group) and Seller (on its own behalf and on behalf of Seller Group) shall Indemnify and hold each other harmless from and against any and all Claims asserted against them by or on behalf of any third party for the death(s) of or personal injury (ies) to such a third party, as well as loss (es) of or damage(s) to the property of such a third party. It is agreed by Buyer and Seller that their respective duty of indemnity to each other with respect to Claims asserted against them by a third party pursuant to this Article 14 (A) (5) shall be limited to their respective degree of Negligence.

(6)   Notwithstanding any other provision contained in this Agreement, Buyer shall Indemnify and hold the members of Seller Group harmless from and against all Claims (including clean-up costs and loss (es) of oil, gas or

hydrocarbons) arising from (i) pollution, contamination, dumping or spilling of any substance, (ii) blowout, (iii) fire, or (iv) loss of, or damage to, wells, formations or mineral rights, even if arising out of or attributable to the Negligence of the members of the Seller Group.

(7) Notwithstanding any other provision contained in this Agreement, Buyer shall be responsible for and shall reimburse and Indemnify Seller in respect of any loss of or damage (excluding normal wear and tear) to Seller Group property, materials or equipment (tools) or components which (i) is damaged or lost whilst in-hole below the rotary table or (ii) is leased or borrowed by Buyer.

**B. INDEMNITY FOR CONSEQUENTIAL DAMAGES:**
UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES (collectively "CONSEQUENTIAL"), AS DEFINED BY THE LAWS GOVERNING THIS PURCHASE ORDER, NOR FOR ANY LOSS OF ANTICIPATED PROFITS, LOSS OF BUSINESS OPPORTUNITY, LOSS OF USE OF EQUIPMENT OR OF ANY INSTALLATION, SYSTEM OR FACILITY INTO WHICH SELLER'S EQUIPMENT MAY BE LOCATED OR AT WHICH MEMBERS OF THE SELLER GROUP MAY BE PERFORMING WORK AND BUYER AGREES TO "INDEMNIFY" AND HOLD SELLER GROUP HARMLESS FROM AND AGAINST ANY "CLAIMS" FOR SUCH DAMAGES EVEN IF ARISING OUT OF OR ATTRIBUTABLE TO THE "NEGLIGENCE" OF THE MEMBERS OF THE SELLER GROUP.

**C. LIMITATION OF LIABILITY:**
EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND/OR LIABILITIES HEREBY ASSUMED BY THE PARTIES SHALL BE: (i) SUPPORTED BY INSURANCE; (ii) WITHOUT LIMIT; (iii) AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, BUT NOT LIMITED TO, PREEXISTING CONDITIONS (WHETHER SUCH CONDITIONS BE PATENT OR LATENT); THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS (WHETHER OR NOT PREEXISTING); THE UNAIRWORTHINESS OF ANY AIRCRAFT; BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED); BREACH OF CONTRACT; BREACH OF DUTY (STATUTORY, CONTRACTUAL, COMMON LAW OR OTHERWISE); STRICT LIABILITY; CONDITION OF RUIN OR DEFECTIVE PREMISES, EQUIPMENT, FACILITIES, OR APPURTENANCES OF ANY PARTY UNDER ANY CODE, LAW OR (WHETHER OR NOT SAID CONDITION IS PREEXISTING AND/OR LATENT, PATENT OR OTHERWISE); THE LOADING OR UNLOADING OF PERSONS OR CARGO; TORT; OR THE NEGLIGENCE OR FAULT OF ANY PARTY (AS DEFINED AT THE BEGINNING OF THIS ARTICLE 14; OR ANY OTHER THEORY OF LEGAL LIABILITY. Seller's total responsibility for any claims, damages, losses or liability arising out of or related to its performance of this contract or the products or services covered hereunder shall not exceed 20% of the purchase price under the applicable purchase order.

**D. BUYER's CUSTOMER AND SUPPLIER INDEMNITIES:**
Notwithstanding anything in these terms or the order to the contrary, in the event that Buyer is entitled to indemnity under any contract with its customers or suppliers with respect to pollution and consequential losses described in Section 14A(6) and 14B above in connection with work performed under this Agreement, Buyer will provide Seller Group with the benefit of such indemnity to the fullest extent possible under such contracts with Buyer's customers and suppliers.

**E. CARE OF RENTAL EQUIPMENT:**
(1)     The Buyer, at its sole expense, shall be responsible for ensuring that the rental equipment is maintained in good working order and operating condition at all times the Buyer maintains possession of the rental equipment. The rental equipment shall be maintained in good working order and operating condition, at Buyer's expense, and shall be returned in the same condition as when received, ordinary wear and tear alone excepted.

(2)     Seller shall conduct an inspection ("Inspection and Disposition") of the rental equipment to determine if the rental equipment is in good working order and operating condition. If Seller after the Inspection and Disposition finds that the rental equipment is not in good working order and operating condition and is in need of refurbishment, remanufacture, and/or replacement, Seller shall prepare and submit a quotation and invoice, as necessary, prior to any repair work taking place to Buyer detailing the costs and expenses Buyer is obligated to pay to maintain the rental equipment in good working order and operating condition.

(3)     The Buyer shall be liable for all costs and expenses for the refurbishment of the rental equipment to its original state and condition, save and except for ordinary wear and tear. Without prejudice to the generality of the foregoing and for the avoidance of doubt, damage and deterioration in the rental equipment requiring welding machining or coating operations are not considered as normal wear and tear. Any costs and expenses for the refurbishment of the rental equipment shall be invoiced to Buyer upon the return and Inspection and Disposition of

the rental equipment. All costs for refurbishment and labor charges shall be specified in the pricing schedule or such other similar document agreed to by the parties.

(4)      In respect of the rental equipment which requires welding machining or coating operations or other remanufacturing related actions, Seller will repair all damaged equipment, at the cost and expense of the Buyer. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place, Seller shall prepare and submit a quotation and invoice detailing the expected costs to repair the rental equipment to its original state and condition.

(5)      In respect of rental equipment which has been lost or damaged beyond repair, the Buyer shall be liable and shall pay to Seller, Seller's most recent replacement price item, as may be prescribed by Seller from time to time, with such replacement price taking into account the age, usage and depreciated value of the lost or damaged item as determined by Seller's standard accounting procedures. Any such replacement price prescribed by Seller shall take into account the age, usage and actual value of the lost or damaged item. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place Seller will submit a quotation for the replacement price and an invoice to Buyer.

## 15. MODIFICATION, RESCISSION & WAIVER:

The terms herein may not be modified or rescinded nor any of its provisions waived unless such modification, rescission or waiver is in writing and signed by an authorized employee of Seller at its office in Houston, Texas. Failure of Seller to insist in any one or more instances upon the performance of any of the terms and conditions of the contract or the failure of Seller to exercise any of its rights hereunder shall not be construed as a waiver or relinquishment of any such term, condition, or right hereunder and shall not affect Seller's right to insist upon strict performance and compliance with regard to any unexecuted portions of this contract or future performance of these terms and conditions.

All orders must be accepted by an authorized employee of Seller. The rights and duties of the parties and construction and effect of all provisions hereof shall be governed by and construed according to the internal laws of the State of Texas. Any disputes which arise under this agreement shall be venued in the District Court of Harris County, Texas or in the Southern District of Texas.

CAM/T&C/US/I0

5

# INVOICE

 **CAMERON**

| | |
|---|---|
| Invoice No | : 913383150 |
| Invoice Date | : JUN 13 2013 |
| Page | : 1  of  2 |

**Remit To:**
OneSubsea LLC
P.O. Box 732162
Dallas, TX 75373-2162

**Inquiries To :**
OneSubsea LLC
4646 W Sam Houston Parkway N
Houston, Texas 77041
Phone 713-939-2211

**Wire Transfer To:**
JPMorgan Chase Bank
New York, NY 10004
Account #: 192987706
ABA #: 021000021
Swift #: CHASUS33
**ACH Remit To:**
JPMorgan Chase Bank
Chicago, IL
Account #: 192987706
ABA #: 071000013

Payment Terms   : Cash in Advance
Terms & Conditions   : As Attached/Included
Freight Terms   : Ex Works       BERWICK
Ship From   : BAYOU VISTA LA
Shipped Date   : MAR 18 2013

Invoice to: 21011440
BLUEWATER INDUSTRIES LP
ATTN:  ACCOUNTS PAYABLE
5300 MEMORIAL STE 550
HOUSTON TX  77007

Ship To: 43217767
BLUEWATER INDUSTRIES
GREEN CANYON 300 OCSG 22939
13863 INDUSTRIAL RD
HOUSTON TX  77213

Inside Sales Contact : Gwen Luu / 985-395-1692       Sales Order : 3013082       Delivery Note : 84821259

| | |
|---|---|
| Customer Reference | : 1111-031 REV1 |
| Placed By | : ALBERT MASON |
| Functional Location | : GM2-2041-0001-0002 |
| Description | : GC 300 OCSG 22939 (21011440) |
| Project Reference | : (DOC) FSO 390146 |

PO#: 1111-031 REV1
WELL LOCATION: GC 300 #2
OCSG#: 15571
M/V NAME: NORMAND COMMANDER
JOB REQUESTED: ALBERT MASON
SERVICE BEGIN DATE: 03/18/13
SERVICE END DATE:  03/21/13
SERVICE HAND: ALFRED CLAYTON

| Item | Material Number.<br>Description | Qty | Unit Net Price<br>USD | Extended Price<br>USD |
|---|---|---|---|---|
| 10 | STANDBY<br>STANDBY DAY RATE SUBSEA LABOR<br>CAMERON SERVICEMAN CALLED OUT TO LOCATION TO PERFORM WORK AS REQUESTED. | 4.0  DY | 1,575.00 | 6,300.00 |

CAM--2283-1

 **CAMERON**

**Invoice No** : 913383150
**Page** : 2 of 2

| Item | Material Number. Description | Qty | Unit Net Price USD | Extended Price USD |
|------|------|------|------|------|

NOTE: PLEASE REFER TO SERVICE TICKET ATTACHED FOR COMPLETE SERVICE REPORT.
ALRED CLAYTON PERFORMED THIS JOB.

**Price Summary :**

**Total Price :** 6,300.00 USD

**Total Invoice Value :** 6,300.00 USD

Cameron is committed to complying with U.S. Export Administration Rules and Regulations. If this Order is being exported to you, or may be re-exported to an ultimate consignee or end-user abroad, the following applies: These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is prohibited.

I/C

**CAMERON**

2101/1745

FIELD SERVICE ORDER NO.

# 390146

## FIELD SERVICE ORDER

| SALES ORDER NO. | PURCHASE ORDER NO./CONTRACT NO. PB-1111-033 rev1 | | P.O. DATE | | LAND | OTHER | DATE PREPARED 3-21-13 | PAGE | OF |
|---|---|---|---|---|---|---|---|---|---|
| ORDERED BY Jimmy Jones | REG NAME Albert Mason | Forman Commante | | | | | FED. WAT. 523 | FREIGHT | WA | LOCATION 5026 |
| WELL REFERENCE/OCS. NO. Well #0 CC-300 OC56 22939 | | BILL OF LADING | | | | CARRIER 36 9342 | | |
| BILL TO Bluewater | SOLD | | | | SHIP TO Channelview, Tx. | | |
| | | | | | SPITZER ShipYard | | |

| WELLHEAD | SIZE | MAKE | S/N | W.P. | PN |
| VALVE | SIZES | MODEL | TRIM | S/N | W.P. | PN |
| HANGER | SIZE | TYPE | CSG/TBG SIZE | WEIGHT | GRADE | THREAD |

**WORK PERFORMED**

Stand by waiting To inStall Jumper

3-18-13 - 3-19-13 — 3-20-13    3-21-13

| ITEM | QTY. | DESCRIPTION | PART NO. | UNIT PRICE | DIS-COUNT | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**F.O.B. MANUFACTURING PLANT**

TOTAL PARTS AND MATERIALS

| LABOR | FROM: HR & DATE 3-18-13 | TO: HR & DATE 3-21-13 | REG. HOURS | O.T. HOURS 4 Days | RATE | OT. RATE 1575 | $6300.00 |
|---|---|---|---|---|---|---|---|
| LODGING | FREIGHT OR MISCELLANEOUS | MEALS | MILEAGE | | | PER MILE | |

| PERFORMANCE REVIEW | EXCEEDED EXPECTATIONS | MET EXPECTATIONS | NEEDS IMPROVEMENT | DID NOT MEET EXPECTATIONS | EST. CHARGES |
|---|---|---|---|---|---|
| Serviceman Arrived at Location On Time | ☐ | ☐ | ☐ | ☐ | TOTAL CHARGES 6300.00 |
| Serviceman's Attitude | ☐ | ☐ | ☐ | ☐ | JOB TYPE |
| Serviceman's Competency | ☐ | ☐ | ☐ | ☐ | Drilling ☐ |
| Service Facility Office Support | ☐ | ☐ | ☐ | ☐ | Section  A   B   C  (circle one) |
| Did Serviceman Properly Review CAM issued JHA | ☐ | ☐ | ☐ | ☐ | System _____ (fill in MST SW SS etc.) |
| OTHER (PLEASE LIST) | ☐ | ☐ | ☐ | ☐ | Hanger  IC  S  Man. (circle one) |

| CUSTOMER STAMP | RIG DELAY RESULTING FROM CAMERON SERVICE OR EQUIPMENT ☐ YES   ☐ NO | Completion/Decompletion ☐ |
|---|---|---|
| | IF YES PLEASE GIVE YOUR COMMENTS: | Frac tree ☐ |
| | | Prod. Tree ☐ |
| | | Lubricator ☐ |
| | | Production ☐ |
| | | Greasing ☐ |
| | | Valve / Act. ☐ |
| | | SD Lubricator ☐ |
| | | OTHER |
| | CAMERON REP "PRINT" Alfred Clayton | "Signature" | DATE 8-21-13 |
| | CUSTOMER REP. "PRINT" Jimmy Jones | "Signature" Jan W. | DATE 3-21-13 |

| Reviewed by District Mgr. | | FPR Submitted | ☐ YES | ☐ NO |
| Signature | | FPR# | | |
| Date | | Date | | |

## TERMS AND CONDITIONS OF SALE

**1. CONTRACT ACCEPTANCE:**
Any written or oral purchase order received from Buyer by Seller shall be construed as a written acceptance of Seller's offer to sell and shall be filled in accordance with the terms and conditions of sale set forth herein. SELLER'S ACCEPTANCE OF THIS ORDER IS EXPRESSLY CONDITIONED ON BUYER'S ASSENT TO THE TERMS CONTAINED HEREIN.    The terms and conditions of Seller's proposal (if any) and acknowledgement shall prevail over any conflicting or different terms in Buyer's order unless Buyer notifies Seller in writing of its objections thereto within fifteen (15) days from receipt of Seller's acknowledgement.  Buyer's standard terms of purchase will not be considered a counteroffer to Seller's terms and conditions of sale. The failure of Seller to object to any provision in conflict herewith whether contained on Buyer's purchase order or otherwise shall not be construed as a waiver of the provisions hereof nor as an acceptance thereof.

**2. QUOTATIONS AND PRICES:**
Any product, service capability or manufacturing capability which may be available at the time a quotation is made is subject to prior sale.  Prices quoted are subject to change without notice.  The price in effect at the time of shipment including any escalation formula will apply, unless a valid quotation or written agreement to the contrary exists between Buyer and Seller.  All prices shown are in U.S. dollars and are F.O.B. Seller's shipping point. Seller reserves the right to place a service charge on past due accounts at the highest rate permitted by law.  Any documentation pertaining to traceability requirements for raw materials or products or documentation required for any routine or special processes must be identified by the Buyer at the time of quotation (if any) or at the time of order placement.

**3. TAXES:**
Any tax or other charge imposed by law on the sale or production of goods or the performance of services shall be paid by the Buyer, unless the law specifically provides that such payment must be made by Seller, in which case Buyer shall reimburse Seller for such payment as part of the purchase price.  Custom duties, consular fees, insurance charges and other comparable charges will be borne by Buyer.

**4. SHIPPING SCHEDULE AND DELIVERY:**
Shipment schedules are given as accurately as conditions permit and every effort will be made to make shipments as scheduled.  Seller will not be responsible for deviations in meeting shipping schedules nor for any losses or damages to Buyer (or any third party) occasioned by deviations in the shipping schedule, whether due to Acts of God, orders bearing priority ratings established pursuant to law, differences with workmen, local labor shortages, fire, flood, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment or any other causes beyond Seller's reasonable control, whether of similar or dissimilar nature than those enumerated. Seller shall have additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider to be equitable. Seller reserves the right to furnish commercially equivalent or better substitutes for materials or to subcontract the Buyer's order or portions thereof as Seller deems necessary.  In no event shall Seller be liable for any consequential damages resulting from failure or delay in shipment.  If Buyer requires drawings, procedures, standards or similar material for approval, shipping schedules will be calculated from the time such approvals are received by Seller, since shipping schedules are based on Seller having all required information and a firm order from Buyer which is enterable into production.  Any hold points, witness points or the need for inspection by Buyer's representatives must be identified by Buyer at the time of quotation (if any) and/or order placement in order that the effect on the prices or shipping schedules (if any) can be taken into account.  Additional inspection or testing required by Buyer which affects normal production sequence will be considered as extending the shipping dates accordingly.

**5. TERMS OF PAYMENT:**
Terms of payment are 30 days from date of invoice unless otherwise stated in the quotation or Seller's order acknowledgment.

**6. CANCELLATIONS AND RETURNS:**
Purchase orders once placed by Buyer and accepted by Seller can be canceled only with Seller's written consent and upon terms which will save Seller from loss.  No products may be returned for credit or adjustment without written permission from Seller's office authorized to issue such permission.

**7. WARRANTIES:**
All products of Seller's manufacture except for its Orbit product are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires while its Orbit product is warranted for thirty six (36) months from date of shipment, when all such products are used in the service and within the pressure range for which they were

1

manufactured. In the case of products or parts not wholly of Seller's manufacture, Seller's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Seller. Any repair work performed by Seller is warranted for one year from completion of such repairs and applies only to work performed. If, within these specified periods, Seller receives notice from Buyer of any alleged defect in or nonconformance of any product or repair and if in the Seller's sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Buyer shall, at Seller's request, return the part or product F.O.B. to Seller's designated plant or service location. Seller has no liability for removal or reinstallation of products or equipment. Seller, at its option and expense, shall repair or replace the defective part or product, or repay to Buyer the full price paid by Buyer for such defective part, repair or product. Any repayment of purchase price shall be without interest. Seller's warranty liability, including defects caused by Seller's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs, expenses of Buyer resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind. Seller will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Seller, failures due to lack of compliance with recommended maintenance procedures or products which have been repaired or altered in such a way (in Seller's judgment) as to affect the products adversely. THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY.

**8.ENGINEERING AND SERVICE:**
Upon request, Seller will provide engineering and/or technical information regarding its products and their uses and, if feasible, will provide personnel to assist Buyer in effecting field installations and/or field service. Any such information, service or assistance so provided, whether with or without charge, shall be advisory only

**9. LABOR STANDARDS:**
Seller hereby certifies that these products were produced in accordance with all applicable requirements of Section 6, 7 and 12 of the Fair Labor Standards Act as amended and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

**10. INSPECTION:**
Unless otherwise agreed in writing, final inspection and acceptance of products must be made at Seller's plant or other shipping or receiving point designated by Seller and shall be conclusive except as regards latent defects. Buyer's representatives may inspect at the Seller's plant or shipping point during working hours prior to shipment in such manner as will not interfere with operations.

**11. DELIVERY AND ACCEPTANCE:**
Delivery shall be in accordance with the requirements in the Purchase Contract, provided, in the event Buyer is unable to accept delivery upon completion of the manufacture of the Goods in accordance with such requirements, Buyer agrees that (i) title and risk of ownership shall pass to Buyer on date of Seller's invoice, and (ii) Buyer will make payments within thirty days after date of such invoice. Seller shall retain custodial risk of loss until delivery is made in accordance with such requirements.

**12. EXPORT COMPLIANCE:**
The Buyer shall provide the Seller with relevant end-use, end-user and country of end-use information with respect to the goods, services, software or technology to be supplied hereunder (collectively, "Items"). Based on and in reliance on such information, the Seller will supply such Items in compliance with applicable trade and customs laws including that of the United States of America. The Seller cautions and the Buyer acknowledges that any change in end-use, end-user or country of end-use (including a shipment between countries other than the U.S.) may be restricted or prohibited by applicable trade and customs law, whether it be of the U.S. or other country. The Parties shall comply with all trade and customs laws (including U.S. Export Controls) except for any such laws which conflict with or are otherwise penalized under the laws of the U.S., which in the event of such conflict, Seller shall notify Buyer. The Buyer agrees in particular that it shall not use and shall not permit any third party to use such items in connection with the design, production, use, or storage of chemical, biological or nuclear weapons or missiles of any kind.

### 13. TRANSPORTATION CHARGES, ALLOWANCES, CLAIMS:

All prices are F.O.B. Seller's plant or other designated shipping point. No freight is allowed unless stated in Seller's quotation (if any) or in a written contract which may exist between Seller and Buyer at the time of shipment. If Seller's quotation or a written contract states that all or a portion of freight is allowed, all prices are F.O.B. Seller's plant or other designated shipping point, with most economical surface transportation allowed. If the quoted or contractual price includes transportation, Seller reserves the right to designate the common carrier and to ship in the manner it deems most economical. Added costs due to special routing requested by the Buyer are chargeable to the Buyer. Under no circumstances is any freight allowance which is absorbed by Seller to be deducted from the selling price. If the quoted price or contract includes transportation, no deduction will be made in lieu thereof whether Buyer accepts shipment at plant, warehouse, freight station, or otherwise supplies its own transportation. When sales are made from the Seller's warehouse, Seller reserves the right to charge either actual or pro-rated freight from Seller's principle point of manufacture to Seller's warehouse. Buyer assumes risk of loss upon delivery to the carrier, regardless of who pays shipping costs. Seller endeavors to pack or prepare all shipments so that they will not break, rust or deteriorate in transit, but does not guarantee against such damage. Unless requested in writing by the Buyer, no shipments are insured by Seller against damage or loss in transit. Seller will place insurance as nearly as possible in accordance with Buyer's written instructions but in such case Seller acts only as agent between the insurance company and the Buyer and assumes no liability whatsoever. Any claims for shipping loss, breakage or damage (obvious or concealed) are Buyer's responsibility and should be made to the carrier. All claims regarding shortages must be made within thirty (30) days from receipt of shipment and must be accompanied by the packing list(s) covering the shipment.

### 14. INDEMNIFICATION AND LIMITATION OF LIABILITY:
#### A. <u>INDEMNIFICATION</u>:

"Buyer Group" means: Buyer, its parent (if any), subsidiaries, affiliates, co-owners, co-venturers, partners and any entity with whom Buyer has an economic interest with respect to the Work including Buyer's customer and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Seller Group),

"Seller Group" means: Seller, its parent (if any), subsidiaries, affiliates, co-owners and its and their respective employees, personnel, directors, officers, borrowed servants, representatives, agents, contractors and subcontractors (respectively and of any tier or level and who are not included within the Buyer Group),

"Negligence" means: sole, joint or concurrent, active, passive or gross negligence, willful misconduct, strict liability, product liability or any other legal cause of action.

"Claims" means any and all claims, demands, losses, damages and causes of action of whatever kind or nature. Unless otherwise specified, Claims is to be read in its broadest sense to include all claims by a first party (which includes any member of either Buyer Group or Seller Group) or by a third party (which includes any person or entity not included in Buyer Group or Seller Group).

(1) Seller shall release, defend, save, indemnify (collectively "Indemnify") and hold Buyer Group harmless from and against all Claims, for loss of or damage to the property of the members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(2) Seller shall Indemnify and hold Buyer Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Seller Group even if such Claims arise from or attributable to the Negligence of the members of Buyer Group.

(3) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for loss of or damage to the property (including the Work) of the members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(4) Buyer shall Indemnify and hold Seller Group harmless from and against all Claims for the death(s) of or personal injury(ies) to members of the Buyer Group even if such Claims arise from or attributable to the Negligence of the members of Seller Group.

(5) Except as provided in Section 14A(6) below, Buyer (on its own behalf and on behalf of Buyer Group) and Seller (on its own behalf and on behalf of Seller Group) shall Indemnify and hold each other harmless from and against any and all Claims asserted against them by or on behalf of any third party for the death(s) of or personal injury (ies) to such a third party, as well as loss (es) of or damage(s) to the property of such a third party. It is agreed by Buyer and Seller that their respective duty of indemnity to each other with respect to Claims asserted against them by a third party pursuant to this Article 14 (A) (5) shall be limited to their respective degree of Negligence.

(6) Notwithstanding any other provision contained in this Agreement, Buyer shall Indemnify and hold the members of Seller Group harmless from and against all Claims (including clean-up costs and loss (es) of oil, gas or

hydrocarbons) arising from (i) pollution, contamination, dumping or spilling of any substance, (ii) blowout, (iii) fire, or (iv) loss of, or damage to, wells, formations or mineral rights, even if arising out of or attributable to the Negligence of the members of the Seller Group.

(7)   Notwithstanding any other provision contained in this Agreement, Buyer shall be responsible for and shall reimburse and Indemnify Seller in respect of any loss of or damage (excluding normal wear and tear) to Seller Group property, materials or equipment (tools) or components which (i) is damaged or lost whilst in-hole below the rotary table or (ii) is leased or borrowed by Buyer.

**B. INDEMNITY FOR CONSEQUENTIAL DAMAGES:**
UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES (collectively "CONSEQUENTIAL"), AS DEFINED BY THE LAWS GOVERNING THIS PURCHASE ORDER, NOR FOR ANY LOSS OF ANTICIPATED PROFITS, LOSS OF BUSINESS OPPORTUNITY, LOSS OF USE OF EQUIPMENT OR OF ANY INSTALLATION, SYSTEM OR FACILITY INTO WHICH SELLER'S EQUIPMENT MAY BE LOCATED OR AT WHICH MEMBERS OF THE SELLER GROUP MAY BE PERFORMING WORK AND BUYER AGREES TO "INDEMNIFY" AND HOLD SELLER GROUP HARMLESS FROM AND AGAINST ANY "CLAIMS" FOR SUCH DAMAGES EVEN IF ARISING OUT OF OR ATTRIBUTABLE TO THE "NEGLIGENCE" OF THE MEMBERS OF THE SELLER GROUP.

**C. LIMITATION OF LIABILITY:**
EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL INDEMNITY OBLIGATIONS AND/OR LIABILITIES HEREBY ASSUMED BY THE PARTIES SHALL BE: (i) SUPPORTED BY INSURANCE; (ii) WITHOUT LIMIT; (iii) AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING, BUT NOT LIMITED TO, PREEXISTING CONDITIONS (WHETHER SUCH CONDITIONS BE PATENT OR LATENT); THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS (WHETHER OR NOT PREEXISTING); THE UNAIRWORTHINESS OF ANY AIRCRAFT; BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED); BREACH OF CONTRACT; BREACH OF DUTY (STATUTORY, CONTRACTUAL, COMMON LAW OR OTHERWISE); STRICT LIABILITY; CONDITION OF RUIN OR DEFECTIVE PREMISES, EQUIPMENT, FACILITIES, OR APPURTENANCES OF ANY PARTY UNDER ANY CODE, LAW OR (WHETHER OR NOT SAID CONDITION IS PREEXISTING AND/OR LATENT, PATENT OR OTHERWISE); THE LOADING OR UNLOADING OF PERSONS OR CARGO; TORT; OR THE NEGLIGENCE OR FAULT OF ANY PARTY (AS DEFINED AT THE BEGINNING OF THIS ARTICLE 14; OR ANY OTHER THEORY OF LEGAL LIABILITY. Seller's total responsibility for any claims, damages, losses or liability arising out of or related to its performance of this contract or the products or services covered hereunder shall not exceed 20% of the purchase price under the applicable purchase order.

**D. BUYER's CUSTOMER AND SUPPLIER INDEMNITIES:**
Notwithstanding anything in these terms or the order to the contrary, in the event that Buyer is entitled to indemnity under any contract with its customers or suppliers with respect to pollution and consequential losses described in Section 14A(6) and 14B above in connection with work performed under this Agreement, Buyer will provide Seller Group with the benefit of such indemnity to the fullest extent possible under such contracts with Buyer's customers and suppliers.

**E. CARE OF RENTAL EQUIPMENT:**
(1)      The Buyer, at its sole expense, shall be responsible for ensuring that the rental equipment is maintained in good working order and operating condition at all times the Buyer maintains possession of the rental equipment. The rental equipment shall be maintained in good working order and operating condition, at Buyer's expense, and shall be returned in the same condition as when received, ordinary wear and tear alone excepted.

(2)      Seller shall conduct an inspection ("Inspection and Disposition") of the rental equipment to determine if the rental equipment is in good working order and operating condition. If Seller after the Inspection and Disposition finds that the rental equipment is not in good working order and operating condition and is in need of refurbishment, remanufacture, and/or replacement, Seller shall prepare and submit a quotation and invoice, as necessary, prior to any repair work taking place to Buyer detailing the costs and expenses Buyer is obligated to pay to maintain the rental equipment in good working order and operating condition.

(3)      The Buyer shall be liable for all costs and expenses for the refurbishment of the rental equipment to its original state and condition, save and except for ordinary wear and tear. Without prejudice to the generality of the foregoing and for the avoidance of doubt, damage and deterioration in the rental equipment requiring welding machining or coating operations are not considered as normal wear and tear. Any costs and expenses for the refurbishment of the rental equipment shall be invoiced to Buyer upon the return and Inspection and Disposition of

the rental equipment. All costs for refurbishment and labor charges shall be specified in the pricing schedule or such other similar document agreed to by the parties.

(4)      In respect of the rental equipment which requires welding machining or coating operations or other remanufacturing related actions, Seller will repair all damaged equipment, at the cost and expense of the Buyer. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place, Seller shall prepare and submit a quotation and invoice detailing the expected costs to repair the rental equipment to its original state and condition.

(5)      In respect of rental equipment which has been lost or damaged beyond repair, the Buyer shall be liable and shall pay to Seller, Seller's most recent replacement price item, as may be prescribed by Seller from time to time, with such replacement price taking into account the age, usage and depreciated value of the lost or damaged item as determined by Seller's standard accounting procedures. Any such replacement price prescribed by Seller shall take into account the age, usage and actual value of the lost or damaged item. Upon the completion of the Inspection and Disposition of the rental equipment and prior to any repair work taking place Seller will submit a quotation for the replacement price and an invoice to Buyer.

**15. MODIFICATION, RESCISSION & WAIVER:**

The terms herein may not be modified or rescinded nor any of its provisions waived unless such modification, rescission or waiver is in writing and signed by an authorized employee of Seller at its office in Houston, Texas. Failure of Seller to insist in any one or more instances upon the performance of any of the terms and conditions of the contract or the failure of Seller to exercise any of its rights hereunder shall not be construed as a waiver or relinquishment of any such term, condition, or right hereunder and shall not affect Seller's right to insist upon strict performance and compliance with regard to any unexecuted portions of this contract or future performance of these terms and conditions.

All orders must be accepted by an authorized employee of Seller. The rights and duties of the parties and construction and effect of all provisions hereof shall be governed by and construed according to the internal laws of the State of Texas. Any disputes which arise under this agreement shall be venued in the District Court of Harris County, Texas or in the Southern District of Texas.

CAM/T&C/US/10