## IN THE UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ATP Oil & Gas Corporation, | § | Case No.: 12-36187 |
| | § | |
| Debtor. | § | Hon. Marvin Isgur |

---

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 363, AND 365 AND BANKRUPTCY RULES 2002 AND 6004 FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF ITS INTERESTS IN GARDEN BANKS 409 AND SOUTH TIMBALIER 48 FREE AND CLEAR OF CLAIMS AND LIENS; (II) APPROVING THE FORM AND MANNER OF THE NOTICE OF THE SALE AND THE SALE HEARING; (III) APPROVING CERTAIN PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; (IV) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (V) GRANTING CERTAIN RELATED RELIEF**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON <u>JANUARY 30, 2014</u>, AT 1:30 P.M. AT THE U.S. BANKRUPTCY COURT, 515 RUSK AVENUE, HOUSTON, TEXAS 77002 (the "**Sale Hearing**")

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST RESPOND IN WRITING AND SEND A COPY TO THE MOVING PARTY. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS MOTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE SALE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

ATP Oil & Gas Corporation ("**ATP**") or the "**Debtor**") files this *Motion Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and Bankruptcy Rules 2002 and 6004 for Entry of an Order Approving the Sale of Its Interests in Garden Banks 409 and South Timbalier 48 Free and Clear of Claims and Liens* (the "**Motion**").  In support of the Motion, the Debtor respectfully submits the following:

**JURISDICTION**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought hereby are Sections 105(a) and 363(b), (f), and (m), and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules.

**BACKGROUND**

2.     On August 17, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (this "**Court**"). Since the Petition Date, the Debtor has continued to operate and manage its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.  On August 24, 2012, the U.S. Trustee appointed a committee of unsecured creditors (the "**Creditors' Committee**") and on November 6, 2012, the U.S. Trustee appointed a committee of equity holders (the "**Equity Committee**" and, together with the Creditors' Committee, the "**Committees**") in this case.

3.     The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Declaration of Albert L. Reese, Jr. in

2

Support of First Day Pleadings [Dkt. No. 28] (the "**Reese Declaration**") filed on the Petition Date and incorporated herein by reference.

4.       The Debtor is a recognized offshore oil and gas exploration and production operator on the Outer Continental Shelf in the Gulf of Mexico, both in shallow water and deep water.  As of December 31, 2011, the Debtor directly held leasehold and other interests in the Gulf of Mexico in 38 offshore blocks.

**The Debtor's GB 409 and ST 48 Interests**

5.       The Debtor achieved first production from two deepwater wells at Lease No. OCS-G 15891, Garden Banks Block 409 of the offshore Louisiana Outer Continental Shelf ("**GB 409**") in the fall of 2001—the company's first deepwater subsea development project.  The Debtor and Union Oil Company of California ("**Unocal**") each hold a 50% working interest in GB 409. Unocal serves as the property's operator.  In addition, the Debtor acquired a 100% record title interest in Lease No. OCS-G 14518, South Timbalier Block 48 of the offshore Louisiana Outer Continental Shelf ("**ST 48**") in the fall of 2002.  Prior to the Debtor's acquisition of ST 48, title to the lease had previously been held by Chevron U.S.A., Inc. ("**Chevron**").  The Debtor no longer has any operations on ST 48 and its wells on that lease were decommissioned prior to the Petition Date.  Chevron does conduct operations on ST 48 as a holder of operating rights.

6.       In connection with its operations, the Debtor has incurred various statutory or contractual liabilities resulting from its interests in and operation of GB 409 and ST 48, including obligations to properly plug and abandon wells and dismantle and decommission various fixtures and production-related equipment on the property (collectively, the "**P&A Obligations**").  The Debtor estimates that, as of the date of the filing of this Motion, the total amount of the P&A Obligations related to GB 409 amount to approximately $12 million, plus approximately $7

3

million associated with decommissioning of the umbilical line between the GB 409 wells and the closest production platform.[1]   In addition, the Debtor estimates that, as of the filing of this Motion, it bears P&A Obligations related to ST 48 in the amount of $300,000.   These P&A Obligations remain the Debtor's responsibility even should the Debtor reject and abandon its interests in GB 409 and ST 48.

### Sale of Substantially All of the Debtor's Producing Assets

7.      Beginning in November 2012, the Debtor engaged in a robust sale process to market substantially all of its assets.  This process culminated in the Debtor's receipt of multiple bids for certain of its assets, and included an extension of the initial bid deadline for bids on the Debtor's deepwater assets from March 19, 2013 to May 2, 2013.  As a result of its marketing process, the Debtor received five bids for certain portions of the Debtor's assets. Significantly, none of the bids submitted as part of that process sought to acquire all of the assets offered for sale, and none of the bids sought to acquire the Debtor's interests in GB 409 or ST 48.  The Debtor conducted an auction on May 7, 2013, at which it determined that the credit bid submitted by the DIP Lenders was the highest and best bid offered at the auction.  This credit bid, like the other bids received by the Debtor, was not an all-asset bid and did not include either GB 409 or ST 48. The Court granted final approval of the asset sale on October 17, 2013 [Docket No. 2706] and the sale closed on November 1, 2013 [Docket No. 2787].

### Rejection of Certain of the Debtor's Offshore Leases

8.      Neither the DIP Lenders nor any other bidder expressed any interest in the Debtor's remaining non-producing properties, each of which has either ceased commercial production, or produces only intermittently.  Accordingly, on May 22, 2013, the Debtor filed its

---

[1]      As a 50% working interest holder, the Debtor's share of the P&A Obligations is approximately $9.5 million.

4

*Motion for Entry of an Order Pursuant to 11 U.S.C. § 365(a) Authorizing Rejection of Certain Unexpired Leases and Executory Contracts Related to the Debtor's Gomez Properties and Abandonment of Any Interests Relating Thereto* [Docket No. 1902]. The Court granted the motion by order dated June 13, 2013 (the "**Gomez Rejection Order**").

9.      Similarly, the Debtor filed its *Emergency Motion for Entry of an Order Pursuant to 11 U.S.C. § 365(a) (I) Authorizing Omnibus Rejection of Certain Unexpired Leases Related to the Debtor's Remaining Properties, Relinquishment, and Abandonment of Any Interests Related Thereto and (II) Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases* [Docket No. 1932] on May 31, 2013. By that motion, the Debtor had originally sought to reject all of its remaining offshore properties. However, at the request of predecessors in title on certain of the leases implicated in the motion, the Debtor removed those leases—including GB 409 and ST 48—from the schedule of leases slated for rejection. The Court granted the motion by order dated June 21, 2013 (the "**Omnibus Rejection Order**"). As a result, the Debtor remains the 50% working interest holder and the record title owner of ST 48, both of which are subject to substantial P&A Obligations. The Debtor has no economic interest in the ST 48 production. The operations on GB 409 are being conducted by Unocal and the Debtor is not participating in those operations and is not expected to ever realize any economic benefit from them.

10.     Because of the specific nature of the P&A Obligations related to its interests in GB 409 and ST 48 and the fact that its obligations related to the P&A Obligations would likely continue to burden its estate even if it were to reject the leases pursuant to the Omnibus Rejection Order, the Debtor determined in its reasonable business judgment that rather than rejecting its interests in these properties—which would preserve the value of its estate but

otherwise not have any affirmative benefits—it would be in the best interest of its estate to pursue discussions to convey its respective interests in these non-producing properties (which are presently not generating any income whatsoever and for which it simply does not have any available funds to operate) to Unocal and Chevron in their respective capacities as the co-interest owner and predecessor in title.   Towards that end, the Debtor pursued, and was ultimately successful in securing, an arrangement with Unocal and Chevron that would not only preserve, but affirmatively create value for the estate.

11.     Specifically, after engaging in significant good faith, arm's-length negotiations with these parties, the Debtor reached agreements to convey its interests in GB 409 to Unocal (the "**GB 409 Interests**") and ST 48 to Chevron (the "**ST 48 Interests**"), as well as certain rights of way and other assets related to those specific properties upon the terms set forth in the Purchase and Sale Agreements attached hereto as **Exhibits A** and **B**, respectively (collectively, the "**Purchase Agreements**").  The specific assets to be conveyed under the respective Purchase Agreement, including the GB 409 Interests, the ST 48 Interests and any other assets related or appurtenant thereto are further described and specifically set forth in each Purchase Agreement, and are collectively referred to herein as the "**Purchased Assets**").  Notably, while  the terms of each respective Purchase Agreement, including the Purchased Assets to be conveyed thereunder, are specific to the individual property to which they relate, virtually all other the material terms of the Purchase Agreements are nearly identical and, as such, are summarized collectively below.[2]

---

[2]     This summary is qualified in its entirety by the respective Purchase Agreements attached hereto.  All capitalized terms that are used in this summary but not otherwise defined herein shall have the meaning ascribed such term in the applicable Purchase Agreement.  To the extent there are any conflicts or inconsistencies between this summary and any Purchase Agreement, the terms of the Purchase Agreement shall govern in all respects.

12.     As set forth in further detail therein, pursuant to the Purchase Agreements, the Debtor proposes to convey the Purchased Assets related to GB 409 to Unocal and ST 48 to Chevron (in their respective capacities as the "**Buyers**" of the Purchased Assets under the applicable Purchase Agreement) free and clear of liens, claims, encumbrances, and interests other than those statutory liens encumbering such property for which Lien Identification Statements have been filed in accordance with this Court's *Order Approving the Lien Identification Process and Other Related Relief* [Docket No. 1213] (as further defined and described in the respective Purchase Agreements, the "**Existing Liens**") with such conveyance effective as of September 1, 2013 (the "**Effective Date**").

13.     As consideration for the conveyance of the Purchased Assets, Unocal and Chevron each have agreed to assume any and all of the Debtor's obligations and liabilities related to the P&A Obligations arising on account of the Debtor's interests in each respective property and shall assume all duties, obligations and liabilities with respect to the properties attributable to the period after the Effective Date (and shall release, defend and indemnify the Debtor against any and all losses related thereto).  As further consideration, both Unocal and Chevron have agreed to release any and all claims that they may have against the Debtor arising out of the parties' respective pre-petition agreements related to GB 409 and ST 48, including, without limitation, any claim for administrative expense priority related thereto.

14.     Accordingly, the Debtor believes that it is undeniably in the best interest of its estate to enter into and consummate the transactions with Unocal and Chevron contemplated under the terms of their respective Purchase Agreements.  Here, given that the months of marketing of the Debtor's assets failed to result in even one other single party expressing interest in the acquisition of either GB 409 of ST 48, the Debtor believes that given its lack of economic

interest in any operations being conducted (and in light the amount of the P&A Obligations for which a purchaser would immediately become liable), the continued marketing of the Purchased Assets would not result in any offer to convey the assets that would provide any increased value to the Debtor's estate— indeed, Unocal and Chevron have only sought to engage in the subject transactions as a result of their prepetition relationships with the Debtor and these particular properties.  Accordingly, as the Debtor believes that any further marketing of its interests in and assets related to GB  409 and ST 48 would not only be uneconomical but simply not feasible given its present financial condition, absent the approval of the transactions contemplated by the Purchase Agreements, the Debtor would likely seek to reject these properties and the estate would not realize the immediate benefit of the assumption of the Debtor's P&A Obligations and resulting release of any administrative claims that may be asserted in relation thereto (including, but not limited, to those potentially held by the Buyers themselves) and would instead be saddled with additional expense and burden in litigating or otherwise seeking to resolve such claims in any event.  In sum, due to the particular facts and circumstances related to the proposed conveyance of the Purchased Assets and the identity and specific interests of the proposed Buyers thereof, it is simply in the best interests of the Debtor's estate and stakeholders to enter into and consummate the transactions contemplated by the Purchase Agreements—especially where, as here, the very same assets sought to be conveyed would simply be abandoned and the consideration to be provided thereunder would entirely and unnecessarily be lost.

### RELIEF REQUESTED

15.     By this Motion, the Debtor requests the entry of an order (the "**Sale Order**") substantially in the form submitted herewith (i) approving the sale of the respective Purchased Assets to each Buyer pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and authorizing the Debtor to sell the Purchased Assets pursuant to the Purchase Agreements; (ii)

approving the form and manner of the notice of the sale and the Sale Hearing; (iii) approving certain procedures related to the assumption and assignment of executory contracts and unexpired leases; (iv) authorizing the assumption and assignment of the Assigned Contracts set forth in the Purchase Agreements, and determining the amount of any cure payment required to be paid in connection therewith; and (v) granting related relief.

**Assumption and Assignment of Executory Contracts and Unexpired Leases**

16.      In conjunction with and to facilitate the conveyance of the Purchased Assets, the Debtor and each Buyer under its respective Purchase Agreement have identified certain executory contracts and unexpired leases which the Debtor intends to assume and assign to the Buyer pursuant to Section 365 of the Bankruptcy Code (each such contract or lease, an "**Assigned Contract**") and are set forth in further detail on Exhibit A-3 to each Purchase Agreement.   In connection with such proposed assumption and assignment of the Assigned Contracts, and in order to ensure that all counterparties under each potential Assigned Contract (a "**Contract Counterparty**") receive adequate notice of the proposed assumption and assignment of their respective contract or lease and the opportunity to be heard with respect thereto, the Debtor requests that the Court approve the following procedures for fixing any cure amounts owed on the Leases and Contracts (the "**Assumption and Assignment Procedures**").

17.      In order to provide adequate and appropriate notice to all Contract Counterparties to the Assigned Contracts, the attached **Exhibit C** sets forth certain pertinent information related to the Assigned Contracts reasonably calculated to provide any non-debtor counterparties with such additional and adequate notice of the proposed assumption and assignment to the Buyer under each respective Purchase Agreement (the "**Contract Assignment & Cure Schedule**") Specifically, the Contract Assignment & Cure Schedule specifies with particularity (i) each the contract(s) and/or lease(s) that may be assumed by the Debtor and assigned to the Buyer under

9

the particular Purchase Agreement; (ii) the name and address of the Contract Counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Debtor and/or the Buyer to withdraw such request for assumption and assignment of the Assigned Contract(s) prior to the Closing); and (iv) the amount, if any, determined by the Debtor to be necessary to be paid to cure and compensate for any existing default in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**").

18.     Any objections to the assumption and assignment of any Assigned Contract (each a "**Contract Objection**"), including without limitation any objection to the Debtor's proposed Cure Amount or the provision of adequate assurance of future performance under any Lease or Contract pursuant to Section 365 of the Bankruptcy Code ("**Adequate Assurance**"), must: (a) be in writing and signed by counsel or attested to by the objecting party; (b) filed with the Clerk of the Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002, by the Sale Objection Deadline (as defined below); (c) identify the lease or contract to which the objector is party; (d) describe with particularity any cure or other compensation the claimant contends is required under Section 365 of the Bankruptcy Code (the "**Alleged Cure Claim**") and identify the basis(es) of the Alleged Cure Claim under the contract or lase; (e) attach all documents supporting or evidencing the Alleged Cure Claim; (f) if the response contains an objection to Adequate Assurance, state with specificity what the objecting party believes is required to provide Adequate Assurance; and (g) be served in accordance with the Local Rules so as to be received on or before the Sale Objection Deadline by the following parties:

19.     Any objection to the Cure Amount or Adequate Assurance which is timely filed and served by any Contract Counterparty in accordance with the Assumption and Assignment

Notice and/or the Assigned Contract Objection Procedures, and which is not otherwise resolved by the parties, shall be heard by this Court at the Sale Hearing.

20.     If no Contract Objection is timely and properly filed and served in accordance with the Assigned Contract Objection Procedures, then the Cure Amount, if any, set forth in the Contract Assignment & Cure Schedule with respect to such Assigned Contract shall be binding upon all Contract Counterparties to each such Assigned Contract for all purposes in this Chapter 11 case and will constitute a final determination of the total Cure Amount, if any, required to be paid in connection with the assumption by the Debtor and the assignment to the Buyer.   In addition, each Contract Counterparty shall be forever barred from objecting to the Cure Amount set forth in the Contract Assignment & Cure Schedule, including, without limitation, the right to assert any additional cure or other amounts with respect to the Assigned Contract.   The Court will make its determinations concerning Adequate Assurance under the Assigned Contracts pursuant to 11 U.S.C. §365(f) at the Sale Hearing, or as soon as practicable thereafter.   All Cure Amounts shall be paid by the Buyer.

21.     **Any Contract Counterparty failing to timely and properly file and serve a Contract Objection prior to the Sale Objection Deadline in accordance with the Assigned Contract Objection Procedures shall be deemed to consent to (i) the treatment of its Assigned Contract under Section 365 of the Bankruptcy Code, (ii) the assumption and assignment of its Assigned Contract notwithstanding any anti-alienation provision or other restriction on assumption or assignment, and (iii) the provision of Adequate Assurance of future performance by the applicable Buyer.**

### Objections to the Sale

22.     All objections to the sale of the Purchased Assets, the assumption and assignment of the Assigned Contracts, or any relief requested in this Motion must be: (a) in writing; (b)

signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Clerk of the Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002 **by no later than 4:00 p.m. (CST) on Thursday, January 23, 2014** (the "**Sale Objection Deadline**"); and (e) served in accordance with the Local Rules so as to be received on or before the Sale Objection Deadline by (i) counsel for the Debtor: Mayer Brown LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002, Attn: Charles S. Kelley, (CKelley@mayerbrown.com) and (ii) counsel for the Buyer: Liskow & Lewis, 1001 Fannin Street, Suite 1800, Houston, Texas 77002, Attn: Michael D. Rubenstein (mdrubenstein@liskow.com).

### Approval of Notice of Sale

23.     The Debtor proposes to give notice of this Motion, the Purchase Agreements, the proposed assumption and assignment of the Assigned Contracts (including the Assumption and Assignment Procedures and the Contract Assignment & Cure Schedule related thereto), and the Sale Hearing by serving this Motion (including all Exhibits hereto) upon the following parties by electronic mail, facsimile or first-class United States mail (postage pre-paid): (i) all entities known by the Debtor to have expressed an interest in a transaction with respect to the Purchased Assets during the past nine (9) months, including all parties who executed a non-disclosure agreement in connection with the Debtor's previous sale of substantially all of its assets; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all Contract Counterparties to the proposed Assigned Contracts identified in the Contract Assignment & Cure Schedule; (iv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Purchased Assets; and (v) upon all parties set forth in the Debtor's Master

Service List maintained in accordance with this Court's Order Establishing Notice Procedures [Dkt. No. 132] (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (v) above). In addition, the Debtor shall post this Motion and all Exhibits hereto on the website maintained by the Debtor's notice agent, Kurtzman Carson Consultants, Inc. (the "**KCC Website**").

24.     The Debtor submits that the foregoing notice is reasonably calculated to provide timely and adequate notice to the Debtor's creditors and other parties in interest, and also to all those who may hold any interest in submitting a competing offer to acquire the Purchased Assets.  Accordingly, the Debtor submits that such notice constitutes good and sufficient notice under the circumstances with respect to this Motion, all proceedings to be held hereon, and the entry of an order granting all of the relief requested herein.  The Debtor further submits that no further notice need be given.

**BASIS FOR RELIEF**

**A.     Sale Of the Purchased Assets Is A Product Of the Debtor's Reasonable Business Judgment**

25.     Section 363(b)(1) of the Bankruptcy Code provides: "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

26.     Virtually all courts have held that approval of a proposed sale of the assets of a debtor under Section 363 of the Bankruptcy Code outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the trustee or debtor-in-

13

possession. *See In re Abbotts Dairies of Pa.,* 788 F.2d 143 (3d Cir. 1986); *In re Delaware &*
*Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (holding that the following non-exclusive list
of factors may be considered by a court in determining whether there is a sound business purpose
for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of
elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of
reorganization; the amount of proceeds to be obtained from the sale versus appraised values of
the property; and whether the asset is decreasing or increasing in value."); *In re Lionel Corp.,*
722 F.2d 1063 (2d Cir. 1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir.
1986); *In re Stroud Ford, Inc.,* 164 B.R. 730, 732 (Bankr. M.D. Pa 1993); *Titusville Country*
*Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In*
*re Ionosphere Clubs, Inc.,* 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Industrial Valley*
*Refrigeration & Air Conditioning Supplies Inc.,* 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); *In re*
*Phoenix Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements
necessary for approval of a Section 363 sale in a chapter 11 case are "that the proposed sale is
fair and equitable, that there is a good business reason for completing the sale and the transaction
is in good faith").

27.     The "sound business reason" test requires a trustee or debtor-in-possession to
establish four elements: (1) that a sound business purpose justifies the sale of assets outside the
ordinary course of business; (2) that accurate and reasonable notice has been provided to
interested persons; (3) that the trustee has obtained a fair and reasonable price; and (4) good
faith. *In re Titusville Country Club*, 128 B.R. at 399; *In re Sovereign Estates, Ltd.,* 104 B.R. 702,
704 (Bankr. E.D. Pa. 1989); *Phoenix Steel Corp.,* 82 B.R. at 335-36; *see also Stephens Indus.*,
789 F.2d at 390; *In re Lionel Corp.,* 722 F.2d at 1071.

28.     Additionally, courts have held that private sales of estate property are entitled to similar deference.  *Matter of Embrace Systems Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved."); *see also In re Ancor Exploration Co.*, 30 B.R. 802, 808 (N.D. Okla. 1983) ("the bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363").

29.     The proposed sale of the Purchased Assets meets the "sound business reason" test.  First, sound business purposes justify the sale.  The proposed sale will relieve the Debtor's estate of substantial P&A Obligations related to ST 48 and GB 409.  Because the Debtor has no economic interest in the ST 48 and GB 409 wells, they currently do not generate funds available to cover the P&A Obligations and the Debtor has no certainty whatsoever that they may ever in the future if it were somehow able to fund the operation of these properties (which it simply cannot in its current financial condition).  In addition, no other party has expressed interest in acquiring the Purchased Assets (whether the ST 48 or the GB 409 Interests or any other related assets to be sold in connection with the transactions contemplated herein); the Purchase Agreements present the best available option for addressing the P&A Obligations.

30.     Second, the sale of the Purchased Assets also meets the other factors of the "sound business reason" test.  In conjunction with this Motion, the Debtor will provide notice to creditors and other parties in interest of the Purchase Agreements, the sale hearing, and the Objection Deadline.  Under the circumstances of this case, the Debtor submits that the notice period proposed satisfies the requirements of the Bankruptcy Rules, including Bankruptcy Rule

2002, and provides sufficient time for parties in interest to submit objections to the proposed sale.

31.     Finally, the Debtor submits that the Purchase Agreements represent the product of good faith, arm's length negotiations with respect to the price and other terms of the sale of the Purchased Assets.

32.     As set forth above, the Debtor has determined, in the exercise of its sound business judgment, that the sale of ST 48 and its GB 409 Interests and certain assets related or appurtenant thereto to the Buyers is appropriate and in the best interests of the estate and creditors. The proposed sale will eliminate the Debtor's P&A Obligations, which will in turn afford the Debtor's estate an opportunity to maximize the recoveries to creditors. Accordingly, the Debtor requests that the Court approve the sale presented to the Court at the sale hearing.

**B.     The Buyer Should be Granted the Protection of Bankruptcy Code Section 363(m)**

33.     As will be set forth in further detail at the Sale Hearing, the Debtor also maintains that the Buyers are and will be entitled to the protections afforded by Bankruptcy Code Section 363(m).

34.     Specifically, Bankruptcy Code Section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

35.     While the Bankruptcy Code does not define "good faith," "[t]he requirement that a Buyer act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.   Typically, the misconduct that would destroy a Buyer's good faith status at a

16

judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted); *see generally Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.)*, Case No. 89-3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that party, to show lack of good faith, must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

36.    As the Debtor will demonstrate at the sale hearing, the parties thereto shall have spent a considerable amount of time and resources negotiating the Purchase Agreements at arm's length, with give and take on both sides.  Under these circumstances, this Court should find in the order approving the sale of the Purchased Assets that the Buyers are entitled to all of the protections of Bankruptcy Code Section 363(m).

**C.    The Purchase Agreements Are Not the Subject of Collusive Bidding Under Bankruptcy Code Section 363(n)**

37.    As the Debtor will demonstrate at the sale hearing, the Purchase Agreements have been negotiated, proposed, and entered into by the Debtor and the Buyers without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtor nor the Buyers have engaged in any conduct that would cause or permit the Purchase Agreements to be avoided under Bankruptcy Code Section 363(n).

**D.      Sale of the Purchased Assets Does Not Require the Appointment of a Consumer Privacy Ombudsman**

38.      Under Section 363(b)(1) of the Bankruptcy Code, if the sale of a consumer customer list containing personal information relating to individual persons is inconsistent with the Debtor's consumer privacy policy, Section 332 governs the appointment of a consumer privacy ombudsman.   11 U.S.C. § 363(b)(1).   Here, none of the Debtor's customers that are subject to the sale of the Purchased Assets are individuals, and the Debtor does not have a consumer privacy policy, so Section 363(b)(1) does not apply, and a consumer privacy ombudsman is not required.

**E.      Sale of the Purchased Assets Should Be Free And Clear of Claims and Interests**

39.      Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor seeks authority to sell and transfer ST 48 and its GB 409 Interests and various assets related or appurtenant thereto to the Buyers free and clear of all claims and interests, other than the Existing Liens, with such claims and interests to attach to the proceeds of the sale of the Purchased Assets, subject to any rights and defenses of the Debtor and other parties in interest with respect thereto. Section 363(f) of the Bankruptcy Code provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)      such entity consents;
>
> (3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)      such interest is in bona fide dispute; or

(5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that Section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the requirements is met).

40.      A sale free and clear of all claims and interests and liens, other than the Existing Liens, is necessary to maximize the value of the Debtor's interests and assets related to ST 48 and GB 409 is entirely appropriate in the context of this transaction.  First, as noted above, the sale of the Purchased Assets shall be subject to all those statutory liens encumbering such property for which Lien Identification Statements have been filed in accordance with this Court's *Order Approving the Lien Identification Process and Other Related Relief,* which will continue to burden the subject properties with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtor or any party in interest (including the Buyers in their individual capacities and to the extent granted in the their capacities as Buyers under the Purchase Agreements)

41.      More importantly, a sale free and clear of claims, interests and liens, other than the Existing Liens, is particularly appropriate under the circumstances because the holders of such liens will be adequately protected. Specifically, the Debtor submits that, absent the approval of the sale contemplated herein, it would immediately seek to reject and abandon the properties, which would entirely deprive the holders of any such liens any hope of realizing the value of their liens. However, as a result of the continuation of the Existing Liens and the maintenance of the GB 409 and ST 48 leases, a potential remains that if production were to ever be restored at GB 409 or ST 48 or the properties were able to produce other proceeds subject to the Existing Liens, the sale would have preserved any resulting recoveries for the holders thereof.  Thus, the

proposed sale satisfies Sections 363(f) of the Bankruptcy Code.  Moreover, any holder of a claim or interest that receives notice of the sale and which fails to object to the sale of the Debtor's interests in ST 48 and GB 409 free and clear of claims and interests should be deemed to consent to the sales, thereby complying with Section 363(f)(2) of the Bankruptcy Code.

> **F.      Notice of the Proposed Sale Is Reasonable Under the Circumstances**

42.      In order to receive the highest and best price in return for the Purchased Assets under the circumstances, the Debtor has filed this Motion seeking approval of the Purchase Agreements.  The Debtor submits that the notice to be provided is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to object to the proposed sale of ST 48 and the Debtor's GB 409 Interests or submit competing or higher offers for the Purchased Assets.

> **G.      The Assumption And Assignment Of Executory Contracts And Unexpired Leases Should Be Authorized**

43.      Under Bankruptcy Code Section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Bankruptcy Code Section 365(b)(1), in turn, codifies the requirements for assuming an executory contract of a debtor. This subsection provides:

> (b) (1)  If there has been a default in an executor contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> > (A)      cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
> >
> > (B)      compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

20

          (C)     provides   adequate   assurance   of   future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if --
>
>         (A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
>         (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

44.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992).

45.     Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

46.     To the extent any defaults exist under any Assigned Contracts, any such default will be promptly cured or adequate assurance that such default will be cured will be provided prior to the assumption and assignment as set forth in this Motion. If necessary, the Debtor will submit facts prior to or at the Sale Hearing to show the financial capability of the Buyers and their willingness and ability to perform under the Assigned Contracts. The Sale Hearing will

therefore provide the Court and other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Buyer to provide adequate assurance of future performance under the Assigned Contracts, as required under Section 365(b)(1)(C) of the Bankruptcy Code.

47.    In addition, the Debtor submits that it is an exercise of its sound business judgment to assume and assign the Assigned Contracts to the Buyers in connection with the consummation of the Sale, and the assumption, assignment, and sale of Assigned Contracts is in the best interests of the Debtor, its estate, its creditors, and all parties in interest. The Assigned Contracts being assigned to the Buyer are an integral part of the Purchased Assets being purchased by Buyer, and accordingly, such assumption, assignment, and sale of Assigned Contracts are reasonable and enhance the value of the Debtor's estate. The Court should therefore authorize the Debtor to assume and assign the Assigned Contracts as set forth herein.

**H.    Waiver of Automatic Fourteen-Day Stay Under Bankruptcy Rules 6004(h)**

48.    Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

49.    Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. *See*

*generally* 10 *Collier on Bankruptcy* ¶ 6004.09 (15th ed. 1999).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id.*

50.    Because the Purchase Agreements contemplate obtaining governmental consent to the sale post-closing, as is customary for this sort of transaction outside of bankruptcy, the Debtor must close this sale promptly after all closing conditions have been met or waived. Thus, waiver of any applicable stays is appropriate in this circumstance.

## NOTICE

51.    Notice of this Motion shall been given in accordance with this Court's Order Establishing Notice Procedures [Dkt. No. 132] and, consistent with paragraph 23 of this Motion, shall be served  in the manner set forth therein upon: (i) all entities known by the Debtor to have expressed an interest in a transaction with respect to the Purchased Assets during the past nine (9) months, including all parties who executed a non-disclosure agreement in connection with the Debtor's previous sale of substantially all of its assets; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all Contract Counterparties to the proposed Assigned Contracts identified in the Contract Assignment & Cure Schedule; (iv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Purchased Assets; and (v) upon all parties set forth in the Debtor's Master Service List maintained in accordance with this Court's Order Establishing Notice Procedures [Dkt. No. 132] (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (v) above). In addition, the Debtor shall post this Motion and all Exhibits hereto on the KCC Website.

WHEREFORE, the Debtor respectfully requests entry of the Sale Order, substantially in the form of **Exhibit D** hereto, granting the relief requested herein and such further relief as may be just and necessary under the circumstances.

Dated: Houston, Texas
January 7, 2014

Respectfully submitted,

**MAYER BROWN LLP**

By: /s/Charles S. Kelley
Charles S. Kelley
Attorney-in-Charge
State Bar No. 11199580
Southern District of Texas Bar No. 15344
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone: 713 238-3000
Facsimile: 713 238-4888

– and –

Joshua M. Grenard (admitted *pro hac vice*)
Rue K. Toland (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312 782-0600
Facsimile: 312 701-7711

*Attorneys for the Debtor and Debtor-in-Possession*