**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| ATP OIL & GAS CORPORATION, | § | Case No.: 12-36187 |
| | § | |
| DEBTOR | § | Hon. Marvin Isgur |

**JOINT MOTION AND INCORPORATED MEMORANDUM PURSUANT TO FED. R. BANKR. P. 9019, 2002, 6004 AND 11 U.S.C. §§ 105, 363, AND 365 FOR ORDERS (i) APPROVING COMPROMISES AND SETTLEMENTS BETWEEN DEBTOR, MARUBENI OIL & GAS (USA) INC., AND THE WILLIAMS COMPANIES, INC.; (ii) APPROVING THE SALE OF DEBTOR'S INTEREST IN CERTAIN INVENTORY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (iii) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN RIGHTS OF WAY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (iv) APPROVING CERTAIN PROCEDURES RELATED TO THE ASSUMPTION AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; (v) APPROVING REJECTION OF CERTAIN EXECUTORY CONTRACTS AND INCORPORATING PROCEDURES RELATING THERETO; (vi) APPROVING THE FORM AND MANNER OF THE NOTICE OF THE SALE AND HEARING THEREON; AND (vii) FOR ADDITIONAL RELIEF CONSISTENT THEREWITH**

**NOTICE UNDER COMPLEX CASE ORDER**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON FEBRUARY 27, 2014, AT 1:30 P.M. AT THE U.S. BANKRUPTCY COURT, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OBJECT TO THE RELIEF REQUESTED, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST RESPOND IN WRITING AND SEND A COPY TO THE MOVING PARTY.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 23 DAYS OF THE DATE OF THIS MOTION WAS SERVED ON YOU.   YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Marubeni Oil & Gas (USA) Inc. ("**MOGUS**"), ATP Oil & Gas Corporation ("**Debtor**" or "**ATP**"), and The Williams Companies, Inc. ("**Williams**") (MOGUS, Debtor, and Williams are collectively referred to herein as "**Parties**") file this *JOINT MOTION AND INCORPORATED MEMORANDUM PURSUANT TO FED. R. BANKR. P. 9019, 2002, 6004 AND 11 U.S.C.§§ 105, 363, AND 365 FOR ORDERS (i) APPROVING COMPROMISES AND SETTLEMENTS BETWEEN DEBTOR, MARUBENI OIL & GAS (USA) INC., AND THE WILLIAMS COMPANIES, INC.; (ii) APPROVING THE SALE OF DEBTOR'S INTEREST IN CERTAIN INVENTORY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (iii) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN RIGHTS OF WAY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (iv) APPROVING CERTAIN PROCEDURES RELATED TO THE ASSUMPTION AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; (v) APPROVING REJECTION OF CERTAIN EXECUTORY CONTRACTS AND INCORPORATING PROCEDURES RELATING THERETO; (vi) APPROVING THE FORM AND MANNER OF THE NOTICE OF THE SALE AND HEARING THEREON; AND (vii) FOR ADDITIONAL RELIEF CONSISTENT THEREWITH* (the "**Motion**").  In support of the Motion, the parties respectfully submit the following:

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(a) and (m).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought hereby

are Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, 9014 and 9019 and Sections 105, 363, and 365 of the Bankruptcy Code.

## BACKGROUND

1.     On August 17, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (this "**Court**").  Since the Petition Date, the Debtor has continued to operate its assets and manage its business as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.  On August 24, 2012, the U.S. Trustee appointed a committee of unsecured creditors (the "**Official Committee**") in this case.

2.     For nearly a year, the Debtor engaged in a process to market and sell its assets in order to maximize the value of its estate and promote the greatest recoveries possible for its various stakeholders.  As a result of the Debtor's extensive efforts to dispose of its assets for the benefit of its creditors, on October 17, 2013, the Court confirmed the sale of substantially all of the Debtor's assets (including its interests in certain of its producing offshore oil and gas properties) to Bennu Oil & Gas, LLC ("**Bennu**"), the purchaser designated by the DIP Agent and DIP Lenders in connection with their credit bid.[1]

3.     In addition, on May 31, 2013, the Debtor filed its *Emergency Motion for Entry of An Order Pursuant to 11 U.S.C. § 365(a) (I) Authorizing Omnibus Rejection of Certain Unexpired Leases Related to the Debtor's Remaining Properties, Relinquishment, and*

---

[1]     The order approving the sale to Bennu can be found at Docket No. 2706.  In addition, Bennu supports the Motion, but only insofar as the relief requested herein specifically relates to its obligation to perform or to contribute assets or to recognize any rights as set forth in the Motion, and/or to execute such other and further documents contemplated, provided for or required by the Motion. Upon information and belief, the DIP Agent and DIP Lenders will not object to the relief requested herein.

*Abandonment of any Interests Related Thereto and (II) Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases* [Dkt. No. 1932].

4.      On June 21, 2013, the Court entered its *Order Pursuant to 11 U.S.C. § 365(a) (I) Authorizing Rejection of Certain Unexpired Leases and Executory Contracts Related to the Debtor's Remaining Properties, Relinquishment, and Abandonment of Any Interests Related Thereto and (II) Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases* [Dkt. No. 2096] ("**Prior Rejection Order**").

5.      As the Court is aware, and despite the Debtor's concerted marketing efforts and attempts to sell all of its assets, certain of the Debtor's oil and gas properties were not included in that sale. Accordingly, the Debtor has continued to engage in negotiations with various co-lessees, joint owners of property and infrastructure, and/or predecessors-in-interest in an effort to explore potential transactions that may mitigate certain of the Debtor's ultimate decommissioning liabilities related to those properties that were excluded from the sale to Bennu.

6.      Based upon these continuing efforts, the Debtor and MOGUS have reached an agreement to provide a means by which the Debtor may address and comply with its decommissioning obligations related to the Canyon Express leases and the Canyon Express Pipeline System ("**CEPS**") through the Debtor's assumption and assignment of certain of its interests therein to MOGUS in exchange for MOGUS' agreement to conduct, or cause to be conducted, certain operations and to establish a decommissioning escrow to address the Debtor's decommissioning obligations related thereto. This agreement will also protect the Debtor's estate in that MOGUS has agreed not to pursue and/or to withdraw any claims relating to these decommissioning obligations directly against the Debtor's estate, including any administrative

expense claims under 11 USC §503, and further including, but not limited to, MOGUS' claims included in proof of claim numbers 345, 627, 628, 629, 630, and 631 as maintained by the Debtor's claims agent, KCC, while specifically reserving and maintaining any and all other rights and claims including but not limited to the right of subrogation, contribution, and/or reimbursement.

7.     Given that the Debtor's only reasonable business alternative to the proposed transaction with MOGUS is the relinquishment of its leasehold interests in the Canyon Express leases and in the CEPS that could potentially leave the Debtor's estate with unresolved decommissioning liabilities of $271,171,370.00,[2] the proposed transactions and settlements with MOGUS and Williams (as discussed and described in detail below) are clearly in the best interest of the Debtor's estate and directly inures to the benefit of all of the Debtor's stakeholders because such transactions and settlements clearly reduce potential estate liabilities and eliminate the considerable costs associated with the potential litigation amongst the Debtor, MOGUS, and Williams regarding these expenses and claims in the future.

8.     In addition, over the past several months, the Debtor has engaged in substantial efforts to address administrative expenses through various efforts, including by seeking waivers of claims and administrative expenses in conjunction with assigning its remaining leasehold properties in one-off transactions.  Due to the fact that MOGUS and Williams will continue with a commercial relationship dealing with CEPS after this Motion is approved, ATP has negotiated with both MOGUS and Williams in an effort to address Williams' administrative expense claim

---

[2] The estimated decommissioning costs referenced herein are derived from the Bureau of Safety and Environmental Enforcement assessments associated with the King's Peak Leases (defined below), Mississippi Canyon Block 305, Mississippi Canyon Block 348, and the CEPS and are articulated on an 8/8ths basis because ATP is jointly and severally liable to BOEM/BSEE with its co-lessees and other co-liable parties.

against the estate.[3]   An agreement has been reached between MOGUS and Williams which provides for a compromise and settlement of Williams' pending and prospective administrative expense claims against ATP and the payment by MOGUS to Williams of such settlement amount, resulting in an agreed order dismissing the administrative expense claim asserted by Williams, which further reduces administrative claims against the estate in the amount of $2,977,106.08.

9.     Accordingly, for all of the reasons set forth above and as set forth in further detail below, the Debtor respectfully requests that the Court approve the settlements and transactions with MOGUS and Williams as proposed herein, and for the ancillary relief requested.

## BACKGROUND RELATING TO CANYON EXPRESS

10.     MOGUS is either a co-lessee and/or working interest owner with the Debtor in various leases and related interests and contracts which were subject to and included in the above Prior Rejection Order, including, but not limited to, Lease OCS-G 9789, covering Mississippi Canyon 173, Lease OCS-G10444, covering De Soto Canyon 133, Lease OCS-G 10445, covering De Soto Canyon 177, and Lease OCS-G 9790, covering Mississippi Canyon 217 (collectively the "**Kings Peak Leases**"),   MOGUS' and ATP's respective interests therein being depth limited.

11.     MOGUS is also either a co-lessee and/or working interest owner with the Debtor in certain other leases associated with operations relating to the Canyon Express fields, including, but not limited to, Lease OCS-G 19935, covering Mississippi Canyon 305 ("**MC 305**"),[4] Lease OCS-G 19939, covering Mississippi Canyon 348 ("**MC 348**"), the interests related

---

[3] *See* Docket No. 2887, which amended Docket No. 2639.
[4] MC 305 has not produced since June, 2013 and has expired as a matter of law. ATP has advised BOEM/BSEE that the lease should be terminated.

to the rights of way ("**ROWs**") and segments comprising the CEPS,[5] and certain inventory and equipment ("**CE Inventory**")[6] specifically related to Canyon Express which were not included in the Prior Rejection Order (collectively, and together with the Kings Peak Leases, the "**Canyon Express Assets**").

12.     MOGUS and the Debtor are also parties to various executory contracts and/or agreements related to and governing their relationship in and to various leases including, but not limited to, certain pipeline agreements and offshore operating agreements relating to the Canyon Express Assets.

13.     ATP is designated as the operator of MC 305 and MC 348 with the Bureau of Ocean Management ("**BOEM**") and/or Bureau of Safety and Environmental Enforcement ("**BSEE**," and, together with BOEM, the "**Agencies**").

14.     ATP is also the record holder with the Agencies of the CEPS ROWs and segments.

15.     The Debtor and MOGUS have undertaken discussions and negotiations seeking a possible resolution regarding their various rights, claims, and/or obligations associated with the Canyon Express Assets and, as a result of those discussions and negotiations, the Debtor and MOGUS have reached a mutually acceptable resolution of these issues, rights, claims and/or obligations by and among them subject to approval by this Court and further subject to the terms of those negotiated agreements.

##### A.     THE PROPOSED SETTLEMENTS

---

[5] CEPS is comprised of the following rights-of-way: OCS-G 22429 (Segment 13233), OCS-G 22430 (Segment 13234), OCS-G 22431 (Segment 13235), OCS-G 22431 (Segment 13236), OCS-G 22432 (Segment 13247), OCS-G 22433 (Segment 13248), OCS-G 22433 (Segment 13249), OCS-G 22434 (Segment 13250), OCS-G 22435 (Segment 13251), OCS-G 22435 (Segment 13252), OCS-G 22436 (Segment 13253), OCS-G 22436 (Segment 13254), OCS-G 22437 (Segment 13255), OCS-G 22437 (Segment 13256), OCS-G 22438 (Segment 13258), OCS-G 22439 (Segment 13259), and OCS-G 22440 (Segment 13260).
[6] A list of the CE Inventory is attached as <u>Exhibit 1</u>.

16.     Specifically, the Debtor and MOGUS have agreed, upon approval of this Motion and execution of the transaction documents, as follows:

a.   The Debtor will designate MOGUS as operator of MC 348, subject to approval of the Agencies and the rules and regulations applicable thereto;

b.   The Debtor will retain its current or former record title and/or operating rights interest in and to MC 305, MC 348, and the Kings Peak Leases, but will be a passive owner pursuant to the agreements between the Parties and any associated documentation;

c.   The Debtor will provide access to MOGUS and/or its designee as to any and all wells, files, information, and/or documents associated with the Canyon Express Assets in order to carry out the purposes and intent of the Motion and the agreements between the Debtor and MOGUS;

d.   The Debtor and MOGUS will amend the applicable Offshore Operating Agreement ("**OOA**") pertaining to MC 348 and, to the extent applicable, MC 305 so that MOGUS, as operator, can net expenses against any revenue attributable to the Debtor's working interest, net revenue interest and/or lease interest regarding any lease operating expenses ("**LOEs**"), decommissioning costs and expenses, capital expenses, handling and issuance of Authorization for Expenditures ("**AFE**"), and to provide for notices, votes and elections, salvage and sale and such other and additional items and expenses arising in or related to operations  associated with MC 348 and MC 305;

e.   The Debtor and MOGUS (and Bennu as to its limited obligations included therein) will execute the Abandonment Fund Agreement attached as Exhibit 6 and the Contribution Agreement attached as Exhibit 7;

f. The Debtor will convey, transfer and/or assign, free and clear of all liens, claims and encumbrances pursuant to 11 USC §363, all of its right, title, and interest in and to any and all net proceeds from production in, from, to and/or related to MC 348 and to the extent applicable MC 305 to a decommissioning escrow (the "**Decommissioning Escrow**") established pursuant to the Abandonment Fund Agreement to be used and/or utilized by MOGUS to offset any decommissioning costs, expenses and/or liabilities attributable to Debtor's obligation for plugging, abandonment and/or decommissioning costs and expenses associated with the Canyon Express Assets and any other assets associated with Canyon Express;

g. Pursuant to 11 U.S.C. §363 and §365, the Debtor will assume (to the extent required) and transfer, convey and/or assign to MOGUS, free and clear of all liens, claims, and encumbrances, its "holder" status in and to the CEPS, subject to approval of the Agencies and the rules and regulations applicable thereto;

h. The Debtor will transfer, convey and/or quit claim to MOGUS, free and clear of all liens, claims, and encumbrances, all of its right, title and interest in and to the CE Inventory specifically identified on Exhibit 1;

i. The Debtor shall encumber, hypothecate, pledge, mortgage and/or secure to and in favor of the Decommissioning Escrow, free and clear of all other liens, claims and encumbrances other than the security interest provided herein, all of its right, title and interest in and to that certain obligation of Marathon Oil Company to remit and/or pay the sum of $12,500,000.00 upon satisfaction of certain decommissioning obligations, as more particularly set forth in that certain Purchase and Sale Agreement dated

November 6, 2007 by and between ATP Oil & Gas Corporation and Marathon Oil Company ("**Marathon PSA**");[7]

j.  Upon information and belief, the DIP Agent and the DIP Lenders have agreed to cancel, erase, and/or release any and all security rights, security interest, mortgage, pledge, or hypothecation in and to (i) the Debtor's net proceeds from production in, from and/or related to the Canyon Express Assets, (ii) the Debtor's holder status in and to the CEPS, (iii) the Debtor's right, title and interest in and to the CE Inventory, and (iv) that certain obligation of Marathon Oil Company to remit and/or pay the sum of $12,500,000.00, as more particularly set forth in the Marathon PSA attached hereto as Exhibit 2;

k.  The Debtor has previously conveyed to Bennu as a part of the sale package its 10.00500% overriding royalty interest covering the deep operating rights in MC 348 ("**Retained ORRI**"), which was retained in the Purchase and Sale Agreement dated July 20, 2010 between ATP and Shell Gulf of Mexico Inc.,[8] and Bennu has agreed to transfer, assign and/or convey one-half of the Retained ORRI (being 5.00250%) to MOGUS free and clear of all liens, claims and encumbrances created by Bennu, but not otherwise;

l.  Until MOGUS recoups all of Debtor's proportionate share of decommissioning costs associated with the Canyon Express Assets, Bennu has also agreed to pledge, mortgage, hypothecate and/or secure, free and clear of all other liens, claims and encumbrances created by Bennu, but not otehwise, any and all production proceeds

---

[7] A copy of this November 6, 2007 Purchase and Sale Agreement is attached as Exhibit 2.
[8] A copy of this July 20, 2010 Purchase and Sale Agreement is attached as Exhibit 3.

associated with the remaining one-half interest (5.00250%) in the Retained ORRI to the Decommissioning Escrow;

m. Any and all sale proceeds attributable to, arising from and/or related to the Debtor's net interest in and to CEPS that may result from any transfer or sale of the CEPS shall be transferred free and clear of all liens, claims and encumbrances to the Decommissioning Escrow;

n. The Debtor agrees (i) to waive, relinquish, cancel, forgive and forego any and all right, claim and interest in and to any claims for; (ii) to accept no sum of money for; and (iii) not to seek recovery, reimbursement, or payment from, nor to make any demand for, any Joint Interest Billings ("JIB") against MOGUS relative to the Canyon Express Assets, which is asserted by Debtor to be in the amount of $2,060,084.50 and which amount is disputed by MOGUS;

o. Exhibit 4 contains certain contracts and agreements associated with the Canyon Express Assets to which the Debtor is a party and which shall be rejected by the Debtor pursuant to 11 U.S.C. § 365.  Notwithstanding such rejection, MOGUS agrees to make certain voluntary payments to certain creditors with claims or potential claims against the Canyon Express Assets, but expressly limited to an amount not to exceed the amount per creditor set out on Exhibit 5.  Debtor will not be responsible for any sums set forth on Exhibit 5, and if any amounts remain due and owing to such creditors Debtor will file a notice of rejection and the procedures mandated by the Prior Rejection Order will be implemented.  MOGUS will enter into new and separate contracts and agreements associated with the Canyon Express Assets which obligate MOGUS to be responsible for such expenses and/or costs associated therewith going

forward.  In addition, MOGUS stipulates that it will not pursue or file any rejection damage claims pursuant to 11 U.S.C. § 365 as a result of the rejection of the contracts and agreements included in Exhibit 4;

p.  MOGUS and the Debtor believe that (i) BOEM/BSEE do not object to the filing of this Motion and the entry into any such other and further agreements contemplated by this Motion and/or designed to carry out the purposes and intent of the Parties; (ii) other than with respect to its release of claims against the estate, this Motion is not meant to and does not in any way operate to deter, detract, diminish, waive, relinquish, cancel, extinguish, or affect any and all rights and claims of MOGUS to seek and/or assert rights of and claims for subrogation, contribution, reimbursement, demand, compensation, and/or payment for any and all sums incurred by MOGUS in connection with the decommissioning obligations arising in, related to or in connection with the Canyon Express Assets; and (iii) MOGUS hereby specifically reserves and retains any and all such rights and claims to assert against any person and/or entity, other than the Debtor, including but not limited to MOGUS' right of subrogation, contribution, reimbursement, demand, compensation and/or payment for any and all sums incurred by MOGUS in connection with the decommissioning obligations arising from, related to, or in connection with the Canyon Express Assets;

q.  The contracts and agreements identified in Exhibit 10 shall be assumed by the Debtor, and certain of such contracts and agreements as indicated therein shall thereafter be assigned to MOGUS pursuant to the procedures identified below;

r.  The Parties agree and acknowledge that the Motion and the terms and conditions of any agreement contemplated and/or provided by the Motion shall be binding upon

any Chapter 7 Trustee, although the waiver of MOGUS' claims included in paragraph 3 herein shall be enforceable by such Chapter 7 Trustee;

s.  The Parties further agree and acknowledge that any waivers, obligations, duties and/or rights of the Debtor contained in this Motion shall be binding upon, transferrable to and/or become an obligation to perform upon any liquidating trust (or similar entity created pursuant to a Chapter 11 plan of reorganization), liquidating trust representative and/or counsel or liquidating trustee, although the waiver of MOGUS' claims included in paragraph 3 herein shall be enforceable by such parties; and

t.  The Debtor specifically reserves the right to assign its remaining leasehold interests in MC 348 to a liquidating trust or other entity created as a part of the Debtor's plan process, and MOGUS hereby consents to any such transfer.

17.    As material consideration for both MOGUS and Debtor in agreeing to enter into the transactions contemplated herein, MOGUS and Williams have entered into a Memorandum of Understanding ("MOU") relating to their proposed and contemplated future commercial relationship pertaining to CEPS.  Pursuant thereto, a cash payment from MOGUS to Williams will be made, conditioned upon and subject to, a final order approving this Motion, in full and complete satisfaction of the Williams administrative expense claim.  As such, once that cash payment has received by Williams, the order attached hereto as Exhibit 8 will be entered, thereby expunging any and all administrative expense and other claims that could have been filed by Williams in this bankruptcy case.  In addition, pursuant to such order, the contracts and agreements included on Exhibit 9 will be rejected pursuant to 11 USC §365 as of July 1, 2013, with Williams stipulating that it waives any and all rejection damage claims allowed to be

13

asserted under 11 USC §365.[9]  If any other parties are impacted by such rejection, the notice and claims procedures established by the Prior Rejection Order will be implemented.

## RELIEF REQUESTED

18.     Pursuant to Federal Rule of Bankruptcy Procedure 9019 ("**Rule 9019**") and Sections 105, 363, and 365(b) of the Bankruptcy Code, the Parties respectfully request that the Court approve the settlement and related transactions between the Debtor, MOGUS and Williams as a reasonable compromise and settlement of their respective rights, claims and obligations and authorize the Debtor to execute any and all necessary and requisite documents in order to carry out the intent and purposes of the compromise and settlement reached between the Parties.

19.     The Parties further request the entry of orders issued pursuant to this Motion (i) to approve the compromises and settlements between Debtor, MOGUS, and Williams; (ii) to approve the sale of Debtor's interest in the CE Inventory free and clear of liens, claims and encumbrances to MOGUS; (iii) to approve assumption by Debtor and its assignment of the CEPS free and clear of liens, claims and encumbrances to MOGUS;  (iv) to approve certain procedures related to the assumption by Debtor and its assumption and assignment of certain executory contracts to MOGUS; (v) to approve rejection of certain executory contracts and incorporating procedures from the Prior Rejection Order as appropriate; (vi) to approve the form and manner of the notice of the transfers contemplated hereby and hearing thereon;  and (vii) for additional relief consistent therewith.

20.     In conjunction with and to facilitate the purposes and intent of this Motion and the agreement between the Parties, the Debtor has identified certain executory contracts which the

---

[9] Any contracts or agreements between ATP and Williams (including any and all of its affiliates), not included in Exhibit 9 are rejected as of the Petition Date, unless such contracts or agreements have been previously assumed by ATP.

Debtor intends to reject pursuant to Section 365 of the Bankruptcy Code and as set forth in further detail on <u>Exhibit 4</u> and <u>Exhibit 9</u>. In connection with such proposed rejection of those contracts, MOGUS and Williams, to the extent required, hereby consent to such rejections and stipulate that each will not assert or pursue any rejection damages claims pursuant to 11 USC §365. In addition, to ensure that all other counterparties and affected parties under each such contract affected by or provided for by this Motion receive adequate notice of the rejection of their respective contract and the opportunity to be heard with respect thereto, the Debtor shall be required to follow the procedures established by the Prior Rejection Order.

21.     As to the contracts and agreements being assumed by Debtor and assumed and assigned to MOGUS, such contracts are identified on <u>Exhibit 10</u>, with cure amount for such contracts identified therein. Any objections to the assumption and assignment of any agreement contemplated and/or provided by this Motion, including without limitation, any objection to the Debtor's proposed cure amount or the provision of adequate assurance of future performance under any such agreement pursuant to Section 365 of the Bankruptcy Code ("**Adequate Assurance**"), must: (a) be in writing and signed by counsel or attested to by the objecting party; (b) filed with the Clerk of the Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002, by the Objection Deadline (as defined below); (c) identify the agreement to which the objector is a party; (d) describe with particularity any cure or other compensation the claimant contends is required under Section 365 of the Bankruptcy Code (the "**Alleged Cure Claim**") and identify the basis(es) of the Alleged Cure Claim under the agreement; (e) attach all documents supporting or evidencing the Alleged Cure Claim; (f) if the response contains an objection to Adequate Assurance, state with specificity what the objecting party believes is require to provide Adequate Assurance; and (g) be served in accordance with the Local Rules so as to be received on or

before the Objection Deadline.  MOGUS and, to the extent necessary, Williams hereby stipulate that they have no cure claims as to any contract or agreement on <u>Exhibit 10</u>, and Debtor asserts that the assumption and, as applicable, assignment of its rights and obligations associated with all such contracts and agreements provides all required adequate assurance for future performance associated therewith.

22.     Any objection to the Cure Amount or Adequate Assurance which is timely filed and served by any counterparty in accordance with the Motion and which is not otherwise resolved shall be heard by this Court at any hearing on this Motion.

23.     If no objection is timely and properly filed and served in accordance with these procedures, then the Cure Amount, if any, set forth on <u>Exhibit 10</u> shall be binding upon all counterparties in this case and will constitute a final determination of the total Cure Amount, if any, required to be paid in connection with this Motion.  In addition, each counterparty shall be forever barred from objecting to the Cure Amount set forth on <u>Exhibit 10</u>, including, without limitation, the right to assert any additional cure or other amounts with respect to such contract or agreement.  The Court will make its determinations concerning Adequate Assurance regarding such contracts pursuant to 11 U.S.C. §356(f) at any hearing on this Motion.

24.     Any counterparty failing to timely and properly file and serve an objection prior to any deadline provided by this Motion shall be deemed to consent to (i) the treatment of its contract under Section 365 of the Bankruptcy Code; (ii) the assumption, assumption and assignment, or rejection of its contract notwithstanding any anti-alienation provision or other restriction on assumption or assignment; and (iii) the provision of Adequate Assurance of future performance.

25.     All objections to the proposed sale of the CE Inventory, the assumption and assignment or rejection of the contracts, or any other relief requested in this Motion must be; (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Clerk of the Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002 by no later than February 21, 2014; and (e) served in accordance with the Local Rules so as to be received on or before the objection deadline by (i) Special Counsel for the Debtor: Paul J. Goodwine, Slattery, Marino & Roberts, 1100 Poydras Street, Suite 1800, New Orleans, Louisiana 70163 and (ii) counsel for MOGUS: Robin B. Cheatham, Adams and Reese LLP, 4500 One Shell Square, New Orleans, Louisiana 70139.

26.     The Parties propose to give notice of this Motion and the hearing on this Motion, by serving this Motion (including all Exhibits hereto) upon the following parties by electronic mail, facsimile or first-class United States Mail (postage pre-paid); (i) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (ii) all counterparties to the proposed contracts covered by or provided by this Motion; (iii) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim or other interest arising in or related to the Canyon Express Assets; and (iv) upon all parties set forth in the Debtor's Master Service List as updated and maintained in accordance with this Court's Order Establishing Notice Procedures [Dkt. No. 132] (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (iii) above).

27.     The Parties submit that the foregoing notice is reasonably calculated to provide timely and adequate notice to the Debtor's creditors and other parties in interest, and also to all those who may have any interest in the transfer of the CE Inventory.  Accordingly, the Parties

submit that such notice constitutes good and sufficient notice under the circumstances with respect to this Motion, all proceedings to be held hereon, and the entry of an order granting all of the relief requested herein.  The Parties submit that no further notice need be given.

**BASIS FOR RELIEF**
**COMPROMISE AND SETTLEMENT**

28.     This compromise and settlement is in the best interests of the estate and its stakeholders as it reduces certain obligations and/or claims against the estate.

29.      Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides that, after notice and a hearing, a court may approve a proposed settlement.  The settlement of time-consuming and burdensome litigation, especially in a bankruptcy context, is encouraged and "generally favored in bankruptcy."  *In re World Health Alternatives, Inc.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also *In re Penn Cent. Transp. Co.,* 596 F.2d 1102 (3d Cir. 1979) ("[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims…") (*quoting, In re Protective Comm. For Indep. Stockholders of TMT Ferry, Inc. v. Anderson,* 300 U.S. 414, 424 (1968)).

30.     In deciding whether to approve a proposed settlement, the Court is required to exercise its sound discretion in assessing the reasonableness of a proposed settlement. *In re World Health Alternatives,* 344 B.R. at 296; *see also In re Honeywell,* 93 B.R. 291, 294 (Bankr. S.D. Fla. 1988); *In re Jackson Brewing Co.,* 624 F. 2d 599 (5th Cir. 1980); *In re Teltronics Services, Inc.* 762 F.2d 185 (2nd Cir. 1985).  Moreover, a bankruptcy court need not be convinced that the proposed settlement is the best possibility, but "need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.,* 398 B.R. 816, 833 (Bankr. D. Del. 2008).

31.     Moreover, Section 363(b)(1) of the Bankruptcy Code provides that a trustee (or, in this case, the debtor-in-possession), may use property of the estate other than in the ordinary course of business when there is a "sound business purpose" that justifies such use of estate property.  *See In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999).  Once a debtor articulates a valid business justification for a particular form of relief, the court must review the debtor's request under the deferential "business judgment" rule, which mandates that a court approve a debtor's business decision unless it is the product of bad faith, whim or caprice.  *In re HQ Global Holdings, Inc.,* 290 B.R. 507, 511 (Bankr. D. Del. 2003).   The business judgment rule requires a trustee or debtor-in-possession to establish four elements: (1) that a sound business purpose justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the trustee has obtained a fair and reasonable price; and (4) good faith.  *In re Titusville Country Club,* 128 B.R. at 399*; In re Sovereign Estates, Ltd.*104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); *In re Phoenix Steel Corp.,* 82 B.R. 334, 335-36(Bankr. D. Del. 1987) and *In re Lionel Corp.* 772 F. 2d 1063 (2d Cir. 1983).

34.     Additionally, courts have held that private sales of estate property are entitled to similar deference.  *Matter of Embrace Systems Corp.,* 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995); *see also In re Ancor Exploration Co.,* 30 B.R. 802, 808 (N.D. Okla. 1983).

35.     The sale of the CE Inventory meets the "sound business reason" test.  No other party has expressed interest in acquiring the CE Inventory which is already partially owned by MOGUS.  The agreements between MOGUS and the Debtor present the best available option for addressing the Debtor's decommissioning obligations related to the Canyon Express Assets and

disposition of Debtor's interest in the CE Inventory to MOGUS is acceptable partial consideration for such compromise.

36.     The transfer of Debtor's interest in the CE Inventory also meets the other factors of the "sound business reason" test.  In conjunction with this Motion, notice will be provided to creditors and other parties in interest. Under the circumstances of this case, the Parties submit that the notice period proposed satisfies the requirements of the Bankruptcy Rules, including Bankruptcy Rule 2002, and provides sufficient time for parties in interest to submit objections to the proposed sale.

37.     The Parties submit that the Motion and the agreements between the Parties represent the product of good faith, arm's length negotiations with respect to the terms hereof.

38.     The Motion and the underlying agreements and proposed transactions between the Parties also provide for a method to address the Debtor's decommissioning obligations.

39.     As will be set forth in further detail at the hearing on the Motion, the Debtor also maintains that MOGUS is and will be entitled to the protections afforded by Bankruptcy Code Section 363(m).  Specifically, Bankruptcy Code Section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

41.     While the Bankruptcy Code does not define "good faith," "[t]he requirement that a Buyer act in good faith….speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a buyer's good faith status at a judicial sale involves fraud, collusion between the buyer and other bidders or the trustee, or an

attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted); *see generally Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.)*, Case No. 89-3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that party, to show lack of good faith, must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

42.     As will be demonstrated at the hearing, the Parties have spent a considerable amount of time and resources negotiating at arm's length, with substantial give and take on all sides. Under these circumstances, this Court should find in the order approving the transfer of Debtor's interest in the CE Inventory that MOGUS is entitled to all of the protections of Bankruptcy Code Section 363(m).

43.     As the Parties will demonstrate at the hearing, the agreements between the Parties have been negotiated, proposed, and entered into by the Debtor, MOGUS and Williams without collusion, in good faith, and from arm's-length bargaining positions. None of the Parties have engaged in any conduct that would cause or permit the agreements to be voided under Bankruptcy Code Section 363(n).

44.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale or other disposition of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay

pending appeal before the order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

45.     Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. See generally 10 Collier on Bankruptcy 116004.09 (15th ed. 1999). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id.*

46.     Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor seeks authority to transfer Debtor's interest in the CE Inventory and the CEPS to MOGUS free and clear of all liens, claims, encumbrances and interests.  Section 363(f) of the Bankruptcy Code provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if —
>
>   (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>   (2) such entity consents;
>   (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>   (4) such interest is in bona fide dispute; or
>   (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  See also *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that Section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the requirements is met).

47.     A sale or transfer free and clear of claims, interests and liens of Debtor's interest in the CE Inventory and the CEPS is particularly appropriate under the circumstances because the Debtor's right, title and interest is limited to varying percentage interests of the CE Inventory (proportionate to Debtor's interests in the other Canyon Express Assets and Kings Peak) and was intended to be used in connection with the CEPS, the Canyon Express Assets and Kings Peak. In addition, Debtor's interest in the CEPS is presently burdened with decommissioning liabilities totaling $25,821,370, according to BSEE assessments, and any claim or encumbrance associated therewith is without present value.

48.     The notice to be provided is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to object to this Motion.

49.     Under Bankruptcy Code Section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor," 11 U.S.C. § 365(a). Bankruptcy Code Section 365(b)(1), in turn, codifies the requirements for assuming an executory contract of a debtor. This subsection provides:

> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee
>
> > (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default…;
> >
> > (B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C)     provides adequate assurance of future performance under such contract or lease.

Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

The trustee may assign an executory contract or unexpired lease of the debtor only if –

    (A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and

    (B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

50.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng g Corp. (In re Sanshoe Worldwide Corp.),* 139 B.R. 585, 593 (S.D.N.Y, 1992).

51.    Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).  The Debtor submits that it is an exercise of its sound business judgment to assume and assign CEPS to MOGUS, and the relief requested in this Motion is in the best interests of the Debtor, its estate, its creditors, and all parties in interest.

52.    MOGUS has agreed and will remit either the amount set forth on Exhibit 5 at a maximum, or such other amount agreed upon between MOGUS and the appropriate counterparty and will proceed to negotiate and execute appropriate agreements with such counterparties regarding the CE Inventory such that the Debtor will have no other responsibility for any further sums with regard to such agreements or to the counterparties regarding the CE Inventory.  If

necessary, the Parties will submit facts prior to or at the hearing to show the financial capability of MOGUS. The hearing on the Motion will therefore provide the Court and other interested parties the opportunity to evaluate and, if necessary, challenge the ability of MOGUS to provide adequate assurance of future performance, as required under Section 365(b)(l)(C) of the Bankruptcy Code.

53.     The Debtor will also file appropriate notices pursuant to the Prior Rejection Order to ensure that all other parties to the contracts and agreements referenced in Exhibit 4 and Exhibit 9 will have the ability to assert rejection damage claims.

53.     Section 105 of the Bankruptcy Code also empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title."  11 U.S.C. § 105(a).

54.     The agreements contemplated and/or provided by the Motion are in the best interests of the Debtor's estate and its creditors.  The Debtor's interests in the Canyon Express Assets were contemplated to be retained by the Debtor.  The effect of this compromise and settlement and other transactions to be approved by this Motion are to reduce significant claims against the estate.  Moreover, it reduces the potential for litigation costs and expenses from being incurred to resolve certain respective rights, claims and issues between the Parties as contemplated by the Motion.

55.     For the foregoing reasons, the Parties believe that the terms of the compromises and settlements are fair and reasonable and constitute a reasonable exercise of sound business judgment of the Debtor and should be approved in all respects.

56.     Forms of orders approving the Motion are attached as Exhibit 8 and Exhibit 11 (the "**Proposed Orders**").

## NOTICE

57.    Notice of this Motion will be given in accordance with this Court's Order Establishing Notice Procedures [Dkt. No. 132].

WHEREFORE, the undersigned parties respectfully requests that the Court enter the Proposed Orders attached hereto as Exhibit 8 and Exhibit 11, respectively, and grant such further relief as may be just and necessary under the circumstances.

Dated:  New Orleans, Louisiana and
       Houston, Texas
       January 31, 2014

Respectfully submitted:

SLATTERY, MARINO & ROBERTS


By: */s/Paul J. Goodwine*
1100 Poydras Street, Suite 1800
New Orleans, Louisiana 70163
Telephone: (504) 585-7800
Facsimile: (504) 585-7890
*Special Counsel for the Debtor and
Debtor-in- Possession*

and

By: */s/Charles S. Kelley*
Charles S. Kelley
Attorney-in-Charge
State Bar No. 11199580
Southern District of Texas Bar No. 15344
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone: 713 238-3000
Facsimile: 713 238-4888

and

Craig E. Reimer (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312 782-0600
Facsimile: 312 701-7711

**ATTORNEYS TO THE DEBTOR AND
DEBTOR-IN-POSSESSION**

ADAMS AND REESE LLP

By: */s/* Robin B. Cheatham
    Southern District of Texas No. 18036
    4500 One Shell Square
    New Orleans, Louisiana 70139
    Telephone: (504) 581-3234
    Facsimile:  (504) 566-0210
    *Attorneys for Marubeni Oil and Gas*
    *(USA) Inc.*

HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.

By: */s/* Steven W. Soule
    Oklahoma Bar No. 13781
    320 South Boston Avenue, Suite 200
    Tulsa, OK 74103-3706
    Telephone: (918) 594-0466
    Email: ssoule@hallestill.com
    *Attorney for Creditor, The Williams*
    *Companies, Inc.*

## Index of Exhibits

Exhibit 1          Canyon Express Inventory
Exhibit 2          Marathon PSA
Exhibit 3          Shell PSA
Exhibit 4          Canyon Express Contracts to be Rejected
Exhibit 5          Canyon Express Claims to be Paid by Marubeni
Exhibit 6          Abandonment Fund Agreement
Exhibit 7          Contribution Agreement
Exhibit 8          Form of Proposed Order [Williams]
Exhibit 9          Williams Contracts to be Rejected
Exhibit 10        Canyon Express Assumed Contracts/Cure Amounts
Exhibit 11        Form of Proposed Order [Marubeni]