

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**02/27/2014**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ATP Oil & Gas Corporation, | § | Case No.: 12-36187 |
| | § | |
| Debtor. | § | Hon. Marvin Isgur |

---

**FINAL ORDER APPROVING: (I) COMPROMISES AND SETTLEMENTS BETWEEN THE DEBTOR AND MARUBENI OIL & GAS (USA) INC. AND BETWEEN THE DEBTOR AND THE WILLIAMS COMPANIES, INC.; (II) SALE OF DEBTOR'S INTEREST IN CERTAIN INVENTORY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (III) ASSUMPTION AND ASSIGNMENT OF CERTAIN RIGHTS OF WAY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (IV) APPROVING CERTAIN PROCEDURES RELATED TO THE ASSUMPTION AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES; (V) REJECTION OF CERTAIN EXECUTORY CONTRACTS AND INCORPORATING PROCEDURES RELATING THERETO; (VI) FORM AND MANNER OF THE SALE AND THE SALE HEARING; AND (VI) GRANTING RELATED RELIEF CONSISTENT THEREWITH**
*[Refers to Docket Number 2937]*

Upon the Motion (the "**Motion**")[1] of ATP Oil & Gas Corporation (the "**Debtor**") pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004 and 9019 for an Order approving: (1) the transfer, conveyance and/or quitclaim of the Debtor's interest in certain of its assets and properties (more particularly described in the Motion as the CE Inventory) free and clear of claims and liens, pursuant to the terms and conditions of the agreements that are attached hereto as **Exhibits 1 and 2** (collectively with all exhibits and documents and agreements ancillary thereto, the "**Agreements**"), entered into by and between the Debtor and Marubeni Oil & Gas (USA) Inc. ("**MOGUS**"), the Debtor having determined that MOGUS has submitted the highest and best offer for the Debtor's interest in the CE

---

[1] The Motion was filed in the above-referenced matter on January 31, 2014 as document number 2937.  Capitalized terms used herein but not otherwise defined shall have the same meaning as in the Motion.

1

Inventory; (2) the settlements and compromises among the Debtor, MOGUS, and The Williams Companies, Inc. ("**Williams**"), contained in the Motion and embodied by the Agreements; (3) the assumption and assumption and assignment of certain executory contracts and unexpired leases; and (4) the rejection of certain executory contracts, and upon adequate and sufficient notice of the Motion, the hearing on the Motion and the Court having reviewed and considered (x) the Motion and all relief related thereto, (y) all pleadings filed in response to the relief requested in the Motion, and (z) the statements of counsel and evidence presented at the hearing on the Motion in support of the relief requested in the Motion; and it appearing that the Court has jurisdiction to consider and determine this matter in accordance with 28 U.S.C. §§ 157 and 1334; and it further appearing that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and creditors and other parties-in-interest; and upon the record of the  hearing and all other pleadings and proceedings in this Chapter 11 case, including the Motion; and after due deliberation thereon and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED:

**Jurisdiction, Final Order and Statutory Predicates**

A.    The Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are Sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9019.

C.     This order (the "**MOGUS Order**") constitutes a final order within the meaning of 28 U.S.C. § 158(a).

## The Motion

D.     Actual written notice of the Motion, the hearing on the Motion (the "**Motion Hearing**"), and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested entities, including, but not limited to the following parties: (i) all entities known by the Debtor to have expressed an interest in a transaction with respect to the Debtor's interest in the CE Inventory during the past nine (9) months, including all parties who executed a non-disclosure agreement in connection with the Debtor's previous sale of substantially all of its assets; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all counterparties to the contracts identified as being assumed or assumed and assigned in **Exhibit 3**; (iv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance,  or claim on, or other interest in the Debtor's interest in the CE Inventory; and (v) upon all parties set forth in the Debtor's Master Service List maintained in accordance with this Court's Order Establishing Notice Procedures [Dkt. No. 132] (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (iv) above) (collectively, the "**Notice Parties**").

E.     As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Motion Hearing, and the transactions contemplated thereby was provided in accordance with the orders previously entered by this Court, Sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 9007, and 9008. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion or the Motion Hearing is or shall be

required.

F.      The disclosures made by the Debtor concerning the Agreements, the Motion, the Motion Hearing, and the transfer, conveyance and/or quitclaim to MOGUS of the CE Inventory were good, complete, and adequate.

### Good Faith of MOGUS

G.      The Agreements were negotiated, proposed, and entered into by the Debtor and MOGUS without collusion, in good faith, and from arms'-length bargaining positions.

H.      MOGUS is not an "insider" or "affiliate" of the Debtor as those terms are defined in Sections 101(31) and 101(2) of the Bankruptcy Code.  Neither the Debtor nor MOGUS has engaged in any conduct that would cause or permit the Agreements to be avoided under Section 363(n) of the Bankruptcy Code.  Specifically, MOGUS has not acted in a collusive manner with any person, and the waiver of substantial claims against MOGUS was not controlled by any agreement among any bidder.

I.      MOGUS is acquiring the Debtor's interest in and to the CE Inventory in good faith and is therefore a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and under other applicable bankruptcy and non-bankruptcy law.  MOGUS proceeded in good faith in connection with all aspects of the acquisition of the Debtor's interest in the CE Inventory, including, but not limited to: (i) neither inducing nor causing the Debtor's Chapter 11 filing; and (ii) disclosing all consideration to be made by MOGUS in connection with the transfer, conveyance and/or quitclaim of the Debtor's interest in the CE Inventory to MOGUS.  Accordingly, MOGUS is entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law.

**Highest and Best Offer**

J.      The Agreements and the related relief requested in the Motion constitute the highest and best offers for the Debtor's interest in the CE Inventory and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative.  The Debtor's determination that the Agreements and the related relief requested in the Motion constitute the highest and best offer for the Debtor's interest in the CE Inventory demonstrates a valid and sound exercise of the Debtor's business judgment.

K.      MOGUS is a company organized and existing under the laws of the United States.  Pursuant to the Agreements, MOGUS agreed to pay the consideration as reflected in the Agreements and the Motion for the Debtor's interest in the CE Inventory to be conveyed, transferred or quitclaimed to MOGUS thereunder.

L.      The Agreements represent a fair and reasonable offer to acquire the Debtor's interest in the CE Inventory under the circumstances of this Chapter 11 case.  No other entity or group of entities has offered to purchase or acquire the Debtor's interest in the CE Inventory for greater overall value to the Debtor's estate than MOGUS.

M.      Approval of the Motion and the Agreements and the consummation of the transactions contemplated thereby is in the best interests of the Debtor's Chapter 11 estate (taken as a whole), its creditors, and other parties in interest.

**No Fraudulent Transfer or Merger**

N.      The consideration provided by MOGUS pursuant to the Agreements and the Motion (i) is fair and adequate, (ii) is the highest or otherwise best offer for the Debtor's interest in the CE Inventory, (iii) will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent

Conveyance Act, and Section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. No other person, entity, or group of entities has offered to purchase or acquire the Debtor's interest in the CE Inventory for greater overall value to the Debtor's estate than MOGUS. The Debtor's determination that the Agreements and the related relief requested in the Motion constitute the highest and best offer for the Debtor's interest in the CE Inventory constitutes a valid and sound exercise of the Debtor's business judgment. Approval of the Motion and the Agreements, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtor, its estate, creditors, and other parties in interest.

O.     The Agreements and the related relief requested in the Motion were not entered into or crafted for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtor nor MOGUS is fraudulently entering into the transactions contemplated by the Motion or the Agreements.

## Validity of Transfer

P.     The Debtor, to the extent necessary and applicable, has: (i) full corporate power and authority to execute and deliver the Agreements and all other documents contemplated thereby; (ii) all corporate authority necessary to consummate the transactions contemplated by the Agreements; and (iii) taken all corporate action necessary to authorize and approve the Agreements and the consummation of the transactions contemplated thereby. The transfer, conveyance and/or quitclaim of the Debtor's interest in the CE Inventory has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Agreements, are required for the Debtor to consummate the transfer, conveyance and/or quitclaim of the Debtor's interest in the CE Inventory, execute the

Agreements, or consummate the transactions contemplated thereby.

Q.     The Debtor has title to the extent of its interest in the CE Inventory.  The transfer of the Debtor's interest in the CE Inventory to MOGUS will be, as of February 27, 2014, a legal, valid, and effective transfer of the Debtor's interest in the CE Inventory, which transfer vests or will vest MOGUS with all right, title, and interest of the Debtor in the CE Inventory, free and clear of (i) all liens, claims and encumbrances, including, without limitation, any such liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase, or repurchase right or option, or termination of, the Debtor's interest in the CE Inventory, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership and (ii) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in Section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise relating to, accruing or arising at any time prior to the February 27, 2014 (collectively in this clause (ii), the "**Claims**" and, together with the liens and encumbrances, the "**Claims and Interests**").

### Section 363(f) is Satisfied

R.     The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may transfer, convey and/or quitclaim its interest in and to the CE Inventory to MOGUS free and clear of any Claims and Interests in such property.

S.     MOGUS would not have entered into the Agreements and would not consummate the transactions contemplated thereby if the transfer, conveyance and/or quitclaim of the CE Inventory to MOGUS were not free and clear of all Claims and Interests of any kind or nature whatsoever, or if MOGUS would, or in the future could, be liable for any of such Claims and Interests.

T.     The Debtor may transfer, convey and/or quitclaim its interest in and to the CE Inventory free and clear of all Claims and Interests against the Debtor, its estate, or any of the CE Inventory because those holders of Claims and Interests against the Debtor, its estate, or any of the CE Inventory, who did not object, or who withdrew their objections to the transfer, conveyance and/or quitclaim  or the Motion, are deemed to have consented thereto pursuant to Section 363(f)(2) of the Bankruptcy Code.

## Assumption and Assignment of the Assigned Contracts

U.     The assumption and assumption and assignment of the contracts and agreements identified on Exhibit 10 to the Motion pursuant to the terms of this MOGUS Order are integral to the Agreements and are in the best interests of the Debtor, its estate, creditors, and other parties in interest, and represent the Debtor's reasonable exercise of sound and prudent business judgment.

V.     The respective amounts set forth opposite the contracts and agreements identified on Exhibit 10 of the Motion to be assumed and/or assumed and assigned are the sole amounts necessary under Sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the respective Assigned Contracts, which are related to each of the Agreements (collectively, the "**Cure Amounts**").

W.     MOGUS has demonstrated adequate assurance of future performance with respect to the contracts to be assumed and assigned to it as identified on Exhibit 10 of the Motion, pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

**Rejection of Certain Executory Contracts**

X.     The rejection of the contracts and agreements identified on Exhibit 4 and Exhibit 9 of the Motion are hereby approved, and the Seller is instructed to follow the procedures established for rejection of such contracts by the *Order Pursuant to 11 U.S.C. § 365(a) (I) Authorizing Rejection of Certain Unexpired Leases and Executory Contracts Related to the Debtor's Remaining Properties, Relinquishment, and Abandonment of Any Interests Related Thereto and (II) Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases* [Dkt. No. 2096] ("**Prior Rejection Order**") entered on June 21, 2013.  All rejection damage claims to be asserted by MOGUS and Williams associated with any such contracts or agreements are hereby disallowed.

**Compelling Circumstances for Immediate Relief**

Y.     The Debtor has demonstrated, through the testimony and/or other evidence admitted at the Motion Hearing and the representations of counsel made on the record of the Motion Hearing, good and sufficient reasons for approval of the Agreements and the Motion. The relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest.  The Debtor has demonstrated (i) good, sufficient, and sound business purposes and justifications for approving the Agreements and (ii) compelling circumstances for the relief requested in the Motion outside of (a) the ordinary course of business, pursuant to Section 363(b) of the Bankruptcy Code and (b) a Chapter 11 plan, in that, among other things, the consummation of the transactions contemplated by the Agreements and set forth in the Motion is necessary and appropriate to maximize the value of the Debtor's

estate, and the Motion will provide a means for the Debtor to maximize distributions to its creditors.

Z.    To maximize the value to the estate and to preserve the viability of the businesses to which they relate, it is essential that the transfer, conveyance and/or quitclaim and all other relief requested in the Motion occur immediately upon entry of the MOGUS Order.  Time is of the essence in consummating the relief requested in the Motion.

AA.    Given all of the circumstances of this Chapter 11 case and the adequacy and fair value of the consideration to be paid by MOGUS, the Motion constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

BB.    The consummation of the relief requested in the Motion is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such Sections have been complied with in respect thereof.

**NOW,  THEREFORE,  IT  IS  HEREBY  ORDERED,  ADJUDGED,  AND DECREED THAT:**

<u>**General Provisions**</u>

1.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this Chapter 11 case pursuant to Bankruptcy Rule 9014.   To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

2.    The relief requested in the Motion is granted and approved as set forth in this MOGUS Order, and the transactions contemplated thereby and by the Agreements are approved

as set forth in this MOGUS Order. All capitalized terms not otherwise defined in this MOGUS Order have the meanings ascribed to such terms in the Motion or the Agreements, as applicable.

3.      The consideration to be paid by MOGUS pursuant to the Motion and under the Agreements is hereby approved.

4.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Motion Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code.

## Approval of the Agreements

5.      The Agreements and all other documents ancillary thereto, and all of the terms and conditions thereof, are hereby approved.

6.      Pursuant to Sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the relief requested in the Motion pursuant to and in accordance with the terms and conditions of the Agreements, (ii) immediately transfer, convey and/or quitclaim to MOGUS its interest in the CE Inventory as contemplated in the Agreements, the Motion and this MOGUS Order, and (iii) execute and deliver, perform under, consummate, and implement the Agreements, including the transfer, conveyance and/or quitclaim of the Debtor's interest in the CE Inventory to MOGUS in accordance with the Agreements and the Motion, together with all additional ancillary instruments and documents that may be reasonably necessary or desirable to implement the Agreements and the Motion.

7.      Except as provided in paragraphs 61-67 hereof, This MOGUS Order shall be binding in all respects upon: (a) the Debtor; (b) the Debtor's estate; (c) all creditors of, and holders of equity interests in, the Debtor; (d) all holders of liens, claims, encumbrances or other interests (whether known or unknown) in, against, or on all or any portion of the CE Inventory; (e) MOGUS and all successors and assigns of MOGUS; (f) the CE Inventory; (g) any trustee subsequently appointed in the Debtor's Chapter 11 case, or a Chapter 7 trustee appointed upon a conversion of this case to a case under Chapter 7 under the Bankruptcy Code; and (h) any plan administrator, liquidating trustee or similar party appointed pursuant to the terms of a plan of reorganization that is confirmed in Debtor's Chapter 11 case.  This MOGUS Order and the Agreements shall inure to the benefit of the Debtor, its estate and creditors, MOGUS, and the respective successors and assigns of each of the foregoing.

## Transfer of the CE Inventory

8.      Pursuant to Sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer, convey and/or quitclaim its interest in and to the CE Inventory to MOGUS as of the date of this MOGUS Order, and such transfer shall (a) constitute a legal, valid, binding, and effective transfer of the Debtor's interest in the CE Inventory to MOGUS, (b) vest MOGUS with all of the Debtor's right, title and interest in the CE Inventory, and (c) be free and clear of all Claims and Interests.  As of the date of this MOGUS Order, MOGUS shall take title to and possession of the Debtor's interest in the CE Inventory, free and clear of all Claims and Interests.

9.      The Debtor is hereby authorized to take any and all actions necessary to consummate the transactions contemplated by the Agreements, including any actions that otherwise would require further approval by the Debtor's board of directors, board of managers,

and/or the Chief Restructuring Officer, as the case may be, without the need of obtaining such approvals.

10. The transactions authorized herein shall be of full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which it is formed or authorized to transact business. Upon consummation of the transactions set forth in the Agreements, MOGUS shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any lien or encumbrance, with respect to the Debtor's interest in the CE Inventory, that is extinguished or otherwise released pursuant to this MOGUS Order under Section 363 and the related provisions of the Bankruptcy Code.

11. Subject to the terms, conditions, and provisions of this MOGUS Order, all entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to transfer, convey and/or quitclaim the Debtor's interest in the CE Inventory to MOGUS in accordance with the terms of the Agreements and this MOGUS Order.

12. Subject to the terms, conditions, and provisions of this MOGUS Order, all entities that are in possession of some, all, or any portion of the CE Inventory in which Debtor has an interest on February 27, 2014 are directed to surrender possession of such assets to MOGUS or their assignees as of February 27, 2014.

13. The transfer of the Debtor's interest in the CE Inventory to MOGUS pursuant to the Agreements does not require any consents other than as specifically provided for in the Motion and in the Agreements.

14.     A certified copy of this MOGUS Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the Claims and Interests of record.

15.     If any person or entity which has filed statements or other documents evidencing Claims and Interests on or in the Debtor's interest in the CE Inventory shall not have delivered to the Debtor prior to February 27, 2014, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Claims and Interests, and any other documents necessary for the purpose of documenting the release of all Claims and Interests which the person or entity has or may assert with respect to the Debtor's interest in the CE Inventory, the Debtor is hereby authorized and directed, and MOGUS is hereby authorized, on behalf of the Debtor and each of its creditors, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Debtor's interest in the CE Inventory.

16.     On February 27, 2014, this MOGUS Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, quitclaim and transfer of the Debtor's interest in the CE Inventory, effective as of the date of this MOGUS Order. This MOGUS Order is and shall be effective as a determination that, on February 27, 2014, all Claims and Interests, and any other interest of any kind or nature whatsoever existing as to the Debtor's interest in the CE Inventory shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.

17.     This MOGUS Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and

all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreements.

## Prohibition of Actions Against MOGUS

18.     Except as otherwise expressly provided for in this MOGUS Order or the Agreements, MOGUS shall not have any liability or other obligations arising under or related to the acquisition of the Debtor's interest in the CE Inventory.

19.     Except as otherwise permitted by the Agreements or this MOGUS Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Claims and Interests or other interests of any kind or nature whatsoever against or in all or any portion of the Debtor's interest in the CE Inventory (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the operation of the Debtor's business prior to February 27, 2014, or the transfer of the Debtor's interest in the CE Inventory to MOGUS, hereby are forever barred, estopped, and permanently enjoined from asserting against MOGUS, any of its affiliates, successors, assigns, or properties, or against the Debtor's interest in the CE Inventory, such persons' or entities' Claims and Interests or any other interests as it relates to the Debtor's interest in and to the CE Inventory, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding

against MOGUS, any of its affiliates, successors, assigns, or properties in respect of or otherwise relating to the Debtor's interest in the CE Inventory; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against MOGUS, any of its affiliates, successors, assigns, or properties in respect of or in relation to the Debtor's interest in the CE Inventory; (c) creating, perfecting, or enforcing any Claims and Interests against MOGUS, any of its affiliates, successors, assigns, or properties, in respect of or in relation to the Debtor's interest in the CE Inventory; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due MOGUS, any of its affiliates, successors, assigns, or properties but only insofar as it relates to the Debtor's interest in the CE Inventory; or (e) commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with the provisions of this MOGUS Order, other orders of the Court, or the Agreements or actions contemplated or taken in respect thereof but only insofar as such relate to the Debtor's interest in the CE Inventory.  For the avoidance of doubt, no party, other than the Debtor, by virtue of the Agreements or this MOGUS Order, is releasing any claims against MOGUS that are not claims against, or in respect of, all or any portion of the Debtor's interest in the CE Inventory, and no claims of any third-party against MOGUS that do not relate to the Debtor's interest in the CE Inventory are released by virtue of the Agreements or this MOGUS Order other than claims based upon (x) the acquisition by MOGUS of the Debtor's interest in the CE Inventory, (y) the actions taken by MOGUS in connection therewith, and/or (z) the express terms of the Agreements as they apply to MOGUS's acquisition of the Debtor's interest in the CE Inventory.

20.     On February 27, 2014, or as soon as possible thereafter, each creditor is authorized and directed, and MOGUS is hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release

any Claims and Interests and other interests as they relate to the Debtor's interest in the CE Inventory, if any, as provided for herein, as such Claims and Interests may have been recorded or may otherwise exist.

21.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to transfer, convey and/or quitclaim its interest in the CE Inventory to MOGUS in accordance with the terms of the Agreements and this MOGUS Order.

22.     MOGUS has given substantial consideration under the Agreements for the benefit of the Debtor, its estate, and creditors. As demonstrated at the hearing, the consideration given by MOGUS shall constitute valid and valuable consideration for the releases of any and all current and/or potential Claims and Interests pursuant to this MOGUS Order, which releases shall be deemed to have been given in favor of MOGUS by all holders of Claims and Interests against the Debtor's interest in the CE Inventory. The consideration provided by MOGUS for the Debtor's interest in the CE Inventory under the Agreements and the Motion is fair and reasonable, and accordingly, the transfer, conveyance and/or quitclaim of the Debtor's interest in the CE Inventory to MOGUS may not be avoided under Section 363(n) of the Bankruptcy Code.

23.     The Debtor is authorized to designate MOGUS as operator of Lease OCS-G 19939 covering Mississippi Canyon 348 ("**MC 348**"), subject to approval of the Bureau of Ocean Energy Management ("**BOEM**") and/or the Bureau of Safety Environmental Enforcement ("**BSEE**" and collectively, the "**Agencies**").

24.     The Debtor is authorized to retain its current record title and/or operating rights interest in and to MC 348. In addition, and to the extent possible under applicable regulations,

17

the Debtor is authorized to designate MOGUS as operator of Lease OCS-G 19935 covering Mississippi Canyon 305 ("**MC 305**") and the Kings Peak Leases.

25.     The Debtor will provide access to MOGUS and/or its designee as to any and all wells, files, information and/or documents associated with the Canyon Express Assets in order to carry out the purposes and intent of the Motion and the Agreements.  MOGUS may share such information with other entities as necessary for completion of any decommissioning obligations.

26.     The Debtor is authorized to amend the applicable Offshore Operating Agreement ("**OOA**") pertaining to MC 348 and, to the extent applicable, MC 305 so that MOGUS, as operator, can net expenses against any revenue attributable to the Debtor's working interest, net revenue interest, and/or lease interest regarding any lease operating expenses ("**LOEs**"), decommissioning costs and expenses, capital expenses, handling and issuance of Authorization for Expenditures ("**AFE**"), and to provide for notices, votes and elections, salvage and sale and such other and additional items and expenses arising in or related to operations associated with MC 348 and MC 305.

27.     The Debtor is authorized to convey, transfer and/or assign, free and clear of all Claims and Interests in and to, all net proceeds from production in, from, to and/or related to MC 348 to a decommissioning escrow (the "**Decommissioning Escrow**") established pursuant to the Abandonment Fund Agreement, said net proceeds to be used and/or utilized by MOGUS to offset any decommissioning costs, expenses and/or liabilities attributable to the Debtor's obligation for plugging, abandonment and/or decommissioning costs and expenses associated with the Canyon Express Assets and any other assets associated with Canyon Express.

**Assumption and Assignment of Assigned Contracts**

28.     Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the acquisition of the Debtor's interest in the CE Inventory, the Debtor's assumption and assignment to MOGUS of the contracts to be assumed and assigned as identified on Exhibit 10 to the Motion ("**Assigned Contracts**"), and MOGUS's acceptance of the Assigned Contracts on the terms set forth in the Agreements are hereby approved, and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

29.     The Debtor is hereby authorized and directed in accordance with Sections 105(a), 363, and 365 of the Bankruptcy Code to: (a) assume and assign to MOGUS, effective upon February 27, 2014, the Assigned Contracts identified on Exhibit 10 to the Motion, free and clear of all Claims and Interests or other interests of any kind or nature whatsoever; and (b) execute and deliver to MOGUS such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts identified on Exhibit 10 to the Motion to MOGUS.

30.     The Assigned Contracts identified on Exhibit 10 to the Motion shall be transferred and assigned to, and remain in full force and effect for the benefit of, MOGUS in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy Code.

31.     All defaults or other obligations of the Debtor under the Assigned Contracts identified on Exhibit 10 to the Motion arising or accruing prior to February 27, 2014 (without giving effect to any acceleration clauses or any default provisions of the kind specified in

Section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be cured pursuant to Section 365 of the Bankruptcy Code.

32.    To the extent a counterparty to an Assigned Contract identified on <u>Exhibit 10</u> to the Motion failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, if any, when paid, shall completely revive any Assigned Contract to which it relates.  No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the counterparty to the Assigned Contracts shall have any force and effect with respect to the assumption  and assignments authorized by this MOGUS Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and are otherwise unenforceable under Section 365(e) of the Bankruptcy Code.  No assignment of any Assigned Contract pursuant to the terms of the Agreements and this MOGUS Order shall in any respect constitute a default under any Assigned Contract.  The counterparty to each Assigned Contract shall be deemed to have consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and MOGUS shall enjoy all of the Debtor's rights and benefits under each such Assigned Contract as of February 27, 2014 without the necessity of obtaining such counterparty's written consent to the assumption or assignment thereof.

33.    All counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable request of MOGUS, and shall not charge the Debtor or MOGUS for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers

of the Assigned Contracts in connection with the relief requested in the Motion and approved by this MOGUS Order.

34.     Nothing in this MOGUS Order, the Motion, or in any notice or any other document is or shall be deemed to be an admission by the Debtor that any contract or Assigned Contract is an executory contract or unexpired lease or must be assumed and assigned pursuant to the Agreements or in order to consummate the relief requested in the Motion and approved by this MOGUS Order.

35.     Upon the payment of the Cure Amount, if any, with respect to an Assigned Contract, the counterparty to such Assigned Contract shall be forever barred and enjoined from raising or asserting against (a) MOGUS, (b) any of their respective affiliates, successors, or assigns, (c) the Debtor, or (d) the Canyon Express Assets, any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts existing as of February 27, 2014 or arising by reason of the closing of the transactions contemplated by the Agreements and the Motion, except for any amounts that are Assumed Obligations.

36.     The Debtor is authorized pursuant to 11 U.S.C. § 363(f) and 365 to assume (to the extent required) and transfer, convey and/or assign to MOGUS, free and clear of all Claims and Interests, its "holder" status in and to the right-of-way grants associated with the CEPS, subject to approval of the Agencies and the rules and regulations applicable thereto.

## Rejection of Certain Contracts

37.     The Debtor is authorized pursuant to 11 U.S.C. § 365 and the Prior Rejection Order to reject those certain contracts and agreements associated with the Canyon Express Assets to which the Debtor is a party that are identified on Exhibit 4 to the Motion. Notwithstanding such rejection, MOGUS (i) shall make certain voluntary payments to certain

creditors with claims or potential claims against the Canyon Express Assets, but expressly limited to an amount not to exceed the amount per creditor as identified on Exhibit 5 to the Motion; (ii) may enter into new and separate contracts or agreements associated with the Canyon Express Assets which will obligate MOGUS to be responsible for such expenses and/or costs associated therewith going forward, and (iii) stipulates that it will not pursue or file any rejection damage claims pursuant to 11 U.S.C. § 365 as a result of the rejection of the contracts and agreements identified on Exhibit 4 to the Motion.  Debtor will not be responsible for any sums identified on Exhibit 5 to the Motion, and if any amounts remain due and owing to such creditors after payment by MOGUS, Debtor will file a notice of rejection, and the procedures mandated by the Prior Rejection Order will be implemented.

### **Interior/BOEM Provisions**

38. Nothing in this MOGUS Order or the Agreements eliminates or modifies the requirement to obtain consent for the transfer of the Canyon Express Assets from the United States Department of the Interior and/or the Agencies, as applicable.

39.     Nothing in this MOGUS Order or the Agreements releases, nullifies, precludes, or enjoins the enforcement of any liability to a government unit under environmental statutes or regulations (the "**Environmental Laws**") that any entity would be subject to as the owner or operator of the Canyon Express Assets, as applicable.

40.     Nothing in this MOGUS Order or the Agreements authorizes the transfer or assignment to MOGUS of any governmental licenses, permits, rights-of-way, rights-of-use and easements, contracts, registration, authorizations, approvals, agreements or other interests without MOGUS's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

## Preservation of Rights Regarding ORRIs and NPIs

41.     Notwithstanding any provision herein to the contrary, nothing contained in this MOGUS Order or the Agreements authorized herein shall constitute a finding of fact, conclusion of law, or otherwise constitute an adjudication or opinion by this Court that any of the Canyon Express Assets (as such term is defined in the Motion) or any OCS lease or right of way constitutes an executory contract or an unexpired lease pursuant to Section 365 of the Bankruptcy Code.  Moreover, nothing contained in this MOGUS Order or the Agreements shall restrict or impair the rights, claims, actions, defenses, remedies or interests of the holders of overriding royalty interests, production payments, net profits interests, carried interests or similar interests (the **"ORRI/NPI Holders"**) and/or any other party under applicable law (i) regarding title to, or the validity of, such interests or the production proceeds attributable to such interests, if any; or (ii) with respect to any pending litigation involving the Debtor and/or Bennu Oil and Gas, LLC regarding, among other things, the nature of the interest held by the ORRI/NPI Holders, including, but not limited to, whether the conveyances creating such interests effected conveyances of immovable or real property interests and whether such conveyances are contracts subject to the provisions of Section 365 of the Bankruptcy Code, and any and all parties' rights with respect to the matters set forth in this paragraph are reserved.  For purposes of clarity, the Court also determines that (a) solely and only insofar as it relates to the CE Inventory and the ROWs and for no other purposes whatsoever, that there is no ORRI/NPI attributable or applicable thereto and (b) none of the CE Inventory is, or is in the nature of, an OCS lease or right-of-way.

## Other Provisions

42.     Except as provided in paragraph 61-67, This MOGUS Order, the Agreements, and all documents ancillary thereto shall be binding in all respects upon all successors and

assigns of the Debtor, and any of their respective affiliates and subsidiaries, any trustees, liquidating trustee and/or representative, examiners, "responsible persons," or other fiduciaries appointed in the Debtor's Chapter 11 case or upon a conversion of such case to a case under Chapter 7 of the Bankruptcy Code or in connection with any plan of reorganization that may be confirmed in the Chapter 11 case, provided that, for avoidance of doubt, this MOGUS Order shall also be binding on all of the Debtor's creditors and equity holders.  The Agreements and any documents ancillary thereto shall not be subject to rejection or avoidance under any circumstances.

43.     The Agreements and all documents ancillary thereto may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, in accordance with the terms thereof, without further order of the Court; provided that any modification, amendment, or supplement that has a material adverse effect on the Debtor's estate or a material adverse effect on the rights or interests of any third party may only be made after notice and hearing.

44.     The consideration provided by MOGUS to the Debtor pursuant to the Agreements, the Motion, and this MOGUS Order constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

45.     The transactions contemplated by the Agreements and set forth in the Motion are undertaken by MOGUS without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the relief in the Motion and approved by this MOGUS Order shall not affect the validity of the transfer, conveyance and/or quitclaim free and clear of Claims and Interests, unless such authorization is duly stayed pending such appeal.

MOGUS is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and under other applicable Bankruptcy and non-Bankruptcy Law, as such, is entitled to the full protections under Section 363(m) of the Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law.

46.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this Chapter 11 case, (b) any subsequent Chapter 7 case into which this Chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this MOGUS Order, shall conflict with or derogate from the provisions of the Agreements or the terms of this MOGUS Order.

47.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the transactions contemplated by the Motion and the Agreements.

48.     The failure to specifically include any particular provision of the Agreements in this MOGUS Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreements be authorized and approved in their entirety as modified herein; provided, however, that this MOGUS Order shall govern if there is any inconsistency between the Agreements (including all documents ancillary thereto) and this MOGUS Order. Likewise, all of the provisions of this MOGUS Order are non-severable and mutually dependent.

49.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this MOGUS Order and the Agreements, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to MOGUS, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to this MOGUS Order and the Agreements, including, but not limited to,

retaining jurisdiction to (a) compel delivery of the Debtor's interest in the CE Inventory to MOGUS, (b) interpret, implement, and enforce the provisions of this MOGUS Order, and (c) protect MOGUS against any Claims and Interests or any other interest in or against the Debtor or the Debtor's interest in the CE Inventory of any kind or nature whatsoever.

50.     All time periods set forth in this MOGUS Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

51.     The provisions of this MOGUS Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in this case including but not limited to the establishment and transfer of any rights and/or obligations of the Debtor to a liquidating trust and/or liquidating trustee or representative; (b) converting this case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing this case; or (d) pursuant to which this Court abstains from hearing this case.

52.     To the extent that this MOGUS Order is inconsistent with the Agreements or any prior order or pleading with respect to the Motion in this Chapter 11 case, the terms of this MOGUS Order shall govern.

<u>**Approval of Settlements and Compromises Reached**</u>
<u>**Among the Debtor, MOGUS, and Williams**</u>

53.     The Court specifically finds and concludes that the conveyance of the Debtor's right, title and interest in the CE Inventory to MOGUS and the related relief requested in the Motion in exchange for receiving the consideration to be provided by MOGUS under the Agreements and in the Motion, including, but not limited to: (a) MOGUS' release of its administrative expense claims against the Debtor's estate and (b) the satisfaction by MOGUS of Williams' administrative expense claims asserted against the Debtor's estate, is a good, fair and reasonable settlement of the contractual obligations that exist between the Debtor and MOGUS,

and between the Debtor and Williams, and is in the best interest of the Debtor's estate. Without limiting the generality of the foregoing, subject to the provisions of Paragraph 57 herein and the agreements, MOGUS, has agreed, and the Court hereby orders that MOGUS shall be deemed to release, remise, acquit and forever discharge ATP and each of its affiliates, representatives and successors in interest (including, without limitation, its bankruptcy estate and any trustee or officer appointed by the Court with respect thereto), (collectively, the "ATP Released Parties"), separately and jointly, of and from any and all claims (as such term is defined under Section 101(5) of the Bankruptcy Code) MOGUS has, has had, or may have in the future against any or all of the ATP Released Parties for (y) recovery of administrative expenses (whether or not such claim is entitled to any priority or administrative expense status under the Bankruptcy Code, including, without limitation, under Section 503 or Section 507 thereof), and (z) any proof of claims filed by MOGUS.

54.     The Debtor is authorized to enter into and to execute the Abandonment Fund Agreement and the Contribution Agreement.

55.     The Debtor is authorized to encumber, hypothecate, pledge, mortgage and/or secure to and in favor of the Decommissioning Escrow, free and clear of all other Claims and Interests other than the security interest provided herein, all of its right, title and interest in and to that certain obligation of Marathon Oil Company to remit and/or pay the sum of $12,500,000.00 upon satisfaction of certain decommissioning obligations, as more particularly set forth in that certain Marathon PSA. In addition, the Debtor is authorized to encumber, hypothecate, pledge, mortgage and/or secure to and in favor of the Decommissioning Escrow, free and clear of all other Claims and Interests and, all of its remaining right, title and interest in and to any of the Canyon Express Assets retained pursuant to the terms hereof.

56.     The Debtor is authorized (i) to waive, relinquish, cancel, forgive and forego any and all right, claim and interest in and to any claims for; (ii) to accept no sum of money for; and (iii) not to seek recovery, reimbursement, or payment from, nor to make any demand for, any JIB against MOGUS relative to the Canyon Express Assets, which is asserted by Debtor to be in the amount of $2,060,084.50 and which amount is disputed by MOGUS.

57.     The filing of the Motion, the entry of this MOGUS Order or any such other and further agreements contemplated by the Motion and/or designed to carry out the purposes and intent of the Parties, including but not limited to this MOGUS Order, is not meant to and does not in any way operate to deter, detract, diminish, waive, relinquish, cancel, extinguish, or affect any and all rights and claims of MOGUS to seek and/or assert rights of and claims for subrogation, contribution, reimbursement, demand, compensation and/or payment against any person and/or entity other than directly against the ATP Released Parties for any and all sums incurred by MOGUS in connection with any decommissioning obligations arising in, related to or in connection with the Canyon Express Assets.

58.     The Debtor is authorized to assign its rights and obligations in the Abandonment Fund Agreement attached as Exhibit 6 to the Motion and the Contribution Agreement attached as Exhibit 7 to the Motion, as well as its rights retained in MC 348, CEPS, any other Canyon Express Assets, and any contracts or agreements identified on Exhibit 10 to the Motion assumed by the Debtor but not assigned to MOGUS, to a liquidating trust or similar entity created pursuant to the terms of a plan of reorganization that is confirmed in Debtor's Chapter 11 case.

59.     The Debtor is authorized and ordered to designate MOGUS operator for any of the other Canyon Express Assets for which such designation is appropriate or allowed under applicable Agency regulations.

60.     J.R. Latimer III, Chief Restructuring Officer of the Debtor, is hereby authorized and empowered to execute all documents required to consummate the transactions contemplated hereby pursuant to previous orders of this Court and Power-of-Attorney filings with the Adjudication Section of BOEM.

61.     As used herein, "Decommissioning" means decommissioning, plugging, and/or abandonment of federal offshore oil and gas leases and/or wells, pipelines or other facilities located thereon, including, but not limited to, the ATP Obligations (as defined herein or in the Agreements) pursuant to, or as required by, applicable federal laws and regulations including without limitation the Code of Federal Regulations at Title 30, parts 250 and 550, and/or pursuant to the terms of the applicable oil and gas leases, easements or rights of way.

62.     Except as to the provisions in Paragraph 41 and as Paragraph 41 relates to the CE Inventory and ROWs (as defined herein), notwithstanding any provision herein to the contrary nothing contained in this MOGUS Order or the Agreements authorized herein shall constitute a finding of fact, conclusion of law, or otherwise constitute an adjudication, injunction, release, comment upon, ruling or opinion by this Court: (a) with  respect to the rights and claims (including filed Proof of Claims or Administrative Claims) of BP and Total including to the extent BP or Total may be Third Party Obligors (as that term is defined under the Agreements) or the rights of MOGUS vis-à-vis any Third Party Obligors including to the extent  BP or Total, or (b) with respect to the following agreements (related to the Kings Peak Leases, MC305, MC348, or the Canyon Express Assets): (i) that certain Purchase and Sale Agreement by and between BP Exploration & Production, Inc. ("BP") and MOGUS dated December 8, 2003; (ii) that certain Purchase and Sale Agreement by and between BP and ATP dated September 21, 2005; (iii) that certain Purchase and Sale Agreement by and between Total E&P USA, Inc. ("Total") and ATP dated December 4, 2006; and (iv) that certain Unit Agreement for Outer

Continental Shelf Exploration, Development, and Production Operations on the Mississippi Canyon Block 217 Unit, Contract No. 754398011 or (v) the Operating Agreements dated and effective January 30, 2004 and pertaining to the Kings Peak Leases and the Unit Operating Agreements pertaining to MC305 and 348 (the "Operating Agreements").  Furthermore, this MOGUS Order or any agreement as to cure amounts or adequate assurance of future performance as between MOGUS and ATP shall not be binding on or otherwise probative of any contract claims, proofs of claim or rights of BP or Total including to the extent BP or Total may be Third Party Obligors or MOGUS vis-à-vis any Third Party Obligors including to the extent BP and Total.

63.   Moreover, nothing contained in this MOGUS Order or the Agreements other than the provisions in Paragraph 41 and as Paragraph 41 relates to the CE Inventory and ROWs (as defined herein), shall: (a) alter, define, diminish, waive, relinquish, amend, bind, restrict, impair, enjoin or adjudicate the rights, including but not limited to the rights to seek reimbursement, contribution and/or subrogation, claims, actions, defenses, remedies, or interests of MOGUS, BP and/or Total under the Kings Peak Leases and the MC305 and MC348 leases, the Operating Agreements, or any related contracts, whether at law or in equity including, but not limited to, responsibility for claims regarding ATP's share of lease obligations including Decommissioning expenses, or (b) constitute an agreement to confer jurisdiction upon this Court to adjudicate any rights or disputes between MOGUS, BP and/or Total with respect to the responsibility for or claims in any way regarding ATP's share of lease obligations, including Decommissioning expenses, for MC305, MC348, the Kings Peak Leases or the Canyon Express Assets.  All such rights as between MOGUS, BP and Total are expressly reserved, preserved and/or maintained without prejudice.

64.     Notwithstanding any other provision of this MOGUS Order or the Agreements, MOGUS and ATP acknowledge and agree that all sums that are (i) expended by the Fund (as defined in the Agreements), (ii) paid as reimbursement by the Fund to MOGUS under the Agreements, and/or (iii) received by MOGUS on account of the Camden Hills DOR ORRI (as defined in the Agreements), shall be deemed and considered for all purposes to be expenditures made by ATP and/or on behalf of ATP, and shall constitute payment of a portion of ATP's share of Decommissioning.  Such sums shall be allocated to the applicable lease and/or facility for which such sums were actually expended or reimbursed for Decommissioning work.

65.     Without acknowledging any responsibility, obligation or liability therefore, notwithstanding any other provision of this MOGUS Order or the Agreements, MOGUS and ATP acknowledge and agree that this MOGUS Order and the Agreements are without prejudice as to any of the respective rights, claims, actions, defenses, remedies, and responsibilities of and will not impair BP's or Total's, including to the extent they may be Third Party Obligors, ability to complete or perform any Decommissioning ordered by BSEE, with all such rights, actions, claims, defenses, remedies, and interests being fully reserved.

66.     For avoidance of doubt, no aspect of this MOGUS Order or the Agreements shall deny BP or Total reasonable access to the well records, wells, or leases in order to perform Decommissioning work in response to any BSEE order.

67.     BP, Total and MOGUS agree to cooperate with one another in good faith to facilitate the availability of and use on a mutually agreeable basis, not to be unreasonably withheld, access to the Canyon Express Pipeline System and/or other Canyon Express Assets, and to the extent then available and subject to MOGUS' and any third party's entitlement to reasonable compensation therefore, the CE Inventory, should same be necessary in order to perform Decommissioning work in response to any BSEE order.

68.     Accordingly, the Agreements are approved in all respects pursuant to Bankruptcy Rule 9019, and pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, the Debtor is hereby authorized to enter into them and shall take all actions necessary to fully implement the settlements and compromises of claims and disputes between the Debtor and MOGUS as set forth in such Agreements and between the Debtor and Williams as set forth in the Motion.

SIGNED this 27 day of February , 2014.

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE