## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ATP Oil & Gas Corporation, | § | Case No.: 12-36187 |
| | § | |
| Debtor. | § | Hon. Marvin Isgur |

PLEASE TAKE NOTICE that attached hereto as Exhibit A is a revised proposed Order (the "**Sale Order**") granting the *DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND BANKRUPTCY RULES 2002 AND 6004 FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF ITS INTERESTS IN EUGENE ISLAND BLOCK 142 FREE AND CLEAR OF CLAIMS AND LIENS; (II) APPROVING THE FORM AND MANNER OF THE NOTICE OF THE SALE AND THE SALE HEARING; (III) APPROVING CERTAIN PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; (IV) AUTHORING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND INTERESTS IN EXPIRED LEASES IN CONNECTION WITH THE SALE; AND (V) GRANTING CERTAIN RELATED RELIEF* [Dkt. No. 3079] (the "**Sale Motion**").

PLEASE TAKE FURTHER NOTICE that attached hereto as Exhibit B is a copy of the Sale Order in redline format indicating all cumulative changes to the Sale Order previously attached as Exhibit 3 to the Sale Motion.

Dated: May 14, 2014

Respectfully submitted,

**MAYER BROWN LLP**

By: /s/ Charles S. Kelley
Charles S. Kelley
Attorney-in-Charge
State Bar No. 11199580
Southern District of Texas Bar No. 15344
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Telephone: 713 238-3000
Facsimile: 713 238-4888

**ATTORNEYS TO THE DEBTOR AND DEBTOR-IN-POSSESSION**

# <u>EXHIBIT A</u>

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **ATP Oil & Gas Corporation,** | § | **Case No. 12-36187** |
| | § | |
| **Debtor.** | § | **Judge Marvin Isgur** |
| | § | |

**FINAL ORDER (I) APPROVING THE SALE OF ITS INTERESTS IN EUGENE ISLAND BLOCK 142 FREE AND CLEAR OF CLAIMS AND LIENS; (II)APPROVING THE FORM AND MANNER OF THE NOTICE OF THE SALE AND THE SALE HEARING; (III) APPROVING CERTAIN PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; (IV) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (V) GRANTING CERTAIN RELATED RELIEF**

Upon the Motion (the "Motion") of ATP Oil & Gas Corporation (the "Debtor") pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Bankruptcy Rules 2002 and 6004 for an Order approving the sales (the "Sale") of its interests in Eugene Island Block 142 ("EI142") free and clear of claims and liens pursuant to the terms and conditions of the Purchase and Sale Agreements attached hereto as Exhibits 1 and 2 (collectively with all exhibits and documents and agreements ancillary thereto, the "PSA" and the assets subject thereto, the "Assets"), dated as of April [•], 2014 and executed by and between the Debtor, as seller (the "Seller"), and Marlin Coastal, LLC ("Marlin"), as "Buyer" under the PSA for the Assets related to EI142;  and the Debtor having determined that Marlin has submitted the highest and best offer for the Assets; and upon adequate and sufficient notice of the Motion, the hearing on the Motion (the "Sale Hearing"); and the Court having reviewed and considered (x) the Motion and all relief related thereto, (y) all pleadings filed in response to the relief requested in the Motion, and (z) the statements of counsel and evidence presented at the Sale Hearing in support of the relief requested in the Motion; and it appearing that the Court has jurisdiction to consider and

1

determine this matter in accordance with 28 U.S.C. §§ 157 and 1334; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and creditors and other parties-in-interest; and upon the record of the Sale Hearing and all other pleadings and proceedings in this Chapter 11 case, including the Motion; and after due deliberation thereon and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**Jurisdiction, Final Order and Statutory Predicates**

A.     The Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are Sections 105(a), 363(b), (f), and (m) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014.

C.     This order (the "Sale Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a).

**Notice of Sale**

D.     Actual written notice of the Motion, the Sale Hearing, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested entities, including, but not limited to the following parties:

(i) all entities known by the Debtor to have expressed an interest in a transaction with respect to the Assets during the past nine (9) months, including all parties who executed a nondisclosure agreement in connection with the Debtor's previous sale of substantially all of its assets; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all Contract Counterparties to the proposed Assigned

2

Contracts identified in the Contract Assignment & Cure Schedule; (iv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; and (v) upon all parties set forth in the Debtor's Master Service List maintained in accordance with this Court's Order Establishing Notice Procedures [Dkt. No. 132] (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (iv) above) (collectively, the "Notice Parties").

E.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, and the transactions contemplated thereby was provided in accordance with the orders previously entered by this Court, Sections 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 9007, and 9008. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, or the Sale is or shall be required.

F.      The disclosures made by the Debtor concerning the PSA, the Motion, the Sale Hearing, and the Sale to Marlin were good, complete, and adequate.

**<u>Good Faith of Marlin</u>**

G.      The PSA was negotiated, proposed, and entered into by the Debtor and Marlin without collusion, in good faith, and from arms'-length bargaining positions.

H.      Marlin are not "insiders" or "affiliates" of the Debtor as those terms are defined in Sections 101(31) and 101(2) of the Bankruptcy Code. Neither the Debtor nor Marlin have engaged in any conduct that would cause or permit the PSA to be avoided under Section 363(n) of the Bankruptcy Code. Specifically, Marlin have not acted in a collusive manner with any person and the Purchase Price (as defined in the PSA) paid by Marlin for the Assets was not controlled by any agreement among the bidders.

I.      Marlin is purchasing the Assets in good faith and is therefore a good faith Buyer within the meaning of Section 363(m) of the Bankruptcy Code and under other applicable bankruptcy and non-bankruptcy law. Marlin proceeded in good faith in connection with all aspects of the Sale, including, but not limited to: (i) neither inducing nor causing the Debtor's Chapter 11 filing; and (ii) disclosing all payments to be made by Marlin in connection with the Sale. Accordingly, Marlin are entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law.

**Highest and Best Offer**

J.      The PSA constitute the highest and best offers for the Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the PSA constitute the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment.

K.      Marlin is a company organized and existing under the laws of the United States. Pursuant to PSA, Marlin agreed to pay the Purchase Price, as defined therein, for the Assets to be conveyed to Marlin thereunder.

L.      The PSA represent a fair and reasonable offer to purchase the Assets under the circumstances of this Chapter 11 case. No other entity or group of entities has offered to purchase the Assets for greater overall value to the Debtor's estate than Marlin.

M.      Approval of the Motion and the PSA and the consummation of the transactions contemplated thereby is in the best interests of the Debtor's Chapter 11 estate (taken as a whole), its creditors, and other parties in interest.

**No Fraudulent Transfer or Merger**

N.      The consideration provided by Marlin pursuant to the PSA (i) is fair and adequate, (ii) is the highest or otherwise best offer for the Assets, (iii) will provide a greater recovery for

the Debtor's estate than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. No other person, entity, or group of entities has offered to purchase the Assets for greater overall value to the Debtor's estate than Marlin. The Debtor's determination that the PSA constitute the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment. Approval of the Motion and the PSA, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtor, its estate, creditors, and other parties in interest.

O.      The PSA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtor nor Marlin are fraudulently entering into the transactions contemplated by the PSA.

## **Validity of Transfer**

P.      The Debtor has, to the extent necessary and applicable: (i) full corporate power and authority to execute and deliver the PSA and all other documents contemplated thereby; (ii) all corporate authority necessary to consummate the transactions contemplated by the PSA; and (iii) taken all corporate action necessary to authorize and approve the PSA and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the PSA, are required for the Debtor to consummate the Sale, execute the PSA, or consummate the transactions contemplated thereby.

Q.      The transfer of the Assets to Marlin will be, as of the Effective Date, a legal,

valid, and effective transfer of the Assets, which transfer vests or will vest Marlin with all right, title, and interest of the Debtor to the Assets free and clear of (i) all liens relating to, accruing, or arising any time prior to the Effective Date, including, without limitation, any such liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase, or repurchase right or option, or termination of, the Debtor or Marlin' interests in the Assets, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership and (ii) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in Section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise relating to, accruing or arising any time prior to the Closing Date (collectively in this clause (ii), the "Claims" and, together with the liens, the "Claims and Interests").

### Section 363(f) is Satisfied

R.      The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Assets free and clear of any Claims and Interests in such property.

S.      Marlin would not have entered into the PSA and would not consummate the transactions contemplated thereby if the Sale of the Assets to Marlin were not free and clear of all Claims and Interests of any kind or nature whatsoever, or if Marlin would, or in the future could, be liable for any of such Claims and Interests.

T.      The Debtor may sell the Assets free and clear of all Claims and Interests against the Debtor, its estate, or any of the Assets because those holders of Claims and Interests against the Debtor, its estate, or any of the Assets, who did not object, or who withdrew their objections to the Sale or the Motion, are deemed to have consented thereto pursuant to Section 363(f)(2) of the Bankruptcy Code.

## Assumption and Assignment of the Assigned Contracts

U.      The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is integral to the PSA and is in the best interests of the Debtor, its estate, creditors, and other parties in interest, and represents the Debtor's reasonable exercise of sound and prudent business judgment.

V.      The respective amounts set forth on Exhibit 3 annexed hereto are the sole amounts necessary under Sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the respective Assigned Contracts related to the PSA (collectively, the "Cure Amounts"). Any Cure Amounts shall be solely the responsibility of Marlin to pay; in no event shall Debtor or its estate have any responsibility or liability for paying any Cure Amounts as a condition to closing on the sale transactions that are being authorized by this Order.

W.      Marlin has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

## Compelling Circumstances for an Immediate Sale

X.      The Debtor has demonstrated through the testimony and/or other evidence admitted at the Sale Hearing and the representations of counsel made on the record of the Sale Hearing good and sufficient reasons for approval of the PSA and the Sale. The relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-

interest. The Debtor has demonstrated (i) good, sufficient, and sound business purposes and justifications for approving the PSA and (ii) compelling circumstances for the Sale outside of (a) the ordinary course of business, pursuant to Section 363(b) of the Bankruptcy Code and (b) a Chapter 11 plan, in that, among other things, the consummation of the Sale to Marlin is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to its creditors.

Y.      To maximize the value of the Assets and preserve the viability of the businesses to which they relate, it is essential that the Sale occur within the time constraints set forth in the PSA. Time is of the essence in consummating the Sale.

Z.      Given all of the circumstances of this Chapter 11 case and the adequacy and fair value of the Purchase Price to be paid by Marlin under the PSA, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

AA.     The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such Sections have been complied with in respect of the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>**General Provisions**</u>

1.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this Chapter 11 case pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

8

2.     The relief requested in the Motion is granted and approved as set forth in this Sale Order, and the transactions contemplated thereby and by the PSA are approved as set forth in this Sale Order. All capitalized terms not otherwise defined in this Sale Order have the meanings ascribed to such terms in the Motion or the PSA, as applicable.

3.     The Purchase Price to be paid by Marlin under the PSA is hereby approved.

4.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code.

**Approval of the PSA**

5.     The PSA and all other documents ancillary thereto, and all of the terms and conditions thereof, are hereby approved.

6.     Pursuant to Sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale pursuant to and in accordance with the terms and conditions of the PSA, (ii) close the Sale as contemplated in the PSA and this Sale Order, and (iii) execute and deliver, perform under, consummate, implement, and fully close the PSA, including the transfer of the Assets to Marlin in accordance with the PSA, together with all additional ancillary instruments and documents that may be reasonably necessary or desirable to implement the PSA and the Sale.

7.     This Sale Order shall be binding in all respects upon (a) the Debtor, (b) the Debtor's estate, (c) all creditors of, and holders of equity interests in, the Debtor, (d) all holders

of liens, Claims, encumbrances or other interests (whether known or unknown) in, against, or on all or any portion of the Assets, (e) Marlin and all successors and assigns of Marlin, (f) the Assets, and (g) any trustee subsequently appointed in the Debtor's Chapter 11 case, or a Chapter 7 trustee appointed upon a conversion of this case to a case under Chapter 7 under the Bankruptcy Code. This Sale Order and the PSA shall inure to the benefit of the Debtor, its estate and creditors, Marlin, and the respective successors and assigns of each of the foregoing.

**Transfer of the Assets**

8.      Pursuant to Sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Assets to Marlin as of the Effective Date and such transfer shall (a) constitute a legal, valid, binding, and effective transfer of the Assets, (b) vest Marlin with title to the Assets, and (c) upon the Debtor's receipt  of the Purchase Price to be paid by Marlin under the PSA, be free and clear of all Claims and Interests, including, without limitation, the Existing Liens. As of the Effective Date, Marlin shall take title to and possession of the Assets free and clear of all Claims and Interests.

9.      The Debtor is hereby authorized to take any and all actions necessary to consummate the transactions contemplated by the PSA, including any actions that otherwise would require further approval by the Debtor's board of directors or board of managers, as the case may be, without the need of obtaining such approvals.

10.      The transactions authorized herein shall be of full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which it is formed or authorized to transact business. Upon consummation of the transactions set forth in the PSA, Marlin shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any lien or encumbrance, with respect to the Assets, that is extinguished or otherwise

10

released pursuant to this Sale Order under Section 363 and the related provisions of the Bankruptcy Code.

11.     Subject to the terms, conditions, and provisions of this Sale Order, all entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to Marlin in accordance with the terms of the PSA and this Sale Order.

12.     Subject to the terms, conditions, and provisions of this Sale Order, all entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to Marlin or their assignees on the Closing Date.

13.     The transfer of the Assets to Marlin pursuant to the PSA does not require any consents other than as specifically provided for in the PSA.

14.     A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the Claims and Interests of record.

15.     If any person or entity which has filed statements or other documents evidencing Claims and Interests on, or in, all or any portion of the Assets shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtor is hereby authorized and directed, and Marlin are hereby authorized, on behalf of the Debtor and each of its creditors, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Assets.

16.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtor's interests in the Assets, effective as of the Effective Date. This Sale Order is and shall be effective as a determination that, on the Closing Date, all Claims and Interests  and any other interest of any kind or nature whatsoever existing as to the Assets prior to the Effective Date shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.

17.     This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the PSA.

**<u>Prohibition of Actions Against Marlin</u>**

18.     Except as otherwise expressly provided for in this Sale Order or the PSA, Marlin shall not have any liability or other obligation of the Debtor arising under or related to any of the Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the PSA, Marlin shall not be liable for any Claims and Interests against the Debtor, or any of its predecessors or affiliates.

19.     Except as otherwise permitted by the PSA or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Claims and Interests or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the operation of the Debtor's business prior to the Closing Date, or the transfer of the Assets to Marlin, hereby are forever barred, estopped, and permanently enjoined from asserting against Marlin, any of its affiliates, any of their successors, assigns, or properties, or the Assets, such persons' or entities' Claims and Interests or any other interests in and to the Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Marlin, any of its affiliates or any of their successors, assigns, or properties in respect of or otherwise relating to the Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Marlin, any of its affiliates or any of their successors, assigns, or properties in respect of or in relation to the Assets; (c) creating, perfecting, or enforcing any Claims and Interests against Marlin, any of its affiliates or any of their successors, assigns, or properties, in respect of or in relation to the Assets; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due Marlin, any of its affiliates, or any of their successors, assigns, or properties in respect of or in relation to the Assets; or (e) commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with the provisions of this Sale Order, other orders of the Court, or the PSA or actions contemplated or taken in respect thereof. For the avoidance of doubt, no party, other than the Debtor, by virtue of the PSA or this Sale

Order, is releasing any claims against Marlin that are not claims against, or in respect of, all or any portion of the Assets and no claims of any third party against Marlin that do not relate to the Assets are released by virtue of the PSA or this Sale Order other than claims based upon (y) the Sale and (z) the actions taken by Marlin in connection therewith.

20.     On the Closing Date, or as soon as possible thereafter, each creditor is authorized and directed, and Marlin are hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release any Claims and Interests and other interests in or on the Assets, if any, as provided for herein, as such Claims and Interests may have been recorded or may otherwise exist.

21.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to Marlin in accordance with the terms of the PSA and this Sale Order.

22.     Marlin have given substantial consideration under the PSA for the benefit of the Debtor, its estate, and creditors. As demonstrated at the Sale Hearing, the consideration given by Marlin shall constitute valid and valuable consideration for the releases of any potential Claims and Interests pursuant to this Sale Order, which releases shall be deemed to have been given in favor of Marlin by all holders of Claims and Interests against the Debtor or any of the Assets. The consideration provided by Marlin for the Assets under the PSA is fair and reasonable and accordingly the Sale may not be avoided under Section 363(n) of the Bankruptcy Code.

### Assumption and Assignment of Assigned Contracts

23.     Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale, the Debtor's assumption and assignment to Marlin, and Marlin' assumption on the terms set forth in the PSA, of the Assigned Contracts is hereby approved, and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto

are hereby deemed satisfied.

24.     The Debtor is hereby authorized and directed in accordance with Sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to Marlin, effective upon the Closing Date, the Assigned Contracts free and clear of all Claims and Interests or other interests of any kind or nature whatsoever and (b) execute and deliver to Marlin such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Marlin, provided, however, that to the extent that any payment is required to cure and compensate for any existing default under any Assigned Contract pursuant to Section 365 of the Bankruptcy Code, Seller shall not be responsible or in any way obligated for the payment of any such amount and Marlin shall have the right, in its sole discretion, to pay any cure amounts necessary with respect to such Assigned Contract, which Seller shall promptly assume and assign to Marlin upon the payment thereof

25.     The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, Marlin in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by Marlin, except as provided in the PSA.

26.     All defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be cured pursuant to Section 365 of the Bankruptcy Code.

27.     To the extent a Contract Counterparty to an Assigned Contract failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such Contract Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Assigned Contract to which it relates. No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the Contract Counterparty to the Assigned Contracts shall have any force and effect with respect to the Sale and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and are otherwise unenforceable under Section 365(e) of the Bankruptcy Code. No assignment of any Assigned Contract pursuant to the terms of the PSA shall in any respect constitute a default under any Assigned Contract. The Contract Counterparty to each Assigned Contract shall be deemed to have consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and Marlin shall enjoy all of the Debtor's rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such Contract Counterparty's written consent to the assumption or assignment thereof.

28.     All Contract Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of Marlin, and shall not charge the Debtor or Marlin for any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers of the Assigned Contracts in connection with the Sale.

29.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtor that any contract or Assigned Contract is an

executory contract or unexpired lease or must be assumed and assigned pursuant to the PSA or in order to consummate the Sale.

30.     Upon the payment by Marlin of the Cure Amount (if any) with respect to an Assigned Contract, the Contract Counterparty to such Assigned Contract shall be forever barred and enjoined from raising or asserting against (a) Marlin, (b) any of their respective affiliates, successors, or assigns, or (c) the Assets, any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the closing of the Sale, except for any amounts that are Assumed Obligations.

## Interior/BOEM Provisions

31.     Nothing in this Sale Order or the PSA eliminates or modifies the requirement to obtain consent for the transfer of the Assets from the United States Department of the Interior.

32.     Nothing in this Sale Order or the PSA releases, nullifies, precludes, or enjoins the enforcement of any liability to a government unit under environmental statutes or regulations (the "**Environmental Laws**") that any entity would be subject to as the owner or operator of the Assets after consummation of Sale and the transfer of the Assets to Marlin.

33.     Nothing in the Sale Order or the PSA authorizes the transfer or assignment to Marlin of any governmental licenses, permits, rights-of-way, rights-of-use and easements, contracts, registration, authorizations, approvals, agreements or other interests without Marlin's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

## Preservation of Rights Regarding ORRIs and NPIs

34.     Notwithstanding any contrary provisions or other language contained in this Sale Order or in the PSA, nothing in this Sale Order or the PSA shall constitute a finding of fact,

conclusion of law, or otherwise constitute an adjudication or opinion by this Court that any of the Assets (as such term is defined in the PSA) or any OCS lease or right of way constitutes an executory contract or an unexpired lease pursuant to Section 365 of the Bankruptcy Code. Moreover, nothing contained herein or in the PSA shall restrict or impair the rights, claims, actions, defenses, remedies or interests of the holders of overriding royalty interests, production payments, net profits interests, carried interests or similar interests (the "ORRI/NPI Holders") and/or any other party under applicable law (i) regarding title to, or the validity of, such interests or the production proceeds attributable to such interests, if any; or (ii) with respect to any litigation involving the Debtor and/or Bennu Oil and Gas, LLC regarding, among other things, the nature of the interest held by the ORRI/NPI Holders, including, but not limited to, whether the conveyances creating such interests effected conveyances of immovable or real property interests and whether such conveyances are contracts subject to the provisions of Section 365 of the Bankruptcy Code, and all parties' rights with respect to the matters set forth in this paragraph are reserved.

## Other Provisions

35.    This Sale Order, the PSA, and all documents ancillary thereto shall be binding in all respects upon all successors and assigns of the Debtor, and any of their respective affiliates and subsidiaries, any trustees, examiners, "responsible persons," or other fiduciaries appointed in the Debtor's Chapter 11 case or upon a conversion of such case to a case under Chapter 7 of the Bankruptcy Code, provided that, for avoidance of doubt, the Sale Order shall also be binding on all of the Debtor's creditors and equity holders. The PSA and any documents ancillary thereto shall not be subject to rejection or avoidance under any circumstances.

36.    The PSA and all documents ancillary thereto may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, in accordance with the

terms thereof, without further order of the Court; provided that any modification, amendment, or supplement that has a material adverse effect on the Debtor's estate or a material adverse effect on the rights or interests of any third party may only be made after notice and hearing.

37.    The consideration provided by Marlin to the Debtor pursuant to the PSA for the Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

38.    The transactions contemplated by the PSA, including without limitation, the purchase of the Assets free and clear of Claims and Interests, are undertaken by Marlin without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale free and clear of Claims and Interests, unless such authorization and such Sale are duly stayed pending such appeal. Marlin is a good faith Buyer within the meaning of Section 363(m) of the Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law, as such, is entitled to the full protections under Section 363(m) of the Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law.

39.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this Chapter 11 case, (b) any subsequent Chapter 7 case into which this Chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the PSA or the terms of this Sale Order.

40.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

19

41.     The failure to specifically include any particular provision of the PSA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the PSA be authorized and approved in its entirety as modified herein; provided, however, that this Sale Order shall govern if there is any inconsistency between the PSA (including all documents ancillary thereto) and this Sale Order. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

42.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the PSA, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to Marlin, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to Marlin, (b) interpret, implement, and enforce the provisions of this Sale Order, and (c) protect Marlin against any Claims and Interests or any other interest in or against the Debtor or the Assets of any kind or nature whatsoever attaching to the proceeds of the Sale.

43.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

44.     The provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in this case; (b) converting this case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing this case; or (d) pursuant to which this Court abstains from hearing this case.

45.     To the extent that this Sale Order is inconsistent with the PSA or any prior order or pleading with respect to the Motion in this Chapter 11 case, the terms of this Sale Order shall govern.

SIGNED this _____ day of _____, 2014.


_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ATP Oil & Gas Corporation, | § | Case No. 12-36187 |
| | § | |
| Debtor. | § | Judge Marvin Isgur |
| | § | |

**FINAL ORDER (I) APPROVING THE SALE OF ITS INTERESTS IN EUGENE ISLAND BLOCK 142 FREE AND CLEAR OF CLAIMS AND LIENS; (II)APPROVING THE FORM AND MANNER OF THE NOTICE OF THE SALE AND THE SALE HEARING; (III) APPROVING CERTAIN PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; (IV) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (V) GRANTING CERTAIN RELATED RELIEF**

Upon the Motion (the "Motion") of ATP Oil & Gas Corporation (the "Debtor") pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Bankruptcy Rules 2002 and 6004 for an Order approving the sales (the "Sale") of its interests in Eugene Island Block 142 ("EI142") free and clear of claims and liens pursuant to the terms and conditions of the Purchase and Sale Agreements attached hereto as Exhibits 1 and 2 (collectively with all exhibits and documents and agreements ancillary thereto, the "PSA" and the assets subject thereto, the "Assets"), dated as of April [•], 2014 and executed by and between the Debtor, as seller (the "Seller"), and Marlin Coastal, LLC ("Marlin"), as "Buyer" under the PSA for the Assets related to EI142;  and the Debtor having determined that Marlin has submitted the highest and best offer for the Assets; and upon adequate and sufficient notice of the Motion, the hearing on the Motion (the "Sale Hearing"); and the Court having reviewed and considered (x) the Motion and all relief related thereto, (y) all pleadings filed in response to the relief requested in the Motion, and (z) the statements of counsel and evidence presented at the Sale Hearing in support of the relief requested in the Motion; and it appearing that the Court has jurisdiction to consider and

determine this matter in accordance with 28 U.S.C. §§ 157 and 1334; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and creditors and other parties-in-interest; and upon the record of the Sale Hearing and all other pleadings and proceedings in this Chapter 11 case, including the Motion; and after due deliberation thereon and good and sufficient cause appearing therefor;

### IT IS HEREBY FOUND AND DETERMINED THAT:

### Jurisdiction, Final Order and Statutory Predicates

A.     The Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are Sections 105(a), 363(b), (f), and (m) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014.

C.     This order (the "Sale Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a).

### Notice of Sale

D.     Actual written notice of the Motion, the Sale Hearing, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested entities, including, but not limited to the following parties:

(i) all entities known by the Debtor to have expressed an interest in a transaction with respect to the Assets during the past nine (9) months, including all parties who executed a nondisclosure agreement in connection with the Debtor's previous sale of substantially all of its assets; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all Contract Counterparties to the proposed Assigned

Contracts identified in the Contract Assignment & Cure Schedule; (iv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; and (v) upon all parties set forth in the Debtor's Master Service List maintained in accordance with this Court's Order Establishing Notice Procedures [Dkt. No. 132] (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (iv) above) (collectively, the "Notice Parties").

E.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, and the transactions contemplated thereby was provided in accordance with the orders previously entered by this Court, Sections 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 9007, and 9008. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, or the Sale is or shall be required.

F.      The disclosures made by the Debtor concerning the PSA, the Motion, the Sale Hearing, and the Sale to Marlin were good, complete, and adequate.

## Good Faith of Marlin

G.      The PSA was negotiated, proposed, and entered into by the Debtor and Marlin without collusion, in good faith, and from arms'-length bargaining positions.

H.      Marlin are not "insiders" or "affiliates" of the Debtor as those terms are defined in Sections 101(31) and 101(2) of the Bankruptcy Code. Neither the Debtor nor Marlin have engaged in any conduct that would cause or permit the PSA to be avoided under Section 363(n) of the Bankruptcy Code. Specifically, Marlin have not acted in a collusive manner with any person and the Purchase Price (as defined in the PSA) paid by Marlin for the Assets was not controlled by any agreement among the bidders.

I.      Marlin is purchasing the Assets in good faith and is therefore a good faith Buyer within the meaning of Section 363(m) of the Bankruptcy Code and under other applicable bankruptcy and non-bankruptcy law. Marlin proceeded in good faith in connection with all aspects of the Sale, including, but not limited to: (i) neither inducing nor causing the Debtor's Chapter 11 filing; and (ii) disclosing all payments to be made by Marlin in connection with the Sale. Accordingly, Marlin are entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law.

**Highest and Best Offer**

J.      The PSA constitute the highest and best offers for the Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the PSA constitute the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment.

K.      Marlin is a company organized and existing under the laws of the United States. Pursuant to PSA, Marlin agreed to pay the Purchase Price, as defined therein, for the Assets to be conveyed to Marlin thereunder.

L.      The PSA represent a fair and reasonable offer to purchase the Assets under the circumstances of this Chapter 11 case. No other entity or group of entities has offered to purchase the Assets for greater overall value to the Debtor's estate than Marlin.

M.      Approval of the Motion and the PSA and the consummation of the transactions contemplated thereby is in the best interests of the Debtor's Chapter 11 estate (taken as a whole), its creditors, and other parties in interest.

**No Fraudulent Transfer or Merger**

N.      The consideration provided by Marlin pursuant to the PSA (i) is fair and adequate, (ii) is the highest or otherwise best offer for the Assets, (iii) will provide a greater recovery for

{N2805531.1}                                      4

the Debtor's estate than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. No other person, entity, or group of entities has offered to purchase the Assets for greater overall value to the Debtor's estate than Marlin. The Debtor's determination that the PSA constitute the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment. Approval of the Motion and the PSA, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtor, its estate, creditors, and other parties in interest.

O.     The PSA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtor nor Marlin are fraudulently entering into the transactions contemplated by the PSA.

**Validity of Transfer**

P.     The Debtor has, to the extent necessary and applicable: (i) full corporate power and authority to execute and deliver the PSA and all other documents contemplated thereby; (ii) all corporate authority necessary to consummate the transactions contemplated by the PSA; and (iii) taken all corporate action necessary to authorize and approve the PSA and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the PSA, are required for the Debtor to consummate the Sale, execute the PSA, or consummate the transactions contemplated thereby.

Q.     The transfer of the Assets to Marlin will be, as of the Effective Date, a legal,

valid, and effective transfer of the Assets, which transfer vests or will vest Marlin with all right, title, and interest of the Debtor to the Assets free and clear of (i) all liens, ~~other than the Existing~~ ~~Liens (as defined in the PSA),~~ relating to, accruing, or arising any time prior to the Effective Date, including, without limitation, any such liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase, or repurchase right or option, or termination of, the Debtor or Marlin' interests in the Assets, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership and (ii) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in Section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise relating to, accruing or arising any time prior to the Closing Date (collectively in this clause (ii), the "Claims" and, together with the liens, the "Claims and Interests").

## Section 363(f) is Satisfied

R.    The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Assets free and clear of any Claims and Interests in such property.

S.    Marlin would not have entered into the PSA and would not consummate the transactions contemplated thereby if the Sale of the Assets to Marlin were not free and clear of all Claims and Interests of any kind or nature whatsoever, or if Marlin would, or in the future

could, be liable for any of such Claims and Interests.

      T.     The Debtor may sell the Assets free and clear of all Claims and Interests against the Debtor, its estate, or any of the Assets because those holders of Claims and Interests against the Debtor, its estate, or any of the Assets, who did not object, or who withdrew their objections to the Sale or the Motion, are deemed to have consented thereto pursuant to Section 363(f)(2) of the Bankruptcy Code.

### Assumption and Assignment of the Assigned Contracts

      U.     The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is integral to the PSA and is in the best interests of the Debtor, its estate, creditors, and other parties in interest, and represents the Debtor's reasonable exercise of sound and prudent business judgment.

      V.     The respective amounts set forth on Exhibit 3 annexed hereto are the sole amounts necessary under Sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the respective Assigned Contracts related to the PSA (collectively, the "Cure Amounts").  Any Cure Amounts shall be solely the responsibility of Marlin to pay; in no event shall Debtor or its estate have any responsibility or liability for paying any Cure Amounts as a condition to closing on the sale transactions that are being authorized by this Order.

      W.     Marlin has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

### Compelling Circumstances for an Immediate Sale

      X.     The Debtor has demonstrated through the testimony and/or other evidence admitted at the Sale Hearing and the representations of counsel made on the record of the Sale Hearing good and sufficient reasons for approval of the PSA and the Sale. The relief requested in

the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest. The Debtor has demonstrated (i) good, sufficient, and sound business purposes and justifications for approving the PSA and (ii) compelling circumstances for the Sale outside of (a) the ordinary course of business, pursuant to Section 363(b) of the Bankruptcy Code and (b) a Chapter 11 plan, in that, among other things, the consummation of the Sale to Marlin is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to its creditors.

Y.     To maximize the value of the Assets and preserve the viability of the businesses to which they relate, it is essential that the Sale occur within the time constraints set forth in the PSA. Time is of the essence in consummating the Sale.

Z.     Given all of the circumstances of this Chapter 11 case and the adequacy and fair value of the Purchase Price to be paid by Marlin under the PSA, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

AA.     The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such Sections have been complied with in respect of the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this Chapter 11 case pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of

law constitute findings of fact, they are adopted as such.

2.      The relief requested in the Motion is granted and approved as set forth in this Sale Order, and the transactions contemplated thereby and by the PSA are approved as set forth in this Sale Order. All capitalized terms not otherwise defined in this Sale Order have the meanings ascribed to such terms in the Motion or the PSA, as applicable.

3.      The Purchase Price to be paid by Marlin under the PSA is hereby approved.

4.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code.

## Approval of the PSA

5.      The PSA and all other documents ancillary thereto, and all of the terms and conditions thereof, are hereby approved.

6.      Pursuant to Sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale pursuant to and in accordance with the terms and conditions of the PSA, (ii) close the Sale as contemplated in the PSA and this Sale Order, and (iii) execute and deliver, perform under, consummate, implement, and fully close the PSA, including the transfer of the Assets to Marlin in accordance with the PSA, together with all additional ancillary instruments and documents that may be reasonably necessary or desirable to implement the PSA and the Sale.

7.      This Sale Order shall be binding in all respects upon (a) the Debtor, (b) the Debtor's estate, (c) all creditors of, and holders of equity interests in, the Debtor, (d) all holders

of liens, Claims, encumbrances or other interests (whether known or unknown) in, against, or on all or any portion of the Assets, (e) Marlin and all successors and assigns of Marlin, (f) the Assets, and (g) any trustee subsequently appointed in the Debtor's Chapter 11 case, or a Chapter 7 trustee appointed upon a conversion of this case to a case under Chapter 7 under the Bankruptcy Code. This Sale Order and the PSA shall inure to the benefit of the Debtor, its estate and creditors, Marlin, and the respective successors and assigns of each of the foregoing.

### Transfer of the Assets

8.      Pursuant to Sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Assets to Marlin as of the Effective Date and such transfer shall (a) constitute a legal, valid, binding, and effective transfer of the Assets, (b) vest Marlin with title to the Assets, and (c) upon the Debtor's receipt  of the Purchase Price to be paid by Marlin under the PSA, be free and clear of all Claims and Interests, including, without limitation, the Existing Liens. As of the Effective Date, Marlin shall take title to and possession of the Assets free and clear of all Claims and Interests.

9.      The Debtor is hereby authorized to take any and all actions necessary to consummate the transactions contemplated by the PSA, including any actions that otherwise would require further approval by the Debtor's board of directors or board of managers, as the case may be, without the need of obtaining such approvals.

10.      The transactions authorized herein shall be of full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which it is formed or authorized to transact business. Upon consummation of the transactions set forth in the PSA, Marlin shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any lien or encumbrance, with respect to the Assets, that is extinguished or otherwise

released pursuant to this Sale Order under Section 363 and the related provisions of the Bankruptcy Code.

11.     Subject to the terms, conditions, and provisions of this Sale Order, all entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to Marlin in accordance with the terms of the PSA and this Sale Order.

12.     Subject to the terms, conditions, and provisions of this Sale Order, all entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to Marlin or their assignees on the Closing Date.

13.     The transfer of the Assets to Marlin pursuant to the PSA does not require any consents other than as specifically provided for in the PSA.

14.     A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the Claims and Interests of record.

15.     If any person or entity which has filed statements or other documents evidencing Claims and Interests on, or in, all or any portion of the Assets shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtor is hereby authorized and directed, and Marlin are hereby authorized, on behalf of the Debtor and each of its creditors, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Assets.

16.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtor's interests in the Assets, effective as of the Effective Date. This Sale Order is and shall be effective as a determination that, on the Closing Date, all Claims and Interests, other than the Existing Liens, and any other interest of any kind or nature whatsoever existing as to the Assets prior to the Effective Date shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.

17.     This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the PSA.

**Prohibition of Actions Against Marlin**

18.     Except as otherwise expressly provided for in this Sale Order or the PSA, Marlin shall not have any liability or other obligation of the Debtor arising under or related to any of the Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the PSA, Marlin shall not be liable for any Claims and Interests against the Debtor, or any of its predecessors or affiliates.

{N2805531.1}                                    12

19.     Except as otherwise permitted by the PSA or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Claims and Interests or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the operation of the Debtor's business prior to the Closing Date, or the transfer of the Assets to Marlin, hereby are forever barred, estopped, and permanently enjoined from asserting against Marlin, any of its affiliates, any of their successors, assigns, or properties, or the Assets, such persons' or entities' Claims and Interests or any other interests in and to the Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Marlin, any of its affiliates or any of their successors, assigns, or properties in respect of or otherwise relating to the Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Marlin, any of its affiliates or any of their successors, assigns, or properties in respect of or in relation to the Assets; (c) creating, perfecting, or enforcing any Claims and Interests against Marlin, any of its affiliates or any of their successors, assigns, or properties, in respect of or in relation to the Assets; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due Marlin, any of its affiliates, or any of their successors, assigns, or properties in respect of or in relation to the Assets; or (e) commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with the provisions of this Sale Order, other orders of the Court, or the PSA or actions contemplated or taken in respect thereof. For the avoidance of doubt, no party, other than the Debtor, by virtue of the PSA or this Sale Order, is

releasing any claims against Marlin that are not claims against, or in respect of, all or any portion of the Assets and no claims of any third party against Marlin that do not relate to the Assets are released by virtue of the PSA or this Sale Order other than claims based upon (y) the Sale and (z) the actions taken by Marlin in connection therewith.

20.     On the Closing Date, or as soon as possible thereafter, each creditor is authorized and directed, and Marlin are hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release any Claims and Interests and other interests in or on the Assets, if any, as provided for herein, as such Claims and Interests may have been recorded or may otherwise exist.

21.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to Marlin in accordance with the terms of the PSA and this Sale Order.

22.     Marlin have given substantial consideration under the PSA for the benefit of the Debtor, its estate, and creditors. As demonstrated at the Sale Hearing, the consideration given by Marlin shall constitute valid and valuable consideration for the releases of any potential Claims and Interests pursuant to this Sale Order, which releases shall be deemed to have been given in favor of Marlin by all holders of Claims and Interests against the Debtor or any of the Assets. The consideration provided by Marlin for the Assets under the PSA is fair and reasonable and accordingly the Sale may not be avoided under Section 363(n) of the Bankruptcy Code.

## Assumption and Assignment of Assigned Contracts

23.     Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale, the Debtor's assumption and assignment to Marlin, and Marlin' assumption on the terms set forth in the PSA, of the Assigned Contracts is hereby approved, and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto

are hereby deemed satisfied.

24.     The Debtor is hereby authorized and directed in accordance with Sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to Marlin, effective upon the Closing Date, the Assigned Contracts free and clear of all Claims and Interests or other interests of any kind or nature whatsoever and (b) execute and deliver to Marlin such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Marlin, provided, however, that to the extent that any payment is required to cure and compensate for any existing default under any Assigned Contract pursuant to Section 365 of the Bankruptcy Code, Seller shall not be responsible or in any way obligated for the payment of any such amount and Marlin shall have the right, in its sole discretion, to pay any cure amounts necessary with respect to such Assigned Contract, which Seller shall promptly assume and assign to Marlin upon the payment thereof

25.     The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, Marlin in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by Marlin, except as provided in the PSA.

26.     All defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be cured pursuant to Section 365 of the Bankruptcy Code.

27.     To the extent a Contract Counterparty to an Assigned Contract failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such Contract Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Assigned Contract to which it relates. No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the Contract Counterparty to the Assigned Contracts shall have any force and effect with respect to the Sale and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and are otherwise unenforceable under Section 365(e) of the Bankruptcy Code. No assignment of any Assigned Contract pursuant to the terms of the PSA shall in any respect constitute a default under any Assigned Contract. The Contract Counterparty to each Assigned Contract shall be deemed to have consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and Marlin shall enjoy all of the Debtor's rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such Contract Counterparty's written consent to the assumption or assignment thereof.

28.     All Contract Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of Marlin, and shall not charge the Debtor or Marlin for any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers of the Assigned Contracts in connection with the Sale.

29.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtor that any contract or Assigned Contract is an

executory contract or unexpired lease or must be assumed and assigned pursuant to the PSA or in order to consummate the Sale.

30.     Upon the payment by Marlin of the Cure Amount (if any) with respect to an Assigned Contract, the Contract Counterparty to such Assigned Contract shall be forever barred and enjoined from raising or asserting against (a) Marlin, (b) any of their respective affiliates, successors, or assigns, or (c) the Assets, any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the closing of the Sale, except for any amounts that are Assumed Obligations.

**Interior/BOEM Provisions**

31.     Nothing in this Sale Order or the PSA eliminates or modifies the requirement to obtain consent for the transfer of the Assets from the United States Department of the Interior.

32.     Nothing in this Sale Order or the PSA releases, nullifies, precludes, or enjoins the enforcement of any liability to a government unit under environmental statutes or regulations (the **"Environmental Laws"**) that any entity would be subject to as the owner or operator of the Assets after consummation of Sale and the transfer of the Assets to Marlin.

33.     Nothing in the Sale Order or the PSA authorizes the transfer or assignment to Marlin of any governmental licenses, permits, rights-of-way, rights-of-use and easements, contracts, registration, authorizations, approvals, agreements or other interests without Marlin's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

**Preservation of Rights Regarding ORRIs and NPIs**

34.     Notwithstanding any contrary provisions or other language contained in this Sale Order or in the PSA, nothing in this Sale Order or the PSA shall constitute a finding of fact,

conclusion of law, or otherwise constitute an adjudication or opinion by this Court that any of the Assets (as such term is defined in the PSA) or any OCS lease or right of way constitutes an executory contract or an unexpired lease pursuant to Section 365 of the Bankruptcy Code. Moreover, nothing contained herein or in the PSA shall restrict or impair the rights, claims, actions, defenses, remedies or interests of the holders of overriding royalty interests, production payments, net profits interests, carried interests or similar interests (the "ORRI/NPI Holders") and/or any other party under applicable law (i) regarding title to, or the validity of, such interests or the production proceeds attributable to such interests, if any; or (ii) with respect to any litigation involving the Debtor and/or Bennu Oil and Gas, LLC regarding, among other things, the nature of the interest held by the ORRI/NPI Holders, including, but not limited to, whether the conveyances creating such interests effected conveyances of immovable or real property interests and whether such conveyances are contracts subject to the provisions of Section 365 of the Bankruptcy Code, and all parties' rights with respect to the matters set forth in this paragraph are reserved.

### Other Provisions

31. 35.  This Sale Order, the PSA, and all documents ancillary thereto shall be binding in all respects upon all successors and assigns of the Debtor, and any of their respective affiliates and subsidiaries, any trustees, examiners, "responsible persons," or other fiduciaries appointed in the Debtor's Chapter 11 case or upon a conversion of such case to a case under Chapter 7 of the Bankruptcy Code, provided that, for avoidance of doubt, the Sale Order shall also be binding on all of the Debtor's creditors and equity holders. The PSA and any documents ancillary thereto shall not be subject to rejection or avoidance under any circumstances.

32. 36.  The PSA and all documents ancillary thereto may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, in accordance with the

terms thereof, without further order of the Court; provided that any modification, amendment, or supplement that has a material adverse effect on the Debtor's estate or a material adverse effect on the rights or interests of any third party may only be made after notice and hearing.

33. 37.  The consideration provided by Marlin to the Debtor pursuant to the PSA for the Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

34. 38.  The transactions contemplated by the PSA, including without limitation, the purchase of the Assets free and clear of Claims and Interests, are undertaken by Marlin without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale free and clear of Claims and Interests, unless such authorization and such Sale are duly stayed pending such appeal. Marlin is a good faith Buyer within the meaning of Section 363(m) of the Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law, as such, is entitled to the full protections under Section 363(m) of the Bankruptcy Code and under other applicable Bankruptcy and non-Bankruptcy Law.

35. 39.  Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this Chapter 11 case, (b) any subsequent Chapter 7 case into which this Chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the PSA or the terms of this Sale Order.

36. 40.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

37. 41.  The failure to specifically include any particular provision of the PSA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the PSA be authorized and approved in its entirety as modified herein; provided, however, that this Sale Order shall govern if there is any inconsistency between the PSA (including all documents ancillary thereto) and this Sale Order. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

38. 42.  The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the PSA, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to Marlin, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to Marlin, (b) interpret, implement, and enforce the provisions of this Sale Order, and (c) protect Marlin against any Claims and Interests or any other interest in or against the Debtor or the Assets of any kind or nature whatsoever attaching to the proceeds of the Sale.

39. 43.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40. 44.  The provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in this case; (b) converting this case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing this case; or (d) pursuant to which this Court abstains from hearing this case.

41. 45.  To the extent that this Sale Order is inconsistent with the PSA or any prior order or pleading with respect to the Motion in this Chapter 11 case, the terms of this Sale Order shall govern.

SIGNED this _____ day of _____, 2014.


_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

Document comparison by Workshare Compare on Wednesday, May 14, 2014
10:36:22 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\IB001270\Desktop\Old Order.doc |
| Description | Old Order |
| Document 2 ID | file://C:\Users\IB001270\Desktop\REVISED MARLIN ORDER.docx |
| Description | REVISED MARLIN ORDER |
| Rendering set | Deletions struck through - Inserts dbl und |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ^~~Moved from~~ ^ | |
| "Moved to " | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 19 |
| Deletions | 14 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 33 |