**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/15/2016

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 7** |
| | § | |
| **ATP OIL & GAS CORPORATION,** | § | **CASE NO. 12-36187** |
| | § | |
| **DEBTOR.** | § | **HONORABLE MARVIN ISGUR** |

**ORDER APPROVING CHAPTER 7 TRUSTEE'S MOTION UNDER 11 U.S.C. §§ 105(A) AND 363, BANKRUPTCY RULES 6004 AND 9019 AND LOCAL RULE 9013-1 FOR APPROVAL OF SETTLEMENT WITH THE BP ENTITIES**

Upon the motion (the "Motion") of Rodney D. Tow, the Chapter 7 trustee (the "Trustee") of ATP Oil & Gas Corporation ("ATP") for entry of an order (this "Order"), (a) approving the Trustee's entry into the Settlement Agreement with the BP Entities[1] attached hereto as Exhibit "A" and incorporated by reference herein, and (b) authorizing the Trustee and the BP Entities to execute and deliver the Full and Final Release, Settlement and Covenant Not to Sue (the "Full and Final Release", also attached hereto as Exhibit "A") and to take all actions contemplated by and reasonably necessary to implement the settlement with the BP Entities (the "BP Settlement"), as set more fully set in the Motion; and the Bankruptcy Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Bankruptcy Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Bankruptcy Court having found that the venue of this case and the Motion in this district is proper pursuant to § 1408; and the Bankruptcy Court having found that the relief requested in the Motion is in the best interest of ATP's chapter 7 estate, its creditors and other parties in interest; and the Bankruptcy Court having found that the Trustee provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Bankruptcy Court having reviewed the Motion, considered the evidence adduced at a hearing

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

before the court (the "Hearing") and the oral and written arguments of the parties appearing on the Motion at the Hearing; and the Bankruptcy Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; it is HEREBY ORDERED THAT:

1.  The Trustee's entry into the Settlement Agreement is approved in all respects;

2.  The Trustee's entry into the Full and Final Release is hereby approved;

3.  The Trustee and the BP Entities are authorized to enter into, perform, execute and deliver all documents, and take all actions, necessary to fully implement the BP Settlement in accordance with the terms, conditions, agreement, and releases set forth therein, without further approval from the Bankruptcy Court;

4.  The Trustee is authorized to pay Special Counsel the allowed compensation and reimbursement of expenses from the Settlement Installment Payments.

5.  Subject to entry of an order from the Bankruptcy Court approving allowance of compensation for the Trustee, the Trustee is authorized to use up to three percent (3%) of each Settlement Installment Payments for compensation of the Trustee under Sections 326 and 330 of the Bankruptcy Code.

6.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry;

7.  The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated August 15, 2016.

_____

Marvin Isgur
United States Bankruptcy Judge

PRIVILEGED & HIGHLY CONFIDENTIAL
PROTECTED BY RULE 408 & PROTECTIVE ORDER

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement"),[1] dated as of ~~April 13~~ *May 13*, 2016, is made and entered into by and among (i) BP Exploration & Production Inc. ("BPXP") and (ii) Rodney D. Tow, the Chapter 7 Trustee (the "Trustee") of ATP Oil & Gas Corporation ("ATP").

### RECITALS

A.      BPXP is a corporation organized under the laws of the State of Delaware, engaged in the business of oil and gas production, exploration and/or development.

B.      The Trustee was appointed by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") in *In re: ATP Oil & Gas Corp.*, No. 12-36187 (Bankr. S.D. Tex.).

C.      The lawsuit filed on behalf of ATP in *ATP Oil & Gas Corp. v. BP Exploration & Production Co. et al.*, No. 2:13-cv-01962 (E.D. La.) (the "ATP-BP Litigation"), seeks damages on behalf of ATP against BPXP, other BP Entities, and other defendants for injuries arising out of the *Deepwater Horizon* oil spill, and all such claims, damages, and theories of liability, unless expressly reserved, are extinguished, discharged, and released as against BPXP, other BP Entities, and all other defendants by the terms of this Agreement; provided, however, that claims for punitive or exemplary damages against Transocean Inc., Transocean Holdings LLC, Transocean Ltd., Transocean Deepwater Inc., Transocean Offshore Deepwater Drilling Inc., Triton Asset Leasing GmbH, Halliburton Energy Services Inc., Halliburton Company, and Sperry Drilling Services f/k/a Sperry Sun Drilling Services. are expressly reserved and shall not be released under this Agreement.

D.      The Trustee, on behalf of ATP, contends it would prevail in the ATP-BP Litigation. The BP Entities dispute and deny the Trustee's claims, has raised various affirmative and legal and other defenses, and contends that they would prevail in the ATP-BP Litigation.

E.      After careful consideration, BPXP and the Trustee (collectively, the "Parties") have

---

[1] Except as otherwise defined herein, capitalized terms have the meaning ascribed to such terms in the Full and Final Release, Settlement, and Covenant Not to Sue (the "Release Agreement") attached hereto as Exhibit A.

1



PRIVILEGED & HIGHLY CONFIDENTIAL
PROTECTED BY RULE 408 & PROTECTIVE ORDER

concluded that it is in the best interests of the BP Entities and the Trustee to compromise and settle any and all claims asserted against any and all defendants in the ATP-BP Litigation.

NOW THEREFORE, it is agreed that in consideration of the agreements, promises, and mutual covenants, representations, and warranties set forth in this Agreement and the Release Agreement, incorporated herein by reference; the benefits and payments described in this Agreement and the Release Agreement; and for such other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the ATP-BP Litigation shall be settled, compromised, and fully and finally resolved under and subject to the following terms and conditions and those terms and conditions set forth in the Release Agreement:

### 1. Settlement Benefits and Release of Claims

The settlement benefits, release of claims, and other terms (other than those terms set forth in this Agreement) are as set forth in the Release Agreement, incorporated herein by reference and attached hereto as Exhibit A, in accordance with the terms of which BPXP, on behalf of the BP Entities, shall pay $25,000,000 ($25 million) to a Trustee-controlled bankruptcy-estate account.

### 2. Condition Precedent to Finality of this Agreement.

The Parties understand and agree that to become effective, the settlement set forth in this Agreement must receive the approval of the Bankruptcy Court. Notwithstanding Bankruptcy Rule 6004(h), this Agreement shall take effect upon entry of an order by the Bankruptcy Court approving this Agreement.

### 3. Miscellaneous Provisions.

This Agreement shall be deemed to have been mutually prepared by the Parties and shall not be construed against any of them by reason of authorship.

This Agreement may be executed in counterparts, and an email or facsimile signature shall be deemed an original signature for purposes of this Agreement.

PRIVILEGED & HIGHLY CONFIDENTIAL
PROTECTED BY RULE 408 & PROTECTIVE ORDER

No representations, warranties, or inducements have been made to any Party concerning the Agreement or its attachments other than the representations and warranties contained and memorialized in such documents and the Agreement.

This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties.

Each Party to this Agreement represents that he or it has all requisite power and authority to execute, deliver, and perform this Agreement.

If there is a conflict between this Agreement and the Release Agreement, the terms of the Release Agreement shall control.

BP EXPLORATION & PRODUCTION INC.

Date:
By: _____          Witness: _____
Name: Maria Travis
Title: Attorney-in-fact

TRUSTEE
Date: 4/19/16
By: _____          Witness: _____
Name: Rodney Tow, as Chapter 7 Trustee for ATP Oil & Gas Corp.

3

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

**Exhibit A**

## FULL AND FINAL RELEASE, SETTLEMENT, AND COVENANT NOT TO SUE

This Release Agreement shall become effective upon, and only upon, approval by the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). Notwithstanding any confidentiality obligations, the BP Entities will not object to the Trustee's seeking approval from the Bankruptcy Court for the Release Agreement pursuant to Bankruptcy Rule 9019 and other applicable laws and rules.

1. Definitions: For purposes of this Full and Final Release, Settlement, and Covenant Not to Sue ("Release Agreement"), the following definitions shall apply, and in the case of defined nouns the plural shall include the singular and vice versa:

   a. "Affiliate" means, with respect to any entity, any natural person or other entity that directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such entity.

   b. "BP Entities" shall mean BP p.l.c., BP America Production Co., BP Corporation North America Inc., BPXP, and any Affiliates, corporate parents, subsidiaries, predecessors, successors, indemnitors, subrogees, assigns, officers, directors, employees, agents, and representatives of any of the foregoing.

   c. "BPXP" shall mean BP Exploration & Production Inc.

   d. "Claimant" shall mean **Rodney D. Tow**, in his capacity as Chapter 7 Trustee of ATP Oil & Gas Corporation (the "Trustee"), ATP Oil & Gas Corporation, and any of Claimant's Related Parties that are under the Trustee's legal authority and control.

   e. "Claimant's Related Parties" shall mean Claimant's Affiliates, corporate parents, subsidiaries, predecessors, successors, indemnitors, subrogees, assigns, officers, directors, employees, agents, representatives, trustees, insurers, reinsurers, heirs, beneficiaries, estates, executors, administrators, receivers, conservators, personal representatives, and any natural, legal, or juridical person or entity entitled or empowered to assert any claim on behalf of or in respect of Claimant, including if Claimant is a natural person any spouse of Claimant and if Claimant is a sole proprietorship any spouse of Claimant's proprietor.

   f. "CSSP" shall mean the *Deepwater Horizon* Court Supervised Settlement Program established in MDL 2179 pursuant to the EPD Settlement Agreement.

   g. "CSSP Claims" shall mean any claims filed in the CSSP.

-1-

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

h.  "*Deepwater Horizon* Incident" shall mean events, actions, inactions, and omissions leading up to and including the following: (i) all discharges of hydrocarbons or other substances from the Macondo Well, including discharges from, through, or into the *Deepwater Horizon* mobile offshore drilling unit (including its appurtenances), occurring on or after April 20, 2010, regardless of any subsequent movement of such hydrocarbons or other substances; (ii) the blow-out of the Macondo Well; (iii) the explosion and fire on the *Deepwater Horizon*; (iv) the sinking and/or loss of the *Deepwater Horizon*; (v) any and all containment efforts related to the Macondo Well; (vi) construction of relief wells related to the Macondo Well; (vii) any and all clean-up, remediation, removal, response, and/or restoration efforts related to the foregoing, including but not limited to the Vessels of Opportunity program, the application of dispersants, and any diversion of fresh water; and (viii) operations of any claims facility related to the foregoing.

i.  "Economic Claims" shall mean any claim or cause of action related to economic loss, lost profits, lost earnings, lost income, property damage (including without limitation physical damage, diminished value, stigma, and lost or diminished sales or rentals), lost commissions, lost donations, lost contributions, lost grants, business interruption, breach of contract, loss of royalties, loss of subsistence use of natural resources, operating costs, or any other costs, losses, or damages, including without limitation any claim arising out of the Oil Pollution Act ("OPA"), 33 U.S.C. § 2702(b), state or federal common law, statute, or regulation, maritime law, tribal law, or any other applicable provision of law.

j.  "EPD Settlement Agreement" shall mean the Economic and Property Damages Settlement Agreement executed April 18, 2012, and approved by the United States District Court for the Eastern District of Louisiana on December 21, 2012.

k.  "Macondo Well" shall mean: (i) Macondo Well 1 (including MC-252#1, Well No. 001ST00BP00, MC-252#1 ST1, Well No. 001ST00BP01), Macondo Well 2 (including MC-252#2, Well No. 003ST00BP00), and Macondo Well 3 (including MC-252#3, Well No. 002ST00BP00) within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10 existing on or before the date of lodging of the Consent Decree; (ii) the *Deepwater Horizon* and its appurtenances, including the riser from the *Deepwater Horizon*; (iii) a coffer dam used in the course of removal work conducted during the discharge of oil from Block 252 of the Mississippi Canyon that began April 20, 2010; (iv) "the Macondo Well" as defined in the United States' Complaint in MDL 2179; and (v) the eight aliquots within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10.

l.  "MDL 2179" shall mean the multidistrict litigation pending before the United States District Court for the Eastern District of Louisiana, titled *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (MDL 2179), including any and all claims or causes of action or theories of loss or damage that have been filed within, referred to, or otherwise consolidated thereunder.

-2-

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

m.  "MDL 2185" shall mean the multidistrict litigation pending before the United States District Court for the Southern District of Texas, titled *In re: BP p.l.c. Securities Litigation* (MDL 2185), including any and all claims or causes of action or theories of loss or damage that have been filed within, referred to, or otherwise consolidated thereunder.

n.  "Medical Claims" shall mean claims or causes of action that have been or could have been brought in connection with (i) personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, where such injury, progression, and/or exacerbation in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *Deepwater Horizon* Incident, or wrongful death and/or survival actions as a result of such injury, progression, and/or exacerbation; (ii) loss of support, services, consortium, companionship, society, or affection, or damage to familial relations arising out of any personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life) to another person, and any progression and/or exacerbation of personal injury or bodily injury to another person, where such injury, progression, and/or exacerbation in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *Deepwater Horizon* Incident, or wrongful death and/or survival actions as a result of such personal or bodily injury; (iii) increased risk, possibility, or fear of suffering in the future from any disease, injury, illness, emotional or mental harm, condition, or death, in whole or in part arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *Deepwater Horizon* Incident; and/or (iv) medical screening and medical monitoring for undeveloped, unmanifested, and/or undiagnosed conditions that may in whole or in part arise out of, result from, or relate to, directly or indirectly, the *Deepwater Horizon* Incident.

o.  "Moratoria" shall mean any federal or state governmental action or inaction directed at offshore oil or gas industry activity, including shallow water and deepwater operations, that occurred on or after April 20, 2010, including, but not limited to, the federal moratoria on offshore permitting and drilling activities, effective date May 30, 2010 (NTL No. 2010-N04), the increased safety measures issued by the U.S. Department of the Interior, effective date June 8, 2010 (NTL No. 2010-N05), the information requirements issued by the U.S. Department of the Interior, effective date June 18, 2010 (NTL No. 2010-N06), the federal deepwater drilling suspensions on or about July 12, 2010, and any other new or revised safety rules, regulations, inspections, permitting practices, restrictions, or suspensions.

p.  "Released Claims" shall mean any and all claims or causes of action, whether in law or in equity, known or unknown, direct or indirect, past, present, or future, arising from or related to the *Deepwater Horizon* Incident, or arising from or related to Moratoria.  "Released Claims" includes but is not limited to (i) Economic Claims; (ii) CSSP Claims; (iii) Medical Claims; (iv) claims filed with any BP

-3-

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

Entity, the Gulf Coast Claims Facility, the federal Oil Spill Liability Trust Fund, any state or local spill fund, and any other claims facility or fund; (v) any claims that were or could have been asserted by Claimant in MDL 2179, MDL 2185, or both; and (vi) any claims, including without limitation claims for economic damages, punitive damages, exemplary damages, liens, injunctive relief, or other liabilities, that were or could have been asserted by Claimant in any proceeding. For the avoidance of doubt, "Released Claims" includes any and all such claims or causes of action regardless of the legal or equitable theory or nature under which they are based or advanced including (but not limited to) legal and/or equitable theories under any federal, state, local, tribal, administrative, or international law, and including (without limitation) statutory law, codal law, regulation, common law, or equity, and whether based in maritime law, strict liability, negligence, gross negligence, punitive damages, nuisance, trespass, or all other legal and equitable theories, whether existing now or arising in the future, arising from or in any way relating to the *Deepwater Horizon* Incident, or arising from or related to Moratoria. Notwithstanding the foregoing, "Released Claims" shall not include claims for punitive or exemplary damages against Transocean Inc., Transocean Holdings LLC, Transocean Ltd., Transocean Deepwater Inc., Transocean Offshore Deepwater Drilling Inc., Triton Asset Leasing GmbH, Halliburton Energy Services Inc., Halliburton Company, and Sperry Drilling Services f/k/a Sperry Sun Drilling Services.

q. "Released Parties" shall mean anyone who is or could be responsible or liable in any way for the *Deepwater Horizon* Incident, Moratoria, or any damages related thereto, including (but not limited to) those liable for the Released Claims, whether a natural, legal, or juridical person or entity or a government entity, including but not limited to (i) the BP Entities; (ii) contractors and subcontractors of the BP Entities; (iii) the parties listed on Attachment A hereto and any related parties indemnified by any BP Entity with respect to the *Deepwater Horizon* Incident and/or Moratoria; (iv) the Deepwater Horizon Oil Spill Trust dated August 6, 2010; (v) the federal Oil Spill Liability Trust Fund and any state or local fund; and (vi) for each of the foregoing, their respective Affiliates, corporate parents, subsidiaries, predecessors, successors, indemnitors, subrogees, assigns, officers, directors, employees, agents, representatives, trustees, insurers, reinsurers, heirs, beneficiaries, estates, executors, administrators, receivers, conservators, and personal representatives.

r. The verb "releases," "released," and its cognate forms shall mean all forms of acts or deeds to release, acquit, forever discharge, and covenant not to sue on any sort of claim.

2. In consideration of the payment of a total of **$25,000,000** from BPXP, to be paid in portions in accordance with the payment schedule set forth in the table below, and any previous payments Claimant has received in respect of Released Claims, Claimant hereby releases and covenants not to sue BPXP, all other BP Entities, and all other Released Parties from and for any and all Released Claims that Claimant may have or purport to have.

-4-

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

| Date | Payment Amount |
|------|----------------|
| October 1, 2016 | $5,000,000 |
| October 1, 2017 | $5,000,000 |
| October 1, 2018 | $5,000,000 |
| October 1, 2019 | $5,000,000 |
| October 1, 2020 | $5,000,000 |

3. Claimant agrees and understands that the consideration granted in Paragraph 2 above constitutes full, complete, sufficient, and total satisfaction of all Released Claims against all Released Parties.

4. Claimant shall not assert against any Released Party any Released Claim, whether known or unknown, whether present or future, whether direct or indirect, and whether legal or equitable, arising from or in any way relating to the *Deepwater Horizon* Incident or arising from or in any way relating to Moratoria.

5. By executing this Release Agreement, Claimant warrants and understands that it is forever giving up and discharging, without any right of legal recourse whatsoever, any and all rights it has or may have to the Released Claims against the Released Parties. Claimant agrees that Claimant, and all other natural persons or entities claiming by, through or on behalf of Claimant, including Claimant's Related Parties, will forever be barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any judicial, arbitral, or regulatory action against the BP Entities and/or any other Released Parties with respect to the Released Claims.

6. Claimant further warrants and understands that it is forever giving up and discharging any rights it may have as to any costs, damages, causes of action, claims, or other relief (including attorneys' fees) arising from or related to the *Deepwater Horizon* Incident, or arising from or in any way relating to Moratoria, even if Claimant is not currently aware of such costs or damages and even if such costs or damages arise in the future (e.g., additional oil impacts) or do not manifest themselves until some future date. Claimant expressly waives and releases with prejudice, and shall be deemed to have released and waived with prejudice, any and all rights that it may have under any law, codal law, statute, regulation, adjudication, quasi-adjudication, decision, administrative decision, common law principle, or other source of legal, equitable, regulatory, or other authority, that would otherwise limit the effect of this Release Agreement to those claims or matters actually known or suspected to exist at the time of execution of the Release Agreement. CLAIMANT ACKNOWLEDGES THAT THIS CERTIFICATION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.

7. To the extent that Claimant has retained, engaged, employed, or otherwise utilized a private attorney, accountant, expert, or other service provider to represent or otherwise assist

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

Claimant in connection with a Released Claim, Claimant acknowledges and agrees that Claimant, and not the Released Parties, is solely responsible for any attorneys' fees and costs, accountants' fees and costs, experts' fees and costs, and other service providers' fees and costs. Claimant and Claimant's counsel hereby acknowledge and agree that the payment to be paid to Claimant pursuant to Paragraph 2 includes monies that fully and finally satisfy any and all fees and costs (including as to attorneys, accountants, experts, and other service providers) in respect to representation of or assistance to Claimant by any counsel, accountant, expert, or other service provider, whether current or former, including but not limited to any fees and costs asserted by lien or privilege, in connection with Released Claims and the rights of such counsel, accountant, expert, or other service provider to them that are being released by the Release Agreement.

8.  If Claimant commences, files, initiates, or institutes any new action or other proceeding for any Released Claim against any Released Party in any federal or state court, arbitral tribunal, or administrative or other forum, (a) such action or other proceeding shall be dismissed with prejudice and at Claimant's cost; provided, however, before any costs may be assessed, Claimant shall be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice; and (b) the respective Released Party shall be entitled to recover any and all related costs and expenses (including attorneys' fees) from any Claimant in violation or breach of its obligations under this Release Agreement.

9.  By executing this Release Agreement, Claimant acknowledges that it understands it has the right to consult an attorney of its choosing prior to accepting any settlement payment or signing any release of legal rights and warrants that it has done so to its satisfaction prior to execution of this Release Agreement.

10. By executing this Release Agreement, Claimant warrants that it has read and understood the terms of the Release Agreement and that it executes the Release Agreement voluntarily and without being pressured or influenced by, or relying on, any statement or representation made by any person acting on behalf of any BP Entity or other Released Party.

11. In consideration of the benefits provided under this Release Agreement, all Released Claims by or on behalf of Claimant against any and all Released Parties shall be dismissed with prejudice in any lawsuit in which Claimant is a party. Within ten (10) days of the date the order approving this Release Agreement (as contemplated in the preface hereof) becomes final and non-appealable, Claimant shall file or cause to be filed a notice of dismissal with prejudice of any and all litigation concerning any Released Claims filed by or on behalf of Claimant against the BP Entities or any other of the Released Parties, in the form specified in Attachment B. Also within ten (10) days of the date the order approving this Release Agreement (as contemplated in the preface hereof) becomes final and non-appealable, Claimant shall file or cause to be filed a notice of withdrawal with prejudice of all pending CSSP Claims, Medical Claims, and claims filed with any BP Entity, the Gulf Coast Claims Facility, the federal Oil Spill Liability Trust Fund, any state or local spill fund, and any other claims facility or fund, by or on behalf of Claimant (if any). Claimant also will withdraw from any existing class action and will not join any new class actions

-6-

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

or similar procedural devices concerning the Released Claims. Notwithstanding any confidentiality obligations, the BP Entities will not object to the Trustee's seeking approval from the Bankruptcy Court for the payment of fees and expenses related to the matters addressed in this Paragraph, provided however that no such payment may be sought (whether directly or indirectly) from any BP Entity or any party described in Paragraph 1.q.iii.

12. As this Release Agreement is fully and completely resolving the Released Claims against the Released Parties, the BP Entities are hereby subrogated to any and all rights that Claimant or any of Claimant's Related Parties have for Released Claims against the Released Parties. This Release Agreement is not intended to prevent any BP Entity from exercising its rights of contribution, subrogation, or indemnity under OPA or any other law. Notwithstanding the foregoing, the BP Entities agree not to assert any claims against Claimant related to any matters herein and agree not to sue Claimant related to any matters herein, except for purposes of seeking to enforce this Release Agreement.

13. The payment to Claimant is made without any admission of liability or wrongdoing by BPXP, any other BP Entity, or any other Released Party, and is made purely by way of compromise and settlement.

14. The United States District Court for the Eastern District of Louisiana will retain jurisdiction over this Release Agreement for the purposes of enforcement of the Release Agreement and any dispute(s) arising thereunder.

15. Any and all disputes, cases, or controversies concerning this Release Agreement, including without limitation disputes concerning the interpretation or enforceability of this Release Agreement, shall be filed (a) in the United States District Court for the Eastern District of Louisiana accompanied by a legal request made on behalf of any complainant party (whether one or more of the Released Parties, the Claimant, any of the Claimant's Related Parties, or otherwise) for such dispute to be made part of MDL 2179, or (b) if, but only if, MDL 2179 has been terminated by the time any dispute concerning this Release Agreement is filed, in any United States District Court with venue. No action(s) concerning this Release Agreement shall be filed in any state court. Claimant and the Released Parties agree not to contest the existence of federal jurisdiction in MDL 2179 (or, if, but only if, MDL 2179 has been terminated by the time any dispute concerning this Release Agreement is filed, a United States District Court with venue).

16. This Release Agreement constitutes the final, complete, and exclusive agreement and understanding between BPXP and Claimant and supersedes any and all other agreements, written or oral, between any BP Entity and Claimant with respect to such subject matter of this Release Agreement.

17. Claimant shall not make any public statement disparaging any BP Entity with respect to this Release Agreement or the matters addressed herein.

18. The BP Entities shall withdraw all claims asserted in ATP's chapter 7 bankruptcy case.

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

19. Payment shall be made according to the following instructions:

Tax ID (SSN or EIN):                    76-0362774

W-9 Form Attached

Payment Method (Check or Bank
Wire):                                  Wire

Mailing Address (for Check):

   Mail To:

   Street Address:

   City/State/Zip Code:

Wire Transfer Instructions (for Bank Wire):

   Bank Name:                           Green Bank

   SWIFT/BIC Code (if applicable):

   Routing Transit Number:              ABA: 113024164

-8-

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

| | |
|---|---|
| Bank Street Address: | 4000 Greenbriar |
| Bank City/State/Zip Code | Houston, TX 77098 |
| Beneficiary Account Number: | 9604123618702 |
| Beneficiary Name: | Rodney Tow, Trustee for the Bankruptcy Estate of ATP Oil & Gas Corporation |

20. This Release Agreement shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties.

21. Claimant promises, agrees, acknowledges, represents, warrants, and covenants as follows: Claimant shall not assign or reassign, or attempt to assign or reassign, to any person or entity other than a BP Entity any rights or claims arising from or in any way related to the *Deepwater Horizon* Incident, or any rights or claims arising from or in any way related to Moratoria. Any such assignment or reassignment, or attempt to assign or reassign, to any natural person or entity other than a BP Entity shall be void, invalid, and of no force and effect.

22. Claimant represents and warrants that Claimant's undersigned representative has authority to execute this Release Agreement on behalf of Claimant, and undersigned counsel hereby states that he or she verifies and is of the opinion that Claimant's undersigned representative has authority to execute this Release Agreement on behalf of Claimant and Claimant's Related Parties. Claimant further represents and warrants that (a) it is the sole and lawful owner of all right, title, and interest in and to every Released Claim and every matter that it purports to release; it is has not sold, assigned, transferred, hypothecated, pledged, or encumbered, or otherwise disposed of, in whole or in part, voluntarily or involuntarily, any Released Claim or any interest in such Released Claims; and (b) the Trustee has not made an insurance claim or received any insurance proceeds for any business or property claim arising from or in any way relating to any Released Claim.

-9-

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

**CLAIMANT ACKNOWLEDGES THAT THIS CERTIFICATION COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS CERTIFICATION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

23. If Claimant is a natural person who has a living spouse, such spouse must personally sign below. If Claimant is a sole proprietorship and the proprietor thereof has a living spouse, such spouse of such proprietor must personally sign below. If Claimant is jointly owned by natural persons married to one another, both such spouses must personally sign below. As to each signature referenced in this paragraph, an electronic signature is insufficient. By signing below, each spouse represents and warrants that such spouse intends to, and does, release all Released Claims, including for the avoidance of doubt any marital interest in any Released Claim.

| | |
|---|---|
| Claimant: | ATP Oil & Gas Corporation |
| Claimant Signatory/Title (if applicable): | Trustee |
| Signed: | |
| Printed Signatory Name: | Rodney Tow, Trustee |
| Date: | April 19, 2016 |
| Law Firm Name: | Motley Rice, LLC |
| Signed: | |
| Printed Counsel Name: | Joseph F. Rice |
| Date: | April 19, 2016 |
| Spouse (if applicable): | |
| Signed: | |
| Printed Spouse Name: | |
| Date: | |
| **Related Parties** | |
| First Related Party: | |
| Related Party Signatory/Title: | |

-10-

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

Signed:

Printed Signatory Name:

Date:

**Second Related Party:**

Related Party Signatory/Title:

Signed:

Printed Signatory Name:

Date:

**Third Related Party:**

Related Party Signatory/Title:

Signed:

Printed Signatory Name:

Date:

Accepted by BPXP:

By: _____

Date: _____5/13/16_____

-11-

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

Attachment A

**Released Parties**

Airborne Support Inc.
Airborne Support International Inc.
Alaska Clean Seas, Inc.
Anadarko Exploration & Production LP
Anadarko E&P Company LP
Anadarko Petroleum Corporation
Art Catering, Inc.
Cameron Corporation
Cameron International Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation
Cameron International Corporation d/b/a/ Cameron Systems Corporation
Crowder Gulf Disaster Recovery
Court Supervised Settlement Program in MDL 2179
        and its Administrators, Employees, and Agents
Deepwater Horizon Oil Spill Trust, Trustees and Employees
Det Norske Veritas (DNV)
Dril-Quip, Inc.
DRC Emergency Services, Inc.
DRC Marine, LLC
Dynamic Aviation
Kenneth Feinberg
Feinberg Rozen LLP
Fluor Corporation
Gulf Coast Claims Facility, Administrators, Employees, and Agents
Halliburton Company
Halliburton Energy Services, Inc.
International Air Response
LLOG Exploration Offshore, L.L.C.
LLOG Bluewater, L.L.C.
LLOG Bluewater Holdings, L.L.C.
Lloyd's Syndicate 1036 and other Lloyd's Syndicates named as defendants in MDL 2179
Lynden Companies
Marine Spill Response Corporation
Mitsui & Co., Ltd.
Mitsui & Co. (U.S.A.), Inc.
Mitsui Oil Exploration Co., Ltd.
Ministry of Economy, Trade and Industry of the Government of Japan
M-I Drilling Fluids L.L.C.
M-I, LLC a/k/a M-I Swaco
MOEX Offshore 2007 LLC
MOEX USA Corporation

-12-

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

Moran Environmental Recovery
Nalco Company
NALCO Holding Company
National Response Corporation
O'Brien's Response Management
Oceaneering International, Inc.
Oil Spill Liability Trust Fund
Parsons Commercial Technology Group, Inc.
QBE Marine & Energy Syndicate 1036
QBE Underwriting Ltd.
Schlumberger, Ltd.
SEACOR Marine
SEACOR Holdings, Inc.
SEACOR Offshore LLC
Sperry Drilling Services f/k/a Sperry Sun Drilling Services
The Response Group, LLC
Tidewater Inc.
Tidewater Marine, LLC
Transocean Deepwater Inc.
Transocean Holdings LLC
Transocean Inc.
Transocean Ltd.
Transocean Offshore Deepwater Drilling Inc.
Triton Asset Leasing GmbH
Weatherford International, Inc.
Weatherford U.S. L.P.
Witt O'Brien's
Worley Catastrophe Services LLC
Worley Companies Inc.

OP/MP

*CONFIDENTIAL SETTLEMENT COMMUNICATION;*
*EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;*
*SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.*

**Attachment B**

**Form of Notice of Dismissal**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf of
Mexico, on April 20, 2010

This Document Relates to:

**ATP Oil & Gas Corporation**

Docket Number(s) 2:13-cv-01962
Short Form Joinder Number(s)

MDL No. 2179

SECTION J

JUDGE BARBIER

MAGISTRATE JUDGE SHUSHAN

<u>NOTICE OF VOLUNTARY DISMISSAL(S) WITH PREJUDICE</u>

COME NOW the below-listed Plaintiff(s), each by and through the undersigned counsel, pursuant to Rule 41(a)(l)(A)(i) of the Federal Rules of Civil Procedure and the Full and Final Release, Settlement, and Covenant Not to Sue entered into by the parties, and hereby gives notice of the voluntary dismissal with prejudice of all actions, claims, causes of action, and short-form joinders against all Defendants, including but not limited to the action(s) and short-form joinders listed below, and withdrawal from any class (whether putative or certified), except that this dismissal does not extend to claims by Plaintiff(s) for punitive or exemplary damages against Transocean Inc., Transocean Holdings LLC, Transocean Ltd., Transocean Deepwater Inc., Transocean Offshore Deepwater Drilling Inc., Triton Asset Leasing GmbH, Halliburton Energy Services Inc., Halliburton Company, and Sperry Drilling Services f/k/a Sperry Sun Drilling Services (if any).  Costs taxed as paid.

Case name(s) and docket number(s):

**ATP Oil & Gas Corporation**
**2:13-cv-01962**

Short Form Joinder number(s) and identifying information:

-14-

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

Respectfully submitted this 19th day of April, 2016.

/s/

Kevin R. Dean
MOTLEY RICE, LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Phone:  843-216-9000
Fax:  843-216-9450
kdean@motleyrice.com
ATTORNEY FOR PLAINTIFF

-15-

OP/MP

CONFIDENTIAL SETTLEMENT COMMUNICATION;
EXEMPT FROM FOIA AND STATE OPEN RECORDS ACTS;
SUBJECT TO CONFIDENTIALITY ORDER ISSUED JANUARY 13, 2016, PTO NO. 38, AND FRE 408.

## ADDENDUM — BANKRUPTCY

For purposes of the Full and Final Release, Settlement, and Covenant Not to Sue, and as a consequence of the Chapter 7 bankruptcy of ATP Oil & Gas Corporation ("ATP"), the following provisions shall apply:

Notwithstanding anything in the Release Agreement,

1. The definition of "Released Claims" in Paragraph 1.p does not include claims by ATP and/or the Trustee against former officers and directors of ATP that are pending as of the date of the Release Agreement in the civil action captioned *Rodney Tow, Trustee v. T. Paul Bulmahn et al.*, No. 15-cv-3141-SSV-SS, in the United States District Court for the Eastern District of Louisiana (such action, the "ATP D&O Action"; such claims, the "ATP D&O Claims");

2. Solely with regard to the ATP D&O Claims, the definition of "Released Parties" in Paragraph 1.q shall not include the defendants named in the ATP D&O Action as of the date of the Release Agreement (the "ATP D&O Defendants") or their insurers, indemnitors (except insofar as a BP Entity or a party described in Paragraph 1.q.iii is such an indemnitor), assigns, estates, executors, or personal representatives; and

3. With regard to Paragraph 8, Claimant is expressly not giving up or discharging any rights to costs, damages, causes of action, claims, or other relief based on ATP D&O Claims against any ATP D&O Defendant or such defendant's insurers, indemnitors (except insofar as a BP Entity or a party described in Paragraph 1.q.iii is such an indemnitor), assigns, estates, executors, or personal representatives.

4. The Settlement Agreement and Release Agreement shall not affect, impair, or diminish in any way the Trustee's ability to object to claims filed by the parties identified in Paragraph 1.q.iii unrelated to the Released Claims in the chapter 7 case of ATP Oil & Gas Corp.

BPXP                                Claimant: Rodney Tow, Trustee for ATP

Signed: _Maria Travis_              Signed: _____

Printed signatory name: _Maria Travis_    Printed signatory name: _Rodney Tow, Trustee_

-16-

OP/MP

| Form **W-9**<br>(Rev. January 2005)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | Give form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

Name (as shown on your income tax return)
**The Bankruptcy Estate of ATP Oil &Gas Corporation**

Business name, if different from above

Check appropriate box: ☐ Individual/ Sole proprietor   ☐ Corporation   ☑ Partnership   ☐ Other ▶ _____          ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
**2211 Rayford Road, Ste. 111-238**

City, state, and ZIP code
**Spring, Texas 77386**

Requester's name and address (optional)

List account number(s) here (optional)
**12-36187**

*Print or type — See Specific Instructions on page 2.*

---

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note: *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

| Social security number |
|---|
| ⎡ ⎤ ⎡ ⎤ – ⎡ ⎤ ⎡ ⎤ – ⎡ ⎤ ⎡ ⎤ ⎡ ⎤ ⎡ ⎤ |

**or**

| Employer identification number |
|---|
| 7 6 0 3 8 2 7 7 4 |

---

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

| Sign<br>Here | Signature of<br>U.S. person ▶ | Date ▶ 12/15/15 |
|---|---|---|

---

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

U.S. person. Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

Note. *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

For federal tax purposes you are considered a person if you are:

• An individual who is a citizen or resident of the United States,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

• Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

Foreign person. If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

Nonresident alien who becomes a resident alien. Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

Cat. No. 10231X          Form **W-9** (Rev. 1-2005)

Form W-9 (Rev. 1-2005)                                                                                      Page **2**

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments (after December 31, 2002). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

**Penalties**

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line. Check the appropriate box for your filing status (sole proprietor, corporation, etc.), then check the box for "Other" and enter "LLC" in the space provided.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

### Exempt From Backup Withholding

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

**Exempt payees.** Backup withholding is not required on any payments made to the following payees:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

Form W-9 (Rev. 1-2005)

Page **3**

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt recipients 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees; and payments for services paid by a Federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-owner LLC that is disregarded as an entity separate from its owner (see *Limited liability company (LLC)* on page 2), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.socialsecurity.gov/online/ss-5.pdf.* You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses/* and clicking on Employer ID Numbers under Related Topics. You can get Forms W-7 and SS-4 from the IRS by visiting *www.irs.gov* or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

Form W-9 (Rev. 1-2005)    Page **4**

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if Items 1, 4, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see *Exempt From Backup Withholding* on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

**1.** Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

**2.** Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out Item 2 in the certification before signing the form.

**3.** Real estate transactions. You must sign the certification. You may cross out Item 2 of the certification.

**4.** Other payments. You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5.** Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions. You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or single-owner LLC | The owner [3] |
| **For this type of account:** | **Give name and EIN of:** |
| 6. Sole proprietorship or single-owner LLC | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the second name line. You may use either your SSN or EIN (if you have one). If you are a sole proprietor, IRS encourages you to use your SSN.

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA, or Archer MSA or HSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.