# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 7** |
| | § | |
| **ATP OIL & GAS CORPORATION,** | § | **Case No. 12-36187** |
| | § | |
| **Debtor.** | § | |

**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER APPROVING STOCK SALE AND PURCHASE AGREEMENT AND THE TRUSTEE'S SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 (b), (f), AND (m), AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002 AND 6004 AND GRANTING RELATED RELIEF**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE MARIVIN ISGUR:

Rodney D. Tow, the chapter 7 Trustee (the "Trustee") of ATP Oil & Gas Corporation ("ATP" or the "Debtor") files this motion (the "Motion"), pursuant to sections 105(a) and 363 of chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an Order authorizing and approving of a Stock Sale and

Purchase Agreement (the "<u>Agreement</u>"), in the form attached hereto as <u>Exhibit A</u>, and the transaction contemplated therein, free and clear of all liens, encumbrances, by and between the Trustee as Seller and ATPEAC, LLC (the "<u>Buyer</u>") and granting related relief, and respectfully states as follows.

## JURISDICTION AND VENUE

1.     This Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States Bankruptcy Court for the Southern District of Texas.

2.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). The Trustee consents to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002 and 6004, and Local Rule 9013-1.

## FACTUAL BACKGROUND[1]

5.     On August 17, 2012 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "<u>Bankruptcy Court</u>").

---

[1]     In support of the Motion, the Trustee hereby summarizes certain orders entered by the Court during the pendency of the Debtor's prior chapter 11 case.  The Trustee reserves his rights to challenge the findings and rulings in these orders and nothing set forth herein should be considered an admission by the Trustee of the findings or a consent to the rulings.

**A.      DIP Financing**

6.      On September 20, 2012, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 107, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay and (6) Authorizing the Debtor to File the Fee Letter Under Seal* [ECF No. 440] (the "Final DIP Order").

7.      The Final DIP Order authorized a loan from Credit Suisse AG, as Administrative Agent and Collateral Agent (in both capacities, the "DIP Agent"), for and on behalf of itself and the other lenders that are parties thereto from time to time (collectively, with the DIP Agent, the "DIP Lenders").  Final DIP Order, ¶ (i) at pp.1-2.

8.      The Final DIP Order further provides that, "[u]pon entry of the Interim Order, the DIP Agent [and], DIP Lenders … were granted (and such grant is hereby ratified, confirmed and approved on a final basis), pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Cases (collectively, the "DIP Superpriority Claim") for all DIP Obligations."  Final DIP Order, ¶ 8 at pp. 23-24.

9.      As of the date hereof, the DIP Superpriority Claim is outstanding in an amount in excess of $500 million.

**B.      Bennu Sale**

10.      On October 17, 2013, the Court entered the *Final Order (A) Approving the Sale of Certain Debtor's Assets Free and Clear of Claims and Liens and (B) Approving the Assumption and Assignment of Contracts and Leases* [ECF No. 2706] (the "Sale Order") that, among other things, approved the sale (the "Bennu 363 Sale") of substantially all of the Debtor's operating properties and other assets pursuant to the terms and conditions of the Asset Purchase Agreement

3

(collectively with all exhibits and documents and agreements ancillary thereto (each as modified by the Sale Order), the "Bennu Purchase Agreement"), dated as of June 20, 2013, and executed by and between the Debtor, Credit Suisse AG, exclusively in its capacity as administrative agent and collateral agent under the DIP Credit Agreement (the "DIP Agent") and, upon the joinder contemplated by Section 5.12 of the Purchase Agreement, Bennu Oil & Gas, LLC, which was designated by the DIP Agent as purchaser.

11.    With respect to the Debtor's subsidiaries, the Bennu 363 Sale includes the sale of all "Purchased Equity" as such term is defined in the Bennu Purchase Agreement.   "Purchased Equity" means the shares of capital stock or other equity interests of each of ATP Oil & Gas (Netherlands) B.V., a Dutch private company with limited liability and ATP Titan Holdco, LLC, a Delaware limited liability company.

12.    Under the Bennu Purchase Agreement, term "Excluded Assets" specifically identifies certain categories of assets that are excluded from the Bennu 363 Sale.  While none of ATP Energy, Inc., ATP Holdco, ATP IP-GP, LLC or ATP IP-LP, LLC are listed as "Excluded Assets", the term "Excluded Assets" is not an all-inclusive term.  As noted below, ATP Energy, Inc. and ATP Holdco. are specifically listed on the Debtor's Conversion Schedules which were filed in connection with the conversion of the case which occurred after the Bennu Sale.

## C.    Conversion to Chapter 7

13.    On June 26, 2014 (the "Conversion Date"), the Court entered an Order [ECF No. 3163] converting the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, and the United States Trustee appointed the Trustee.

14.     On December 1, 2014, the Trustee filed on the docket, as a courtesy to the Debtor, the Debtor's Conversion Schedules [ECF No. 3404].[2]

15.     On Schedule B-13 of the Conversion Schedules, the Debtor listed: ATP Energy, Inc. and ATP Holdco.

## RELIEF REQUESTED

16.     The Trustee requests entry of an order, substantially in the form attached hereto, authorizing and approving the Agreement.   The Agreement provides for the following:[3]

- A payment from the Buyer to the ATP estate in the amount of $100,000 (the "Closing Payment").

- Sale of 100% of the issued and outstanding stock of ATP Energy, Inc. and ATP Holdco, and the Debtor's "Remaining Assets" which includes (i) claims of the Debtor (as the term "claim" in defined in section 101(5) of the Bankruptcy Code), (ii) receivables of the Debtor , and (iii) tax refunds, tax rebates, overpayments, tax attributes or any other payment that is due, may be due or will become due to or with respect to the Debtor and the Subsidiary Corporations from the Internal Revenue Service and all federal, state and local taxing authorities of the United States of America.

- The "Remaining Assets" exclude any cash of the Seller, all rights and payments owed under "BP Settlement" as such term is defined in that certain *Order Approving Chapter 7 Trustee's Motion Under 11 U.S.C. §§ 105(a) and 363, Bankruptcy Rules 6004 and 9019 and Local Rule 9013-1 For Approval of Settlement With The BP Entities* [ECF 3800], and the Closing Payment.

- An agreement by the Trustee to designate ATP Energy as the "designated agent" provided under Rev. Proc. 2015-26 with respect to the ATP Oil & Gas consolidated group for tax consolidated return filings 2020 and prior years; provided that (a) the Buyer agrees not to make any filings with Internal Revenue Service, state and/or local taxing authorities related to the Debtor or the Subsidiary Corporations until after March 31, 2021, unless the Debtor's Bankruptcy Case is closed prior to this date, in which case the day after the Bankruptcy Case is closed, and (b) the Buyer agrees to indemnify and hold harmless the Seller and the Trustee from and against any and all losses, damages, claims, liabilities, judgments, settlements, awards,

---

[2]     As noted in the cover letter filed with the Conversion Schedules, the Trustee had no involvement in the preparation of the Conversion Schedules.

[3]     The terms below are only meant to be a summary of the terms of the Agreement and reference is made to the Agreement for the complete terms.

5

charges, fees, interest, costs and expenses relating to or arising out of (i) any increase in U.S. federal, state or local taxes paid or payable by the Seller, and (ii) any cost or expense borne, or required to be borne, by the Seller and/or the Trustee in connection with actions taken by the Buyer pursuant to this Agreement.

## BASIS FOR RELIEF

**A.      The Sale of the Assets Should be Approved**

17.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Although section 363 of the Bankruptcy Code does not  set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, "for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). Whether a transaction has a sufficient articulated business justification depends on the facts of the case.  *Id.*

18.     A bankruptcy court should consider "all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders alike." *Id*.  Relevant factors may include: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition on the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value." *Id.*

19.     These factors weigh in favor of approving the sale:

- The Proportionate Value of the Asset to the Estate As A Whole:  The Trustee is attempting to conclude the adminstraton of the Debtor's estate and he should try to monetize the remaining assets which includes the remnant assets of the Debtor's estate.  Overall, the assets that are the subject to this Agreement are

small compared to the size of the Debtor's estate.

- The Amount of Elapsed Time Since the Filing:  The Debtor has been in bankruptcy for eight years.

- The Likelihood That A Plan of Reorganization Will Be Proposed and Confirmed in the Near Future:  This chapter 7 case was converted from a chapter 11 case.  It is not plausible for a chapter 11 plan to be proposed and confirmed.

- The Effect of the Proposed Disposition On the Future Plan of Reorganization: As noted above, this case is a chapter 7 case and there will not be a plan of reorganization.

- The Amount of Proceeds to Be Obtained From The Sale Versus Appraised Values of the Property:  There is no apprized value of the property that is the subject to the sale.   The Trustee believes the sale price is fair and reasonable under the circumstances.

- Whether the Asset Is Decreasing or Increasing In Value:   The Trustee believes that if the Trustee cannot consummate the sale of this assets promptly, then the Buyer will not proceed with the sale.

20.   Once a trustee has articulated a valid business justification, "a presumption [arises] that the officers and directors of a corporation, in making a business decision for that corporation, act only after they have been appropriately informed and after they have honestly determined that the action to be taken is in the best interest of the corporation." *In re Performance Nutrition, Inc.*, 239 B.R. 93, 111 (Bankr. N.D. Tex. 1999).  When applying the "business judgment" standard, courts show deference to a debtor's business decisions. *See, e.g., In re Tom's Foods Inc.*, 2005 WL 3022022, *2 (Bankr. M.D. Ga. 2005) ("courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence"); *Atkins v. Hibernia Corp.*, 182 F.3d 320, 324 (5th Cir. 1999); *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Group, Ltd.)*, No. Civ. A. 3:04-CV-2411-M, 2009 WL 440379, *2 (N.D. Tex. Feb. 23, 2009) ("great judicial deference is given to [the debtor in possession's] exercise of business judgment").

21.    The Trustee has determined that immediate approval of the Sale is the best way to maximize the value of the Debtor's estate for the benefit of all constituencies.  The Trustee does not have a need for the Assets to wind down the affairs of the Debtor.

22.    Based on the foregoing, the Trustee has determined in its sound business judgment that the sale of the Assets on the terms and conditions set forth in the Agreement are fair and reasonable and in the best interest of the Debtor's estate, its creditors, and all parties in interest in the Debtor's Chapter 7 case.

**B.    Sale Free and Clear of Liens, Claims, Encumbrances, and Interests**

23.    Under section 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of any lien, claim, or interest in such property if, among other things:

(i)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(ii)    such entity consents;

(iii)    such interest is a lien and the price at which the property is sold is greater than all liens on such property;

(iv)    such interest is in bona fide dispute; or

(v)    such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

24.    To facilitate the sale of the Assets, the Trustee requires authorization to sell them free and clear of any and all liens, claims, encumbrances, or interests, with any such liens, claims, encumbrances, or interests to attach to the net proceeds of the sale with the same rights and priorities therein.  Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements is sufficient to permit the sale to be free and clear of all liens, claims, encumbrances, and interests (each, an "Interest", and collectively, the "Interests").

8

25.     Here, a "free and clear" sale is warranted because, because sections 363(f)(1) and (5) are satisfied.  The Trustee contends that if there is anyone with Lien or Claim against the Assets, then applicable non-bankruptcy law permits sale of such property free and clear of such any monetary Liens and Claims asserted against it.   Also, the Trustee contends that such entities could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

**C.     Good Faith Purchaser**

26.     Section 363(m) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

27.     The terms and conditions of the Sale were negotiated by the Trustee and the Buyer are at arm's length and in good faith.  The Buyer does not hold any interest in the Debtor and is not otherwise affiliated with the Debtor or its officers or directors.  Moreover, the Buyer is not an "insider" of the Seller within meaning of section 101(31) of the Bankruptcy Code, and is not controlled by, or acting on behalf of, any insider of the Seller.  *See, e.g., In re After Six, Inc.*, 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993) (good faith found where officers, directors and employees of debtor had no apparent connection to purchasers).  The Trustee will present evidence at the Sale Hearing to prove the foregoing.  Accordingly, the Trustee requests that the Court determine that the Buyer to be acting in good faith and entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

## NOTICE

28.    Notice of this Motion has been provided to all parties on the Master Service List in compliance with the Order Establishing Notice Procedures [ECF. No. 3189]. The Trustee submits that no other or further notice need be provided.

## NO PRIOR REQUEST

29.    No prior request for the relief sought herein has been made to this or any other court.

## WAIVER OF BANKRUPTCY RULE 6004

30.    The Trustee requests that any order approving this Motion be effective immediately, thereby waiving the 14-day stay period imposed by Bankruptcy Rule 6004(h). This waiver of the 14-day stay period is necessary for the settlement to be implemented as expeditiously as possible and within the time frames contemplated by the Settlement Agreement. The Trustee hereby requests that the Bankruptcy Court eliminate the 14-day stay period imposed by Bankruptcy Rule 6004(h).

[*Remainder of Page Intentionally Left Blank*]

## **<u>CONCLUSION</u>**

WHEREFORE, the Trustee respectfully request that the Bankruptcy Court enter an order in the form attached hereto (i) approving the Agreement, (ii) authorizing the Trustee to such actions and execute and deliver such documents necessary to consummate the Agreement, and (ii) granting such other and further relief to which the Trustee may be entitled.

Dated:  September 4, 2020

Respectfully submitted,

*/s/ Charles M. Rubio*
PARKINS LEE & RUBIO LLP
Charles M. Rubio P.C.
TX Bar No. 24083768
Pennzoil Place
700 Milam Street, Suite 1300
Houston, Texas 77002
Email: crubio@parkinslee.com

*PROPOSED COUNSEL TO*
*RODNEY D. TOW, CHAPTER 7 TRUSTEE*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 4, 2020, a true and correct copy of the foregoing document was served (i) by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties registered to receive such service; (ii) to the parties listed on the attached Master Service List by email pursuant to the Order Establishing Notice Procedures [Dkt. 3189] and (iii) to counsel for the DIP Agent.

*/s/ Charles M. Rubio*
Charles M. Rubio