EXHIBIT A

Execution Version

# STOCK SALE AND PURCHASE AGREEMENT

This STOCK SALE AND PURCHASE AGREEMENT (this "Agreement") is made on this 2nd day of September, 2020, by and between Rodney D. Tow, solely in his capacity as the Chapter 7 trustee duly appointed in the bankruptcy case of ATP Oil & Gas Corporation (the "Debtor"), pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), under Case No. 12-36187 (the "Bankruptcy Case")(the "Seller"), and ATPEAC, LLC, or its assignee (the "Buyer"). The Seller and the Buyer are also referred to herein individually as a "Party" and collectively as the "Parties."

WHEREAS, the Debtor owns 100% of the outstanding and issued stock of the following entities: ATP Energy, Inc. and ATP Holdco, LLC. The Debtor may own outstanding and issued stock in other entities including ATP IP-GP, LLC and ATP IP-LP, LLC (collectively with ATP Holdco, LLC, but excluding ATP Energy, Inc., and only to the extent owned by the Debtor, the "Subsidiary Corporations"); and

WHEREAS, the Seller has agreed to sell and the Buyer has agreed to buy 100% of the outstanding and issued stock (the "Stock") of ATP Energy, Inc. ("ATP Energy") and the Subsidiary Corporations; and

WHEREAS, the Seller has agreed to sell and the Buyer has agreed to buy the Remaining Assets (as defined in paragraph 3 below) of the Debtor; and

WHEREAS, the Parties desire to set forth the terms and conditions governing the purchase and sale of the Stock of ATP Energy and the Subsidiary Corporations and Remaining Assets (as defined in paragraph 3 below) as set forth herein, subject to approval by the Bankruptcy Court.

NOW, THEREFORE, for and in consideration of the premises, the mutual agreements and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. <u>Agreement to Sell and Purchase the Stock and Remaining Assets</u>. In consideration of, and in express reliance upon, the representations and warranties of the Seller and the Buyer set forth in this Agreement, the Seller hereby agrees to irrevocably sell, transfer and convey all right, title and interest in the Stock of ATP Energy and the Subsidiary Corporations and the Remaining Assets (as defined in paragraph 3 below) of the Debtor to the Buyer free and clear of all liens, claims and encumbrances pursuant to sections 363 (b) and (f) of the Bankruptcy Code, and the Buyer hereby agrees to pay Seller at the Closing (as defined in paragraph 4 below) the sum of $100,000.00 (the "Closing Payment").

2. <u>Bankruptcy Court Approval</u>. The Bankruptcy Court order approving of this Agreement and the proposed transactions contemplated by this Agreement (the "Order") shall find that (i) the sale of the Stock of ATP Energy and the Subsidiary Corporations and the Remaining Assets (as defined in paragraph 3 below) of the Debtor to the Buyer will be free and clear of all liens, claims and encumbrances to the fullest extent permitted pursuant to sections 363 (b) and (f) of the Bankruptcy Code, (ii) the Buyer is a good-faith purchaser within the meaning of section 363 (m) of the Bankruptcy Code, and (iii) the Closing Payment constitutes good and fair consideration.

3.      Remaining Assets. "Remaining Assets" as used herein shall constitute any and all (i) claims of the Debtor (as the term "claim" in defined in section 101(5) of the Bankruptcy Code), (ii) receivables of the Debtor, and (iii) tax refunds, tax rebates, overpayments, tax attributes or any other payment that is due, may be due or will become due to or with respect to the Debtor and the Subsidiary Corporations from the Internal Revenue Service ("IRS") and all federal, state and local taxing authorities of the United States of America.  The "Remaining Assets" expressly exclude (w) any cash of the Seller, (x) the Debtor's estate's rights and claims under that certain BP Settlement as such term is defined in that certain *Order Approving Chapter 7 Trustee's Motion Under 11 U.S.C. §§ 105(a) and 363, Bankruptcy Rules 6004 and 9019 and Local Rule 9013-1 For Approval of Settlement With The BP Entities* [ECF 3800] including the remaining payments due thereunder, (y) the Closing Payment and (z) the Debtor's equity interests in any foreign subsidiaries.

4.      Closing and Closing Deliverables.

(a)      The closing of the purchase and sale of the Stock of ATP Energy and the Subsidiary Corporations and the Remaining Assets of the Debtor under this Agreement shall occur no later than five (5) business days after the entry of a final Order of the Bankruptcy Court approving of this Agreement (the "Closing").   The Buyer can waive the requirement of a final Order of the Bankruptcy Court as a condition to Closing in its sole and absolute discretion.

(b)      At the Closing, the Buyer will pay in good funds the Closing Payment to Seller, and Seller will deliver to Buyer (i) the appropriate documentation to sell, convey and transfer the Stock of ATP Energy and the Subsidiary Corporations and the Remaining Assets of the Debtor to Buyer as required herein including issuing a new certificate representing the Stock of ATP Energy and the Subsidiary Corporations (the Trustee is not in possession of the original stock certificates) to be registered in the name of the Buyer and a Bill of Sale in the form attached hereto as Exhibit A,

(c)      At the Closing, the Seller will deliver an original executed IRS form, a copy of which is attached hereto as Exhibit B, to designate ATP Energy as the "designated agent" provided under Rev. Proc. 2015-26 with respect to the ATP Oil & Gas consolidated group for tax consolidated return filings 2020 and prior years; provided that, the Buyer agrees not to make any filings with Internal Revenue Service, state and/or local taxing authorities related to the Debtor or the Subsidiary Corporations until after March 31, 2021, unless the Debtor's Bankruptcy Case is closed prior to this date, in which case the day after the Bankruptcy Case is closed; provided further that, the any actions taken by the Buyer in connection with the foregoing is subject to the Indemnification in paragraph 5 below

5.      Indemnification.  The Buyer shall indemnify and hold harmless the Seller and the Trustee from and against any and all losses, damages, claims, liabilities, judgments, settlements, awards, charges, fees, interest, costs and expenses relating to or arising out of (i) any increase in U.S. federal, state or local taxes paid or payable by the

Seller as a result of actions taken by the Buyer in connection with this Agreement from and after the date this Agreement has been approved of by the Bankruptcy Court, and (ii) any cost or expense borne, or required to be borne, by the Seller and/or the Trustee in connection with actions taken by the Buyer pursuant to this Agreement from and after the date this Agreement has been approved of by the Bankruptcy Court.

6. <u>Representations and Warranties of Seller</u>.  The Seller represents and warrants to the Buyer as follows:

(a) The Seller is the duly appointed Chapter 7 trustee for the Debtor and, in reliance upon the Schedules [Docket No. 516], the Amended and Restated Schedules [Docket No. 750], and the Conversion Schedules [Docket No. 3404], owns and controls the Stock of ATP Energy, Inc. and ATP Holdco, LLC and he may own and control may own outstanding and issued stock in other subsidiaries of ATP oil & Gas Corporation including ATP IP-GP, LLC and ATP IP-LP, LLC. The Seller has the requisite power and authority to execute and deliver this Agreement and to perform his obligations under this Agreement.

(b) No person has any right or other claim against Seller for any commission, fee or other compensation as a finder or broker in connection with the transaction contemplated by this Agreement.

(c) The Stock of ATP Energy and the Subsidiary Corporations and the Remaining Assets of the Debtor are not subject to any liabilities or debt of any nature (other than such liabilities and debt, if any, that that are being sold free and clear pursuant to section 363(b) and (f) of the Bankruptcy Code) and the sale of the Stock of ATP Energy and the Subsidiary Corporations and the Remaining Assets of the Debtor from the Seller to the Buyer will be free and clear of all liens, claims and encumbrances to fullest extent permitted pursuant to sections 363(b) and (f) of the Bankruptcy Code.

(d) Regarding ATP Energy and the Subsidiary Corporations, the Seller will not (i) make, change or revoke any tax election, (ii) change any annual tax accounting period, (iii) enter into any agreement with respect to taxes or apply for any tax ruling, (iv) file any amended tax return, (v) settle or compromise any tax liability or claim for a tax refund, (vi) surrender any right to claim a refund for taxes, (vii) incur any material tax liability outside of the ordinary course of business, (viii) consent to an extension of the statute of limitations applicable to any tax claim or assessment (other than pursuant to the extensions of time to file tax returns obtained in the ordinary course of business) or (ix) change (or request any governmental unit (as defined in section 101(27) of the Bankruptcy Code) to change any aspect of its method of accounting for tax purposes, unless agreed to by Buyer in Buyer's sole discretion.

(e) To the Trustee's knowledge, the execution, delivery and performance by Seller of this Agreement and the transaction contemplated hereby do not and will not: (i) conflict with or result in, with or without the giving of notice

-3-

or lapse of time or both, any violation of or constitute a breach or default, or give rise to any right of acceleration, payment, amendment, cancellation or termination, under (x) the articles of incorporation, bylaws or other organizational documents of the Debtor and the Subsidiary Corporation, or (y) any law or order pertaining to the Stock or to which the Seller and/or the Subsidiary Corporations is otherwise subject; or (ii) result in the creation of any interests in or upon any of the Stock of ATP Energy or the Subsidiary Corporations.

(f) No order, consent, approval, waiver or authorization of any governmental entity, except by the Bankruptcy Court, is required in connection with the execution, delivery and performance by Seller of this Agreement and the other documents and instruments to be executed and delivered by Seller pursuant hereto and the transaction contemplated hereby.

(g) In reliance upon the Schedules [Docket No. 516], the Amended and Restated Schedules [Docket No. 750], and the Conversion Schedules [Docket No. 3404], the Seller owns and has good and marketable title to the Stock of ATP Energy, Inc. and ATP Holdco, LLC and the Remaining Assets of the Debtor and has the complete right and power to transfer the Stock of ATP Energy, Inc. and ATP Holdco, LLC and the other Subsidiary Corporations, to the extend owned by the Debtor's estate, and the Remaining Assets to Buyer, free and clear of all liens, claims and encumbrances, subject to Bankruptcy Court approval. Seller is the sole owner of the Stock of ATP Energy, Inc. and ATP Holdco, LLC and the Remaining Assets of the Debtor and is not otherwise obligated either contractually or otherwise to sell the Stock and Remaining Assets to any other person or entity.

The term "in reliance upon…" means that the Trustee has no separate knowledge of this fact other than referenced information he is relying upon and the Buyer acknowledges it is taking as is where is. Knowledge means the actual knowledge of the Trustee.

7. <u>Representations and Warranties of Buyer</u>. The Buyer represents and warrants to the Seller as follows:

(a) No person has any right or other claim against the Buyer for any commission, fee or other compensation as a finder or broker in connection with the transaction contemplated by this Agreement.

(b) The Buyer is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization. The Buyer has the requisite corporate power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement.

8. <u>Survival</u>. All representations and warranties of the Seller and Buyer set forth in paragraphs 6 and 7 above shall survive the Closing until the date that is one (1) year after the Closing.

9. <u>Documents and Cooperation</u>. Seller agrees to provide Buyer with all documents in the Seller's control and/or possession requested by Buyer, including but not

limited to, the Debtor, ATP Energy and the Subsidiary Corporations' books, records, tax returns, schedules, tax notes and related accounting information, if any.  If any such documents or information are in the possession of a third party, the Seller will cooperate in a commercially reasonable manner with Buyer to assist Buyer in obtaining those documents and/or information including, but not limited to, directing and/or requesting that third parties assist Buyer and provide the requested information and/or documents to Buyer; provided that Seller shall not be required to incur any out-of-pocket fees or expenses to comply with such requests.

10. Notices.  Whenever any notice is required or authorized to be given under this Agreement, such notice shall be given in writing and sent by regular and/or certified mail, postage prepaid, return receipt requested, with a copy by email.  Any such notice, if sent to Seller by Buyer, shall be addressed as follows, or to any other address provided by Buyer to Seller:

>ATPEAC, LLC
>Attention:  Daniel W. Grotenhuis, Manager
>16192 Coastal Highway
>Lewes, Delaware 19958
>Email:  dgrotenhuis@investment-recovery.com

If sent by Buyer to Seller, any such notice shall be addressed as follows, or to any other address provided by Seller to Buyer:

>Rodney D. Tow, Chapter 7 Trustee
>c/o Parkins Lee & Rubio LLP
>Attention: Charles M. Rubio, Esq.
>700 Milam, Suite 1300
>Houston, TX 77002
>Email: rtow@towtrustee.com
>       crubio@parkinslee.com

11. Successors.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

12. Sole Agreement.  This Agreement shall constitute the entire agreement between the Parties and shall supersede all prior agreements and understandings (written or oral) between the Parties respecting the subject matter hereof.  This Agreement can only be modified by a written document signed by the Parties.

13. Severability.  If any provision of this Agreement is determined to be invalid by a court of competent jurisdiction under applicable law, such invalidity shall not affect any other provisions of this Agreement that can be given effect without the invalid provision and, to this end, the provisions hereof are severable.

14. Jurisdiction and Venue.  The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court adjudicate any dispute or claim arising under, in connection with or related to this Agreement.  In the event the Bankruptcy Court determines not to or declines to exercise jurisdiction over any such dispute, then the

Parties submit and consent to the jurisdiction (both personal and subject matter) of the federal or state court Courts located in Houston, Texas to adjudicate any dispute or claim arising under, in connection with or related to this Agreement; provided that if the Debtor's Bankruptcy Case is closed and the Trustee is discharged, the Trustee has no obligation to appear and defend the estate in any action outside of the Bankruptcy Court.

15. <u>Waiver of Right to Jury Trial</u>. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE OR CLAIM ARISING UNDER, IN CONNECTION WITH OR RELATED TO THIS AGREEMENT.

16. <u>Authorization</u>. Each Party signing this Agreement hereby covenants and warrants that they are fully authorized to sign the Agreement on behalf of the Party they represent and is fully authorized to bind the Party to all of the terms of this Agreement. The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

17. <u>Jointly Drafted</u>. The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties. The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Parties.

18. <u>Governing Law</u>. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Texas without giving effect to conflict of law or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

19. <u>Execution</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which, taken together, shall constitute one Agreement binding upon the Parties. Executed facsimiles and/or .pdf copies shall be deemed and considered originals.

[Remainder of Page Intentionally Left Blank]

-7-

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date written above.

| | |
|---|---|
| **BUYER:** | **SELLER:** |
| ATPEAC, LLC | ATP OIL & GAS CORPORATION |
| By: _____<br>Daniel W. Grotenhuis<br>Manager | By: _____<br>Rodney D. Tow<br>Chapter 7 Trustee |

-7-

# EXHIBIT A

Execution Version

# BILL OF SALE

For good and valuable consideration received from ATPEAC, LLC, or its assignee (the "Buyer"), the receipt and sufficiency of which is hereby acknowledged by Rodney D. Tow, solely in his capacity as Chapter 7 trustee duly appointed in the bankruptcy case of ATP Oil & Gas Corporation ( the "Debtor"), pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), under  Case No. 12-36187 (the "Bankruptcy Case")(the "Seller"),

WHEREAS, the Seller and the Buyer entered into a Stock Sale and Purchase Agreement dated as of September 2, 2020 (the "Agreement")(unless otherwise defined herein, capitalized terms used herein shall have the definition set forth in the Agreement); and

WHEREAS, pursuant to the Agreement and the Order of the Bankruptcy Court approving of the Agreement, the Seller has agreed to sell, transfer, assign, convey and deliver the Stock of ATP Energy and the Subsidiary Corporations and Remaining Assets of the Debtor to Buyer;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth in the Agreement and the Order of the Bankruptcy Court, the Seller does hereby agree as follows:

1. **Sale and Assignment of the Purchased Assets.**

The Seller hereby sells, transfers, assigns, conveys and delivers unto the Buyer the Stock of ATP Energy and the Subsidiary Corporations and Remaining Assets of the Debtor.

2. **Further Assurances.**

Subject to the provisions of this Bill of Sale and the Agreement, the Seller hereby agrees to execute, acknowledge, deliver, file and record such further certificates, amendments, instruments and documents, and to do all such other acts and things, as may be reasonably requested by the Buyer in order to carry out the intent and purpose of the Bill of Sale and Agreement at the expense of the requesting Party, provided that this shall not require any Party to take any action that is commercially unreasonable or that would result in any liability of such Party.

3. **No Third Party Beneficiaries.**

Nothing in this Bill of Sale is intended to, or shall, confer any third party beneficiary or other rights or remedies upon any Person other than the Parties hereto.

4. **Severability.**

Any provision of this Bill of Sale which is determined by a court of competent jurisdiction to be invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Bill of Sale or affecting the validity or

enforceability of any of the provisions of this Bill of Sale in any other jurisdiction, and if any provision of this Bill of Sale is determined to be so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable, provided in all cases that neither the economic nor legal substance of this Bill of Sale is affected by the operation of this sentence in any manner materially adverse to any party. Upon any such determination that any provision of this Bill of Sale is invalid or unenforceable, the Parties shall negotiate in good faith in an effort to agree upon a suitable and equitable substitute provision to effect the original intent of the Parties.

### 5. Amendment, Waiver and Termination.

This Bill of Sale may not be amended or terminated, and no provision hereof may be waived, except by a writing signed by each of the Parties hereto.

### 6. Governing Law.

This Bill of Sale shall be governed and construed and interpreted in accordance with the laws of the State of Texas without giving effect to conflict of law or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

### 7. Jurisdiction and Venue.

The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court adjudicate any dispute or claim arising under, in connection with or related to this Bill of Sale.  In the event the Bankruptcy Court determines not to or declines to exercise jurisdiction over any such dispute, then the Parties submit and consent to the jurisdiction (both personal and subject matter) of the federal or state court Courts located in Houston, Texas to adjudicate any dispute or claim arising under, in connection with or related to this Bill of Sale; provided that if the Debtor's Bankruptcy Case is closed and the Trustee is discharged, the Trustee has no obligation to appear and defend the estate in any action outside of the Bankruptcy Court.  THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS BILL OF SALE.

### 8. Subject to Agreement and Order.

In the event of any conflict or other difference between the Agreement and this Bill of Sale, the provisions of the Agreement shall govern and control. In the event of any conflict or other difference between the Agreements, the Order of the Bankruptcy Court approving of the Agreement, and this Bill of Sale, the provisions of the Order of the Bankruptcy Court shall govern and control.

-3-

        IN WITNESS WHEREOF, the Seller has caused this Bill of Sale to be executed on _____ \_\_\_, 2020.

                                  **ATP OIL & GAS CORPORATION**

                          By: _____
                                    Rodney D. Tow
                                    Chapter 7 Trustee

-9-

# EXHIBIT B

**EXHIBIT B**

REV. PROC. 2015-26:  TERMINATING AGENT'S DESIGNATION OF AGENT UNDER SECTION 1.1502-77(c)(5)

TERMINATING AGENT:
ATP OIL AND GAS CORPORATION
C/O RT, TRUSTEE; 1122 HIGHBORNE CAY COURT
TEXAS CITY, TX 77590
EIN:  76-0362774

DESIGNATED AGENT:
ATP ENERGY, Inc.
C/O RT, TRUSTEE; 1122 HIGHBORNE CAY COURT
TEXAS CITY, TX 77590
EIN:  76-0480314
CONSOLIDATED RETURN YEAR(S) OF DESIGNATION:  2020 AND PRIOR YEARS

INTERNAL REVENUE SERVICE CENTER WHERE RETURN FILED:
OGDEN, UT

EXPECTED DATE OF TERMINATION OF THE DESIGNATING AGENT:
AUGUST 1, 2020

The designated agent, ATP Energy, Inc., agrees to serve as the agent for the ATP Oil and Gas Corporation consolidated group pursuant to the terminating agent's designation.

Under penalties of perjury, I declare that I am authorized to make this designation on behalf of the terminating agent and that, to the best of my knowledge, the information provided is true, correct, and complete.

_____

TERMINATING AGENT

Under penalties of perjury, I declare that I am authorized to sign this statement on behalf of the designated agent and that, to the best of my knowledge, the information provided is true, correct, and complete.

_____

DESIGNATED AGENT